# Piper Rudnick

6225 Smith Avenue
Baltimore, Maryland 21209-3600
main 410.580.3000  fax 410.580.3001

JOY NAPIER-JOYCE
joy.napier@piperrudnick.com
direct 410.580.4223

August 14, 2003

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

David Dixon
TE/GE Division
P.O. Box 2508
Cincinnati, Ohio 45201

Attn:   D. Dixon, Grp 7525

  Re:   Retirement Income Plan for Employees of the National Railroad
        Passenger Corporation (Plan #001)

Dear Mr. Dixon:

This letter responds to your facsimile dated 8/1/03, in which you requested information regarding the adoption of Amendment II to the above-referenced plan (the "Plan"). You have requested that we provide further detail and evidentiary documents which demonstrate the timeline and facts surrounding the amendment of the Plan to add an early retirement window.

On 7/26/01, the management of the National Railroad Passenger Corporation (the "Company") presented to its Board of Directors an organizational restructuring plan designed to consolidate and eliminate positions within the Company's management workforce. As part of this plan, the Board was asked to approve a package of three employee separation/severance initiatives. One of these initiatives was a voluntary early retirement program (the "VERP"). The Company's management provided the Board with an executive summary of the proposed VERP. The executive summary specified that the VERP would be funded out of the Plan. It also assumed that "[s]ince the pension plan is presently over funded, Amtrak will be able to maintain a contribution holiday for several more years." The Board authorized and approved all three initiatives and specifically authorized the President and Chief Executive Officer to take all necessary steps to implement the three separation/severance plans described in the executive summary. A copy of the executive summary and 7/26/01 resolutions evidencing these actions is enclosed.

Following the 7/26/01 Board action, a letter was sent to all Company management employees on 7/30/01. A copy of this communication is enclosed herewith. This letter

**AMT001392**

**Piper Rudnick**

David Dixon
August 14, 2003
Page 2

described the proposed terms of all three initiatives. It also informed employees of the basic terms of the VERP and that the window period in which they had to elect the VERP would run from September 15th until October 31st. The letter stated that employees would receive further information on the benefits of the VERP in future communications and indicated that such information would include:

- A statement of the monthly benefit an employee would receive if he or she elected to participate in the VERP, including the different benefit amounts based on the different forms of payment (such as Life-Only Annuity, 50% Joint and Survivor Annuity, etc.) for which he or she is eligible;

- An election form and booklet that explains the VERP in detail;

- An invitation to a special "Reaching Retirement" seminar with representatives from Amtrak's Benefits Department, the Railroad Retirement Board, and Vanguard; and

- Information regarding the pool of eligible employees.

While this communication provided details on the types of benefits available under the initial VERP authorized by the Board, it did not communicate the final terms.

Prior to implementing the VERP as initially proposed, the Company's management requested an updated actuarial analysis of the Plan to ensure that the "integrity of the pension fund is preserved." The updated actuarial analysis showed, however, that due in main part to recent losses in the stock market, the Plan's surplus was not as large as originally thought and under the terms of the initial VERP proposal, the surplus would be depleted and the Company would have to make a contribution to the Plan as early as 2003. Specifically, the Plan's actuaries determined that the Plan's surplus decreased from $42 million in December, 2000 to $18.6 million on August 31, 2001.

Following the actuarial analysis of the Plan's funding status, on 9/14/01, management presented the Board with a revised VERP, as described in an attached executive summary. The executive summary explained how the Plan's funding differed from the original assumptions and proposed a more modest VERP benefit in line with the Plan's funding level at that time. The Board approved the amended VERP and authorized the President and Chief Executive Officer to take all necessary steps to implement its terms. A copy of the executive summary and the 9/14/01 Board resolutions authorizing the amended VERP is enclosed.

On 9/14/01, the Company sent a package to each employee which explained the final terms of the VERP and included a personalized statement regarding the individual's estimated VERP benefit. As part of the package, a letter dated 9/14/01 highlighted the changes that had been made to the VERP since the initial communication. The letter explained that the Company

AMT001393

~BALT1:3669384.v2

**Piper Rudnick**

David Dixon
August 14, 2003
Page 3

had changed the terms of the VERP based on the updated actuarial analysis which reflected a smaller over-funding than originally assumed. The package also included a letter explaining how to elect the VERP, a booklet explaining the VERP, as amended, an election form, tax forms, and a release agreement. A copy of the entire package sent to employees is enclosed.

The Plan was formally amended on November 30, 2001 to incorporate the VERP benefit as approved on September 14, 2001.

From this chain of events, it is clear that the changes in the VERP as initially approved and communicated to employees were timely authorized by the Board and were based on the Board's judgement that there had been a material change in the assumptions about the Plan's funding status on which the Board's initial authorization was based. The amendment occurred before the beginning of the VERP election period. Furthermore, the Company provided each employee with detailed, accurate written material, which explained the specifics of the amended VERP benefit and gave them ample time to elect to participate.

I hope that the information herein sufficiently responds to the issues you have raised. I have also enclosed a revised Form 2848, Power of Attorney, which authorizes John E. Kratz, Jr. of our office, to act on behalf of the Company. If you have any questions or need anything further, please do not hesitate to contact me.

Very truly yours,

Joy Napier-Joyce

/jn

cc:   Warren Reisig

AMT001394

~BALT1:3669384.v2