IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WADE F. HALL, <br> HATTIE N. MCCOY-KEMP, <br> VICTORIA F. STATON, <br><br> On behalf of themselves and on <br> behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RETIREMENT INCOME PLAN FOR <br> EMPLOYEES OF NATIONAL RAILROAD <br> PASSENGER CORPORATION, *et al.* <br><br> Defendants. | No. 06-CV-1539 (GK) <br><br> Class Action |

## [Proposed] O R D E R

Upon consideration of Plaintiffs' Motion for Partial Summary Judgment on Count One and Memorandum of Points and Authorities in Support, Defendants' Opposition and Plaintiffs' Reply, and the entire record herein, it is ORDERED that Plaintiffs' Motion is GRANTED.

The Court finds:

1.  Plaintiffs are former employees of Defendant National Railroad Passenger Corporation ("Amtrak," the "Corporation or the "Company") and participants in Amtrak's ERISA-governed defined benefit pension plan, Defendant Retirement Income Plan for Employees of National Railroad Passenger Corporation (the "Pension Plan" or the "Plan").

2.  Plaintiffs have moved pursuant to Local Rules 7(h) and 56.1, and Fed. R. Civ. P. 56 and 57, for a declaration under Count One of the Complaint that on September 14, 2001 Amtrak's Board of Directors (the "Board") did not take effective "action" in compliance with the Plan's amendment procedure when it eliminated the most valuable feature of an early retirement plan enacted approximately two months earlier.

3. There is no genuine issue as to any fact material to the claims and defenses precluding the Court from ruling on Plaintiffs' Motion.

4. Plaintiffs' statement of material facts is largely undisputed by Defendants and where disputed, Defendants' objections are not well-taken.[1] Plaintiffs accurately state the material facts relevant to the Court's determination of the legal issues presented, namely, as to the validity under ERISA of the Amtrak Board of Directors' actions or purported actions amending the Amtrak Pension Plan on July 26, 2001 and then again on September 14, 2001. Plaintiffs' statement is supported by the exhibits attached to Plaintiffs' submission which consist almost entirely of materials taken from Amtrak's files, the authenticity of which has been adequately established to the extent disputed.

5. The Court holds that the Board did not "act[]" to amend the Plan on September 14, 2001 and that Plaintiffs are entitled to the declaration they seek. In *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), the Supreme Court held that a purported ERISA plan amendment not adopted in accordance with the plan's amendment procedure is ineffective and that adversely affected participants may sue to have the alleged amendment set aside. *Id.* at 84-85. The Court finds this to be such a case.

6. With the exception of technical amendments required to keep the Plan compliant with federal tax law, Amtrak's Pension Plan specifies that it can only be amended "by action of [Amtrak's] Board." Plan § 13.01. Plan § 13.01's reference to Board "action" is an obvious reference to "action" as defined by Amtrak's governing statutes and bylaws. *See Curtiss-Wright,* 514 U.S. at 80 ("principles of corporate law provide a ready-made set of rules" for providing definitions for undefined term in plan provision's amendment procedure).

7. The statutes are the two statutes, one federal and one District of Columbia, under which Amtrak was incorporated in 1971: the Rail Passenger Service Act of 1970 ("RPSA") and

---

[1] Defendants' proffers as to the "true" intent of Amtrak Board members' on the dates in question, intended to contradict the objective evidence of the Board's intent, are rejected. Such subjective extrinsic evidence is inadmissible in this setting and Defendants' proffered evidence additionally lacks proper foundation and consists almost entirely of hearsay or multiple layers of hearsay.

2

the District of Columbia Business Corporations Act ("DCBCA"), D.C. Code § 29-101.01 *et seq.* *See* Amtrak Articles of Incorporation at 1.

8. Congress specified in the RSPA that Amtrak is subject to the requirements of the DCBCA (which Congress also enacted, in 1954) to the extent not inconsistent with the RPSA. 49 U.S.C. § 24301(e).

9. Under the DCBCA, a board "acts" or "take[s]" "action" only by holding a lawfully noticed meeting at which the directors present (in person or by telephone) constitute a quorum, and decisions are taken by majority of the directors present and entitled to vote. DCBCA §§ 29-101.36, 101.42(b).

10. The DCBCA does permit a board to take action without a meeting provided certain procedural safeguards are followed. Specifically, DCBCA § 29-101.136, entitled "Requirements of action without meeting," permits action to be taken by a board without a meeting if "a consent in writing setting forth the action so taken shall be signed by all . . . of the members of the board . . . and such written consent is filed with the minutes of proceedings of. . . the board." DCBCA § 29-101.136.

11. Because it is undisputed that Amtrak's Board held no meeting (in person or telephonically) on September 14, 2001, the validity of Amtrak's attempt on September 14, 2001 to eliminate the Railroad Retirement Supplement feature of the Voluntary Early Retirement Plan ("VERP") the Board adopted on July 26, 2001 (unanimously, and during a lawfully called and convened meeting) turns on whether the Board complied with the DCBCA's unanimous written consent statute.[2]

12. Plaintiffs argue that Amtrak failed to comply with the unanimous written consent statute. The Court agrees.

---

[2] Defendants' contention that the Board did not add the VERP to the Pension Plan in the first place, on July 26, 2001, lacks merit and is addressed below.

3

13. On September 14, 2001, there were seven Amtrak Board members. Three of these seven Board members – George Warrington, Norman Mineta and Linwood Holton – did not sign a consent to amend the VERP, on September 14 or ever.

14. Without consents signed by each of the seven Board members then in office, the Court is precluded from recognizing what the Board purported to do on September 14, 2001 as valid under the DCBCA or ERISA.[3]

15. Amtrak did not obtain a signed consent from Mr. Warrington, Amtrak's President and a member of the board without voting power by virtue of his position as President. 49 U.S.C. § 24302(a)(2)(D). Amtrak did not seek Mr. Warrington's consent because it believed that the fact that Mr. Warrington lacked voting power at Board meetings made his consent to take action without a meeting unnecessary.[4]

16. While this is certainly one way that DCBCA § 29-101.136 could have been written, the statute is quite clear that action can be taken only when "all members of the board" sign written consents. No exception is made for a board member who might lack voting power generally or just on the matter at issue.

17. That "all" members of the board really means "all" is confirmed by the other half of DCBCA § 29-101.136 which addresses the requirements for a corporation's <u>shareholders</u> to take action without meetings. DCBCA § 29-101.136 provides that, whereas "all members of the board" must sign consents to take action without a meeting, only those shareholders "**entitled to**

---

[3] As required by the Court's Order of August 5, 2005, Plaintiffs filed and exhausted this claim through the Plan's internal claims process. Plaintiffs' claim was denied by the Plan's "designated officer on review," Plan § 15.01, Lorraine Green. The Court reviews her decision *de novo* for two reasons. First, Plan § 15.01 did not confer Ms. Green with discretion to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (a benefits denial must be reviewed *de novo* unless the plan confers such discretion). Second, even if it did satisfy *Firestone,* this Court owes no deference to a plan official's legal conclusion. *E.g., Holt v. Winpisinger,* 811 F.2d 1532, 1536 (D.C. Cir.1987). Finally, even assuming deference, the finding that the Board took valid "action" is unreasonable and, therefore, arbitrary and capricious, because it ignored the clear language of the Plan, the DCBCA and ERISA.

[4] Amtrak embodied this mistaken belief in a bylaw, Bylaw § 4.12. Amtrak is restricted, however, to enacting bylaws consistent with the DCBCA. To the extent that Bylaw § 4.12 conflicts with DCBCA § 29-101.136 – and the Court finds that it does – it cannot be relied upon to excuse Amtrak's failure to obtain Mr. Warrington's signed written consent.

**vote"** on the matter are required to do so.  The absence of such limitation within the same one-paragraph statute precludes any other interpretation.

18.     Amtrak also did not obtain a signed consent from Mr. Mineta, then Secretary of Transportation.  Amtrak believed that because under the 1997 amendments to the RSPA a sitting Secretary of Transportation, if appointed a director, is permitted by statute to be "represented at Board meetings by his designee," 49 U.S.C. § 24302(a)(2)(ii), he also could be represented by his designee when asked to consent to a particular action without a meeting.  Based on that understanding, Amtrak only sought and obtained the "consent" of Michael Jackson, one of two government officials who had represented Mr. Mineta at Board meetings.  *See* Ex. 3, AMT 15065.

19.     Congress certainly could have exempted the Secretary from personal compliance with DCBCA § 29-101.136 as well as the requirement to attend actual meetings but Congress chose not to do so.  The RSPA says that Amtrak is subject to the DCBCA to the extent not inconsistent with the RPSA.  49 U.S.C. § 24301(e).  The DCBCA makes a director's duties essentially non-delegable.  As a general rule, the DCBCA does not permit a director, in contrast to a shareholder, to perform actions by proxy.  RSPA § 24302(a)(2)(ii) carves out an exception but only for a sitting Secretary of Transportation (if appointed) and only to allow him or her to be represented "at Board meetings" by a designee.  In the statutory context, these are clearly words of limitation – they cannot be extended to also eliminate the requirement that the Secretary, like any other member of the Board, personally consent to a proposed action <u>in the absence of a meeting</u>.  Congress did not say the Secretary can be represented by a designee in respect to <u>any</u> duties he deemed appropriate, or any duties under the DCBCA:  it said "at Board meetings."[5]

---

[5] The Court agrees with Plaintiffs that the distinction the DCBCA creates here is sensible.  Presumably because of his or her busy schedule, RSPA § 24302(a)(2)(ii) relieves a sitting Secretary of the requirement to physically attend meetings, in person or by telephone.  At meetings, minutes are kept and numerous additional procedural safeguards must be observed.  By contrast, there are no or almost no safeguards in the case of unanimous written consents <u>other than</u> the direct involvement of all directors.

5

20. Governor Holton also never signed a consent to amend the VERP. Instead, Governor Holton purported to sign his consent, in effect, by proxy, by having an Amtrak employee, Amtrak Assistant Corporate Secretary and Board liaison John Carten, sign "for" him. But DCBCA § 29-101.136 is explicit that consents must be "signed by" each director and no reason appears for not applying the statute as written. *See, e.g., EAW Group, Inc. v. Republic of Gambia*, Civ. No. 02-2425 (GK), 2006 WL 3361544, *6 (D.D.C. Nov. 20, 2006) (applying "the plain and unambiguous terms" of another portion of the DCBCA).

21. Via its treatment of shareholders, the statute confirms the importance it places on the "signed by" requirement which it imposes equally on shareholders seeking to take action without a meeting. Other provisions of the DCBCA relieve shareholders in every other instance of the requirement to sign or take action personally.[6] The fact that the statute compels them to personally provide signed consents to otherwise take action without a meeting underscores the premium the statute places on action taken at meetings and that action taken without a meeting should be the exception not the rule.

22. Requiring each director (or shareholder entitled to vote on the matter) to personally manifest his or her agreement to forego a meeting and take the action set forth in the consent by themselves signing on the dotted line helps ensure that when action is taken without a meeting it is truly because in the considered judgment of each director (and shareholder entitled to vote on the matter) that the meeting would not and could not serve any useful purpose.

23. Based on the fact that Mr. Warrington, Mr. Mineta and/or Governor Holton did not sign consents to amend the VERP, the Court holds that the Board failed to take valid "action" on September 14, 2001 to eliminate the Railroad Retirement Supplement from the Amtrak Pension Plan.

---

[6] The DCBCA lets shareholders attend meetings by proxy, vote by proxy, sign proxies by proxy – and even provide signed, written consents to dissolve the corporation by proxy. DCBCA § 29-101.31(a) (at meetings shareholders may be represented in person or by proxy for purposes of constituting a quorum); § 29-101.27(e) (shareholder may vote either in person or by proxy executed in writing by the shareholder or by his duly authorized attorney in fact); § 29-101.77(5) (written consent to dissolve corporation may be signed by shareholders "or signed in their names by their duly authorized attorneys").

24. Amtrak's contention that the Board never added the VERP as an amendment to the Pension Plan in the first place has no merit. The Court finds that the Board's intent on July 26, 2001 to amend the Pension Plan is clear from the Board's Resolutions and Meeting Minutes from that day.

25. Any doubt that the Board amended the Plan that day with the VERP is dispelled by Amtrak itself, which between July 26 and September 14, 2001 repeatedly stated, through its directors, officers, employees, and counsel, that the Board did amend the Pension Plan on July 26, that the VERP was officially adopted, and that no additional approval was necessary and indeed any deviation from the terms of the Plan as announced and adopted by the Board would violate the law and jeopardize the Plan's tax-qualified status.[7]

26. The Court thus also holds that the Board's Resolutions incorporating the VERP terms detailed in the Executive Summary and the Board's meeting minutes reflect that by "action of [the] Board" on July 26, 2001 the VERP featuring the Railroad Retirement Supplement became part of the Pension Plan for purposes of ERISA.

SO ORDERED.

_____
Gladys Kessler
United States District Court Judge

---

[7] By contrast, there is no admissible, objective documentary evidence to support Amtrak's contention that on July 26 (and again on September 14) instead of amending the Plan itself the Board delegated its discretionary power to amend the Plan to management. This would not have been possible even according to Amtrak's version of events: such a delegation, under Plan's amendment clause, would have itself required a Plan amendment, which Amtrak says did not happen on July 26 (or September 14).