**<u>Exhibit 1</u>**

RETIREMENT INCOME PLAN FOR
EMPLOYEES OF
NATIONAL RAILROAD PASSENGER CORPORATION

Printed 12/23/94

AMT000786

## Table of Contents

| | | | Page |
|---|---|---|---|
| PREAMBLE | | | 1 |
| ARTICLE I | - DEFINITIONS | | 2 |
| | 1.01 | Accrued Benefit | 2 |
| | 1.02 | Accumulated Employee Contributions | 2 |
| | 1.03 | Act | 2 |
| | 1.04 | Actuarial Equivalent | 2 |
| | 1.05 | Actuary | 2 |
| | 1.06 | Affiliated Employer | 2 |
| | 1.07 | Annuity Starting Date | 3 |
| | 1.08 | Authorized Leave of Absence | 3 |
| | 1.09 | Average Compensation | 3 |
| | 1.10 | Beneficiary | 4 |
| | 1.11 | Board of Directors | 4 |
| | 1.12 | Break in Eligibility Service | 4 |
| | 1.13 | Break in Service | 4 |
| | 1.14 | Chicago Union Station Frozen Benefit | 5 |
| | 1.15 | Chicago Union Station Termination Benefit | 5 |
| | 1.16 | Code | |
| | 1.17 | Company | 5 |
| | 1.18 | Compensation | 5 |
| | 1.19 | Contingent Annuitant | 8 |
| | 1.20 | Conrail | 8 |
| | 1.21 | Effective Date | 8 |
| | 1.22 | Employee | 8 |
| | 1.23 | Employer | 9 |
| | 1.24 | Employment Date | 9 |
| | 1.25 | Family Member | 9 |
| | 1.26 | Former Chicago Union Station Company Participant | 9 |
| | 1.27 | Former Participant | 9 |
| | 1.28 | Former Washington Terminal Company Participant | 10 |
| | 1.29 | Fund | 10 |
| | 1.30 | Highly Compensated Employee | 10 |
| | 1.31 | Highly Compensated Former Employee | 11 |
| | 1.32 | Hour of Service | 11 |
| | 1.33 | Interest | 13 |
| | 1.34 | Leased Employee | 13 |
| | 1.35 | Merged Plan | 13 |
| | 1.36 | Named Fiduciary | 15 |
| | 1.37 | Non-Highly Compensated Employee | 15 |
| | 1.38 | Normal Retirement Date | 15 |
| | 1.39 | Participant | 15 |
| | 1.40 | Period of Severance | 16 |
| | 1.41 | Plan | 16 |
| | 1.42 | Plan Administrator | 16 |
| | 1.43 | Plan Year | 16 |
| | 1.44 | Reemployment Commencement Date | 16 |
| | 1.45 | Retirement Benefit | 16 |
| | 1.46 | Retirement Investment Committee | 16 |
| | 1.47 | Retirement Plan Committee | 16 |
| | 1.48 | Severance From Service Date | 16 |

AMT000787

| | | |
|---|---|---|
| 1.49 | Social Security Covered Compensation | 17 |
| 1.50 | Social Security Retirement Age | 17 |
| 1.51 | Sponsor | 17 |
| 1.52 | Spouse | 17 |
| 1.53 | Top Paid Group | 18 |
| 1.54 | Total and Permanent Disability | 18 |
| 1.55 | Transferring Railroad | 19 |
| 1.56 | Trust Fund | 19 |
| 1.57 | Trustee | 19 |
| 1.58 | Washington Terminal Company Frozen Benefit | 19 |
| 1.59 | Washington Terminal Company Termination Benefit | 19 |
| 1.60 | Year of Eligibility Service | 19 |
| 1.61 | Year of Service | 19 |
| 1.62 | Years of Credited Service | 21 |
| 1.63 | Years of Vesting Service | 22 |

**ARTICLE II**    - PARTICIPATION — 23

| | | |
|---|---|---|
| 2.01 | General | 23 |
| 2.02 | Transfer of Participant to Another Employer | 24 |
| 2.03 | Participation Upon Re-employment | 24 |
| 2.04 | Transfer of Participant to an Affiliated Employer | 24 |
| 2.05 | Transfer to Another Category of Employment | 25 |
| 2.06 | Application Required for Benefits | 25 |

**ARTICLE III**    - RETIREMENT DATES — 26

| | | |
|---|---|---|
| 3.01 | Normal Retirement Date | 26 |
| 3.02 | Early Retirement Date | 26 |
| 3.03 | Deferred Retirement Date | 26 |

**ARTICLE IV**    - AMOUNT OF RETIREMENT BENEFITS — 27

| | | |
|---|---|---|
| 4.01 | At Normal Retirement Date | 27 |
| 4.02 | At Early Retirement Date | 28 |
| 4.03 | At Deferred Retirement Date | 28 |
| 4.04 | Disability | 29 |
| 4.05 | Maximum Benefit and Contribution Limitations Effective January 1, 1987 | 29 |
| 4.06 | Voluntary Early Retirement Plan | 36 |

**ARTICLE V**    - PAYMENT OF RETIREMENT BENEFITS — 38

| | | |
|---|---|---|
| 5.01 | Normal Form of Benefit | 38 |
| 5.02 | Spouse Joint and Survivor Annuity | 38 |
| 5.03 | Optional Form of Retirement Benefit | 40 |
| 5.04 | Payment of Small Benefits | 43 |
| 5.05 | Limitations on Date Benefits Begin | 44 |
| 5.06 | Limitations on Benefits in the Event of Death | 45 |
| 5.07 | Purchase of Annuities | 46 |
| 5.08 | Calculation of Present Value for Cash-Out of Benefits and for Determining Amount of Benefits | 46 |
| 5.09 | Consent Required for Distributions | 48 |
| 5.10 | Direct Rollovers | 48 |
| 5.11 | Rollovers Not Accepted | 49 |

AMT000788

5.12   Payment in Respect of a Qualified
Domestic Relations Order ................................................. 49

ARTICLE   VI   - TERMINATION OF EMPLOYMENT ........................... 50
6.01   Vesting ................................................................... 50
6.02   Forfeiture .............................................................. 50
6.03   Amendments......................................................... 50

ARTICLE   VII   - DEATH BENEFITS ............................................... 52
7.01   Spouse's Benefit ................................................... 52
7.02   Return of Employee Contributions With Interest
to Title V Protected Union Employees ..................... 53

ARTICLE   VIII   - REEMPLOYMENT ................................................. 54
8.01   Prior to Normal Retirement Date .......................... 54
8.02   Subsequent to Normal Retirement Date ................. 54

ARTICLE   IX   - CONTRIBUTIONS .................................................. 56
9.01   Contributions by Participants ............................... 56
9.02   Contributions by the Employer ............................. 56
9.03   Fund to be for the Exclusive Benefit of Participants ... 56

ARTICLE   X   - ADMINISTRATION OF THE PLAN ..................... 58
10.01   Retirement Plan Committee ................................. 58
10.02   Administrative Responsibility of the Board ........... 58
10.03   Duties of Retirement Plan Committee .................. 58
10.04   Delegation and Allocation of Responsibilities
of the Retirement Plan Committee....................... 59
10.05   Limitation of Liability ........................................ 59
10.06   Consultations and Reliance .................................. 60
10.07   Action by Majority ............................................. 60
10.08   Disqualification of a Member ............................... 60
10.09   Compensation and Expenses................................. 60

ARTICLE   XI   - THE TRUST FUND .............................................. 61
11.01   Trust Fund........................................................... 61
11.02   Trustee ................................................................ 61
11.03   Duties of Named Fiduciaries Other Than the Trustee
With Respect to Control and Management of
Plan Assets........................................................ 61

ARTICLE   XII   - LIMITATION OF ASSIGNMENT ........................ 63

ARTICLE   XIII   - AMENDMENT TO OR TERMINATION OF THE PLAN ........ 64
13.01   Amendment ....................................................... 64
13.02   Termination ....................................................... 64
13.03   Restrictions on Benefits ..................................... 65
13.04   Withdrawal of an Employer ................................ 67
13.05   Merger, Consolidation or Transfer of Plan Assets ... 68

ARTICLE   XIV   - TOP HEAVY PROVISIONS ............................... 69
14.01   Top Heavy Plan Requirements ............................ 69
14.02   Definitions ......................................................... 69
14.03   Determination of Top Heavy Plan ....................... 71

AMT000789

| | | | |
|---|---|---|---|
| | 14.04 | Top Heavy Vesting Requirement | 71 |
| | 14.05 | Top Heavy Minimum Benefit Requirement | 72 |
| | 14.06 | Top Heavy Limitations on Compensation Requirement | 73 |
| | 14.07 | Top Heavy Adjustments in the Maximum Benefit and Contribution Limitations | 73 |
| | 14.08 | Determination of Top Heavy Status | 73 |

ARTICLE  XV  - CLAIMS PROCEDURES   75
     15.01  Claims Procedure   75

ARTICLE  XVI  - CONSTRUCTION   77
     16.01  General   77   77
     16.02  Gender
     16.03  Rights Conditioned on Plan Sufficiency   77
     16.04  Headings   77
     16.05  Exclusion and Separability   77

ARTICLE  XVII  - FIDUCIARY LIABILITY INSURANCE AND INDEMNIFICATION   78
     17.01  Fiduciary Liability Insurance   78
     17.02  Indemnity   78
     17.03  Bonding   78

ARTICLE  XVIII - MISCELLANEOUS   79
     18.01  Rights Not Conferred   79
     18.02  Incompetence   79
     18.03  Notice of Address   79
     18.04  Data   79

CWAMTRAKF94RETIR.PLN

AMT000790

PREAMBLE

(A)  <u>Amendment and Restatement.</u>  The Retirement Income Plan for the Employees of National Railroad Passenger Corporation (the "Plan"), as adopted effective January 1, 1975 and subsequently amended from time to time, is hereby amended and restated as set forth herein effective January 1, 1989, except as otherwise provided herein.

(B)  <u>Application.</u>  The Plan as amended and restated applies to any person who is credited with at least one Hour of Service on or after January 1, 1989. Eligibility for benefits, entitlement to benefits, payment of benefits, and the amount of benefits, if any, accrued under the Plan by a person who was an employee of an Employer or Affiliated Employer prior to January 1, 1989, who terminated employment prior to January 1, 1989, and who is not rehired by an Employer or Affiliated Employer after December 31, 1988, shall be determined in accordance with the provisions of the Plan as in effect on the date the person ceased to be an employee of the Employer or Affiliated Employer, except as otherwise may be provided by ERISA or other law.

1

AMT000791

## ARTICLE I
### Definitions

The following words and phrases shall, when used herein, have the meanings set forth below:

1.01    <u>Accrued Benefit</u> means the annual benefit payable in monthly installments to a Participant at his Normal Retirement Date based on the Participant's Years of Credited Service and Compensation at the time of retirement, death or termination of employment and computed in accordance with Plan Section 4.01.

The Accrued Benefit of a Former Participant or a Participant (other than an Active Participant) shall be based on the terms of the Plan in effect on the date he ceased to be an Active Participant, except as otherwise may be provided by ERISA or other law.

1.02    <u>Accumulated Employee Contributions</u> means the sum of a Participant's contributions to the Plan with Interest to the earliest of the date of his retirement or the date of his death.

1.03    <u>Act</u> means the Employee Retirement Income Security Act of 1974 or as the same may hereafter be amended.

1.04    <u>Actuarial Equivalent</u> means a benefit of equivalent value to the benefit which would have otherwise have been provided, based upon the actuarial factors set forth in the Plan.

1.05    <u>Actuary</u> means the enrolled actuary selected and retained on behalf of the Plan Participants, Spouses and Beneficiaries.

1.06    <u>Affiliated Employer</u> means

(a)    any corporation which is a member of a "controlled group of corporations" (as that term is defined in Section 414(b) of the Code) which includes the Employer, but which is not an Employer;

(b)    any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with an Employer, but which is not an Employer; or

(c)    any employer (whether or not incorporated) that is not an Employer, but which is a member of an affiliated service group (as defined in Section 414(m) of the Code) that includes an Employer; or

(d)    any other entity required to be aggregated with an Employer

2

AMT000792

pursuant to regulations under Section 414(o) of the Code.

        A corporation, a trade or business and an employer are an Affiliated Employer for all purposes under the Plan only during the period or periods when the corporation is a member of the same controlled group of corporations as an Employer, when the trade or business is under common control with an Employer or when the employer is a member of an affiliated service group that includes an Employer.

        1.07      Annuity Starting Date shall be the first day of the first period for which an amount is payable as an annuity or, in the case of a benefit not payable in the form of annuity, the first day on which all events have occurred which entitle the participant to such a benefit. However, the first day of the first period for which a benefit is to be received by reason of disability shall be treated as the Annuity Starting Date only if such benefit is not an auxiliary benefit. An auxiliary benefit is a disability benefit which does not reduce the benefit payable at Normal Retirement Date. If benefit payments in any form are suspended pursuant to Section 8.02 for an employee who continues in service without a separation and who does not receive a benefit payment, the recommencement of the benefit payments shall be treated as a new Annuity Starting Date.

        1.08      Authorized Leave of Absence means

        (a)      a leave of absence of an employee of not more than twelve (12) months due to sickness or other cause, approved by an Employer or Affiliated Employer in accordance with rules of uniform application to all employees similarly situated; or

        (b)    a leave of absence of an employee due to active duty for training or service in the Armed Forces of the United States, including a Reserve component thereof or the Public Health Service; provided that at the time the employee makes application for reemployment by an Employer or Affiliated Employer he is entitled to reemployment rights under Federal law.

        1.09      Average Compensation means the annual average of the Compensation of a Participant for the five consecutive Plan Years which are prior to the date he retires or terminates, which occur during his Years of Credited Service and during which his Compensation is the highest.

        If the Participant does not have at least five consecutive Plan Years during his period of Years of Credited Service, Average Compensation means the annual average of the Participant's Compensation for his longest single period of Years of Credited Service (uninterrupted by a period during which he did not earn Years of Credited Service). If such period includes Years of Credited Service earned both before and after January 1, 1995 then the Compensation in respect of the period prior to that date shall be weighted, in determining Average Compensation, for the

3

Years of Credited Service earned during the period to which such Compensation amount applies.

1.10    Beneficiary shall mean the individual(s) or legal entity last designated by a Participant on a form provided for that purpose by the Pension Committee as entitled to receive any benefits, other than the Spouse Joint and Survivor Annuity payable in accordance with Section 5.02 and the Spouse's Benefit payable in accordance with Section 7.01, which may be payable under the Plan by reason of the death of the Participant. If no such designation is in effect at the time of the death of the Participant, or if no person so designated shall survive the Participant, then the Participant shall be deemed to have designated his personal representative as his Beneficiary.

With respect to any married Participant who is credited with at least one (1) Hour of Service under this Plan or an hour of paid leave on or after August 23, 1984, who makes an election after December 31, 1984 not to take the Spouse Joint and Survivor Annuity form of pension or who elects to change his designated Beneficiary, no Beneficiary designation or designation of a contingent annuitant other than the Spouse shall be valid or effective unless the Participant's Spouse consents in writing to such election, and the Spouse's consent acknowledges the effect of such election and is witnessed by a Plan representative or a notary public, or it is established to the satisfaction of a Plan representative that such consent may not be obtained because there is no Spouse, because the Spouse cannot be located, or because of such other circumstances as may be prescribed by regulations under Section 417(a) of the Code. Any consent by a Spouse (or establishment that the consent of the Spouse may not be obtained) under the preceding sentence shall be effective only with respect to such Spouse.

1.11    Board of Directors or Board means the Board of Directors of the Sponsor. "Board" may also mean the boards of directors of other Employers who adopt the Plan if that meaning is indicated by the context.

1.12    Break in Eligibility Service means a Break in Service.

1.13    Break in Service on or after January 1, 1976 means a period during which an employee is absent from employment with an Employer or Affiliated Employer due to any of the following reasons:

(a)    termination of employment for any reason (other than an Authorized Leave of Absence); or

(b)    failure to return to employment with an Employer or Affiliated Employer at or before the expiration of an Authorized Leave of Absence.

Notwithstanding the above, a Break in Service will not occur if such an

4

employee as described above returns to employment with an Employer or Affiliated Employer within the twelve consecutive month period following his Severance from Service Date as defined in Section 1.48, and his Period of Severance shall be included in his Years of Service but not in his Years of Credited Service.

      1.14      Chicago Union Station Frozen Benefit means the Actuarial Equivalent of the benefit payable in an unreduced form at the applicable normal retirement date that would have accrued to a Former Chicago Union Station Participant under the Chicago Union Station Company Plan for Supplemental Pensions had that plan continued in effect, determined including Compensation and Years of Credited Service earned subsequent to December 31, 1985 and up to the applicable determination date but not later than December 31, 1988.

      1.15      Chicago Union Station Termination Benefit means an Accrued Benefit which is the Actuarial Equivalent of the benefit accrued as of December 31, 1985 under the Chicago Union Station Company Plan for Supplemental Pensions by a Former Chicago Union Station Participant.

      1.16      Code means the Internal Revenue Code of 1986, as amended.

      1.17      Company means National Railroad Passenger Corporation or any other person, firm or corporation which may succeed to the business of National Railroad Passenger Corporation by merger, consolidation or otherwise and which, by appropriate action, shall adopt the Plan. Before May 1, 1971, "Company" means Railpax.

      1.18      Compensation

      (a)      Compensation determined for years prior to January 1, 1995 means the basic monthly salary of an Active Participant at the rate in effect on January 1st of any Plan Year multiplied by 12, exclusive of any special earnings such as overtime, bonus payments and the cost of other benefits. The Compensation of an Active Participant paid on a weekly basis shall be his weekly salary rate in effect on January 1st of any Plan Year multiplied by 52. For an Active Participant paid on an hourly basis, Compensation shall be his hourly rate in effect on January 1st of any Plan Year multiplied by the number of hours in his regularly scheduled work week multiplied by 52. If a Participant is earning Years of Credited Service on a January 1st of any Plan Year while he is on a leave of absence, his Compensation for that Plan Year shall be based on his salary rate or hourly rate as of the day before his leave of absence began. Notwithstanding the preceding sentences of this Section 1.18(a), if a Participant does not have any January 1st during his period of Years of Credited Service, his Compensation for any Plan Year during which he earned Years of Credited Service shall be based on his salary rate or hourly rate as of the first day that he

5

AMT000795

begins to earn Years of Credited Service during that Plan Year. An Active Participant's salary rate or hourly rate includes any amount that is deferred or reduced pursuant to a salary reduction agreement in respect of which an Employer makes contributions to the National Railroad Passenger Corporation Savings Plan or to a "cafeteria plan" (within the meaning of Section 125 of the Code).

Compensation determined for years after December 31, 1994, means the compensation paid to a Participant for service performed for the Employer which is included in gross income for the Plan Year under Code Section 415(c)(3) as specified in Regulation 1.415-2(d)(10) thereto, but excluding reimbursements or other expense allowances, fringe benefits (cash or non-cash), moving expenses, deferred compensation and welfare benefits, but including elective contributions by the Employer on the Participant's behalf that are not included in the Participant's gross income under Code Sections 125, 402(e)(3), 402(h) and 403(b), and including compensation deferred under an eligible deferred compensation plan under Code Section 457(b) and including employee contributions "picked up" under Code Section 414(h)(2). "Compensation" shall not include payments made after a Participant has ceased to be an employee and made solely by reason of the payment of severance benefits on account of the termination of the former employee's employment.

(b)    In addition to other applicable limitations which may be set forth in the Plan and notwithstanding any other contrary provision of the Plan, for Plan Years beginning on or after January 1, 1989, and before January 1, 1994, the annual Compensation of each participant taken into account for determining all benefits provided under the Plan for any Plan Year shall not exceed $200,000. This limitation shall be adjusted by the Secretary at the same time and in the same manner as under Section 415(d) of the Internal Revenue Code, except that the dollar increase in effect on January 1 of any calendar year is effective for Plan Years beginning in such calendar year and the first adjustment to the $200,000 limitation is effective on January 1, 1990.

For Plan Years beginning on or after January 1, 1994, the annual compensation limit of each participant taken into account for determining all benefits provided under the Plan for any determination period shall not exceed $150,000, as adjusted for the cost-of-living in accordance with Section 401(a)(17)(B) of the Internal Revenue Code. The cost-of-living adjustment in effect for a calendar year applies to any determination period beginning in such calendar year.

If a determination period consists of fewer than 12 months, the

6

AMT000796

annual compensation limit is an amount equal to the otherwise applicable annual compensation limit multiplied by a fraction, the numerator of which is the number of months in the short determination period, and the denominator of which is 12.

If Compensation for any prior determination period is taken into account in determining a participant's benefits for the current Plan Year, the compensation for such prior determination period is subject to the applicable annual compensation limit in effect for that prior period. For this purpose, in determining benefits in Plan Years beginning on or after January 1, 1989, the annual compensation limit in effect for determination periods beginning before that date is $200,000. In addition, in determining benefits in Plan Years beginning on or after January 1, 1994, the annual compensation limit in effect for determination periods beginning before that date is $150,000.

Notwithstanding any other provision in the Plan, each section 401(a)(17) employee's Accrued Benefit under this Plan will be the greatest of:

(i)    the employee's Accrued Benefit as of December 31, 1988 frozen in accordance with Section 1.401(a)(4)-13 of the regulations

(ii)    the employee's Accrued Benefit as of December 31, 1993 frozen in accordance with Section 1.401(a)(4)-13 of the regulations, or

(iii)    the employee's Accrued Benefit determined with respect to the benefit formula applicable for the Plan Year beginning on or after January 1, 1994, as applied to the employee's total Years of Credited Service taken into account under the Plan for purposes of benefit accruals.

A Section 401(a)(17) employee means an employee whose current Accrued Benefit as of a date on or after January 1, 1989 and before January 1, 1994 is based on Compensation for a year beginning prior to January 1, 1989 that exceeded $200,000, or whose current Accrued Benefit as of a date on or after January 1, 1994, is based on Compensation for a year beginning prior to January 1, 1994, that exceeded $150,000.

(c)    In determining the Compensation of a Participant for purposes of this limitation, the rules of Section 414(q)(5) of the Code shall apply, except in applying such rules, the term "family" shall include only the Spouse of the Participant and any lineal descendants of the Participant who have not attained age 19 before the close of the year. If, as a result of the application of such rules the adjusted limitation described in Section 1.18(b) is exceeded, then (except for purposes of determining the portion of Compensation up to the integration level if this Plan provides for permitted disparity), the limitation shall be prorated among the affected ·

7

AMT000797

individuals in proportion to each such individual's Compensation (as determined under this Section 1.18) prior to the application of this limitation.

1.19    Contingent Annuitant means the person designated by a Participant, in accordance with rules established by the Committee, to receive benefits pursuant to Section 5.03(a)(i) and (ii).

1.20    Conrail means Consolidated Rail Corporation organized pursuant to the Regional Rail Reorganization Act of 1973, as amended, and existing under the laws of Pennsylvania.

1.21    Effective Date means January 1, 1975.

1.22    Employee means any person, including an officer, who is actively employed by an Employer as determined by the Employer's standard classification of employees who receive regular stated compensation other than a pension, severance pay, retainer or fee under contract.

Employees shall not include Leased Employees.

When used in the Plan without an initial capital letter, the term "employee" means any person who is employed by an Employer or Affiliated Employer.

(a)    "Non-Union Employee" means any person who is employed by an Employer or Affiliated Employer, excluding (i) any such person who is a member of a unit of employees covered by a collective bargaining agreement and (ii) before November 17, 1988 any such person who was an active participant on June 30, 1985 in the Chicago Union Station Company Plan for Supplemental Pensions or who was an active participant on May 30, 1984 in the Washington Terminal Company Plan for Supplemental Pensions.

(b)    "Title V Protected Non-Union Employee" means an Employee who was not covered by a collective bargaining agreement immediately before and after he transferred to the Company and who was transferred to the Company prior to November 1, 1981 pursuant to Section 504(f)(4) of the Regional Rail Reorganization Act of 1973, as amended, in pursuance of its duties under Section 508(a)(1) and (2) of such Act, which shall include Employees transferred before the actual date of conveyance of the properties.

(c)    "Title V Protected Union Employee" means an Employee who was a participant in one of the Merged Plans prior to January 1, 1961 while he was covered by a collective bargaining agreement, who thereafter was transferred to the Company prior to November 1, 1981 pursuant to Section 504(f)(3) of the RRR Act of 1973, as amended, in pursuance of its duties under Section 508(a)(1) and (2) of such Act and who is covered by a collective bargaining

8

AMT000798

agreement at the time of the transfer, which shall include Employees transferred before the actual date of conveyance of the properties.

1.23     Employer means the Company, or any wholly or majority-owned subsidiary of the Company or any other person, firm or corporation which may succeed to the business of the Company by merger, consolidation or otherwise and which, by appropriate action including the consent of its own board of directors and the consent of the Sponsor, shall adopt the Plan.

A self-employed individual may not be an Employer.

1.24     Employment Date means the date on which an employee first completes an Hour of Service. For purposes of determining the Computation Year for an employee who suffers a one year Break In Service due to termination of employment, his Re-employment Commencement Date shall be treated as his Employment Date.

1.25     Family Member means, with respect to an affected employee, such employee's spouse, such employee's lineal descendants and ascendants and their spouses, all as described in Code section 414(q)(6)(B).

1.26     Former Chicago Union Station Participant means an employee who was a participant in the Chicago Union Station Company Plan for Supplemental Pensions as of December 31, 1985, who was earning Hours of Service under that plan pursuant to Section 1.32(a) of this Plan as of that date, and, but for the exclusion under Section 1.22(a)(ii), would have been a Non-Union Employee of an Employer as of January 1, 1986.

1.27     Former Participant means any Participant who has ceased to be an employee and has received a distribution of his entire vested Accrued Benefit.

1.28     Former Washington Terminal Company Participant means an employee who was a participant in the Washington Terminal Company Plan for Supplemental Pensions as of December 31, 1985, who was earning Hours of Service under that plan pursuant to Section 1.32(a) of this Plan as of that date, and, but for the exclusion under Section 1.22(a)(ii), would have been a Non-Union Employee of an Employer as of January 1, 1986.

1.29     Fund means the fund established under the Trust Agreement by Employer and Employee contributions and from which benefits are to be paid.

1.30     Highly Compensated Employee includes Highly Compensated Active Employees and Highly Compensated Former Employees.

A Highly Compensated Active Employee includes any employee who performs service for the Employer during the determination year and who, during the look-back

9

AMT000799

year:

(i)     received compensation from the Employer in excess of $75,000 (as adjusted pursuant to Section 415(d) of the Code);

(ii)    received compensation from the Employer in excess of $50,000 (as adjusted pursuant to Section 415(d) of the Code) and was a member of the Top-Paid Group for such year; or

(iii)   was an officer of the Employer and received compensation during such year that is greater than 50 percent of the dollar limitation in effect under Section 415(b)(1)(A) of the Code.

The term Highly Compensated Employee also includes:

(i)     employees who are both described in the preceding sentence if the term "determination year" is substituted for the term "look-back year" and the employee is one of the 100 employees who received the most compensation from the Employer during the determination year; and

(ii)    employees who are 5 percent owners at any time during the look-back year or determination year.

If no officer has satisfied the compensation requirement of (iii) above during either a determination year or look-back year, the highest paid officer for such year shall be treated as a Highly Compensated Employee.

For this purpose, the determination year shall be the Plan Year. The look-back year shall be the twelve-month period immediately preceding the determination year.

If an employee is, during a determination year or look-back year, a Family Member of either a 5 percent owner who is an active or former employee or a Highly Compensated Employee who is one of the 10 most highly compensated employees ranked on the basis of compensation paid by the Employer during such year then the Family Member and the 5 percent owner or top ten highly compensated employee shall be aggregated. In such case, the Family Member and 5 percent or top ten highly compensated employee shall be treated as a single employee receiving compensation and plan contributions or benefits equal to the sum of such compensation and contributions or benefits of the Family Member and 5 percent owner or top ten highly compensated employee.

The determination of who is a Highly Compensated Employee, including the determinations of the number and identity of employees in the Top-Paid Group, the top 100 employees, the number of employees treated as officers and the compensation that is considered,

10

AMT000800

will be made in accordance with Section 414(q) of the Code and the regulations thereunder. However, "compensation" shall be as described in Section 4.05(a)(iv).

     1.31     <u>Highly Compensated Former Employee</u> includes any employee who separated from service (or was deemed to have separated) prior to the determination year (as defined in Section 1.30), performs no service for the Employer during the determination year, and was a Highly Compensated Active Employee for either the separation year or any determination year ending on or after the employee's 55th birthday.

     1.32     <u>Hour of Service</u> means

     (a)     each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer or Affiliated Employer (these hours will be credited to the Employee for the computation period in which the duties are performed);

     (b)     each hour for which an Employee is paid, or entitled to payment, by the Employer or Affiliated Employer on account of a period of time, which shall be treated as a leave of absence, during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or other Authorized Leave of Absence; provided, however, that

     (i)     no more than 501 Hours of Service shall be credited under this clause (b) to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period); and

     (ii)     Hours of Service shall not be credited for any payments made or due under a plan maintained solely for the purpose of complying with applicable workmen's compensation, unemployment compensation, disability insurance laws or for any payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee; and

     (c)     each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer or Affiliated Employer. The same Hour of Service shall not be credited both under clause (a) or clause (b), above, as the case may be, and under clause (c). These hours will be credited to the Employee for the computation period(s) to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made. Crediting of Hours of Service for back pay awarded or agreed to with respect to periods described in clause (b) shall be subject to the limitations set forth in that clause.

11

AMT000801

Effective for periods commencing on or after January 1, 1991, an Employee shall be credited with the following number of Hours of Service for each payroll period during which he completes at least one Hour of Service:

| | | |
|---|---|---|
| (i) | 10 Hours of Service for each daily payroll period; |
| (ii) | 45 Hours of Service for each weekly payroll period; |
| (iii) | 90 Hours of Service for each bi-weekly payroll period; |
| (iv) | 95 Hours of Service for each semi-monthly payroll |

period; or

| | | |
|---|---|---|
| (v) | 190 Hours of Service for each monthly payroll period. |

The determination of Hours of Service for reasons other than the performance of duties and the crediting of Hours of Service to the appropriate computation periods shall be effected by the Retirement Plan Committee on a basis consistent with 29 C.F.R. Section 2530.200b-2(b) and (c).

In the case of each Employee who is absent from work for any period commencing after December 31, 1984 by reason of the pregnancy of the Employee, by reason of the birth of a child of the Employee, by reason of the placement of a child with the Employee in connection with the adoption of such child by such Employee, or for purposes of caring for such child for a period beginning immediately following such birth or placement, solely for purposes of determining whether a Break in Service has occurred such period shall be treated as a leave of absence and there shall be treated as Hours of Service the Hours of Service which otherwise would normally have been credited to such Employee but for such absence (or, in any case in which the Retirement Plan Committee is unable to determine the Hours of Service which otherwise would normally have been credited to such Employee but for such absence, eight (8) Hours of Service per day of such absence); provided, however, that the total number of hours treated as Hours of Service under this sentence by reason of any such pregnancy or placement shall not exceed 501 hours; and provided, further, that no Hours of Service shall be credited pursuant to this sentence unless the Employee furnishes to the Retirement Plan Committee such timely information as the Retirement Plan Committee may reasonably require to establish that the absence from work is for reasons referred to in this sentence, and the number of days for which there was such an absence. The hours described in the preceding sentence shall be treated as Hours of Service only in the Plan Year in which the absence from work begins, if an Employee would be prevented from incurring a Break in Service in such year solely because the period of absence is so treated as Hours of Service, or, in any other case, in the immediately following Plan Year.

12

AMT000802

1.33     Interest means interest compounded annually at the rate of five percent (5%) per annum, or such other rate as may be required by law or as may from time to time be prescribed by the Secretary of the Treasury or his delegate.

1.34     Leased Employee means any person (other than an employee of the recipient) described in Code Sections 414(n)(2) and 414(o)(2) who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Code Section 414(n)(6)) on a substantially full-time basis for a period of at least one year, and such services are of a type historically performed by employees in the business field of the recipient employer. Contributions or benefits provided to a Leased Employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer.

1.35     Merged Plan means any of the employee pension benefit plans listed below:

(a)     Plan for Supplemental Pensions, Penn Central Transportation Company, of February 1, 1968, as amended to January 1, 1976 (plan established June 1, 1938 by Pennsylvania Railroad Company) (including employees of the Chicago River and Indiana Railroad Company and the Cleveland Union Terminals Company).

(b)     Plan for Supplemental Pensions, Baltimore & Eastern R.R. Co., of June 1, 1938, as amended to January 1, 1975.

(c)     Plan for Supplemental Pensions, Union Depot Co. (Columbus, Ohio), of August 1, 1944, as amended to January 1, 1975.

(d)     Plan for Supplemental Pensions, Indianapolis Union Ry. Co., of October 1, 1949, as amended to January 1, 1975.

(e)     Plan for Supplemental Pensions, Ann Arbor Railroad Co., of January 1, 1955, as amended to January 1, 1974.

(f)     Plan for Supplemental Pensions, Ann Arbor Railroad Co., of July 18, 1968, (plan established January 1, 1955 by Manistique & Lake Superior R.R. Co., and amended to January 1, 1968).

(g)     Plan for Supplemental Pensions, Dayton Union Ry. Co., of November 1, 1957, as amended to January 1, 1975.

(h)     Plan for Supplemental Pensions, Pennsylvania-Reading Seashore Lines, of November 28, 1938, as amended to January 1, 1975.

13

AMT000803

(i)    Plan for Supplemental Pensions, Lehigh and Hudson River Railway Company, of May 1, 1963, as amended to January 1, 1975.

(j)    Plan for Supplemental Pensions, Lehigh Valley Railroad Company, of September 1, 1962, as amended to January 1, 1975.

(k)    Erie Lackawanna Railway Company Employee's Supplemental Retirement Plan.

(l)    Reading Company Funded Contributory Supplemental Pension Plan.

(m)    Supplemental Pension Plan of The Central Railroad Company of New Jersey and Subsidiary Companies, revised September 18, 1967 (designated "Plan I").

(n)    Amendment of Supplemental Pension Plan of The Central Railroad Company of New Jersey and Subsidiary Companies, effective January 1, 1976 (designated "Plan II").

(o)    Pension Plan of The Central Railroad Company of New Jersey of September 1974 (designated the "Amended Plan").

(p)    Amendment of Pension Plan of The Central Railroad Company of New Jersey, effective January 1, 1976 (designated "Plan III").

(q)    Article XXI of Agreement of October 1, 1968 between Penn Central Transportation Company and International Longshoremen's Association, Local 1913, setting forth Pension Plan for employees of Ashtabula Coal Dock Company, as supplemented by an agreement of March 25, 1975.

1.36    Named Fiduciary means the Retirement Plan Committee, Retirement Investment Committee, Board of Directors, President of the Sponsor and the Trustee, but only with respect to the specific responsibilities of each for the administration of the Plan and the Fund. The fiduciary responsibilities of the Retirement Plan Committee shall be as set forth in Article X. The fiduciary responsibilities of the Retirement Investment committee shall be as set forth in Article XI. The fiduciary responsibilities of the Trustee shall be as set forth in the Trust Agreement entered into by and between the Sponsor and the Trustee. The fiduciary responsibilities of the President of the Sponsor shall be limited to the appointment of members of the Retirement Plan Committee and the Retirement Investment Committee. The fiduciary responsibilities of the Board of Directors shall be limited to amending or terminating the Plan or Trust Agreement, the ratification of the appointment of members of the Board to the Retirement Plan Committee and the Retirement Investment Committee, the appointment of the Trustee and the implementation of a funding policy

14

consistent with the objectives of the Plan and the requirements of Title I or ERISA.

1.37    Non-Highly Compensated Employee means any employee who is neither a Highly Compensated Employee nor a Family Member of a Highly Compensated Employee.

1.38    Normal Retirement Date means the first day of the month coincident with or next following the 65th anniversary of the Participant's birthdate. Normal Retirement Age shall mean the employee's age on his Normal Retirement Date. A Participant who is an employee at his Normal Retirement Age shall be 100 percent (100%) vested in his Accrued Benefit on such date.

1.39    Participant shall include the following categories of individuals;

(a)    Active Participant is an Employee who has satisfied the requirements of Section 2.01.

(b)    Transferred Participant is an employee who was an Active Participant, but whose status as an Active Participant has ceased.

(c)    Inactive Participant is an individual who was an Active Participant but whose status as an employee has ceased for reasons other than retirement, and who has not received a distribution of any portion of his vested Accrued Benefit.

(d)    Retired Participant is an individual who has retired under the Plan and is receiving, or is entitled to receive a retirement income under the Plan.

(e)    Disabled Participant is an individual whose status as an employee has ceased and who is accruing benefits under Section 4.04.

1.40    Period of Severance means the period beginning on the Severance from Service Date and ending on the date the employee is reemployed by an Employer or Affiliated Employer.

1.41    Plan means this retirement income plan, as the same may be from time to time hereafter amended, which shall be known as the Retirement Income Plan for Employees of the National Railroad Passenger Corporation.

1.42    Plan Administrator means the Retirement Plan Committee.

1.43    Plan Year means the twelve-month period from January 1 to December 31.

1.44    Reemployment Commencement Date means the date on which an Employee completes his first Hour of Service following his last Break in Service.

1.45    Retirement Benefit means the annual benefit, payable in monthly installments to, or on account of, a Participant who retires or dies under the provisions of the Plan.

1.46    Retirement Investment Committee means the committee appointed to

15

AMT000805

administer the Fund to the extent provided in Article XI.

      1.47    <u>Retirement Plan Committee</u> or <u>Committee</u> means the committee provided for in Article X hereof.

      1.48    <u>Severance from Service Date</u> means for purposes of Sections 1.13 and 1.61:

      (a)    the date on which his employment is terminated or any reason (other than an Authorized Leave of Absence), or

      (b)    in the case of failure to return to employment with an Employer or Affiliated Employer at or before the expiration of an Authorized Leave of Absence, the earlier of the first anniversary of the date on which he commenced such Authorized Leave of Absence, or the date on which his Authorized Leave of Absence ceases without his return to employment with an Employer or Affiliated Employer, or

      (c)    in the case of an absence from work for any period which commences after December 31, 1984, which is due to the pregnancy of the employee, the birth of a child of the employee, the adoption of a child by the employee, or the caring for a child for a period beginning immediately following the birth or adoption of the child, and which extends beyond the first anniversary of the first day of such absence form work, the second anniversary of the date on which he commenced such absence from work.  The period beginning on the first anniversary of such absence from work and ending on the earlier of the second anniversary of such absence from work or the day before the date he is subsequently reemployed by an Employer or Affiliated Employer shall not be counted for purposes of determining his Years of Service under the Plan.

      1.49    <u>Social Security Covered Compensation</u> means, with respect to a Participant, the average (without indexing and rounded to the nearest whole dollar) of the contribution and benefit bases in effect under Section 230 of Social Security Act on the first day of each Plan Year in the 35-year period ending with the Plan Year in which the employee attains Social Security Retirement Age.  For calculating a Participant's Social Security Covered Compensation for any Plan Year preceding the Plan Year in which the Participant attains Social Security Retirement Age it will be assumed that there is no increase in the aforementioned bases after the Plan Year of determination and before the Participant attains Social Security Retirement Age.  No increase in Social Security covered Compensation shall decrease a Participant's Accrued Benefit.

      1.50    <u>Social Security Retirement Age</u> means the age used as the retirement age for the Participant under Section 216(l) of the Social Security Act, except that such section shall be

AMT000806

applied without regard to the age increase factor, and as if the early retirement age under Section 216(l)(2) of such Act were 62.

Unless altered by law or regulations, Social Security Retirement Age shall mean (i) age 65 for Participants born before January 1, 1938, (ii) age 66 for Participants born after December 31, 1937 and before January 1, 1955, and (iii) age 67 for Participants born after December 31, 1954.

1.51    Sponsor means the Company. In the event that the Sponsor ceases to be an Employer participating in the Plan, the remaining participating Employers shall elect a new Sponsor from among their ranks.

1.52    Spouse shall mean the person legally married to the Participant under the laws of the jurisdiction in which the marriage was contracted on the date on which the payments from the Plan are to begin to the Participant, except that for purposes of the Spouse's Benefit of Section 7.01, Spouse shall mean the person legally married to the Participant continuously for one (1) year immediately prior to the date of the Participant's or Former Participant's death; and provided that a former spouse will be treated as the Spouse to the extent provided under a qualified domestic relations order as described in Section 414(p) of the Code.

1.53    Top Paid Group means the top 20 percent of employees who performed services for the Employer or Affiliated Employer during the applicable year, ranked according to the amount of "415 Compensation" (determined for this purpose in accordance with Section 1.30) received from the Employer or Affiliated Employer during such year. All Affiliated Employers shall be taken into account as a single employer. Leased Employees shall not be considered employees. Employees who are nonresident aliens and who received no earned income (within the meaning of Code Section 911(d)(2)) from the Employer or Affiliated Employer constituting United States source income within the meaning of Code Section 861(a)(3) shall not be treated as Employees. Additionally, for the purpose of determining the number of active employees in any year, the following additional employees shall also be excluded; however, such employees shall still be considered for the purpose of identifying the particular employees in the Top Paid Group:

(a)    employees with less than six (6) months of service;

(b)    employees who normally work less than 17-1/2 hours per week;

(c)    employees who normally work less than six (6) months during a

year; and

(d)    employees who have not yet attained age 21.

In addition, if 90 percent or more of the employees of the Employer or

17

AMT000807

Affiliated Employer are covered under agreements the Secretary of Labor finds to be collective bargaining agreements between employee representatives and the Employer or Affiliated Employer, and the Plan covers only employees who are not covered under such agreements, then employees covered by such agreements shall be excluded from both the total number of active employees as well as from the identification of particular Employees in the Top Paid Group.

The foregoing exclusions set forth in this Section 1.53 shall be applied on a uniform and consistent basis for all purposes for which the Code Section 414(q) definition is applicable.

1.54    Total and Permanent Disability means a physical or mental condition arising as a result of bodily injury or disease, either occupational or nonoccupational in cause, which enables an Active Participant to be eligible for and receive a disability benefit under the Social Security Act, Railroad Retirement Act or the Employer's Long-Term Disability Plan. A Participant who has applied for benefits under the Social Security Act or Railroad Retirement Act may be deemed to be receiving such benefits pending favorable disposition of such application.

1.55    Transferring Railroad means any employer of employees to whom the Company or Conrail was required to offer employment pursuant to the provisions of Title V of the Regional Rail Reorganization Act of 1973, as amended.

1.56    Trust Agreement means the agreement, including all authorized amendments, entered into by and between the Sponsor and the Trustee pursuant to which the Fund is established and maintained.

1.57    Trustee means the individuals or entity designated as Trustee under the terms of the Trust Agreement, or any successor Trustee which is a party to the Trust Agreement.

1.58    Washington Terminal Company Frozen Benefit means the Actuarial Equivalent of the benefit payable in an unreduced form at the applicable normal retirement date that would have accrued to a Former Washington Terminal Company Participant under the Washington Terminal Company Plan for Supplemental Pensions had that plan continued in effect, determined including Compensation and Years of Credited Service earned subsequent to December 31, 1985 and to the applicable determination date but not later than December 31, 1988.

1.59    Washington Terminal Company Termination Benefit means an Accrued Benefit which is the Actuarial Equivalent of the benefit accrued as of December 31, 1985 under the Washington Terminal Company Plan for Supplemental Pensions by a Former Washington Terminal Company Participant.

18

AMT000808

1.60    Year of Eligibility Service for the purpose of determining eligibility for participation under Article II means a Year of Service.

1.61    Years of Service shall mean:

(a)    for any period prior to the Effective Date means an employee's total number of years and months (crediting each completed and partial month as a full month) of uninterrupted permanent and full-time employment with an Employer as of December 31, 1974. For purposes of this Section, the terms "uninterrupted", "permanent" and "full-time" shall be determined in accordance with the Employer's regular personnel policies as in effect prior to January 1, 1975.

Years of Service for any period on or after January 1, 1976 means an employee's total number of years and months (crediting each completed and partial month as a full month) of employment with an Employer or Affiliated Employer prior to his Severance from Service Date as defined in Section 1.48 but subject to the requirements of Section 1.13.

If an employee has a Break in Service on or after January 1, 1976, his total period of employment will be aggregated to the extent provided in Sections 1.61(a)(i) and (ii).

(i)    If an employee has a Break in Service on or after January 1, 1976 and he is subsequently reemployed by an Employer or Affiliated Employer before January 1, 1985, his prior Years of Service shall be reinstated as of his date of reemployment if:

(I)    he had met the requirements for a vested benefit under Section 6.01 on his Severance from Service Date, or

(II)    if he had not met such requirements, his latest Period of Severance (as defined in Section 1.40) does not equal or exceed his period of Years of Service immediately before the date such Period of Severance began.

(ii)    If an employee has a Break in Service on or after January 1, 1985 and he is subsequently reemployed by an Employer or Affiliated Employer, his prior Years of Service shall be reinstated as of his date of reemployment if:

(I)    he had met the requirements for a vested benefit under Section 6.01 on his Severance from Service Date, or

(II)    if his Period of Severance began on or after January 1, 1985, his latest Period of Severance as of his date of reemployment either (A) is less than five (5) years, or (B) does not equal or exceed his period of Years of Service immediately before the date such Period of Severance began, or

(III)    if his Period of Severance began before January 1, 1985,

19

AMT000809

his latest Period of Severance as of December 31, 1984 does not equal or exceed his period of Years of Service immediately before the date such Period of Severance began, and his latest Period of Severance as of his Reemployment Commencement Date either (A) is less than five (5) years, or (B) does not equal or exceed his period of Years of Service immediately before the date such Period of Severance began.

(b) The period of a Break in Service will not be included in Years of Service.

(c)    Years of Service may be granted for periods of employment with the Employer or Affiliated Employer prior to their becoming an Employer or Affiliated Employer if provided for in the agreement to adopt the Plan or in the Plan itself.

(d)    An Employee who was a Leased Employee shall be granted Years of Service for the period during which he performed services as a Leased Employee, subject to Section 1.61(a) as if that section had been in effect since that period commenced.

(e)    For a Title V Protected Non-Union Employee and for a Title V Protected Union Employee, Years of Service shall include his years of continuous service with a Transferring Railroad and with Conrail prior to the date he is employed by the Company.

1.62    Years of Credited Service for the purpose of determining the amount of benefit payable under the Plan means the Participant's Years of Service completed while employed as a Non-Union Employee with the Employer on and after the date the Employer adopts the Plan subject to the following exclusions.

Years of Service completed prior to the date as of which the Employer adopts the Plan shall be excluded from Years of Credited Service except as may be provided in the agreement to adopt the Plan or in the Plan itself.

Years of Service completed while the Employee is a participant in another defined benefit plan maintained by the Employer or by an Affiliated Employer (domestic or foreign) shall be excluded from Years of Credited Service except as may be provided in the agreement to adopt the Plan or in the Plan itself.

Years of Service earned under Section 1.61(d) shall be excluded from Years of Credited Service.

Years of Service earned under Section 1.61(e) shall be excluded from Years of Credited Service.

Years of Service earned prior to January 1, 1988 by an Employee who became an Active Participant pursuant to Section 2.01(a)(iv) shall be excluded from Years of

20

AMT000810

Credited Service.

In the event an employee terminates his employment with an Employer or Affiliated Employer for any reason (other than by reason of an Authorized Leave of Absence from which he returns to employment with an Employer or Affiliated Employer at or before the expiration of such Authorized Leave of Absence) and thereafter returns to employment with an Employer or Affiliated Employer within the twelve consecutive month period following his Severance from Service Date, his Period of Severance shall not be counted for purposes of determining his Years of Credited Service under the Plan. All other Periods of Severance also shall be excluded from Years of Credited Service.

1.63    Years of Vesting Service for the purpose of determining the Participant's eligibility for a vested benefit shall mean the Participant's Years of Service.

21

AMT000811

## ARTICLE II
### Participation

2.01    General

(a)    Each Employee who was a Non-Union Employee and an Active Participant in the Plan on December 31, 1983 and who was a Non-Union Employee on January 1, 1984 shall continue to be an Active Participant in the Plan as of January 1, 1984.

Each other Employee and each future Employee shall become an Active Participant in the Plan on the latest of (i), (ii), (iii), (iv) and (v) below provided that the Employee is a Non-Union Employee of an Employer on such date:

(i)    the Effective Date,

(ii)    the first January 1 or July 1 coincident with, or next following, the date on which the Employee has completed one (1) Year of Eligibility Service with an Employer or Affiliated Employer (or for a Title V Protected Union Employee or for a Title V Protected Non-Union Employee, with Conrail or with a Transferring Railroad, if applicable),

(iii)    the date the Employee becomes a Non-Union Employee,

(iv)    January 1, 1988 for an Employee hired after his sixtieth (60th) birthday by an Employer or an Affiliated Employer (or for a Title V Protected Union Employee or for a Title V Protected Non-Union Employee, by Conrail or by a Transferring Railroad, if applicable), and

(v)    November 17, 1988 for Former Chicago Union Station Participants and Former Washington Terminal Company Participants. However, solely for purposes of determining Compensation and Years of Credited Service such employees shall be treated as having been Active Participants while participating in the Chicago Union Station Company Plan for Supplemental Pensions and in the Washington Terminal Company Plan for Supplemental Pensions and as having remained Active Participants after 1985, subject to the provisions of this Article II other than this Section 2.01(a).

(b)    An Employee's status as an Active Participant in the Plan shall terminate when he ceases to be a Non-Union Employee (unless he ceases to be a Non-Union Employee by reason of Total and Permanent Disability and continues to be an Active Participant under Section 4.04), when he dies or when he retires or when he incurs a Break in Service. However, his status as an Active Participant shall continue during a period while on an Authorized Leave of Absence. In no event shall a Participant's retirement under the Plan become effective

22

before he is entitled to retire under the Plan at his own election.

(c)    A Title V Protected Union Employee who was an Active Participant in the Plan on October 31, 1981 shall cease to be an Active Participant in the Plan on October 31, 1981. A Title V Protected Union Employee who ceased to be an Active Participant in the Plan on or before October 31, 1981 may again become an Active Participant in the Plan if he satisfies the requirements of Section 2.01(a) after he ceased to be an Active Participant.

2.02    Transfer of Participant to Another Employer. An Active Participant who transfers from one Employer to another Employer will continue to be an Active Participant in the Plan subject to Section 2.05.

2.03    Participation Upon Re-employment. If an Employee's status as an Active Participant in the Plan terminates due to a termination of employment with the Employer and he is subsequently re-employed, or if an Employee or former Employee who has completed one (1) Year of Eligibility Service but was not a Non-Union Employee on the January 1 or July 1 coinciding with or next following the date on which he completed one (1) Year of Eligibility Service (again) becomes a Non-Union Employee, he (again) shall become an Active Participant of the Plan effective as of the date he (again) becomes a Non-Union Employee, provided, however, that if he was not entitled to a deferred vested benefit on his Severance from Service Date and if his Period of Severance prior to his Reemployment Commencement Date equals or exceeds the greater of (a) the number of his Years of Vesting Service or (b) five (5), then the Inactive Participant or Former Participant shall be treated as a new Employee and shall not again become an Active Participant of the Plan until he has satisfied the requirements of Section 2.01(a). Any Years of Vesting Service and Years of Credited Service to which he was entitled with respect to his prior service shall be restored to him provided that he was entitled to a deferred vested benefit on the date of his termination or that his Period of Severance prior to his Reemployment Commencement Date does not equal or exceed the greater of (a) the number of his Years of Vesting Service rendered prior to his date of termination or (b) five (5).

2.04    Transfer of Participant to an Affiliated Employer. An Active Participant who transfers employment from an Employer to an Affiliated Employer shall cease to be an Active Participant in the Plan upon such transfer. The benefit of such Transferred Participant shall not begin payment before the earlier of the date his employment with the Affiliated Employer ceases and his Normal Retirement Date, and the Transferred Participant shall continue to earn Years of Vesting Service for Years of Service with the Affiliated Employer, following such transfer of employment. He shall again become an Active Participant in this Plan on the day he is again

23

AMT000813

employed as a Non-Union Employee by an Employer.

2.05    Transfer to Another Category of Employment.  An Active Participant who ceased to be a Non-Union Employee but remains employed as an employee by an Employer or Affiliated Employer shall cease to be an Active Participant in the Plan upon such transfer.  The benefit of such Transferred Participant shall not begin payment before the earlier of his Normal Retirement Date and the date his employment with the Employer or Affiliated Employer ceases. Such Transferred Participant shall continue to earn Years of Vesting Service, but not Years of Credited Service, for Years of Service with the Employer or Affiliated Employer following such transfer.  He shall again become an Active Participant in this Plan on the day he is again employed as a Non-Union Employee by an Employer.  However, if he again became an Active Participant in the Plan as a Non-Union Employee of the Company prior to March 1, 1979, Years of Service previously completed while he was not a Non-Union Employee shall be included in his Years of Credited Service.

2.06    Application Required for Benefits.  Each Participant, before any benefit shall be payable to him or on his account under the Plan, shall file with the Retirement Plan Committee such information as it shall require to establish his rights and benefits under the Plan.

24

AMT000814

## ARTICLE III
### Retirement Dates

3.01    Normal Retirement Date.    An Active Participant's or Transferred Participant's right to his retirement benefit is nonforfeitable when he reaches his Normal Retirement Age as defined in Section 1.38.

3.02    Early Retirement Date.    An Active Participant or Transferred Participant may retire and commence to receive his benefits on a date (herein referred to as his Early Retirement Date) prior to his Normal Retirement Date, which date may be the first day of any month after he has attained age 55 and has completed at least five (5) Years of Service.

3.03    Deferred Retirement Date.    In accordance with the retirement policy of the Employer, an Active Participant or Transferred Participant may elect to remain in the employ of the Employer after his Normal Retirement Date.    Such retirement policy will be administered in accordance with the provisions of applicable law.    An Active Participant or Transferred Participant who remains in the employ of the Employer after his Normal Retirement Date and whose benefit is suspended pursuant to Section 8.02 shall commence to receive his benefit on the earlier of (a) the first day of the calendar month next following the date of his actual retirement, or (b) the date on which his benefit is no longer subject to suspension under Section 8.02.    Such date is hereinafter referred to as the Deferred Retirement Date.

AMT000815

## ARTICLE IV

### Amount of Retirement Benefits

4.01    At Normal Retirement Date.   The amount of Accrued Benefit payable monthly to a Participant who retires on his Normal Retirement Date shall be one-twelfth (1/12) of an amount (subject to the provisions of Article V) equal to the sum of (a) and (b), less (c):

(a)    The greatest of (i), (ii) and (iii):

(i)    The product of (1) and (2):

(1)    0.70% of his Average Compensation plus 0.65% of any excess of his Average Compensation over his Social Security Covered Compensation.

(2)    His Years of Credited Service at his Normal Retirement Date not in excess of 35 years.

(ii)    If the Participant was an Employee on March 31, 1981, the product of (1) and (2):

(1)    1-2/3% of his Average Compensation as of the earliest of his Normal Retirement Date, the first date on which he had Years of Service of nine (9) years and eleven (11) months, or December 31, 1994.

(2)    His Years of Credited Service as of the earliest of his Normal Retirement Date, of the first date on which he had Years of Service of nine (9) years and eleven (11) months, or December 31, 1994.

(iii)    For a Former Chicago Union Station Participant, his Chicago Union Station Frozen Benefit determined as of December 31, 1988.   For a Former Washington Terminal Company Participant, his Washington Terminal Company Frozen Benefit determined as of December 31, 1988.

(b)    For a Title V Protected Union Employee, his Accrued Benefit as of the latest date prior to November 1, 1981 on which he was both an Active Participant in the Plan and not a Non-Union Employee.

(c)    For a Former Chicago Union Station Participant, his Chicago Union Station Termination Benefit.   For a Former Washington Terminal Company Participant, his Washington Terminal Company Termination Benefit.

The Participant's Accrued Benefit shall be no less than his Accrued Benefit under this Plan as of December 31, 1988 under the terms of the Plan as in effect on that date.

26

AMT000816

4.02     At Early Retirement Date.  The monthly retirement benefit payable to a Participant who retires on an Early Retirement Date shall be the retirement benefit he would have received commencing at his Normal Retirement Date as computed in accordance with Section 4.01, based on his Average Compensation and Years of Credited Service to such Early Retirement Date and his Social Security Covered Compensation determined as of such Early Retirement Date, adjusted based on the factors set forth below for his Annuity Starting Date.

Early Retirement

| Age | Factor |
|-----|--------|
| 65 | 1.000000 |
| 64 | .923077 |
| 63 | .846154 |
| 62 | .769231 |
| 61 | .730769 |
| 60 | .692308 |
| 59 | .653846 |
| 58 | .615385 |
| 57 | .576923 |
| 56 | .529231 |
| 55 | .486154 |

If the employee's age on his Annuity Starting Date is not an integral age, the factors shall be interpolated based on his years and completed whole months of age.

4.03     At Deferred Retirement Date.  The amount of monthly retirement benefit payable to a Participant who retires on a Deferred Retirement Date shall be an amount computed in accordance with Section 4.01 based on his Average Compensation, Social Security Covered Compensation, and Years of Credited Service as of his Deferred Retirement Date. A Participant's Accrued Benefit is not decreased, nor is the rate of accrual decreased simply by reason of the Participant's attainment of any age.

Notwithstanding the preceding paragraph, effective April 1, 1994 any Participant may elect to begin receiving benefits in the year in which he attains age seventy and one-half (70 - 1/2) even if he has not then retired.

4.04     Disability.  Notwithstanding any other provisions in the Plan to the contrary, an Active Participant who becomes Totally and Permanently Disabled shall become a Disabled Participant and shall not be eligible to receive benefits under the Plan prior to his Normal

27

AMT000817

Retirement Date while so Totally and Permanently Disabled and while eligible for or receiving benefits under the Employer's Long-Term Disability Plan. However, he shall continue to be a Disabled Participant for purposes of the Plan for any period or periods of such Total and Permanent Disability. Such periods of Total and Permanent Disability (until his Normal Retirement Date) shall be included in the Participant's Years of Service and Years of Credited Service (not in excess of 35) and the Disabled Participant shall continue to accrue benefits during such periods based on his Average Compensation and Social Security Covered Compensation on the date of commencement of his Total and Permanent Disability.

      4.05      Maximum Benefit and Contribution Limitations Effective January 1, 1987.

      (a)      Definitions. For purposes of this Section 4.05 only, the following words and phrases shall have the following meanings:

      (i)      "Adjustment Factor" shall mean the cost of living adjustment factor prescribed by the Secretary of the Treasury under Section 415(d) of the Code for years beginning after December 31, 1987, applied to such items and in such manner as the Secretary shall prescribe.

      (ii)      "Affiliated Employer" shall mean the Employer and any corporation which is the member of a controlled group of corporations (as defined in Section 414(b) of the Code, modified as provided by Code Section 415(h)) which includes the Employer; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code, modified as provided by Code Section 415(h)) with the Employer; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Employer; and any other entity required to be aggregated with the Employer pursuant to regulations under Section 414(o) of the Code. Affiliated Employers shall also include employers described in Code Section 415(h).

      (iii)      "Annual Addition" shall mean the amount allocated to a Participant's account under a Defined Contribution Plan during the Limitation Year as a result of:

      (A)      Employer Contributions

      (B)      Employee Contributions

      (C)      Forfeitures, and

      (D)      Amounts described in Sections 415(l)(1) and 419A(d)(2) of the Code.

      Rollover contributions are not included in "Annual

28

Additions."

(iv)    "Code" shall mean the Internal Revenue Code of 1986 and amendments thereto.

(v)    "Compensation" shall mean the total remuneration paid during a calendar year (beginning January 1 and ending December 31) to an employee (in respect of periods during which such person was an employee) by an Employer as reported by the Employer to the Federal government on Form W-2, or on such other form as may be designated for the purposes of withholding tax by the Federal government.

Compensation includes -

(A)    The employee's wages, salaries, fees for professional service and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer maintaining the Plan to the extent that the amounts are includable in gross income (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, reimbursements, and expense allowances);

(B)    Amounts described in Code Section 104(a)(3), 105(a) and 105(b), but only to the extent that these amounts are includable in the gross income of the employee;

(C)    Amounts paid or reimbursed by the Employer for moving expenses incurred by an employee, but only to the extent that these amounts are not deductible by the employee under Code Section 217;

(D)    The value of a non-qualified stock option granted to an employee by the Employer, but only to the extent that the value of the option is includable in the gross income of the employee for the taxable year in which granted;

(E)    The amount includable in the gross income of an employee upon making the election described in Code Section 83(b).

Compensation excludes -

(A)    Employer contributions to a plan of deferred compensation which are not includable in the employee's gross income for the taxable year in which contributed, or employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the employee, or any distributions from a plan of deferred compensation;

29

AMT000819

(B)     Amounts realized from the exercise of a non-qualified stock option, or when restricted stock (or property) held by the employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(C)     Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(D)     Other amounts which received special tax benefits, or contributions made by the Employer (whether or not under a salary reduction agreement) towards the purchase of an annuity described in Section 403(b) of the Internal Revenue Code (whether or not the amounts are actually excludable from the gross income of the employee).

(vi)     "Current Accrued Benefit" shall mean a Participant's accrued benefit under the Plan, determined as if the Participant had separated from service as of the close of the last Limitation Year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of Section 415(b)(2) of the Code. In determining the amount of a Participant's Current Accrued Benefit, the following shall be disregarded:

(A)     any change in the terms and conditions of the Plan after May 5, 1986; and

(B)     any cost of living adjustment occurring after May 5, 1986.

(vii)     "Defined Benefit Dollar Limitation" shall mean the limitation set forth in Section 415(b)(1) of the Code.

(viii)     "Defined Benefit Plan" means a plan established and qualified under Section 401 of the Code, other than a Defined Contribution Plan. For purposes of the limitations of this Section 4.05, all Defined Benefit Plans (whether or not terminated) of the Employer and Affiliated Employers are to be treated as one Defined Benefit Plan.

(ix)     "Defined Contribution Dollar Limitation" shall mean $30,000 or, if greater, one-fourth of the Defined Benefit Dollar Limitation set forth in Code Section 415(b)(1) as in effect for the Limitation Year.

(x)     "Defined Contribution Plan" means a plan, established and qualified under Section 401 of the Code, which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account. For purposes of the limitations of this Section 4.05, all Defined Contribution Plans (whether or not terminated) of the Employer and Affiliated

30

AMT000820

Employers are to be treated as one Defined Contribution Plan.

(xi)     "Employee" shall mean employees of the Employer and shall include leased employees within the meaning of Section 414(n)(2) of the Code. Notwithstanding the foregoing, if such leased employees constitute less than twenty percent of the Employer's non-highly compensated work force within the meaning of Section 414(n)(5)(C)(ii) of the Code, the term "Employee" shall not include those leased employees covered by a plan described in Section 414(n)(5) of the Code unless otherwise provided by the terms of the Plan other than this Section 4.05.

(xii)    "Employee Contributions" shall mean contributions to the Plan made by a Participant during the Plan Year.

(xiii)   "Employer" shall mean the entity that establishes or maintains the Plan; any other organization which has adopted the Plan with the consent of such establishing employer; and any successor of such employer.

(xiv)    "Limitation Year" shall mean the limitation year specified in the Plan or, if none is specified, the calendar year.

(xv)     "Participant" shall mean any Employee of the Employer who has met the eligibility and participation requirements of the Plan.

(xvi)    "Social Security Retirement Age" shall mean the age used as the retirement age for the Participant under Section 216(1) of the Social Security Act, except that such section shall be applied without regard to the age increase factor, and as if the early retirement age under Section 216(1)(2) of such Act were 62.

(xvii)   "Plan Year" shall mean the Plan Year otherwise specified in the Plan.

(b)      Defined Benefit Dollar Limitation.  The annual benefit (excluding any benefits attributable to employee contributions) which is payable under the Plan to a Participant who has completed ten (10) or more years of Service shall not exceed the lesser of (i) or (ii) below:

(i)      $90,000

(ii)     100% of the Participant's average annual Compensation from the Employer and Affiliated Employers during any three (3) consecutive Plan Years of participation in the Plan during which his Compensation was the highest.

If the benefit payable to a Participant is in a form other than a straight life annuity with no ancillary benefits, such benefit payable to the Participant shall be adjusted to be the Actuarial Equivalent (using an interest rate equal to the greater of 5 percent or the

31

AMT000821

rate specified in the Plan) of a straight life annuity beginning at the same age in accordance with rules determined by the Commissioner of Internal Revenue. For the purpose of the adjustment described in the preceding sentence, the following values are not taken into account: (1) the value of a qualified joint and survivor annuity (as defined in Section 417 of the Code) to the extent that such value exceeds the sum of the value of a straight life annuity beginning on the same date and the value of any post-retirement death benefits that would be payable even if the annuity were not in the form of a joint and survivor annuity, (2) the value of benefits which reflects post-retirement cost-of-living increases to the extent such increases are in accordance with Code Section 415(d) and (3) the value of benefits that are not directly related to retirement benefits such as pre-retirement disability benefits and post-retirement medical benefits.

If the retirement benefit of a Participant commences before the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limitation shall be adjusted so that it is the actuarial equivalent of an annual benefit of $90,000 multiplied by the Adjustment Factor, as prescribed by the Secretary of the Treasury, beginning at the Social Security Retirement Age. The adjustment provided for in the preceding sentence shall be made in such manner as the Secretary of the Treasury may prescribe which is consistent with the reduction for old-age insurance benefits commencing before the Social Security Retirement Age under the Social Security Act.

If the retirement benefit of a Participant commences after the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limitation shall be adjusted so that it is the actuarial equivalent of a benefit of $90,000 beginning at the Social Security Retirement Age, multiplied by the Adjustment Factor as provided by the Secretary of the Treasury, based on the lesser of the interest rate assumption under the Plan or on an assumption of five percent (5%) per year.

(c)    Adjustment of Limitation for Years of Service or Participation.

(i)    Defined Benefit Dollar Limitation. If a Participant has completed less than 10 years of participation, the Participant's accrued benefit shall not exceed the Defined Benefit Dollar Limitation, as adjusted in Section 4.04(b), multiplied by a fraction, the numerator of which is the Participant's number of years (or part thereof) of participation in the Plan, and the denominator of which is ten.

(ii)    Other Defined Benefit Limitations. If a Participant has completed less than ten years of service with the Affiliated Employers, the limitations described in Sections 415(b)(1)(B) and 415(b)(4) of the Code shall be adjusted by multiplying such amounts by

32

AMT000822

a fraction, the numerator of which is the Participant's number of years of service (or part thereof) and the denominator of which is ten.

(iii)    Limitations on Reductions.  In no event shall Sections 4.04(c)(i) and (ii) reduce the limitations provided under Sections 415(b)(1) and (4) of the Code to an amount less than one-tenth of the applicable limitation (as determined without regard to this Section 4.05(c)).

(iv)    Application to Changes in Benefit Structure.  To the extent provided by the Secretary of the Treasury, this Section 4.05(c) shall be applied separately with respect to each change in the benefit structure of the Plan.

(d)    <u>Preservation of Current Accrued Benefit under Defined Benefit Plan.</u>

If the Current Accrued Benefit of an individual who is a Participant as of the first day of the Limitation Year beginning on or after January 1, 1987, exceeds the benefit limitations under Section 415(b) of the Code (as modified by Sections 4.05(b) and (c)) then, for purposes of Code Sections 415(b) and (e), the Defined Benefit Dollar Limitation with respect to such individual shall be equal to such Current Accrued Benefit.

(e)    <u>Special Rules for Plans Subject to Overall Limitations Under Code Section 415(e).</u>

In addition to the limitations in Sections 4.05(b) and 4.05(c), if a Participant in this Plan also is included in a Defined Contribution Plan maintained by the Employer or an Affiliated Employer, the maximum amount which may be allocated to his account under the Defined Contribution Plan in any Plan Year and/or his projected annual benefit under this Plan shall be limited as follows:

(i)    First, there shall be computed under the Defined Contribution Plan as of the close of each Plan Year a fraction (the "Defined Contribution Fraction") in which the numerator is the sum of all the Annual Additions to the Participant's account under the Defined Contribution Plan as of the end of the Plan Year and the denominator is the sum of the lesser of the following amounts for such Plan Year and for each prior year of the Participant's Service:

(A)    the product of 1.25 and the dollar limitation under Code Section 415(c)(1)(A) (provided, however, that as of January 1 of each calendar year, the dollar limitation as determined by the Commissioner of Internal Revenue for that calendar year pursuant to Section 415(d) of the Code shall be substituted for the immediately preceding dollar

33

AMT000823

amount), or

(B)    the product of 1.4 and 25% of the amount taken into account for Code Section 415(c)(1)(B) for such Plan Year.

(ii)    Second, there shall be computed under this Plan as of the close of each Plan Year a fraction (the "Defined Benefit Fraction") in which the numerator is the Participant's projected annual benefit at his Normal Retirement Date (assuming that his compensation in such Plan Year will remain the same until his Normal Retirement Date) under this Plan and the denominator is the lesser of the following amounts:

(A)    the product of 1.25 and the dollar limitation in effect under Code Section 415(b)(1)(A) for such Plan Year, or

(B)    the product of 1.4 and the amount which may be taken into account under Code Section 415(b)(1)(B) for such Plan Year.

(iii)    Third, if the Plan satisfied the applicable requirements of Section 415 of the Code as in effect for all Limitation Years beginning before January 1, 1987, an amount shall be subtracted from the numerator of the defined contribution plan fraction (not exceeding such numerator) as prescribed by the Secretary of the Treasury so that the sum of the defined benefit plan fraction and defined contribution plan fraction computed under Section 415(e)(1) of the Code (as revised by this Section 4.05) does not exceed 1.0 for such Limitation Year.

(iv)    Fourth, the fractions determined under (i) and (ii) shall be totalled, and if the resulting sum is more than 1.0, then to the extent necessary to produce fractions under (i) and (ii) which when added together will equal one (1.0), the Committee will take the following actions in the following order:

(A)    Limit and/or reduce employee contributions contributed to the Defined Contribution Plan.

(B)    Reduce the Participant's projected annual benefit for such Plan Year.

(C)    Reduce the amount of employer contributions and forfeitures allocated to the Participant under the Defined Contribution Plan for such Plan Year.

(f)    Special Rules.    The provisions of this Section 4.05 shall be modified as provided in:

(i)    Section 415(b)(2)(F) of the Code for plans maintained by organizations (other than governmental units) exempt from tax under Subtitle A of the Code,

34

and qualified merchant marine plans; and

      (ii)      Section 415(b)(9) of the Code for plan participants who are commercial airline pilots.

      4.06      <u>Voluntary Early Retirement Plan</u>. Effective August 19, 1993, an Active Participant who attains his Early Retirement Date as defined in Section 3.02 as of November 30, 1994 and who is not a Highly Compensated Employee and who has not elected to receive a severance payment under the Severance Plan for the Voluntary Early Retirement Program, may elect prior to September 23, 1994 to retire effective December 1, 1994 and receive a monthly "Railroad Retirement Supplement" in addition to those benefits otherwise specified in this Plan.

      The amount of the monthly Railroad Retirement Supplement shall be the estimated total of the monthly Tier I and Tier II benefits initially payable under the Railroad Retirement Act as of the date the Active Participant is first eligible for such Tier I and Tier II benefits reduced for early retirement under that Act, or the date the Participant is first eligible for Tier I and Tier II benefits not reduced for early retirement, whichever date next follows the Participant's date of termination of employment. No Railroad Retirement Supplement shall be payable to a Participant who, upon termination of employment, is eligible immediately to receive Tier I and Tier II benefits not reduced for early retirement.

      The total of Railroad Retirement Supplements to a Participant who is eligible to receive such payments shall not be more than $75,000.

      The foregoing notwithstanding, Active Participants with critical skills who make the aforementioned election to retire may be asked and permitted by the President of the Employer, on a non-discriminatory basis, to continue in employment after November 30, 1994. Such Active Participants who terminate employment no later than November 30, 1996 may receive Railroad Retirement Supplements commencing during the month immediately following such termination of employment.

      Railroad Retirement Supplements payable under this Section 4.06 shall cease as of the date the participant is first eligible for Tier I and Tier II benefits payable under the Railroad Retirement Act and reduced for early retirement under that Act, or the date the participant is first eligible for Tier I and Tier II benefits not reduced for early retirement, whichever date next follows the participant's termination of employment from the Employer.

      In the event of the participant's death after termination of employment and prior to the cessation of benefits as described in the preceding paragraph, Railroad Retirement Supplements shall be payable to the participant's surviving spouse. In the absence of a surviving

35

AMT000825

spouse to whom the participant was legally married on the date of his death, Railroad Retirement Supplements shall be payable to the participant's estate. Such Railroad Retirement Supplements payable to the participant's surviving spouse or the participant's estate shall be payable until the date described in the preceding paragraph as if the participant had remained alive.

Article VIII notwithstanding, there shall be no death benefits payable in respect of the Railroad Retirement Supplements under this Section 4.06 other than those described in the preceding paragraph. Nor shall the optional forms of payment described in Article VII be available with respect to the Railroad Retirement Supplements under this Section 4.06.

36

AMT000826

## ARTICLE V
### Payment of Retirement Benefits

5.01     Normal Form of Benefit.  Except as provided in Section 5.02, the normal form of benefit under the Plan shall be an immediate annuity, payable for life, commencing on the Participant's Annuity Starting Date and terminating with the monthly payment preceding his death. The Participant may elect to have such annuity distributed upon attainment of the earliest date on which the Participant could elect to receive retirement benefits under the Plan.

5.02     Spouse Joint and Survivor Annuity.  Instead of the normal form of benefit payable under Section 5.01, the retirement benefit for a Participant who is married on his Annuity Starting Date shall be paid in the form of a Spouse Joint and Survivor Annuity as described in Section 5.02(c), provided that the Participant has not elected to have his benefit paid under the normal form described in Section 5.01.  The Participant may elect to have such annuity distributed upon attainment of the earliest date on which the Participant could elect to receive retirement benefits under the Plan.  Any election to have this benefit paid in accordance with Section 5.01 must be made in writing by the Participant on or before the latest of the Participant's Annuity Starting Date, 90 days after the Participant has received the information required to be provided to him by Section 5.02(d) below, or, in the event of a timely request pursuant to Section 5.02(a)(iii), 60 days after the Participant has received the information required to be provided to him by Section 5.02(b) below.  Once such an election has been made it can be rescinded or reelected any time within the period during which an election may be made.

In the event that a Participant's Annuity Starting Date has occurred prior to his Normal Retirement Date and the Participant is thereafter reemployed prior to his Normal Retirement Date by the Employer, with the result that such Participant's benefit is suspended pursuant to Section 8.01, then the period for making the election described in this Section 5.02 shall not end earlier than the date on which such Participant's pension first again becomes payable under this Article V, and any option elected hereunder subsequent to such reemployment shall, for purposes of Section 5.03(b), be effective on such date.  In the event that a Participant is reemployed by the Employer on or after his Normal Retirement Date, then the period for making the election in this Section 5.02 shall not be affected by such reemployment.

No election by a Participant under this Article V of a form of retirement benefit other than a Spouse Joint and Survivor Annuity as described in Section 5.02(c) shall take effect unless the Spouse of the Participant consents in writing to such election, and the Spouse's

37

AMT000827

consent acknowledges the effect of such election and is witnessed by a Plan representative or by a notary public, or it is established to the satisfaction of a Plan representative that such consent may not be obtained because there is no Spouse, because the Spouse cannot be located, or because of such other circumstances as may be prescribed by regulations under Section 417(a) of the Code. Any consent by a Spouse (or establishment that the consent of the Spouse may not be obtained) under the preceding sentence shall be effective only with respect to such Spouse.

(a)     Information Required to be Provided.  On or about nine (9) months before a Participant's Early Retirement Date, if applicable, or otherwise on or about nine (9) months before a Participant's Normal Retirement Date, the Retirement Plan Committee shall provide a Participant the following information in written nontechnical language:

(i)     a general explanation of the Spouse Joint and Survivor Annuity and other forms of benefit available under the Plan, the circumstances in which each of these forms of benefits will be paid, and availability of the election to have his benefits paid in each of the other forms of benefit available under the Plan.

(ii)     a general explanation of the relative financial effect on the Participant's annuity of the Spouse Joint and Survivor Annuity and the other forms of benefit available to the Participant under the Plan.

(iii)     a statement that upon written request by the Participant to the Retirement Plan Committee, which request must be made on or before the later of 60 days from the date of the receipt of the information required to be provided by this Section 5.02(a) or 30 days from the date of the receipt of information required to be provided by Section 5.02(d), the Retirement Plan Committee shall provide to the Participant the additional information described in Section 5.02(b) below.

(b)     Additional Information Required to be Provided.  Upon timely written request as specified in Section 5.02(a)(iii) above, the Retirement Plan Committee shall provide to a Participant, within 30 days from the date of the Participant's written request, a written explanation in nontechnical language of the terms and conditions of the Spouse Joint and Survivor Annuity and other forms of benefit available under the Plan, and the financial effect upon the particular Participant's annuity, in terms of dollars per annuity payment, of making any of the elections described in this Section 5.02. The Retirement Plan Committee need not comply with more than one such request made by a Participant.

(c)     Amount of the Spouse Joint and Survivor Annuity.  The Spouse Joint and Survivor Annuity shall be an actuarially adjusted amount payable to a Participant for his

38

lifetime with provision for continuation of 50% of such adjusted amount to the Participant's Spouse for the duration of the Spouse's lifetime after the death of the Participant. All such amounts shall be the Actuarial Equivalent of the benefits which are payable on the basis described in Section 5.01, which shall be such benefits multiplied by a factor which is 88% if the Spouse is less than one full year younger or older than the Participant. If the Spouse is at least one full year younger (older) than the Participant 1/2% will be subtracted from (added to) the 88% for each full year of difference in age. In no event shall such factor exceed 98%.

> (d)    Notice Information 90 Days Prior to Annuity Starting Date.
> Notwithstanding anything herein to the contrary, the Retirement Plan Committee shall again provide the information described in 5.02(a) above to the Participant no less than 30 days and no more than 90 days before the Participant's Annuity Starting Date.

5.03    Optional Form of Retirement Benefit

(a)    Election of Option. Subject to the limitations set forth in Section 5.03(e), a Participant may, in lieu of the normal form of benefit referred to in Section 5.02, elect an adjusted retirement benefit as provided below.

(i)    100% Contingent Annuitant Form. This form provides monthly payments with the first monthly payment being due the Participant on his Annuity Starting Date if he and the Beneficiary designated by him are both then living. Subsequent payments shall be due on the same day of each month thereafter and will be made to the Participant during his lifetime and after his death will be continued in the same amount to the Beneficiary, if then living, for the balance of the Beneficiary's lifetime. The pension payments shall terminate with the monthly payment due on the last monthly due date on which the survivor of the Participant and the Beneficiary is living. The designation of the Beneficiary may not be changed after the Annuity Starting Date. The Participant's actuarially reduced benefit payable during his lifetime after retirement shall be an amount equal to the amount of his benefit commencing on his Annuity Starting Date and payable in the normal form of benefit referred to in Section 5.01 multiplied by an actuarial factor. If the Participant is less than one (1) full year older or younger than his Beneficiary, the actuarial factor shall be 78%. If the Participant is at least one (1) full year younger than his Beneficiary, the actuarial factor shall be equal to (i) 78% plus (ii) the product of 1% multiplied by the number of full years that the Participant is younger than his Beneficiary; provided, however, that the actuarial factor shall not exceed 95%. If the Participant is at least one (1) full year older than his Beneficiary, the actuarial factor shall be equal to (i) 78% minus (ii) the product of 1%

39

AMT000829

multiplied by the number of full years that the Participant is older than his Beneficiary.

(ii) <u>50% Contingent Annuitant Form</u>. This form provides monthly payments with the first monthly payment being due the Participant on his Annuity Starting Date if he and the Beneficiary designated by him are both then living. Subsequent payments shall be due on the same day of each month thereafter and will be made to the Participant during his lifetime and after his death will be continued reduced in amount by one-half (1/2), to the Beneficiary, if then living, for the balance of the Beneficiary's lifetime. The pension payments shall terminate with the monthly payment due on the last monthly due date on which the survivor of the Participant and the Beneficiary is living. The designation of the Beneficiary may not be changed after the Annuity Starting Date. The Participant's actuarially reduced benefit payable during his lifetime after retirement shall be an amount equal to the amount of his benefit commencing on his Annuity Starting Date and payable in the normal form of benefit referred to in Section 5.01 multiplied by an actuarial factor. If the Participant is less than one (1) full year older or younger than his Beneficiary, actuarial factor shall be 88%. If the Participant is at least one (1) full year younger than his Beneficiary, the actuarial factor shall be equal to (i) 88% plus (ii) the product of 1/2% multiplied by the number of full years that the Participant is younger than his Beneficiary; provided, however, that the actuarial factor shall not exceed 98%. If the Participant is at least one (1) full year older than his Beneficiary, the actuarial factor shall be equal to (i) 88% minus (ii) the product of 1/2% multiplied by the number of full years that the Participant is older than his Beneficiary.

(iii) <u>Ten (10) Year Certain and Life Option</u>. A Participant may elect an option under which he will receive an actuarially reduced benefit during his lifetime after retirement with a provision that if he dies before receiving 120 monthly retirement payments, the balance of such 120 monthly retirement payments shall be paid monthly to the Participant's Beneficiary. If said Beneficiary does not live to receive all such payments, the Actuarially Equivalent value (based on the Interest Rate used by the Pension Benefit Guaranty Corporation to value immediate annuities for terminating single employer plans as of the first day of the Plan Year during which the payment is made) of the payments remaining on the date of the Beneficiary's death will be paid in a single sum to the estate of the Beneficiary.

If the Participant elects the Ten (10) Year Certain and Life Option, the Participant's actuarially reduced benefit payable during his lifetime after retirement with a provision providing for the payment of at least 120 monthly retirement payments equals his benefit payable in the normal form referred to in Section 5.01 multiplied by the actuarial factor described below. If on the Participant's Annuity Starting Date the Participant's age on his last

40

AMT000830

birthday is age 65 or greater, the actuarial factor equals 92%. If on the Participant's Annuity Starting Date the Participant's age on his last birthday is less than age 65, the actuarial factor equals (a) 92% plus (b) 1/2% multiplied by the number of years equal to age 65 minus his age on his last birthday; provided that the actuarial factor shall not exceed 98%.

(iv)     Twenty (20) Year Certain and Life Option.     A Participant may elect an option under which he will receive an actuarially reduced benefit during his lifetime after retirement with a provision that if he dies before receiving 240 monthly retirement payments, the balance of such 240 monthly retirement payments shall be paid monthly to the Participant's Beneficiary. If said Beneficiary does not live to receive all such payments, the Actuarially Equivalent value (based on the Interest Rate used by the Pension Benefit Guaranty Corporation to value immediate annuities for terminating single employer plans as of the first day of the Plan Year during which the payment is made) of the payments remaining on the date of the Beneficiary's death will be paid in a single sum to the estate of the Beneficiary.

If the Participant elects the Twenty (20) Year Certain and Life Option, the Participant's actuarially reduced benefit payable during his lifetime after retirement with a provision providing for the payment of at least 240 monthly retirement payments equals his benefit payable in the normal form referred to in Section 5.01 multiplied by the actuarial factor described below. If on the Participant's Annuity Starting Date the Participant's age on his last birthday is age 65 or greater, the actuarial factor equals 79%. If on the Participant's Annuity Starting Date the Participant's age on his last birthday is less than age 65, the actuarial factor equals (a) 79% plus (b) 1% multiplied by the number of years equal to age 65 minus his age on his last birthday; provided that the actuarial factor shall not exceed 96%.

(b)     When Option Effective. The option elected under this Section 5.03 shall become effective on the Participant's Annuity Starting Date. If the Participant dies before his Annuity Starting Date, any election made under this Section 5.03 shall be void.

(c)     Timely Election. The election of the options provided in this Section 5.03 must be made in writing by the Participant and with the consent of the Spouse (or establishment that the consent of the Spouse may not be obtained) as provided by Section 5.02 above.

(d)     Change or Revocation. An election made under this Section 5.03 may be changed or revoked any time within the period during which an election may be made, with the consent of the Spouse (or establishment that the consent of the Spouse may not be obtained), as provided by Section 5.02.

41

(e)    Limitation on Election of Option.  Any form of retirement benefit elected under this Section 5.03 shall provide for distribution of the retirement benefit, in accordance with regulations under Section 401(a)(9) of the Code, over the life of the Participant or over the lives of the Participant and his Spouse or over a period not extending beyond the life expectancy of the Participant or the life expectancy of the Participant and his Spouse. No option shall be effective if the anticipated effect would be to reduce the Participant's benefit by more than 50% if any Beneficiary other than his Spouse is designated to receive benefits under the option.

5.04    Payment of Small Benefits.    In lieu of the form of retirement benefit provided under Article IV, the deferred vested benefit provided under Article VI, or the Spouse's Benefit provided under Article VII, the Retirement Plan Committee shall direct the Trustee to distribute the entire amount of such benefit to a Participant or his surviving Spouse upon the Participant's retirement or termination of employment with the Employer, or death, as the case may be, in one lump-sum Actuarial Equivalent payment of the present value of such benefit, provided that the lump-sum Actuarial Equivalent does not exceed $3,500.  For purposes of this subsection, the lump-sum Actuarial Equivalent payment shall be determined based on the interest rates used by the Pension Benefit Guaranty Corporation to value lump sum distributions in lieu of annuities for terminating single employer plans as of the Applicable Date.  The Applicable Interest Rate described in Section 5.08 also shall be determined as of the Applicable Date.  The Applicable Date shall be the date the present value is to be distributed.  The mortality basis for the Actuarial Equivalent shall be the mortality basis used by the Pension Benefit Guaranty Corporation to value lump sum distributions in lieu of annuities for healthy males for terminating single employer pension plans.

In the case of a reinstated Former Participant who received a distribution pursuant to this subsection, his Years of Credited Service prior to such distribution shall be disregarded for purposes of computing his benefits under the Plan, but his Years of Service and Years of Vesting Service shall not be disregarded. However, his Years of Credited Service shall be included for purposes of computing benefits under this Plan if all of the following conditions are satisfied.

(a)    The relevant distribution was less than the Actuarial Equivalent of the Accrued Benefit at the time it was distributed;

(b)    The Participant resumes employment covered under the Plan; and

(c)    The Participant repays to the Plan the full amount of such distribution with interest at the rate(s) prescribed under Code Section 411(c)(2)(C) within the time-frame described below.

42

AMT000832

(i)        In the case of a distribution on account of separation from service, within the earlier of (A) 5 years after the first date on which the Participant is subsequently re-employed by the Employer, or (B) the close of the first period of 5 consecutive 1-year Breaks In Service commencing after the distribution.

(ii)       In the case of a distribution other than on account of separation from service, within 5 years after the date of distribution.

In the event that any payment under the Plan would be less than $50 if paid monthly, the Retirement Plan Committee may authorize payment of Actuarial Equivalent payments (based on the interest rate used by the Pension Benefit Guaranty Corporation to value lump sum distributions in lieu of immediate annuities for terminating single employer plans as of the first day of the Plan Year including the Annuity Starting Date) on a quarterly, semi-annual or annual basis.

5.05    Limitations on Date Benefits Begin and on Election of Options. In no event may a distribution to a Participant under the Plan begin later than the sixtieth (60th) day after the latest of the close of the Plan Year in which:

(a)      occurs the date on which the Participant attains age sixty-five (65), or

(b)      occurs the tenth (10th) anniversary of the date on which the Participant commenced participation in the Plan, or

(c)      the Participant terminates his service with an Employer or Affiliated Employer.

Notwithstanding the preceding paragraph, if the amount of the payment required to be made on the date determined under the above paragraph cannot be ascertained by such date, or if it is not possible to make such payment on such date because the Retirement Plan Committee has not been able to locate the Participant after making reasonable efforts to do so, a payment retroactive to such date may be made no later than sixty (60) days after the earliest date on which the amount of such payment can be ascertained under the Plan or the date on which the Participant is located (whichever is applicable).

Notwithstanding the above, for years beginning after December 31, 1988, distributions shall be made or commenced, in accordance with Code Section 401(a)(9) and regulations thereto, in the case of any Participant not later than April 1 of the calendar year following the calendar year in which such Participant attains age seventy and one half (70 - 1/2). To the extent that Participants are exempt from Code Section 401(a)(9) under the transition rules of

43

Section 1121(d)(4) of the Tax Reform Act of 1986, or in the event the Plan is determined to be a governmental plan as defined in Code Section 414(d), the preceding sentence shall not apply.

Any option elected under this Article 7 shall provide for distribution of the retirement benefit, in accordance with regulations under Section 401(a)(9) of the Code, over the life of the Participant or over the lives of the Participant and his spouse or other designated Beneficiary or over a period not extending beyond the life expectancy of the Participant or the life expectancy of the Participant and his spouse or other designated Beneficiary. No option shall be effective if the anticipated effect would be to reduce the Participant's benefit by more than 50 percent if any person other than his spouse is designated to receive benefits under the option.

5.06     Limitations on Benefits in the Event of Death.

(a)     In the event of the Participant's death after the distribution of benefits has begun, any remaining interest in the Plan will be distributed at least as rapidly as under the method being used as of the date of the Participant's death.

(b)     In the event of the Participant's death before the distribution of benefits has begun, any portion of the Participant's interest in the Plan not payable to the Spouse shall be distributed within 5 years of the Participant's death. Any remaining interest payable to the Spouse will be distributed over the life of such Spouse (or over a period not to exceed the Spouse's life expectancy) beginning not later than the date on which the Participant would have attained age 70-1/2, at the election of the Spouse.

5.07     Purchase of Annuities.  In lieu of the benefit to which a Participant or Spouse is entitled under the Plan, the Retirement Plan Committee may provide such persons the entire amount of their Accrued Benefit in the form of an annuity guaranteed by any legal reserve life insurance company, on an individual or group basis, or in such other manner as shall fully discharge the Plan's obligations with respect to such benefits under ERISA. If such an annuity is issued with a deferred commencement date, it shall include the death benefits and make available the optional forms of retirement benefit pertaining to the Accrued Benefit under the Plan.

5.08     Calculation of Present Value for Cash-Out of Benefits and for Determining Amount of Benefits.

(a)     In General.  This Section 5.08 shall apply to all distributions from the Plan and from annuity contracts purchased to provide plan benefits other than distributions described in Section 1.417-1T(e)(3) of the Income Tax Regulations issued under the Retirement Equity Act.

(b)     Determination of Present Value.

44

AMT000834

(i)        For purposes of determining whether the present value of (A) a Participant's vested accrued benefit; (B) a qualified joint and survivor annuity, within the meaning of Section 417(b) of the Code; or (C) a qualified pre-retirement survivor annuity within the meaning of Section 417(c)(1) of the Code exceeds $3,500, the present value of such benefits or annuities shall be calculated by using an interest rate no greater than the Applicable Interest Rate.

(ii)        In no event shall the present value of any such benefit or annuity determined under this Section 5.08(b) be less than the greater of:

(A)        the present value of such benefits or annuities determined under the Plan's provisions for determining the present value of accrued benefits or annuities other than Plan Section 5.08; or

(B)        the present value of such benefits or annuities determined using the Applicable Interest Rate.

(c)        Determination of Amount of Benefits.

(i)        For purposes of determining the amount of a Participant's vested accrued benefit, the interest rate used shall not exceed:

(A)        the Applicable Interest Rate if the present value of the benefit (using such rate or rates) is not in excess of $25,000; or

(B)        120 percent of the Applicable Interest Rate if the present value of the benefit exceeds $25,000 (as determined under clause (A)). In no event shall the present value determined under this clause (B) be less than $25,000.

(ii)        In no event shall the amount of the benefit or annuity determined under this Section 5.08(c) be less than the greater of:

(A)        the amount of such benefit determined under the Plan's provisions for determining the amount of benefits other than Plan Section 5.08; or

(B)        the amount of such benefit determined using the Applicable Interest Rate if the value determined in Section 5.08(c)(i) is less than $25,000 or 120 percent of the Applicable Interest Rate if the value determined in Section 5.08(c)(i) is not less than $25,000.

(d)        Coordination with Limitations on Contributions and Benefits.   In no event shall the amount of any benefit or annuity determined under this Section 5.08 exceed the maximum benefit permitted under Section 415 of the Code.

(e)        Applicable Interest Rate.

(i)        For purposes of this Section 5.08, "Applicable Interest

45

AMT000835

Rate" shall mean the interest rate or rates which would be used as of the date distribution commences by the Pension Benefit Guaranty Corporation for purposes of determining the present value of that Participant's benefits under the Plan if the Plan had terminated on the date distribution commences with insufficient assets to provide benefits guaranteed by the Pension Benefit Guaranty Corporation on that date.

(ii)    Notwithstanding the foregoing, if the provisions of the Plan other than Section 5.08(e) so provide, the Applicable Interest Rate shall be determined as of the first day of the Plan Year in which a distribution occurs rather than as of the date distribution commences.

(f)    Effective Dates.

(i)    In General.    This Section 5.08 shall apply to distributions in Plan Years beginning after December 31, 1984, other than distributions under annuity contracts distributed to or owned by a Participant prior to September 17, 1985 unless additional contributions are made under the Plan by the Employer with respect to such contracts.

(ii)    Special Rule for Distributions Prior to 1987. Notwithstanding the foregoing, this Section 5.08 shall not apply to any distributions in Plan years beginning after December 31, 1984, and before January 1, 1987, if such distributions were made in accordance with the requirements of the Income Tax Regulations issued under the Retirement Equity Act of 1984.

5.09    Consent Required for Distributions.    There shall be no Immediate Distribution of a Participant's Accrued Benefit if the present value of such Accrued Benefit, as determined under Plan Sections 5.04 and 5.08, exceeds $3,500 unless such Immediate Distribution is consented to by the Participant and, if required under Plan Section 5.02, is also consented to by the Spouse of the Participant. For purposes of this Plan Section 5.09 an Immediate Distribution means a distribution commencing before the Participant attains (or would have attained if not deceased) the later of Normal Retirement Age or age 62.

5.10    Direct Rollovers.

(a)    This Section 5.10 applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(b)    Definitions.

46

AMT000836

(i)    Eligible rollover distribution:    An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:    any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(ii)    Eligible retirement plan: An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the distributee's eligible rollover distribution.    However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(iii)    Distributee:    A distributee includes an employee or former employee.    In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(iv)    Direct rollover:    A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

(c)    If a distribution is one to which Sections 401(a)(11) and 417 of the Internal Revenue Code do not apply, such distribution may commence less than 30 days after the notice required under Section 1.411(a)-11(c) of the income tax regulations is given, provided that:

(i)    the Plan Administrator clearly informs the participant that the participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(ii)    the participant, after receiving the notice, affirmatively elects a distribution.

5.11    Rollovers Not Accepted.

AMT000837

This Plan shall not accept eligible rollover distributions (within the meaning of Section 5.10(b)(i)) from other plans.

5.12    <u>Payment in Respect of a Qualified Domestic Relations Order</u>.

Effective January 1, 1995 the Plan shall pay to an alternate payee that portion of a participant's vested Accrued Benefit required to be distributed to the alternate payee under the terms of a qualified domestic relations order (as defined in Section 414(p) of the Code) and which may be payable under Section 5.04.  Payment under this Section shall be made as soon as administratively practicable following the date the Committee determines that the domestic relations order it has received is a qualified domestic relations order.

48

AMT000838

## ARTICLE VI
### Termination of Employment

6.01    Vesting.    Any Active Participant or Transferred Participant who, for reasons other than retirement or death, ceases to be employed by the Employer before his Normal Retirement Date and who has completed five (5) Years of Vesting Service (or any Years of Service in the case of such Participant who was a Title V Protected Union Employee) at the date of his termination shall be eligible for a deferred vested benefit upon application therefor. The deferred vested benefit shall be a deferred pension commencing on the Inactive Participant's Normal Retirement Date and shall be computed as a normal retirement benefit, in accordance with Article IV, Sections 4.01 and 4.05, on the basis of his Years of Credited Service, Social Security Covered Compensation, and Average Compensation to the date of termination of his status as an Active Participant.

The Inactive Participant may elect by filing an application for pension with the Retirement Plan Committee to have such benefit commence on the first day of the month coinciding with, or next following, his 55th birthday, or the first day of any month thereafter, but before his Normal Retirement Date, provided that he had completed at least five (5) Years of Service at the date of his termination of employment. In such event, his benefit shall be equal to the amount of his deferred vested benefit computed pursuant to this subsection, adjusted as described in Article IV, Section 4.02 for the age at which the benefit commences.

6.02    Forfeiture.    Upon the earlier of the distribution of the entire vested Accrued Benefit or the occurrence of a Break in Service, the Inactive Participant shall forfeit the non-vested portion, if any, of his Accrued Benefit. For purposes of this paragraph and Section 1.27, a Participant whose vested Accrued Benefit is zero shall be deemed to have received a distribution under Section 5.04 of his entire vested Accrued Benefit upon his termination of employment.

6.03    Amendments.    No amendment to the Plan shall reduce the percentage of a Participant's Accrued Benefit which is vested determined as of the later of the dates such amendment is adopted or becomes effective.

If the Plan's vesting schedule is amended, each Active Participant and Transferred Participant having three (3) Years of Service or more may elect to have his vesting percentage computed under the terms of the Plan in effect prior to such amendment. Such election shall be made on a form provided for that purpose by the Retirement Plan Committee and shall be made no later than sixty (60) days following the latest of the date the amendment is adopted, the

49

date the amendment is effective or the date the Participant is notified of the amendment in writing by the Sponsor.

AMT000840

## ARTICLE VII
### Death Benefits

7.01    Spouse's Benefit. The Spouse of a Participant shall be eligible to receive a Surviving Spouse Benefit after the Participant's death if the Participant has fulfilled the following requirements:

(i)    he must have been legally married to such Spouse on the date of his death;

(ii)    he must have been married to such Spouse for the entire one-year period ending on the date of his death;

(iii)    he must have:

(a)    attained his Early Retirement Date under Section 3.02 and died while employed by the Company; or

(b)    attained his normal retirement date while employed by the Company and died before he began to receive benefits; or

(c)    retired on his early retirement date and have died before the commencement of his benefits; or

(d)    met the requirements for a vested benefit under Section 6.01 on the day before his death and died while employed by the Company on or after August 23, 1984; or

(e)    met the requirements for a vested benefit under Section 6.01 on the day before his death, terminated employment with the Company on or after August 23, 1984, and died on or after August 23, 1984 and prior to his Annuity Starting Date.

If a Participant dies after fulfilling all the requirements of the previous paragraph, his spouse shall be entitled to a lifetime benefit under the Plan commencing on the first day of the month coinciding with or next following the later of (i) the date of the Participant's death or (ii) the earlier of the date on which the Participant would have attained his Normal Retirement Date or his first Early Retirement Date based on his Years of Service as of his date of death (or, at the election of the Spouse, as of the first day of any month thereafter, but not later than the first day of the month coinciding with or next following the date on which the Participant would have attained his Normal Retirement Date). The Surviving Spouse Benefit shall be equal to the amount which would have been payable to the Spouse if the Participant had (A) terminated employment or retired on the day before the day on which he died, (B) commenced receiving, on the date that Surviving Spouse

51

AMT000841

Benefit payments begin to the Spouse, a reduced retirement benefit payable to him for his lifetime with provision for continuation of 50% of such reduced amount to his Spouse for the duration of the Spouse's lifetime after the death of the Participant and (C) died on the day after the date that Surviving Spouse Benefit payments begin to the Spouse. All such amounts shall be the Actuarial Equivalent (based on the actuarial factors specified for the Spouse Joint and Survivor Annuity of Section 5.02(c)) of the benefits which are payable on the basis described in Section 5.01.

The Surviving Spouse Benefit as defined in this Section 7.01 (a qualified pre-retirement survivor annuity as defined in the Code) shall be the normal form of death benefit under the Plan.

      7.02    <u>Return of Employee Contributions With Interest to Title V Protected Union Employees</u>. If a Participant, a former Active Participant or a Terminated Participant or Inactive Participant or Retired Participant who was a Title V Protected Union Employee dies, a lump-sum benefit in an amount equal to the excess, if any, of such Participant's Accumulated Employee Contributions (that have not been previously withdrawn by or paid to the Participant) to the earliest of the date of his retirement or the date of his death over the aggregate amount of benefits paid and payable to such Participant, his Contingent Annuitant, his surviving Spouse and his Beneficiary shall be paid to his Beneficiary upon the cessation of the payment of benefits otherwise provided hereunder.

AMT000842

ARTICLE VIII

Reemployment

8.01    Prior to Normal Retirement Date    If any Retired Participant who is receiving retirement benefit payments is reemployed by the Employer prior to his Normal Retirement Date, his retirement benefit payments shall cease, any election of an optional benefit in effect thereunder shall become void and the provisions of Article V shall again become effective. Any Years of Vesting Service and Years of Credited Service to which he was entitled when he retired shall be restored to him, and upon subsequent retirement his retirement benefits shall be based on his Compensation and Years of Credited Service before and after the period of prior retirement, reduced by the Actuarial Equivalent of the retirement benefit payments he may have received prior to his reemployment. The Actuarial Equivalent of benefits already paid to such Retired Participant from the Plan equals (i) the amount of the benefits already paid to him plus credited interest from the date such benefits were paid to the earlier of his Normal Retirement Date or the date his benefit begins again, divided by (ii) the annuity rate based on such Participant's age when his benefits begin again and based on the interest rates and mortality rates for healthy males used by the Pension Benefit Guaranty Corporation to value lump sums in lieu of immediate annuities in terminating single employer plans as of the date his benefits begin again. There are no benefits payable under the Plan in the event of the death of such a Participant while he is reemployed by an Employer, except as provided under Article VII.

8.02    Subsequent to Normal Retirement Date    If an Active Participant or Transferred Participant continues in the employ of the Employer after his Normal Retirement Date (or if a Retired Participant who is receiving retirement benefit payments is reemployed by the Employer on or after his Normal Retirement Date), he shall commence receiving his benefit, if any, from the Plan on his Normal Retirement Date (or, in the case of a Retired Participant who is reemployed by the Employer on or after his Normal Retirement Date, he shall continue receiving his benefit following such reemployment) unless he completes forty (40) or more Hours of Service (as defined in Section 1.32(a) and 1.32(b)) for the Employer in any calendar month. If such a Participant completes forty (40) or more Hours of Service (as defined in Section 1.32(a) and 1.32(b)) for the Employer in any calendar month, then his benefit payable for such month shall be withheld. The suspension of benefits rules of this Section 8.02 shall be applied in accordance with the provisions, including the notification requirements, of Department of Labor Regulations §2530.203-3.

No payment shall be withheld by the Plan pursuant to this Section 8.02 unless the

53

Plan notifies the employee by personal delivery or first class mail during the first calendar month or payroll period in which the Plan withholds payments that his or her benefits are suspended. Such notifications shall contain a description of the specific reasons why benefit payments are being suspended, a description of the plan provision relating to the suspension of payments, a copy of such provisions, and a statement to the effect that applicable Department of Labor regulations may be found in §2530.203-3 of the Code of Federal Regulations. In addition, the notice shall inform the employee of the Plan's procedures for affording a review of the suspension of benefits. Requests for such reviews may be considered in accordance with the claims procedure under Section 15.03 adopted by the Plan pursuant to Section 503 of ERISA and applicable regulations.

AMT000844

## ARTICLE IX
### Contributions

9.01     Contributions by Participants.     Contributions by Participants are neither required nor permitted.

9.02     Contributions by the Employer.

(a)     It is the intention of the Employer to continue the Plan and make contributions to the Trustee in such amounts which are necessary to maintain the Plan on a sound actuarial basis and to meet the Act's minimum funding standards.  However, subject to the provisions of Article XIII, the Employer may discontinue its contributions for any reason at any time, provided, however, that except as otherwise herein provided, in no event shall any part of the funds of the Plan established hereunder be returned to the Employer or directed to purposes other than for the exclusive benefit of Participants, Spouses, Former Participants, or Beneficiaries prior to the satisfaction of all liabilities under the Plan with respect to them.

Any forfeitures must be used to reduce the Employer's contributions otherwise payable and will not be applied to increase the benefits any Participant would otherwise receive under the Plan.

The Board shall be solely responsible for determining when and in what amounts the Employer shall make contributions to the Trustee with respect to the Plan.  The Board shall make such determinations periodically (but not less often than once a year) after taking into account the recommendations of the Retirement Plan Committee and the Actuary as well as any other recommendations and considerations which it considers to be relevant.     The Board's determinations shall be recorded in the minutes of the Board's meetings.

(b)     Except to the extent otherwise required by the Pension Benefit Guaranty Corporation pursuant to Title IV of the Act, the Company shall not be required to make any contributions to the Plan, or to otherwise provide any benefit described by the Plan, after the Plan has been terminated.

9.03     Fund to be for the Exclusive Benefit of Participants.  The contributions of the Employers to the Fund shall be for the exclusive purpose of providing benefits to the Participants and their Beneficiaries and no part of the Fund shall revert to the Employers except as provided in Section 13.02 and as follows:

(a)     if a contribution is made to the Fund by an Employer under mistake of fact, such contributions must be returned within one (1) year after its payment, or within six (6)

55

AMT000845

months after the Plan Administrator determines that such contribution was made by a mistake of fact, if earlier.

(b)     if any part or all of a contribution is disallowed as a deduction under Section 404 of the Code with respect to an Employer, then to the extent of such disallowance it must be returned to the Employer within one (1) year after the disallowance.

(c)     in the event that the Commissioner of Internal Revenue determines that the Plan is not initially qualified under the Internal Revenue Code, any contribution made incident to that initial qualification by the Employer must be returned to the Employer within one year after the date the initial qualification is denied, but only if the application for the qualification is made by the time prescribed by law for filing the Employer's return for the taxable year in which the Plan is adopted, or such later date as the Secretary of the Treasury may prescribe. In the event that the Plan ceases to be qualified under the Internal Revenue Code as the result of an amendment, any contribution made pursuant to such amendment must be returned to the Employer within one year after the qualification is denied.

56

AMT000846

## ARTICLE X
### Administration of the Plan

10.01    Retirement Plan Committee.  The President of the Sponsor shall appoint a Retirement Plan Committee (the "Committee") consisting of at least three (3) persons, to act as the Plan Administrator and a Named Fiduciary, as provided under ERISA.  Any Employee of an Employer or member of the Board shall be eligible to be appointed a member of the Retirement Plan Committee.

10.02    Administrative Responsibility of the Board.  The Board shall have no duty with respect to the administration of the Plan other than the ratification of the appointment of a Board member to the Retirement Plan Committee.  Neither the Board nor any individual member thereof shall be responsible for the performance of the duties of the Retirement Plan Committee or of any other person appointed under this Plan, except as provided in Section 10.05.

10.03    Duties of Retirement Plan Committee.  The Retirement Plan Committee shall have the following administrative duties, responsibilities and authority with respect to the Plan:

(a)    Remit Employer contributions to the Trustee and direct the Trustee with respect to disbursement of benefits and payment of reasonable expenses of the Plan.

(b)    Make such rules and regulations for the administration and interpretation of the Plan as are not inconsistent with the terms hereof or of applicable law.

(c)    Establish and maintain records appropriate to permit the Plan to be administered according to its terms and requirements of applicable law.

(d)    Prepare and file or otherwise disseminate all reports, filings and documents required by applicable law or regulation.

(e)    Establish in writing a claims procedure in accordance with regulations of the Secretary of Labor, and as provided under ERISA.

(f)    Employ one or more persons, including an enrolled actuary, an independent certified public accountant and counsel, to perform such duties as may from time to time be required under ERISA and to render advice upon request with regard to any matters arising under the Plan, which advice may be relied on to the extent provided under Section 10.06.

(g)    Compute the amount of benefits payable to any Participant, Retired Participant, Terminated Participant, Spouse, or Beneficiary in accordance with the provisions of the Plan.

(h)    Take all other steps deemed necessary to properly administer the Plan

57

AMT000847

in accordance with its terms and the requirements of applicable law.

(i)     To construe and interpret the Plan, correct defects, make factual determinations, and to decide any and all matters arising under the Plan, including the right to remedy possible ambiguities, inconsistencies, or omissions; provided, however, that all such interpretations and decisions shall be applied in a uniform and nondiscriminatory manner to all Employees similarly situated, and shall be final and binding on all parties.

10.04.     Delegation and Allocation of Responsibilities of the Retirement Plan Committee.

(a)     The Retirement Plan Committee may allocate its administrative responsibility among its members and may designate persons other than Named Fiduciaries to carry out such responsibilities. Any such allocation or designation shall be made in writing and shall:

(i)     specifically identify the person or persons to whom a duty is allocated or delegated, and

(ii)     specifically identify the nature and scope of the duty allocated.

(b)     A Named Fiduciary who has been appointed by the Retirement Plan Committee under (a) above to carry out certain administrative responsibilities shall be entitled to allocate such responsibilities among any other person or persons.

(c)     Any person or group of persons may serve in more than one fiduciary capacity under the Plan.

10.05     Limitation of Liability.     Neither the Board, the Retirement Plan Committee (or any individual member thereof) nor any other Named Fiduciary or person appointed to carry out administrative duties under the Plan shall be liable for any act or omission of any other fiduciary under the Plan or for the breach of any duty not its specific responsibility, unless

(a)     he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach,

(b)     by his failure to carry out his specific administrative responsibilities, he has enabled such other fiduciary to commit a breach, or

(c)     he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

10.06     Consultations and Reliance. The members of the Retirement Plan Committee and each Employer and its officers and directors shall be entitled to rely upon all tables, valuations, certificates and reports furnished by the actuary engaged by or on behalf of the Plan, upon all certificates and reports made by the accountant engaged by or on behalf of the Plan, and upon all

58

AMT000848

opinions and recommendations given by any legal counsel retained by or on behalf of the Plan; and the members of the Retirement Plan Committee and each Employer and its officers and directors shall be protected to the extent permitted by applicable law in respect of any action taken or permitted by them in good faith in reliance upon any such tables, valuations, certificates, reports, opinions, or recommendations and all actions so taken or permitted shall be conclusive upon each of them and upon all persons having or claiming to have any interest in or under the Plan to the extent permitted by law.

   10.07  Action by Majority.  Action of the Retirement Plan Committee shall be by majority of the members thereof.  The Retirement Plan Committee may act notwithstanding a vacancy if there are at least three (3) members thereof.

   10.08  Disqualification of a Member.  A member of the Retirement Plan Committee shall not vote upon any question nor upon the exercise of any right or option under the Plan relating specifically to himself or his Beneficiary.

   10.09  Compensation and Expenses.  No member of the Retirement Plan Committee who is an Employee shall be paid compensation from the Fund for his services as such.  However, any compensation so paid and all expenses of the members of the Retirement Plan Committee incurred by them in connection with the administration of the Plan shall be borne by the Employers.

AMT000849

## ARTICLE XI
### The Trust Fund

11.01     Trust Fund.  All contributions under the Plan shall be made to the Trust Fund held by a Trustee appointed from time to time by the Board of Directors of the Sponsor under a trust agreement adopted, or as amended, by the Board for use in providing the benefits of the Plan and paying its expenses not paid directly by the Sponsor; provided that no part of the corpus or income of the Trust shall be used for, or diverted to, purposes other than for the exclusive benefit of Participants, Spouses, Beneficiaries, and Former Participants under the Plan, except as otherwise herein provided; and provided that no person shall have any interest in or right to any part of the earnings of the Trust, or any rights in, or to, or under the Trust or any part of the assets thereof, except as and to the extent expressly provided in the Plan and in the trust instrument, and, except as otherwise required by the Act, the Sponsor shall have no responsibility for the payment of benefits under the Plan nor for the administration of funds paid over to the Trustee or Trustees.

11.02     Trustee.  All assets of the Plan shall be held by the Trustee pursuant to the terms of the Trust Agreement not inconsistent herewith.  The Trustee shall have the exclusive authority and discretion to control and manage the assets of the Plan.

11.03     Duties of Named Fiduciaries Other Than the Trustee With Respect to Control and Management of Plan Assets.

(a)     Board of Directors.  The Board shall choose the Trustee, shall ratify the appointment of a Board member to the Retirement Investment Committee, and shall consider and respond in a timely fashion to recommendations of the Retirement Investment Committee with respect to continuation of the Trustee.  Otherwise, the Board shall have no fiduciary duty with respect to control and management of the assets of the Plan.

(b)     Retirement Investment Committee.  The President of the Sponsor shall appoint a Retirement Investment Committee consisting of at least three (3) persons to act as a Named Fiduciary.  Any Employee or member of the Board shall be eligible to be appointed a member of the Retirement Investment Committee.  The Retirement Investment Committee shall have the following duties:

(i)     At reasonable intervals, review generally the performance of the Trustee with respect to control and management of the assets of the Plan to ensure that the Trustee's performance has been in compliance with the terms of the Plan and applicable statutory standards.

(ii)     Where, in the judgment of the Retirement Investment

60

**AMT000850**

Committee, after exercising the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the same circumstances, the performance of the Trustee does not meet the standards of review set forth in subsection (i) above, the Retirement Investment Committee shall make such recommendation to the Board as seems appropriate under the circumstances.    Otherwise, the Retirement Investment Committee shall have no fiduciary duty with respect to control and management of the assets of the Plan.

(c)    Duties of the Named Fiduciaries provided for in 11.03(a) and 11.03(b) above shall be the several and not joint responsibility of each, and no such Named Fiduciary shall be liable for the act or omission of any other fiduciary, or for the breach of any duty not his specific several responsibility, unless:

(i)    by his own failure to administer properly his specific responsibility he has enabled such act, omission or breach to occur.

(ii)    he knowingly participates in, or knowingly undertakes to conceal, such act, omission or breach, knowing it to be a breach, or

(iii)    having knowledge of such act, omission or breach, he fails to make reasonable efforts under the circumstances to remedy said breach.

61

AMT000851

## ARTICLE XII
### Limitation of Assignment

Except with respect to the creation, assignment, or recognition of a right to a benefit payable with respect to a Participant pursuant to a qualified domestic relations order (as defined in Section 414(p) of the Code), no benefit payable under the Plan to any person shall be subject to any manner of anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any person nor shall it be subject to attachment or legal process for, or against, any person, and the same shall not be recognized under the Plan, except to such extent as may be provided pursuant to a qualified domestic relations order or otherwise required by law.

AMT000852

### ARTICLE XIII
### Amendment to or Termination of the Plan

13.01    Amendment.  The Sponsor reserves the right at any time and from time to time and retroactively if deemed necessary or appropriate, by action of its Board, to modify or amend the Plan in whole or in part, provided, however, that no such modification or amendment shall cause or permit any portion of the Trust Fund to be used for or diverted to purposes other than for the exclusive benefit of Participants, Spouses, Retired Participants, and Former Participants, or shall cause or permit any portion of the Trust Fund to become the property of the Employers, until all liabilities pursuant to the Plan are satisfied; that the duties or liabilities of the Trustee shall not be increased without its written consent and that no such amendment or modification shall have the effect of reducing the amount of a Participant's Accrued Benefit which has been vested and nonforfeitable determined as of the later of the date such amendment is adopted or becomes effective, except to the extent that such amendment or modification is necessary to qualify the Plan under Section 401 of the Code and to qualify the Trust as a tax-exempt trust; under Section 501 of the Code.

13.02    Termination.  The Sponsor shall have the right to terminate the Plan at any time by action of its Board.  In the event of a termination or a partial termination of the Plan, the rights of all affected Employees to the benefits accrued under the Plan to the date of such termination or partial termination, to the extent funded as of such date, shall be nonforfeitable.  The benefits accrued to the date of a termination or partial termination of the Plan shall be determined on the basis of the assumption that the employment of every affected Employee terminated on such date (or, if earlier, on the date on which his employment actually terminated).  In the event of a termination of the Plan, the benefits accrued to the date of the termination shall be funded only to the extent of the assets of the Trust Fund as of such date; and in the event of a partial termination of the Plan, the benefits accrued by the affected Employees shall be funded only to the extent that they would have been funded in the event of a complete termination of the Plan occurring on the date of the partial termination.  Upon a termination of the Plan, the funds of the Plan shall be used for the exclusive benefit of Participants, Spouses, Beneficiaries, Retired Participants and Former Participants, except that any funds not required to satisfy all liabilities of the Plan for benefits because of erroneous actuarial calculation shall be returned to the Employers.  The Retirement Plan Committee shall determine on the basis of the actuarial valuation, and subject to the approval of the Pension Benefit Guaranty Corporation, the share of the funds of the Plan allocable to each

63

AMT000853

Participant and Beneficiary in the order of priority and in the manner prescribed by Section 4044 of the Act or by the corresponding provision of any subsequent applicable law in effect at the time. The Retirement Plan Committee may require that any such shares be withdrawn in cash, or in immediate or deferred annuities or other periodic payments, as the Retirement Plan Committee may determine.

Each Employer participating in the Plan shall have the right to terminate its participation at any time by action of its board of directors. Such termination of participation shall not be construed as a termination or partial termination of the Plan unless so indicated by the facts and circumstances.

The first sentence of this Section 13.02 notwithstanding, in the event any Employer (including the Sponsor) terminates its participation in the Plan, the remaining Employers shall have the right to continue and maintain the Plan severally or together with respect to their own Employees.

13.03    Restrictions on Benefits.

(a)    If the Plan is terminated at any time within the ten (10) year period following any amendment that increases substantially the extent of possible discrimination as to contributions and as to benefits actually payable in the event the Plan is terminated, the amount of the Employer contributions (or funds attributable thereto) which may be used for the benefit of any Participant who is among the 25 highest paid employees as of the effective date of such amendment and whose anticipated annual benefit under the Plan exceeds $1,500 shall not exceed the greater of the following amounts:

(i)    $20,000;

(ii)    The sum of (A) the Employer contributions (or funds attributable thereto) which would have been applied to provide benefits for the Participant under the Plan if the Plan had been terminated on the day before the effective date of an amendment that increases substantially the extent of possible discrimination as to contributions and as to benefits actually payable in the event the Plan is terminated, and (B) an amount computed by multiplying 20% of the first $50,000 of the Participant's average annual earnings during the five years preceding the date of calculation by the number of years after the effective date of such amendment;

(iii)    In the case of a Participant who is a substantial owner (as defined in Section 4022(b)(5) of the Act), the present value of the benefit guaranteed for such Participant under Section 4022 of the Act, or if the Plan has not terminated, the present value of the benefit that would be guaranteed if the Plan terminated on the date the benefit commences,

64

AMT000854

determined in accordance with regulations of the Pension Benefit Guaranty Corporation;

(iv)    In the case of a Participant other than a substantial owner (as defined in Section 4022(b)(5) of the Act), the present value of the maximum benefit described in Section 4022(b)(3)(B) of the Act, determined on the date the Plan terminates or the date benefits commence, whichever is earlier, and determined in accordance with regulations of the Pension Benefit Guaranty Corporation without regard to any other limitations in Section 4022 of the Act; or

(v)    Such larger amount as may be permitted under the relevant laws and regulations at the time.

(b)    If a Participant described in this Section 13.03 leaves the employ of the Employer when the full current costs have been met, the benefit he may receive from such Employer contributions shall not, at any time prior to the date which is ten (10) years after the effective date of an amendment that increases substantially the extent of possible discrimination as to contributions and as to benefits actually payable in the event the Plan is terminated exceed the benefits set forth in Section 13.03(a).

(c)    These conditions shall not restrict the full payment of any survivor's benefit on behalf of a Participant who dies while the Plan is in full effect and its full current costs have been met.

(d)    The foregoing shall not restrict the current payment of full retirement benefits called for by the Plan for any Retired or Former Participant while the Plan is in full effect and its full current costs have been met.

(e)    In the event of termination of the Plan within the ten (10) year period following an amendment that increases substantially the extent of possible discrimination as to contributions and as to benefits actually payable in the event the Plan is terminated, distribution to the unretired participants other than the participants described in this Section 13.03 shall include an equitable apportionment among such other Participants of all excess benefits provided by the Employer contributions for the Participants described in this Section 13.03.

(f)    The restrictions imposed by the provisions of this Section 13.03 are included solely to meet the requirements of the Internal Revenue Service as stated in current regulations. In the event that it should be determined by statute, a court decision, ruling of the Commissioner of Internal Revenue, or otherwise that the provisions of this Article are no longer necessary to qualify the Plan under the Code, this Section 13.03 shall become inoperative without the necessity of further amendment.

(g)    In the event of plan termination, the benefit of any Highly Compensated

65

AMT000855

Employee or Highly Compensated Former Employee is limited to a benefit that is nondiscriminatory under Code Section 401(a)(4).

For Plan Years beginning on or after January 1, 1994, benefits distributed to any of the 25 most highly compensated Highly Compensated Employees and Highly Compensated Former Employees are restricted such that the annual payments are no greater than an amount equal to the payment that would be made on behalf of the employee under a single life annuity that is the actuarial equivalent of the sum of the employee's accrued benefit and the employee's other benefits under the Plan.

The preceding paragraph shall not apply if:

(a)    after payment of the benefit to an employee described in the preceding paragraph, the value of Plan assets equals or exceeds 110% of the value of current liabilities, as defined in Code Section 412(1)(7), or

(b)    the value of the benefits for an employee described above is less than 1% of the value of current liabilities.

For purposes of this section, benefit includes loans in excess of the amount set forth in Code Section 72(p)(2)(A), any periodic income, any withdrawal values payable to a living employee, and any death benefits not provided for by insurance on the employee's life.

13.04    Withdrawal of an Employer.    Each Employer which adopts the Plan shall have the right at any time to terminate the Plan as to its Employees or to withdraw its share of assets from the Trust Fund while the Plan continues in effect for the Employees for each other Employer. In the event of such withdrawal or termination, such Employer shall deliver to the Sponsor and the Retirement Plan Committee, at least thirty (30) days prior to the effective date of such termination or withdrawal, a certified copy of the vote of its governing body authorizing such termination or withdrawal. The Retirement Plan Committee will advise the Trustee to segregate a portion of the Trust Fund representing the interest of such Employer in the Trust Fund. The Trustee, as directed by the Retirement Plan Committee shall

(a)    distribute such segregated assets in the manner set forth in this Article 13, or

(b)    transfer assets to a fund exempt under Section 501 of the Code for purposes of providing pensions for such persons under another plan.

13.05    Merger, Consolidation or Transfer of Plan Assets.    In the case of any merger or consolidation of this Plan with another plan, or in the event of a transfer of the Plan's assets or liabilities to another plan, the benefit payable to each Participant, Spouse, Former Participant, and

66

AMT000856

Beneficiary under the successor plan, determined as if the successor plan had terminated immediately after the merger, consolidation or transfer, shall in no event be less than the benefit such person would have received under this Plan, had the Plan terminated immediately prior to the date of the merger, consolidation or transfer.

AMT000857

## ARTICLE XIV

### Top Heavy Provisions

14.01   Top Heavy Plan Requirements.   Notwithstanding any other provisions of the Plan, if for any Plan Year the Plan is determined to be a Top Heavy Plan as defined in Section 14.03 within meaning of Section 416(g) of the Code, then the following requirements shall apply:

(a)   The top heavy vesting requirement of Section 416(b) of the Code set forth in Section 14.04;

(b)   The top heavy minimum benefit requirement of Section 416(c) of the Code set forth in Section 14.05;

(c)   The top heavy limitation on compensation requirement of Section 416(d) of the Code set forth in Section 14.06; and

(d)   The top heavy adjustments in the maximum benefit and contribution limitations of Section 416(h) of the Code set forth in Section 14.07.

14.02   Definitions.   For purposes of this Article XIV, the following terms shall have the respective meanings set forth below:

(a)   "Aggregation Group" means either a Required Aggregation Group (as defined in Section 14.02(i)) or a Permissive Aggregation Group (as defined in Section 14.02(h)).

(b)   "Determination Date" means, with respect to any Plan Year, (i) the last day of the immediately preceding Plan Year, or (ii) in the case of the first Plan Year to which this Article applies, the last day of such Plan Year.   The "Valuation Date" shall be the same as the Determination Date.

(c)   "Five Percent Owner" means any person who owns (or is considered as owning within the meaning of Section 318 of the Code, as modified by substituting "5 percent" for "50 percent" in Section 318(a)(2)(C) of the Code) more than five percent (5%) of the outstanding stock of the Employer or stock possessing more than five percent (5%) of the total combined voting power of all stock of the Employer, or any person who owns more than five percent (5%) of the capital or profits interest in the Employer that is not a corporation.

(d)   "Key Employee" means, for any Plan Year, any Employee or Former Employee of the Employer or Spouse of such employee who, at any time during such Plan Year or any of the four (4) preceding Plan Years, is:

(i)   An officer of the Employer having an annual compensation greater than 50% of the amount in effect under Section 415(b)(1)(A) of the Code for any such Plan Year,

68

AMT000858

within the meaning of Section 416(i)(1)(A)(i) of the Code and the regulations thereunder;

(ii)    One of the ten (10) Employees of the Employer having annual compensation (within the meaning of Section 415 of the Code) from the Employer of more than the limitation in effect under Section 415(c)(1)(A) of the Code and owning (or considered as owning within the meaning of Section 318 of the Code, as modified by substituting "5 percent" for "50 percent" in Section 318(a)(2)(C) of the Code) the largest interests in the Employer, within the meaning of Section 416(i)(1)(A)(ii) of the Code and the regulations thereunder;

(iii)    A Five Percent Owner (as defined in Section 14.02(c)), within the meaning of Section 416(i)(1)(A)(iii) and (B)(i) of the Code and the regulations thereunder; or

(iv)    A One Percent Owner (as defined in Section 14.02(f)) having aggregate annual compensation (within the meaning of Section 415 of the Code) from the Employer of more than $150,000, within the meaning of Sections 416(i)(1)(A)(iv) and (B)(ii) of the Code and the regulations thereunder.

(e)    "Non-Key Employee" means any Employee of the Employer or beneficiary of such employee who is not a Key Employee, within the meaning of Section 416(i)(2) of the Code and the regulations thereunder.

(f)    "One Percent Owner" means any person who would be described in subsection (2)(c) of this Section XIV as a Five Percent Owner if "one percent (1%)" were substituted for "five percent (5%)" each place it appears in subsection (2)(c) of this Section XIV.

(g)    "Pension Plan" means any Defined Benefit Plan (as defined in Section 4.05(a)(iii)) or any Defined Contribution Plan (as defined in Section 4.05(a)(iv)).

(h)    "Permissive Aggregation Group" means a Required Aggregation Group (as defined in Section 14.02(i)) that also includes a Pension Plan of the Employer which, although not required to be included in the Required Aggregation Group, is treated by the Employer as being part of such Required Aggregation Group, provided that such Required Aggregation Group would continue to meet the requirements of Sections 401(a)(4) and 410 of the Code with such Pension Plan being taken into account.

(i)    "Required Aggregation Group" means (i) each Pension Plan of the Employer in which a Key Employee is a member, and (ii) each other Pension Plan of the Employer which enables any Pension Plan described in the immediately preceding clause (i) to meet the requirements of Section 401(a)(4) or 410 of the Code.

(j)    "Top Heavy Group" means, with respect to any Plan Year, an Aggregation Group if, as of the Determination Date with respect to such Plan Year, (i) the sum of (1) the present

69

AMT000859

value of the cumulative accrued benefits (determined, in accordance with Section 416(g) of the Code and the regulations thereunder, as of the most recent date which is within a twelve (12) month period ending on such Determination Date that is used for computing Defined Benefit Plan costs for minimum funding and based on five percent (5%) interest compounded annually and the 1983 Group Annuity Mortality Table for males) for Key Employees under all Defined Benefit Plans (as defined in 4.05(a)(iii)) included in such Aggregation Group, and (2) the aggregate of the accounts (determined, in accordance with Section 416(g) of the Code and the regulations thereunder, as of the valuation date coincident with or immediately preceding such Determination Date) of Key Employees under all Defined Contribution Plans (as defined in Section 4.05(a)(ii)) included in such Aggregation Group, exceeds (ii) sixty percent (60%) of a similar sum determined for Key Employees and Non-Key Employees; provided, however, that if any employee is a Non-Key Employee with respect to any Pension Plan for any Plan Year, but such employee was a Key Employee with respect to such Pension Plan for any prior Plan Year, any accrued benefit for such employee and any account of such employee shall not be taken into account for purposes of the foregoing determination. For purposes of determining the present value of the cumulative accrued benefit for any employee, or the amount of the account of any employee, such present value or amount shall be increased by the aggregate distributions made with respect to such employee under the Pension Plan during the five-year period ending on the Determination Date.

14.03    Determination of Top Heavy Plan.    The Plan shall be a Top Heavy Plan for any Plan Year commencing after December 31, 1983, in which the Plan is included in a Top Heavy Group (as defined in Section 14.02(j)).

14.04    Top Heavy Vesting Requirement.    Notwithstanding the provisions of Section 6.01, for any Plan Year with respect to which the Plan is determined to be a Top Heavy Plan, each Participant's vesting percentage shall be the percentage specified in the following table:

AMT000860

| If his Years of Vesting<br>Service equal or exceed | Then his vested<br>percentage is |
|---|---|
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

However, the Participant's vested percentage shall not be less than as determined under Article VI.

If with respect to any subsequent Plan Year, the Plan ceases to be a Top Heavy Plan, then (i) the vesting percentage of each Participant who has at least five Years of Vesting Service as of the close of the last Plan Year with respect to which the Plan is determined to be a Top Heavy Plan shall be the percentage specified in the above table set forth in this Section 14.04 and (ii) the vesting percentage of each other Participant shall be the greater of (a) 100% if the Participant has completed at least five Years of Vesting Service or (B) the percentage specified in the above table set forth in this Section 14.04 based upon such Participant's Years of Vesting Service as of the close of the last Plan Year with respect to which the Plan is determined to be a Top Heavy Plan.

14.05    Top Heavy Minimum Benefit Requirement.

(a)    Except as provided in Section 14.05(b) below, for any Plan Year with respect to which the Plan is determined to be a Top Heavy Plan, the accrued benefit derived from Employer contributions of each Participant who is a Non-Key Employee and who has completed 1,000 Hours of Service during such Plan Year, including the retirement benefit derived from Employer contributions accrued under Article IV and under all other defined benefit plans maintained by the Employer, when expressed as an annual retirement benefit (as defined in Section 416(c)(1)(E) of the Code), shall be not less than the product of:

(i)    the lesser of

(1)    two percent (2%) multiplied by the number of Years of Credited Service of such Employee completed after December 31, 1983, with respect to which the Plan is determined to be a Top Heavy Plan, or

(2)    twenty percent (20%); multiplied by

(ii)    such Employee's average Compensation for the period of consecutive Plan Years (not exceeding 5) ending with the most recent Plan Year with respect to which the Plan is determined to be a Top Heavy Plan, and during which such Employee had the

71

AMT000861

greatest aggregate compensation (within the meaning of Section 416(c)(1)(D) the Code).

(b)     For any Plan Year with respect to which the Plan is determined to be a Top Heavy Plan, the minimum accrued benefit derived from employer contributions specified in Section 14.05(a) shall be appropriately adjusted with respect to each Employee who is (i) a Non-Key Employee, (ii) a participant in a defined contribution plan maintained by the Employer for such Plan Year, so as to provide the minimum accrued benefit derived from Employer contributions necessary to satisfy the combined minimum contribution and benefit requirements of Section 416(c) of the Code, taking into account the amount of Employer contributions and forfeitures allocated to such Employee for such Plan Year under all Defined Contribution Plans.

14.06     Top Heavy Limitation on Compensation Requirement.  For any Plan Year with respect to which the Plan is determined to be a Top Heavy Plan, the annual Compensation (as defined in Section 1.18) of each Participant taken into account under the Plan shall not exceed the first $200,000 of such Compensation; provided, however, that as of January 1 of each calendar year, the dollar limitation determined by the Commissioner of Internal Revenue for that calendar year pursuant to Section 416(d)(2) of the Code shall be substituted for the immediately preceding dollar amount.

14.07     Top Heavy Adjustments in the Maximum Benefit and Contribution Limitations.  For any Plan Year with respect to which the Plan is determined to be a Top Heavy Plan, Sections 4.05(d)(i)(1) and 4.05(d)(ii)(1) shall be applied by substituting "1.0" for "1.25"; provided, however, that this Section 14.07 shall not apply for any Plan Year with respect to which the Plan is determined to be a Top Heavy Plan if (i) for such Plan Year the Plan would not be a Top Heavy Plan if "ninety percent (90%)" were substituted for "sixty percent (60%)" where it appears in Section 14.02(j), and (ii) the Employer elects to substitute "three percent (3%)" for "two percent (2%)" where it appears in Section 14.05(a)(i)(1) and to substitute "thirty percent (30%)" for "twenty percent (20%)" where it appears in Section 14.05(a)(i)(2).

14.08     Determination of Top Heavy Status.  Solely for the purpose of determining if the Plan, or any other plan included in a required aggregation group of which this Plan is a part, is top heavy (within the meaning of Section 416(g) of the Code) the accrued benefit of an Employee other than a key employee (within the meaning of Section 416(i)(1) of the Code) shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Employers and Affiliated Employers, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Section 411(b)(1)(C) of the Code.

72

AMT000862

The determination of whether the Plan, or any other plan included in an aggregation group of which this Plan is a part, is top heavy shall be made separately for each group of Employers and Affiliated Employers who are members of separate "controlled groups of corporations" (as that term is defined in Code Section 414(c)), and the benefits of Sections 14.04 and 14.05 shall inure only to employees of the "controlled group of corporations" for which the Plan is determined to be top heavy.

73

AMT000863

## ARTICLE XV
### Claims Procedure

15.01     Claims Procedure.  A claim for benefits under the Plan by a Participant, Retired Participant, Spouse, or Beneficiary, or any other person shall be filed by submitting to the Retirement Plan Committee a written application on a form designated by the Retirement Plan Committee.  The Retirement Plan Committee shall, within a reasonable time, consider the claim and shall issue its determination in writing.  If the claim is denied in whole or in part by the Retirement Plan Committee, the Retirement Plan Committee shall, within a reasonable time, provide the claimant with a written notice setting forth in a manner calculated to be understood by the claimant:

(a)     The specific reason or reasons for the denial of the claim;

(b)     Specific reference to pertinent Plan provisions on which the denial is based;

(c)     A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(d)     An explanation of the Plan's claim review procedure.

The Retirement Plan Committee shall provide each claimant with a reasonable opportunity to appeal a denial of a claim to an officer of the Sponsor designated by the Board for a full and fair review.  The designated officer shall be identified by the Board as a fiduciary with respect to the Plan in accordance with Section 402(a)(2) of the Act.  The claimant or his duly authorized representative may:

(a)     request a review upon written application to the designated officer;

(b)     review pertinent documents; and

(c)     submit issues and comments in writing.

The Retirement Plan Committee may establish such time limits within which claimants may request review of denied claims as are reasonable in relation to the nature of the benefit which is the subject of the claim and to other attendant circumstances, but which in no event shall be less than 60 days after receipt by the claimant of written notice of denial of his claim.  The decision by the designated officer with respect to the claim shall be made not later than 60 days after receipt of the request for review, unless special circumstances require an extension of time for processing, in which case a decision will be rendered as soon as possible but not later than 120 days

74

AMT000864

after receipt of the request for review. The decision on review shall be in writing, shall include specific reasons for the decision and specific references to the pertinent Plan provisions on which the decision is based, and shall be written in a manner calculated to be understood by the claimant. To the extent permitted by law, the decision of the Retirement Plan Committee (if no review is properly requested) or the decision of the designated officer on review, as the case may be, shall be final and binding on all parties if it is supported by the facts which were considered and is reasonably based on the applicable provisions of law, the Plan and the trust instrument.

AMT000865

## ARTICLE XVI
### Construction

16.01    General. The Plan, but not the trust instrument under which the funds of the Plan are held, unless so provided in such instrument, shall be construed, regulated and administered in accordance with the Act and, to the extent not preempted thereby, in accordance with the laws of Washington, District of Columbia.

16.02    Gender.    The masculine pronoun shall mean the feminine wherever appropriate and the singular shall be deemed to include the plural, unless the content clearly indicates otherwise.

16.03    Rights Conditioned on Plan Sufficiency.    The right of every Participant, Spouse, Beneficiary, Former Participant, and any other person to a benefit under the Plan, regardless of whether that right has become nonforfeitable, shall be subject to and conditioned upon the sufficiency of the assets of the Trust Fund in the event that the Plan is entirely or partially terminated.

16.04    Headings.    The headings of the Plan are inserted for convenience and reference only and shall have no effect upon the meaning of the provisions hereof.

16.05    Exclusion and Separability.    Each provision hereof shall be independent of each other provision hereof and if any provision of the Plan proves to be, or is held by any court, or tribunal, board or authority of competent jurisdiction to be void or invalid as to any Participant or group of Participants, such provision shall be disregarded and shall be deemed to be null and void and not part of the Plan. However, such invalidation of any such provision shall not otherwise impair or affect the Plan or any of the other provisions or terms hereof.

AMT000866

ARTICLE XVII

Fiduciary Liability Insurance, Indemnification and Bonding

17.01    Fiduciary Liability Insurance.

(a)    The Plan may purchase insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against such a fiduciary who has committed a breach.

(b)    A fiduciary may purchase insurance to cover his own liability for any act or omission.

(c)    Each Employer may purchase insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with respect to the Plan.

(d)    Nothing in this Section shall be construed as requiring the purchase of any insurance.

17.02    Indemnity.  The Employers may, consistent with applicable law, indemnify the members of the Board and the members of the Retirement Plan Committee by means other than Fiduciary Liability Insurance from any liability, loss or other financial consequence with respect to any act or omission relating to the Plan, except that to the extent any such liability, loss or consequence results from a person's gross negligence or willful misconduct, such person shall not be so indemnified.  The provisions of Section 17.01 shall apply to the extent applicable, prior to the provisions of Section 17.02.

17.03    Bonding.  Each Plan fiduciary shall be bonded in accordance with Act Section 412 to provide protection to the Plan against loss by reason of acts of fraud or dishonesty on the part of the fiduciary either directly or through connivance with others.  Such bonding shall be an amount not less than 10% of the funds handled by the fiduciary.  No person or organization shall provide fiduciary services to the Plan in the absence of such bonding unless exempted from such bonding under Act Section 412.

(a)    The Plan may secure bonding for its fiduciaries from a recognized surety company.

(b)    A fiduciary may secure his own bonding.

(c)    Each Employer may secure bonding for one or more persons who serve in a fiduciary capacity with respect to the Plan.

77

AMT000867

## ARTICLE XVIII
### Miscellaneous

18.01    Rights Not Conferred. The establishment of the Plan shall not be construed as conferring any legal rights upon any employee or other person for a continuation of employment, nor shall it interfere with the rights of the Employer to discharge any employee and to treat him without regard to the effect which such treatment might have upon him as a Participant of the Plan.

18.02    Incompetence. If the Retirement Plan Committee receives evidence that (a) a person entitled to receive any payment under the Plan is physically or mentally incompetent to receive such payment and to give a valid release therefor, and (b) another person or an institution is then maintaining or has custody of such person, and no guardian, committee or other representative of the estate of such person has been duly appointed by a court of competent jurisdiction, the payment may be made to such other person or institution referred to in (b) above, and the release of such other person or institution shall be valid and complete discharge for the payment.

18.03    Notice of Address. Each person entitled to benefits under the Plan must file with the Retirement Plan Committee, in writing, his post office address and each change of post office address. Any communication, statement, or notice addressed to such person at such address shall be deemed sufficient for all purposes of the Plan, and there shall be no obligation on the part of the Employers, Retirement Plan Committee or Trustee to search for or to ascertain the location of such person.

18.04    Data. Each person entitled to benefits under the Plan must furnish to the Retirement Plan Committee such documents, evidence, or other information as the Retirement Plan Committee considers necessary or desirable for the purposes of administering the Plan or to protect the Plan. The Retirement Plan Committee shall be entitled to rely on representation made by Employees, Participants, and Beneficiaries with respect to age, marital status and other personal facts, unless it knows said representations are false.

AMT000868

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to be duly executed in its name and on its behalf, and its corporate seal to be affixed hereto this _____ day of December, 1994.

National Railroad Passenger Corporation

_____

Attest

By_____

79

AMT000869

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to be duly executed in its name and on its behalf, and its corporate seal to be affixed hereto this __30__ day of December, 1994.

National Railroad Passenger Corporation

By _____

Attest

By _____

80

AMT000870

.

## RESOLUTIONS ADOPTING AMENDMENTS TO DEFINED BENEFIT RETIREMENT INCOME PLAN AND MANAGEMENT AND AGREEMENT EMPLOYEE RETIREMENT SAVINGS PLANS

WHEREAS,  The Corporation wishes to amend the National Railroad Passenger Corporation Retirement Savings Plan, the National Railroad Passenger Corporation Defined Benefit Retirement Income Plan, and National Railroad Passenger Corporation's Retirement Savings Plan for Agreement Employees (collectively, the "Plans") (1) to comply with the Uruguay Round Agreements Act of 1994 ("GATT"), the Uniformed Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, and the Internal Revenue Service Restructuring and Reform Act of 1998 (collectively, the "GUST Acts"), (2) to permit the President and CEO to make certain technical and administrative amendments to the Plans, and (3) to correct certain drafting errors in the Plans; and

WHEREAS, Section 13.01 of the Plans provides that the Corporation may amend the Plans at any time, subject to Board approval; therefore be it

RESOLVED, That the President and CEO is authorized and directed to prepare and execute an Amendment to each Plan to bring the Plan into compliance with the GUST Acts, including, effective January 1, 2000, the use of the interest rate and mortality table in Section 417(e) of the Internal Revenue Code of 1986 as amended by GATT, and to correct any drafting errors in each Plan; and

FURTHER RESOLVED, That the Plans are amended to permit the President and CEO to amend the Plans to assure that they continue to qualify under the Internal Revenue Code (the "Code"), and to comply with all other applicable laws, to provide for the proper administration of the Plans, to clarify the terms of the Plans, and to remedy any inconsistencies, ambiguities and omissions, provided that any such amendment shall be in compliance with the Board Statement of Policy as then in effect; and

FURTHER RESOLVED, That the President and CEO is authorized and directed to prepare and execute an Amendment to each Plan implementing the foregoing resolutions; and

AMT000741

FURTHER RESOLVED, That the President and CEO is authorized and directed to take such further actions and to execute such documents (including amendments) as he may deem advisable or desirable to adopt and implement the foregoing amendments to the Plans and to carry out the provisions of the Plans as so amended, including obtaining a determination letter from the Internal Revenue Service that each Plan, as amended, continues to qualify under Code sections 401 and 501.

National Railroad Passenger Corporation<br>
Board of Directors<br>
Adopted December 8, 1999

AMT000742

Amendment I

to

Retirement Income Plan for Employees of
National Railroad Passenger Corporation

National Railroad Passenger Corporation wishes to amend the Retirement Income Plan
for Employees of National Railroad Passenger Corporation (the "Plan") to comply with
the requirements of the Uruguay Round Agreements Act of 1994 ("GATT"), the
Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"),
the Small Business Job Protection Act of 1996 ("SBJPA"), the Taxpayer Relief Act of
1997 ("TRA 97"), and the Internal Revenue Service Restructuring and Reform Act of
1998 ("RRA"), and to make certain other changes to the Plan.

Pursuant to Section 13.01 of the Plan, the Plan is hereby amended, effective as of January
1, 1997 or such other date as provided below, as follows:

1.  First Change.  Section 1.18(c), relating to family aggregation rules in the definition of
    "Compensation," is deleted.

2.  Second Change.  Section 1.22, definition of "Employee," is amended by adding the
    following paragraph after the third paragraph thereof:

        A person is not an "Employee" or an "employee" at any given
        time, unless, at such time, the Employer or Affiliated Employer, in
        accordance with its standard personnel policies, treats that person as a
        common-law employee.  Any later determination that the person was a
        common-law employee of any Employer or Affiliated Employer during
        such period shall not control.

3.  Third Change.  Section 1.25, definition of "Family Member," is replaced with the
    following:

        1.25  Intentionally Omitted.

4.  Fourth Change.  A new Section 1.29A is added to read as follows:

        1.29A  GATT Rate means the applicable interest rate as defined in
        Section 417(e) of the Code.

- 1 -

Balt1:230630:2:9/29/99
15164-18

AMT000743

5. Fifth Change. Section 1.30, definition of "Highly Compensated Employee," is replaced with the following:

1.30 Highly Compensated Employee includes Highly Compensated Active Employees and Highly Compensated Former Employees.

A Highly Compensated Active Employee includes any employee of the Employer, or of an Affiliated Employer, who:

(a) was a 5-percent owner at any time during the Plan Year or the preceding Plan Year, or

(b) for the preceding Plan Year, had compensation, as defined in Section 415(c)(3) of the Code, in excess of $80,000, as adjusted for inflation pursuant to Section 414(q)(1) of the Code.

A Participant is a Highly Compensated Employee for a particular Plan Year if he or she meets the definition of Highly Compensated Employee in effect for that Plan Year.

6. Sixth Change. Section 1.31, definition of "Highly Compensated Former Employee," is replaced with the following:

1.31 Highly Compensated Former Employee includes any former Employee who was a Highly Compensated Employee when such Employee separated from service, or who was a Highly Compensated Employee at any time after attaining age 55.

7. Seventh Change. Section 1.34, definition of "Leased Employee," is replaced with the following:

1.34 Leased Employee means any person (other than an employee of the recipient) described in Sections 414(n)(2) and 414(o)(2) of the Code who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Section 414(n)(6) of the Code) on a substantially full-time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient. Contributions or benefits provided to a Leased Employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer.

Balt1:230630:2:9/29/99
15164-18

AMT000744

8. <u>Eighth Change</u>. Section 1.37, definition of "Non-Highly Compensated Employee," is amended to read as follows:

> 1.37    <u>Non-Highly Compensated Employee</u> means any employee who is not a Highly Compensated Employee.

9. <u>Ninth Change</u>. Section 1.53, definition of "Top Paid Group," is replaced with the following:

> 1.53    Intentionally Omitted.

10. <u>Tenth Change</u>.   Effective as of January 1, 1998, the first paragraph of Section 4.05(a)(v), definition of "Compensation," is amended to read as follows:

> (v)  "Compensation" shall mean the total remuneration paid during a calendar year (beginning January 1 and ending December 31) to an employee (in respects of periods during which such person was an employee) by an Employer as reported by the Employer to the Federal government on Form W-2, or on such other form as may be designated for the purposes of withholding tax by the Federal government, plus salary reductions under Sections 125 and 401(k) of the Code.

11. <u>Eleventh Change</u>. Effective as of January 1, 1998, Section 4.05(a)(v)(A), exclusions from Compensation, is amended to read as follows:

> (A)    Employer contributions to a plan of deferred compensation which are not includable in the employee's gross income for the taxable year in which contributed (other than salary reductions under Section 401(k) of the Code), or employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the employee, or any distributions from a plan of deferred compensation;

12. <u>Twelfth Change</u>.  Effective as of January 1, 1998, Section 4.05(a)(v)(D), exclusions from Compensation, is amended to read as follows:

> (D)  Other amounts which received special tax benefits (other than salary reductions under Section 125 of the Code), or contributions made by the Employer (other than salary reductions) towards the purchase of an annuity described in Section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the employee).

Balt1:230630:2:9/29/99
15164-18

AMT000745

13. Thirteenth Change.   Effective January 1, 2000, the second paragraph of Section 4.05(b)(ii) is replaced with the following:

If the benefit payable to a Participant is in a form other than a straight life annuity with no ancillary benefits, the benefit is to be adjusted to a straight life annuity beginning at the same age which is the actuarial equivalent of such benefit, using whichever of the following assumptions produces the greater equivalent annual benefit: (i) the mortality table and interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) the mortality table specified in Section 415(b)(2)(E) of the Code and an interest rate of five percent (5%). For forms of benefit payments subject to Section 417(e)(3) of the Code, the 5% interest rate in (ii) is replaced by the interest rate specified in Section 417(e)(3)(ii) of the Code.   The adjustment shall be in accordance with, rules determined by the Commissioner of Internal Revenue. For the purposes of the adjustment described in this Section, the following values will not be taken into account:

(1)    the value of a qualified joint and survivor annuity as defined in Section 417(b) of the Code to the extent that such value exceeds the sum of the value of a straight life annuity beginning on the same date, and the value of any post-retirement death benefits that would be payable absent the qualified joint and survivor annuity;

(2)    the value of benefits not directly related to retirement benefits, such as pre-retirement death benefits; and

(3)    the value of benefits which reflect post-separation cost of living increases pursuant to Section 415(d)(1) of the Code.

Prior to January 1, 2000, adjustment for an alternative form of payment shall be determined using an interest rate assumption equal to the greater of: (i) the interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) an interest rate of five percent (5%).

14. Fourteenth Change.   Effective January 1, 2000, the following is added to the end of the last paragraph of Section 4.05(b)(ii):

Effective January 1, 2000, actuarial equivalence will be based on whichever of the following assumptions produces the lesser equivalent amount: (i) the mortality table and interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) 5% and the mortality table specified in Section 415(b)(2)(E) of the Code.

- 4 -

AMT000746

15. Fifteenth Change. Effective as of the date this Amendment is adopted, the following phrase is added to the beginning of Section 4.05(e):

For limitation years beginning before January 1, 2000,

16. Sixteenth Change. Section 5.02(d) is amended by adding the following to the end thereof:

The Retirement Plan Committee may provide the information after the Participant's Annuity Starting Date, provided the Participant (and Spouse) are given an election period of at least 30 days after the information is provided. A Participant may elect (with any applicable spousal consent) to waive any requirement that the information be provided at least 30 days before the Participant's Annuity Starting Date (or to waive the 30-day election period under the preceding sentence) if the distribution commences more than 7 days after the information is provided.

17. Seventeenth Change. Effective January 1, 2000, Sections 5.03(a)(iii) and 5.03(a)(iv) are amended by substituting "(based on the GATT Rate for the month of November preceding the Plan Year during which the payment is made)" for the parenthetical beginning with "(based on the Interest Rate used by the Pension Benefit Guaranty Corporation . . . ."

18. Eighteenth Change. Effective January 1, 2000, the second, third, fourth and fifth sentences of Section 5.04 are replaced with the following:

For purposes of this subsection, the lump-sum Actuarial Equivalent shall be determined based on the GATT Rate for the month before the date the present value is to be distributed, and the mortality table specified in Section 417(e)(3)(ii) of the Code.

19. Nineteenth Change. Effective January 1, 2000, the last paragraph of Section 5.04(c)(ii) is amended by substituting "(based on the GATT Rate for the month of November preceding the Plan Year including the Annuity Starting Date)" for the parenthetical beginning with "(based on the Interest Rate used by the Pension Benefit Guaranty Corporation . . . ."

20. Twentieth Change. Effective for distributions on or after January 1, 2000, Sections 5.04, 5.08 and 5.09 are amended by substituting "$5,000" for "$3,500" each time it appears.

Balt1:230630:2:9/29/99
15164-18

AMT000747

15. Fifteenth Change. Effective as of the date this Amendment is adopted, the following phrase is added to the beginning of Section 4.05(e):

> For limitation years beginning before January 1, 2000,

16. Sixteenth Change. Section 5.02(d) is amended by adding the following to the end thereof:

> The Retirement Plan Committee may provide the information after the Participant's Annuity Starting Date, provided the Participant (and Spouse) are given an election period of at least 30 days after the information is provided. A Participant may elect (with any applicable spousal consent) to waive any requirement that the information be provided at least 30 days before the Participant's Annuity Starting Date (or to waive the 30-day election period under the preceding sentence) if the distribution commences more than 7 days after the information is provided.

17. Seventeenth Change. Effective January 1, 2000, Sections 5.03(a)(iii) and 5.03(a)(iv) are amended by substituting "(based on the GATT Rate for the month of November preceding the Plan Year during which the payment is made)" for the parenthetical beginning with "(based on the Interest Rate used by the Pension Benefit Guaranty Corporation . . . ."

18. Eighteenth Change. Effective January 1, 2000, the second, third, fourth and fifth sentences of Section 5.04 are replaced with the following:

> For purposes of this subsection, the lump-sum Actuarial Equivalent shall be determined based on the GATT Rate for the month before the date the present value is to be distributed, and the mortality table specified in Section 417(e)(3)(ii) of the Code.

19. Nineteenth Change. Effective January 1, 2000, the last paragraph of Section 5.04(c)(ii) is amended by substituting "(based on the GATT Rate for the month of November preceding the Plan Year including the Annuity Starting Date)" for the parenthetical beginning with "(based on the Interest Rate used by the Pension Benefit Guaranty Corporation . . . ."

20. Twentieth Change. Effective for distributions on or after January 1, 2000, Sections 5.04, 5.08 and 5.09 are amended by substituting "$5,000" for "$3,500" each time it appears.

Balt1:230630:2:9/29/99
15164-18

AMT000747

21. <u>Twenty-first Change</u>.  The third full paragraph of Section 5.05, relating to minimum required distributions, is replaced with the following:

> Notwithstanding the above, effective January 1, 1997, if a Participant is not a 5-percent owner of the Employer or an Affiliated Employer (as defined in Section 416(i) of the Code), distributions shall be made or commenced, in accordance with Code Section 401(a)(9) and regulations thereto, not later than the April 1 of the calendar year following the later of the calendar year (1) in which the Participant attains age seventy and one-half (70-1/2) or (2) in which the Participant retires. In the case of a 5-percent owner, or in the case of any Participant in years beginning after December 31, 1988 but prior to January 1, 1997, distributions shall be made or commenced not later than April 1 of the calendar year following the calendar year in which such Participant attains age seventy and one-half (70-1/2).  To the extent that Participants are exempt from Code section 401(a)(9) under the transition rules of Section 1121(d)(4) of the Tax Reform Act of 1986, or in the event the Plan is determined to be a governmental plan as defined in Code Section 414(d), the preceding shall not apply.

22. <u>Twenty-second Change</u>.    Effective January 1, 2000, Sections 5.08(b)(i) and 5.08(b)(ii) are amended by substituting "GATT Rate" for "Applicable Interest Rate."

23. <u>Twenty-third Change</u>.  Effective January 1, 2000, Section 5.08(c) is amended to read as follows:

> (c)    Determination of Amount of Benefits.

> (i)    For purposes of determining the amount of a Participant's vested accrued benefit, the interest rate used shall not exceed the GATT Rate.

> (ii)    In no event shall the amount of the benefit or annuity determined under this Section 5.08(c) be less than the greater of:

> (A)    the amount of such benefit determined under the Plan's provisions for determining the amount of benefits other than Plan Section 5.08; or

> (B)    the amount of such benefit determined using the GATT Rate.

- 6 -

AMT000748

24. <u>Twenty-fourth Change</u>.  Effective January 1, 2000, Section 5.08(e) is replaced with the following:

    (e)    GATT Rate.

        (i)    For purposes of this Section 5.08, "GATT Rate" shall mean the annual rate of interest on 30-year Treasury securities for the month before the date distribution commences.

        (ii)    Notwithstanding the foregoing, if the provisions of the Plan other than Section 5.08(e) so provide, the GATT Rate shall be determined for the month of November preceding the Plan Year in which a distribution occurs rather than for the month before the date distribution commences.

25. <u>Twenty-fifth Change</u>.  Effective as of January 1, 1999, Section 5.10(b)(i), definition of "eligible rollover distribution," is replaced with the following:

        (i)    Eligible rollover distribution: An eligible rollover distribution is any distribution to a recipient that qualifies as an eligible rollover distribution under Section 402(c)(4) of the Code or any successor provision.

26. <u>Twenty-sixth Change</u>.  The third sentence of Section 8.01 is amended by deleting the clause after (ii) and replacing it with:

the annuity rate based on such Participant's age when his benefits begin again and based on the mortality table specified in Section 417(e)(3)(ii) of the Code and the GATT Rate for the month before the date his benefits begin again.

27. <u>Twenty-seventh Change</u>.  A new Section 8.03 is added to read as follows:

    8.03    <u>Actuarial Adjustment for Employment After Age 70-1/2</u>. The Accrued Benefit of a Participant who retires in a calendar year after the calendar year in which the Participant attains age 70-1/2 shall be actuarially increased to the extent required by Code section 401(a)(9)(C), even if the Participant is employed in section 203(a)(3)(B) service as described in Department of Labor regulation section 2530.203-3.

Balt1:230630:2:9/29/99
15164-18

AMT000749

28. Twenty-eighth Change. Effective as of August 5, 1997, the final phrase in Article XII, Limitation of Assignment, is amended to read as follows:

, except to such extent as may be provided pursuant to a qualified domestic relations order, permitted under section 401(a)(13) of the Code (relating to offsets in the case of fiduciary breaches and other improper acts), or otherwise required by law.

29. Twenty-ninth Change. Effective as of the date this Amendment is adopted, Section 13.01 is replaced with the following:

13.01 Amendment. The Sponsor reserves the right at any time and from time to time, by action of its Board, to modify or amend the Plan in whole or in part. In addition, the Vice President of Human Resources may amend the Plan to assure that it continues to qualify under the Code and to comply with all other applicable laws, to provide for the proper administration of the Plan, to clarify the terms of the Plan, and to remedy any inconsistencies, ambiguities and omissions, provided that no such amendment shall have a material impact on Plan benefit or costs. Any amendment may be made retroactively if deemed necessary or appropriate by the Sponsor or the Vice President of Human Resources, to the extent permissible under law.

The Plan shall not be modified or amended in such manner as would (1) cause or permit any portion of the Trust Fund to be used for or diverted to purposes other than for the exclusive benefit of Participants, Spouses, Retired Participants, and Former Participants, and their Beneficiaries, (2) cause or permit any portion of the Trust Fund to revert to, or become the property of any Employer, until all liabilities pursuant to the Plan are satisfied, (3) increase the duties or liabilities of the Trustee without its written consent, or (4) have the effect of reducing the amount of a Participant's Accrued Benefit which has been vested and nonforfeitable, determined as of the later of the date such amendment is adopted or becomes effective, except to the extent that such amendment or modification is necessary to qualify the Plan under Section 401 of the Code and to qualify the Trust as a tax-exempt trust under Section 501 of the Code.

30. Thirtieth Change. Effective as of January 1, 1989, Section 14.05(a)(ii) is amended to read as follows:

(ii) such Employee's average compensation (as defined in Section 416 of the Code and the regulations thereunder) for the period of consecutive Plan Years (not exceeding 5) ending with the most recent Plan Year with respect to which the Plan is determined to be a Top Heavy Plan,

- 8 -

AMT000750

and during which such Employee had the greatest aggregate compensation (within the meaning of Section 416(c)(1)(D) of the Code).

31. <u>Thirty-first Change</u>.  Effective as of January 1, 1989, Section 14.06, <u>Top Heavy Limitation on Compensation Requirement</u>, is amended to read as follows:

> For any Plan Year prior to January 1, 1989 with respect to which the Plan is determined to be a Top Heavy Plan, the annual Compensation (as defined in Section 1.18) of each Participant taken into account under the Plan shall not exceed the first $200,000 of such Compensation; provided, however, that as of January 1 of each calendar year, the dollar limitation determined by the Commissioner of Internal Revenue for that calendar year pursuant to Section 416(d)(2) of the Code shall be substituted for the immediately preceding dollar amount.

32. <u>Thirty-second Change</u>.  Effective as of December 12, 1994, a new Section 18.05 is added as follows:

> 18.05   <u>Special Rules Relating to Veterans' Reemployment Rights</u>. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Section 414(u) of the Code.

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to be duly executed in its name and on its behalf on this *30th* day of *November*, ~~1999.~~ 2001

                                        National Railroad Passenger Corporation



                                        By: *Lorraine A. G____*

Balt1:230630:2:9/29/99
15164-18

AMT000751

24. <u>Twenty-fourth Change</u>.  Effective January 1, 2000, Section 5.08(e) is replaced with the following:

    (e)    GATT Rate.

    (i)    For purposes of this Section 5.08, "GATT Rate" shall mean the annual rate of interest on 30-year Treasury securities for the month before the date distribution commences.

    (ii)    Notwithstanding the foregoing, if the provisions of the Plan other than Section 5.08(e) so provide, the GATT Rate shall be determined for the month of November preceding the Plan Year in which a distribution occurs rather than for the month before the date distribution commences.

25. <u>Twenty-fifth Change</u>.  Effective as of January 1, 1999, Section 5.10(b)(i), definition of "eligible rollover distribution," is replaced with the following:

    (i)    Eligible rollover distribution: An eligible rollover distribution is any distribution to a recipient that qualifies as an eligible rollover distribution under Section 402(c)(4) of the Code or any successor provision.

26. <u>Twenty-sixth Change</u>.  The third sentence of Section 8.01 is amended by deleting the clause after (ii) and replacing it with:

the annuity rate based on such Participant's age when his benefits begin again and based on the mortality table specified in Section 417(e)(3)(ii) of the Code and the GATT Rate for the month before the date his benefits begin again.

27. <u>Twenty-seventh Change</u>.  A new Section 8.03 is added to read as follows:

    8.03    <u>Actuarial Adjustment for Employment After Age 70-1/2</u>. The Accrued Benefit of a Participant who retires in a calendar year after the calendar year in which the Participant attains age 70-1/2 shall be actuarially increased to the extent required by Code section 401(a)(9)(C), even if the Participant is employed in section 203(a)(3)(B) service as described in Department of Labor regulation section 2530.203-3.

Balt1:230630:2:9/29/99
15164-18

AMT000749

28. Twenty-eighth Change. Effective as of August 5, 1997, the final phrase in Article XII, Limitation of Assignment, is amended to read as follows:

, except to such extent as may be provided pursuant to a qualified domestic relations order, permitted under section 401(a)(13) of the Code (relating to offsets in the case of fiduciary breaches and other improper acts), or otherwise required by law.

29. Twenty-ninth Change. Effective as of the date this Amendment is adopted, Section 13.01 is replaced with the following:

13.01 Amendment. The Sponsor reserves the right at any time and from time to time, by action of its Board, to modify or amend the Plan in whole or in part. In addition, the Vice President of Human Resources may amend the Plan to assure that it continues to qualify under the Code and to comply with all other applicable laws, to provide for the proper administration of the Plan, to clarify the terms of the Plan, and to remedy any inconsistencies, ambiguities and omissions, provided that no such amendment shall have a material impact on Plan benefit or costs. Any amendment may be made retroactively if deemed necessary or appropriate by the Sponsor or the Vice President of Human Resources, to the extent permissible under law.

The Plan shall not be modified or amended in such manner as would (1) cause or permit any portion of the Trust Fund to be used for or diverted to purposes other than for the exclusive benefit of Participants, Spouses, Retired Participants, and Former Participants, and their Beneficiaries, (2) cause or permit any portion of the Trust Fund to revert to, or become the property of any Employer, until all liabilities pursuant to the Plan are satisfied, (3) increase the duties or liabilities of the Trustee without its written consent, or (4) have the effect of reducing the amount of a Participant's Accrued Benefit which has been vested and nonforfeitable, determined as of the later of the date such amendment is adopted or becomes effective, except to the extent that such amendment or modification is necessary to qualify the Plan under Section 401 of the Code and to qualify the Trust as a tax-exempt trust under Section 501 of the Code.

30. Thirtieth Change. Effective as of January 1, 1989, Section 14.05(a)(ii) is amended to read as follows:

(ii) such Employee's average compensation (as defined in Section 416 of the Code and the regulations thereunder) for the period of consecutive Plan Years (not exceeding 5) ending with the most recent Plan Year with respect to which the Plan is determined to be a Top Heavy Plan,

- 8 -

AMT000750

and during which such Employee had the greatest aggregate compensation (within the meaning of Section 416(c)(1)(D) of the Code).

31. <u>Thirty-first Change</u>.  Effective as of January 1, 1989, Section 14.06, <u>Top Heavy Limitation on Compensation Requirement</u>, is amended to read as follows:

For any Plan Year prior to January 1, 1989 with respect to which the Plan is determined to be a Top Heavy Plan, the annual Compensation (as defined in Section 1.18) of each Participant taken into account under the Plan shall not exceed the first $200,000 of such Compensation; provided, however, that as of January 1 of each calendar year, the dollar limitation determined by the Commissioner of Internal Revenue for that calendar year pursuant to Section 416(d)(2) of the Code shall be substituted for the immediately preceding dollar amount.

32. <u>Thirty-second Change</u>.  Effective as of December 12, 1994, a new Section 18.05 is added as follows:

18.05  <u>Special Rules Relating to Veterans' Reemployment Rights</u>. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Section 414(u) of the Code.

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to be duly executed in its name and on its behalf on this *30th* day of *November*, 1999. *2001*

National Railroad Passenger Corporation

By: *Lorraine A. G___*

- 9 -

AMT000751

**Amtrak Board of Directors**
**Agenda Item Executive Summary**

**Title:** Amended Management Voluntary Early Retirement Plan

**Background:**
As part of Amtrak's efforts to streamline its organization, eliminate inefficiencies and reduce costs, the Board approved a Voluntary Early Retirement Plan (VERP) at its meeting on July 26, 2001. The VERP as approved had two main components: (i) five years of age added to Amtrak's pension formula; and (ii) a full supplement to the Railroad Retirement benefits that would otherwise be available until age 65. Management planned to fund the VERP benefits through the accumulated surplus in Amtrak's Retirement Income Plan Trust (the "Fund"). Because a portion of the pension funds in this Fund are invested in the stock market and the market has experienced a recent downturn, before proceeding further with the VERP Senior Management requested an updated actuarial analysis to ensure that the integrity of the pension fund is preserved.

The updated analysis showed that if Management proceeded with the plan as originally formulated, the surplus in the Fund would be depleted and the company would be required to make a significant contribution to the Fund as early as 2003. According to the actuary, as a result of a combination of market conditions, additional accrued liabilities and withdrawals, the forecasted surplus in the Fund has declined from approximately $42 million in December 2000 to $18.6 million on August 31, 2001.[1] While Management expects the Fund to continue to grow over the long term, it has nevertheless determined that it would be prudent to offer a more modest VERP than originally envisioned and maintain a surplus in the Fund. Consequently, Management proposes to eliminate the second component of the plan, the more costly Railroad Retirement supplement, and instead offer a one-time lump sum payment of $15,000.

The revised VERP would provide that any management employee 55 years of age or older with 10 or more years of Amtrak service who files retirement papers between September 15 and October 31, 2001 will receive the following retirement package:

- Five years of age added to the pension formula; and
- A one-time lump sum payment of $15,000.00

---

[1] The reduction of what appears to be $23.3 million accounts for approximately $3.1 million of pension payments, $7.5 million of accruals and $11.7 million of investment loss. Our actuary indicates that Amtrak's investment return over the last five calendar years was 74% or 12% per annum compounded annually.

AMT000728

In order to receive benefits, an employee must elect to retire from Amtrak during the window period and sign a release agreement. The employee must also agree not to exercise seniority rights back into an agreement-covered position.

Based on current actuarial forecasts and the anticipated costs of this amended plan, the Fund will show at least a $10 million surplus and Amtrak will therefore continue to enjoy a contribution holiday for several more years. Management estimates that participation in the VERP will be somewhere between 50 to 60 percent, down from 75% expected for the original plan. At these levels of participation, the VERP as revised is estimated to cost approximately $ 7.2 million at 50 percent participation and $8.6 million at 60 percent.

**Recommended Action:**
Management recommends that the Board approve the attached resolutions authorizing an amendment to the Voluntary Early Retirement Plan as set forth above.

**AMT000729**

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

National Railroad Passenger Corporation
Board of Directors
Adopted September 14, 2001

AMT000730

Amendment II

to

Retirement Income Plan for Employees of
National Railroad Passenger Corporation

National Railroad Passenger Corporation wishes to amend the Retirement Income Plan for Employees of
National Railroad Passenger Corporation (the "Plan") to add an early retirement window.

Pursuant to Section 13.01 of the Plan, the Plan is hereby amended, effective September 15, 2001, as
follows:

First Change. Section 4.06 is replaced with the following:

4.06    VOLUNTARY EARLY RETIREMENT PLANS. From time to time,
the Employer may offer enhanced benefits to eligible Participants who separate from
service with the Employer within a given time period or after meeting specific
criteria. The terms and conditions of any such enhanced benefits are set forth in
Exhibits to the Plan. Such enhanced benefits will never be less than the benefit the
Participant would have received under the otherwise applicable terms of the Plan.

Second Change. A new Exhibit A setting forth the provisions of the 1994 Voluntary Early
Retirement Plan is added to the Plan to read as attached hereto.

Third Change. A new Exhibit B setting forth the provisions of the 2001 Voluntary Early
Retirement Plan is added to the Plan to read as attached hereto.

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to be
duly executed in its name and on its behalf on this _30th_ day of _November_ , 2001.

National Railroad Passenger Corporation

By: _Lorraine A. Gr____

Balt1:353892:2:7/22/01
15164-18

AMT000731

## EXHIBIT A

## 1994 VOLUNTARY EARLY RETIREMENT PLAN

### Eligibility

Effective August 19, 1993, an Active Participant who attains his Early Retirement Date as defined in Section 3.02 as of November 30, 1994 and who is not a Highly Compensated Employee and who has not elected to receive a severance payment under the Severance Plan for the Voluntary Early Retirement Program, may elect prior to September 23, 1994 to retire effective December 1, 1994 and receive a monthly "Railroad Retirement Supplement" in addition to those benefits otherwise specified in this Plan.

### Railroad Retirement Supplement

The amount of the monthly Railroad Retirement Supplement shall be the estimated total of the monthly Tier I and Tier II benefits initially payable under the Railroad Retirement Act as of the date the Active Participant is first eligible for such Tier I and Tier II benefits reduced for early retirement under that Act, or the date the Participant is first eligible for Tier I and Tier II benefits not reduced for early retirement, whichever date next follows the Participant's date of termination of employment. No Railroad Retirement Supplement shall be payable to a Participant who, upon termination of employment, is eligible immediately to receive Tier I and Tier II benefits not reduced for early retirement.

The total of Railroad Retirement Supplements to a Participant who is eligible to receive such payments shall not be more than $75,000.

The foregoing notwithstanding, Active Participants with critical skills who make the aforementioned election to retire may be asked and permitted by the President of the Employer, on a non-discriminatory basis, to continue in employment after November 30, 1994. Such Active Participants who terminate employment no later than November 30, 1996 may receive Railroad Retirement Supplements commencing during the month immediately following such termination of employment.

Railroad Retirement Supplements payable under this Exhibit A shall cease as of the date the participant is first eligible for Tier I and Tier II benefits payable under the Railroad Retirement Act and reduced for early retirement under that Act, or the date the participant is first eligible for Tier I and Tier II benefits not reduced for early retirement, whichever date next follows the participant's termination of employment from the Employer.

In the event of the participant's death after termination of employment and prior to the cessation of benefits as described in the preceding paragraph, Railroad Retirement Supplements shall be payable to the participant's surviving spouse. In the absence of a surviving spouse to whom the participant was legally married on the date of his death, Railroad Retirement Supplements shall be payable to the participant's estate. Such Railroad Retirement Supplements payable to the participant's surviving spouse or the participant's estate shall be payable until the date described in the preceding paragraph as if the participant had remained alive.

Article VIII notwithstanding, there shall be no death benefits payable in respect of the Railroad Retirement Supplements under this Exhibit A other than those described in the preceding paragraph. Nor

AMT000732

shall the optional forms of payment described in Article VII be available with respect to the Railroad Retirement Supplements under this Exhibit A.

AMT000733

## EXHIBIT B

## 2001 VOLUNTARY EARLY RETIREMENT PLAN

### Eligibility

Effective September 15, 2001, an Active Participant who, as of October 31, 2001, has attained age 55 or older and has completed at least ten (10) Years of Service, and who has not elected to receive a severance payment under the Voluntary Separation Plan, may elect on or before October 31, 2001 to retire effective November 1, 2001 and to receive the benefits described in this Exhibit B, in addition to those benefits otherwise specified in the Plan.

### Additional Years of Age for Purposes of Early Retirement Reduction Factors

The Participant shall have five (5) years added to his/her age, effective as of December 1, 2001, for purposes of the early retirement reduction factors in Section 4.02 of the Plan.

### Additional Lump Sum Payment

Upon retirement, the Participant shall receive a lump sum payment equal to $15,000.

If the Participant does not with to receive this lump sum payment, the Participant's monthly retirement payments shall be increased to provide for the actuarial equivalent of the lump sum payment.

Amendment III

to

Retirement Income Plan for Employees of

National Railroad Passenger Corporation

National Railroad Passenger Corporation wishes to amend the Retirement Income Plan for Employees of National Railroad Passenger Corporation (the "Plan") to comply with the requirements of the Consolidated Appropriations Act of 2001, P.L. 106-361, and recent IRS guidance, and to make certain other changes to the Plan.

Pursuant to Section 13.01 of the Plan, the Plan is hereby amended, effective as of January 1, 2001, or such other date as provided below, as follows:

1. <u>First Change</u>.   The second paragraph of Section 1.18(a), definition of "Compensation," is amended to read as follows (revised language is double underlined):

    1.18   Compensation determined for years after December 31, <u>2000</u>, means the compensation paid to a Participant for service performed for the Employer which is included in gross income for the Plan Year under Code Section 415(c)(3) as specified in Regulation 1.415-2(d)(10) thereto, but excluding reimbursements or other expense allowances, fringe benefits (cash or non-cash), moving expenses, deferred compensation and welfare benefits, but including elective contributions by the Employer on the Participant's behalf that are not included in the Participant's gross income under Code Sections 125, <u>132(f)</u>, 402(e)(3), 402(h) and 403(b), and including compensation deferred under an eligible deferred compensation plan under Code Section 457(b) and including employee contributions "picked up" under Code Section 414(h)(2). "Compensation" shall not include payments made after a Participant has ceased to be an employee and made solely by reason of the payment of severance benefits on account of the termination of the former employee's employment, <u>and, effective January 1, 2002, service guarantees</u>.

2. <u>Second Change</u>. Section 1.22(a), definition of "Employee," is amended to read as follows (revised language is double underlined):

    (a)   "Non-Union Employee" means any person who is employed by an Employer or Affiliated Employer, excluding (i) any such person who is a member of a unit of employees covered by a collective bargaining agreement, (ii) before November 17, 1988 any such person who was an

- 1 -

AMT000764

active participant on June 30, 1985 in the Chicago Union Station Company Plan for Supplemental Pensions or who was an active participant on May 30, 1984 in the Washington Terminal Company Plan for Supplemental Pensions, and (iii) any employee paid on an hourly basis.

3.  Third Change. The first paragraph of Section 4.05(a)(v), definition of "Compensation," is amended to read as follows (revised language is double underlined):

    (v)   "Compensation" shall mean the total remuneration paid during a calendar year (beginning January 1 and ending December 31) to an employee (in respects of periods during which such person was an employee) by an Employer as reported by the Employer to the Federal government on Form W-2, or on such other form as may be designated for the purposes of withholding tax by the Federal government, plus salary reductions under Sections 125, 132(f) and 401(k) of the Code.

4.  Fourth Change. The following paragraph is added to the end of Section 5.05:

    With respect to distributions under the Plan made for calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Code section 401(a)(9) in accordance with the regulations under Code section 401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary. This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Code section 401(a)(9) or such other date as may be specified in guidance published by the Internal Revenue Service.

5.  Fifth Change. Effective January 1, 2000, the second, third, fourth and fifth sentences of Section 5.04 are replaced with the following:

    For purposes of this subsection, during the 2000 Plan Year, the lump-sum Actuarial Equivalent shall be determined based on (1) the mortality table specified in Section 417(e)(3)(A)(ii) of the Code, and (2) the GATT Rate for the month before the date the present value is to be distributed or the GATT Rate for the month of November preceding the Plan Year in which the present value is to be distributed, whichever results in the larger distribution.    Beginning January 1, 2001, the lump-sum Actuarial Equivalent shall be determined based on (1) the mortality table specified in Section 417(e)(3)(A)(ii) of the Code, and (2) the GATT Rate for the month of November preceding the Plan Year in which the present value is to be distributed.

6.  Sixth Change. Section 5.10(b)(ii), definition of "eligible retirement plan," is amended to read as follows (revised language is double underlined):

BALT1:367148:6:12/12/2001 4:46 PM
15164-18

AMT000765

9. <u>Ninth Change</u>. Effective as of January 1, 1989, Section 14.02(j), definition of "Top Heavy Group," is amended as follows (revised language is double underlined):

   (j) "<u>Top Heavy Group</u>" means, with respect to any Plan Year, an Aggregation Group if, as of the Determination Date with respect to such Plan Year, (i) the sum of (1) the present value of the cumulative accrued benefits (determined, in accordance with Section 416(g) of the Code and the regulations thereunder, as of the most recent date which is within a twelve (12) month period ending on such Determination Date that is used for computing Defined Benefit Plan costs for minimum funding and based on five percent (5%) interest compounded annually and the 1983 Group Annuity Mortality Table for males) for Key Employees under all Defined Benefit Plans (as defined in 4.05(a)(iii)) included in such Aggregation Group, and (2) the aggregate of the accounts (determined, in accordance with Section 416(g) of the Code and the regulations thereunder, as of the valuation date coincident with or immediately preceding such Determination Date) of Key Employees under all Defined Contribution Plans (as defined in Section 4.05(a)(ii)) included in such Aggregation Group, exceeds (ii) sixty percent (60%) of a similar sum determined for Key Employees and Non-Key Employees; provided, however, that if any employee is a Non-Key Employee with respect to any Pension Plan for any Plan Year, but such employee was a Key Employee with respect to any Pension Plan for any prior Plan Year, any accrued benefit for such employee and any account of such employee shall not be taken into account for purposes of the foregoing determination. <u>If an employee has not performed at least one hour of service for the Employer at any time during the five (5) year period ending on the Determination Date, any accrued benefit for such employee and any account of such employee shall not be taken into account.</u> For purposes of determining the present value of the cumulative accrued benefit for any employee, or the amount of the account of any employee, such present value or amount shall be increased by the aggregate distributions made with respect to such employee under the Pension Plan during the five-year period ending on the Determination Date. <u>The preceding sentence shall also apply to distributions under a terminated Pension Plan which if it had not been terminated would have been required to be included in an Aggregation Group.</u>

10. <u>Tenth Change</u>. A new Section 18.06 is added as follows:

   18.06 <u>Use of Electronic Media</u>. To the extent provided by the Retirement Plan Committee, any direction, notice or other communication provided to the Employer, the Retirement Plan Committee or the Trustee by another party which is stipulated to be in written form under the provisions of this Plan may also be provided in any medium which is

- 4 -

AMT000766

permitted under applicable law or regulation. Any written communication or disclosure to Participants required under the provisions of this Plan may be provided in any other medium (electronic, telephone or otherwise) that is permitted under applicable law or regulation.

IN WITNESS WHEREOF, National·Railroad Passenger Corporation has caused this instrument to be duly executed in its name and on its behalf on this _*14*_ day of _*January*_ , 200*2*

National Railroad Passenger Corporation

By _____

- 5 -

## RESOLUTIONS AUTHORIZING
## AMENDMENTS TO AMTRAK RETIREMENT
## AND SAVINGS PLANS

WHEREAS, Management wishes to amend the Amtrak Retirement Savings Plan for Agreement Employees, the Retirement Income Plan for Employees of Amtrak, and Amtrak's Savings Plan ("Plan" or "Plans") to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"); and

WHEREAS, Management wishes to increase the elective deferral amount to reflect EGTRRA Plan limit adjustments; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of the proposed amendments which have been fully described to members of this Board; and

WHEREAS, These Plan amendments are intended as good faith compliance with the requirements of EGTRRA and are to be construed in accordance with EGTRRA and guidance issued thereunder; and

WHEREAS, These proposed Plan amendments shall be effective as of the first day of the first Plan year beginning after December 31, 2001 except as otherwise provided in the Executive Summary; and

WHEREAS, These proposed Plan amendments shall supersede the provisions of the Plans to the extent those provisions are inconsistent with the provisions of these amendments; therefore, be it

RESOLVED, That the Board hereby adopts the Plan amendments as set forth in the attached Executive Summary; and

FURTHER RESOLVED, That Management is directed to take any and all steps necessary to implement the terms of these Plan amendments.

National Railroad Passenger Corporation<br>
Board of Directors<br>
Adopted December 19, 2001

SEAL

AMT000735

EGTRRA Amendment

to

Retirement Income Plan for Employees of
National Railroad Passenger Corporation

National Railroad Passenger Corporation wishes to amend the Retirement Income Plan for
Employees of National Railroad Passenger Corporation (the "Plan"), pursuant to Section 13.01 of
the Plan, to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act
of 2001 ("EGTRRA"). This amendment is intended as good faith compliance with the
requirements of EGTRRA and is to be construed in accordance with EGTRRA and guidance
issued thereunder. Except as otherwise provided, this amendment shall be effective as of the first
day of the first plan year beginning after December 31, 2001. This amendment shall supersede
the provisions of the plan to the extent those provisions are inconsistent with the provisions of
this amendment.

1.    First Change. A new Section 1.18.1 is added to the Plan as follows:

   1.18.1  Increase in Compensation Limit.

        (a)    Increase in limit. The annual compensation of each
   participant taken into account in determining benefit accruals in any plan
   year beginning after December 31, 2001, shall not exceed $200,000.
   Annual compensation means compensation during the plan year or such
   other consecutive 12-month period over which compensation is
   otherwise determined under the plan (the determination period). For
   purposes of determining benefit accruals in plan years beginning after
   December 31, 2001, the annual compensation limit for determination
   periods beginning before January 1, 2002, shall be $200,000.

        (b)    Cost-of-living adjustment. The $200,000 limit on annual
   compensation in paragraph (a) shall be adjusted for cost-of-living
   increases in accordance with section 401(a)(17)(B) of the Code. The
   cost-of-living adjustment in effect for a calendar year applies to annual
   compensation for the determination period that begins with or within
   such calendar year.

2.    Second Change. A new Section 4.05A is added to the Plan as follows:

   4.05A  Limitations on Benefits.

        (a)    Effective date. This section shall be effective for
   limitation years ending after December 31, 2001.

        (b)    Effect on participants. Benefit increases resulting from
   the increase in the limitations of section 415(b) of the Code shall be
   provided to all employees participating in the plan who have one hour of

- 1 -

AMT000736

service on or after the first day of the first limitation year ending after December 31, 2001.

    (c)   <u>Definitions</u>.

        (i)    <u>Defined benefit dollar limitation</u>. The "defined benefit dollar limitation" is $160,000, as adjusted, effective January 1 of each year, under section 415(d) of the Code in such manner as the Secretary shall prescribe, and payable in the form of a straight life annuity. A limitation as adjusted under section 415(d) will apply to limitation years ending with or within the calendar year for which the adjustment applies.

        (ii)    <u>Maximum permissible benefit</u>: The "maximum permissible benefit" is the lesser of the defined benefit dollar limitation or the defined benefit compensation limitation (both adjusted where required, as provided in (1) and, if applicable, in (2) or (3) below).

        (1)    If the participant has fewer than 10 years of participation in the plan, the defined benefit dollar limitation shall be multiplied by a fraction, (i) the numerator of which is the number of years (or part thereof) of participation in the plan and (ii) the denominator of which is 10. In the case of a participant who has fewer than 10 years of service with the employer, the defined benefit compensation limitation shall be multiplied by a fraction, (i) the numerator of which is the number of years (or part thereof) of service with the employer and (ii) the denominator of which is 10.

        (2)    If the benefit of a participant begins prior to age 62, the defined benefit dollar limitation applicable to the participant at such earlier age is an annual benefit payable in the form of a straight life annuity beginning at the earlier age that is the actuarial equivalent of the defined benefit dollar limitation applicable to the participant at age 62 (adjusted under (1) above, if required). The defined benefit dollar limitation applicable at an age prior to age 62 is determined as the lesser of (i) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using the interest rate and mortality table (or other tabular factor) specified in section 1.04 of the plan and (ii) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using a 5 percent interest rate and the applicable mortality table as defined in section 4.05(b)(ii) of the plan. Any decrease in the defined benefit dollar limitation determined in accordance with this paragraph (2) shall not reflect a mortality decrement if benefits are not forfeited upon the death of the participant. If any benefits are forfeited upon death, the full mortality decrement is taken into account.

        (3)    If the benefit of a participant begins after the participant attains age 65, the defined benefit dollar limitation applicable to the participant at the later age is the annual benefit payable

- 2 -

AMT000737

in the form of a straight life annuity beginning at the later age that is actuarially equivalent to the defined benefit dollar limitation applicable to the participant at age 65 (adjusted under (1) above, if required). The actuarial equivalent of the defined benefit dollar limitation applicable at an age after age 65 is determined as (i) the lesser of the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using the interest rate and mortality table (or other tabular factor) specified in section 1.04 of the plan and (ii) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using a 5 percent interest rate assumption and the applicable mortality table as defined in section 4.05(b)(ii) of the plan. For these purposes, mortality between age 65 and the age at which benefits commence shall be ignored.

For limitation years beginning after December 31, 2001, the plan will not be aggregated with any multiemployer plan for purposes of applying the defined benefit compensation limit to the plan.

3.    Third Change. A new Section 5.10A is added to the Plan as follows:

5.10A   Direct Rollovers of Plan Distributions.

(a)    Effective date. This section shall apply to distributions made after December 31, 2001.

(b)    Modification of definition of eligible retirement plan. For purposes of the direct rollover provisions in section 5.10 of the plan, an eligible retirement plan shall also mean an annuity contract described in section 403(b) of the Code and an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in section 414(p) of the Code.

4.    Fourth Change. A new Section 14.09 is added to the Plan as follows:

14.09   Modification of Top-Heavy Rules.

(a)    Effective date. This section shall apply for purposes of determining whether the plan is a top-heavy plan under section 416(g) of the Code for plan years beginning after December 31, 2001, and whether the plan satisfies the minimum benefits requirements of section 416(c) of the Code for such years. This section amends Article 14 of the plan.

BALT1:3580101:1:12/7/2001 4:28 PM
15164-18

AMT000738

(b)    Determination of top-heavy status.

(i)    Key employee. Key employee means any employee or former employee (including any deceased employee) who at any time during the plan year that includes the determination date was an officer of the employer having annual compensation greater than $130,000 (as adjusted under section 416(i)(1) of the Code for plan years beginning after December 31, 2002), a 5-percent owner of the employer, or a 1-percent owner of the employer having annual compensation of more than $150,000. For this purpose, annual compensation means compensation within the meaning of section 415(c)(3) of the Code. The determination of who is a key employee will be made in accordance with section 416(i)(1) of the Code and the applicable regulations and other guidance of general applicability issued thereunder.

(ii)    Determination of present values and amounts. This subsection shall apply for purposes of determining the present values of accrued benefits and the amounts of account balances of employees as of the determination date.

(1)    Distributions during year ending on the determination date. The present values of accrued benefits and the amounts of account balances of an employee as of the determination date shall be increased by the distributions made with respect to the employee under the plan and any plan aggregated with the plan under section 416(g)(2) of the Code during the 1-year period ending on the determination date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the plan under section 416(g)(2)(A)(i) of the Code. In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

(2)    Employees not performing services during year ending on the determination date. The accrued benefits and accounts of any individual who has not performed services for the employer during the 1-year period ending on the determination date shall not be taken into account.

(c)    Minimum benefits. For purposes of satisfying the minimum benefit requirements of section 416(c)(1) of the Code and the plan, in determining years of service with the employer, any service with the employer shall be disregarded to the extent that such service occurs during a plan year when the plan benefits (within the meaning of section 410(b) of the Code) no key employee or former key employee.

BALT1:3580101:1:12/7/2001 4:28 PM
15164-18

AMT000739

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to be duly executed in its name and on its behalf on this __/7__ day of __January__, 2002.

National Railroad Passenger Corporation

By: _____

BALT1:3580101:1:12/7/2001 4:28 PM
15164-18

AMT000740

.

## RESOLUTIONS ADOPTING AMENDMENTS TO DEFINED BENEFIT RETIREMENT INCOME PLAN AND MANAGEMENT AND AGREEMENT EMPLOYEE RETIREMENT SAVINGS PLANS

WHEREAS, The Corporation wishes to amend the National Railroad Passenger Corporation Retirement Savings Plan, the National Railroad Passenger Corporation Defined Benefit Retirement Income Plan, and National Railroad Passenger Corporation's Retirement Savings Plan for Agreement Employees (collectively, the "Plans") (1) to comply with the Uruguay Round Agreements Act of 1994 ("GATT"), the Uniformed Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, and the Internal Revenue Service Restructuring and Reform Act of 1998 (collectively, the "GUST Acts"), (2) to permit the President and CEO to make certain technical and administrative amendments to the Plans, and (3) to correct certain drafting errors in the Plans; and

WHEREAS, Section 13.01 of the Plans provides that the Corporation may amend the Plans at any time, subject to Board approval; therefore be it

RESOLVED, That the President and CEO is authorized and directed to prepare and execute an Amendment to each Plan to bring the Plan into compliance with the GUST Acts, including, effective January 1, 2000, the use of the interest rate and mortality table in Section 417(e) of the Internal Revenue Code of 1986 as amended by GATT, and to correct any drafting errors in each Plan; and

FURTHER RESOLVED, That the Plans are amended to permit the President and CEO to amend the Plans to assure that they continue to qualify under the Internal Revenue Code (the "Code"), and to comply with all other applicable laws, to provide for the proper administration of the Plans, to clarify the terms of the Plans, and to remedy any inconsistencies, ambiguities and omissions, provided that any such amendment shall be in compliance with the Board Statement of Policy as then in effect; and

FURTHER RESOLVED, That the President and CEO is authorized and directed to prepare and execute an Amendment to each Plan implementing the foregoing resolutions; and

AMT000741

FURTHER RESOLVED, That the President and CEO is authorized and directed to take such further actions and to execute such documents (including amendments) as he may deem advisable or desirable to adopt and implement the foregoing amendments to the Plans and to carry out the provisions of the Plans as so amended, including obtaining a determination letter from the Internal Revenue Service that each Plan, as amended, continues to qualify under Code sections 401 and 501.

National Railroad Passenger Corporation
Board of Directors
Adopted December 8, 1999

AMT000742

Amendment I

to

Retirement Income Plan for Employees of
National Railroad Passenger Corporation

National Railroad Passenger Corporation wishes to amend the Retirement Income Plan
for Employees of National Railroad Passenger Corporation (the "Plan") to comply with
the requirements of the Uruguay Round Agreements Act of 1994 ("GATT"), the
Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"),
the Small Business Job Protection Act of 1996 ("SBJPA"), the Taxpayer Relief Act of
1997 ("TRA 97"), and the Internal Revenue Service Restructuring and Reform Act of
1998 ("RRA"), and to make certain other changes to the Plan.

Pursuant to Section 13.01 of the Plan, the Plan is hereby amended, effective as of January
1, 1997 or such other date as provided below, as follows:

1.  First Change.  Section 1.18(c), relating to family aggregation rules in the definition of
    "Compensation," is deleted.

2.  Second Change.  Section 1.22, definition of "Employee," is amended by adding the
    following paragraph after the third paragraph thereof:

        A person is not an "Employee" or an "employee" at any given
    time, unless, at such time, the Employer or Affiliated Employer, in
    accordance with its standard personnel policies, treats that person as a
    common-law employee.  Any later determination that the person was a
    common-law employee of any Employer or Affiliated Employer during
    such period shall not control.

3.  Third Change.  Section 1.25, definition of "Family Member," is replaced with the
    following:

        1.25  Intentionally Omitted.

4.  Fourth Change.  A new Section 1.29A is added to read as follows:

        1.29A  GATT Rate means the applicable interest rate as defined in
    Section 417(e) of the Code.

- 1 -

AMT000743

5. <u>Fifth Change</u>.    Section 1.30, definition of "Highly Compensated Employee," is replaced with the following:

      1.30    <u>Highly    Compensated    Employee</u>    includes    Highly Compensated    Active    Employees    and    Highly    Compensated    Former Employees.

      A Highly Compensated Active Employee includes any employee of the Employer, or of an Affiliated Employer, who:

      (a) was a 5-percent owner at any time during the Plan Year or the preceding Plan Year, or

      (b) for the preceding Plan Year, had compensation, as defined in Section 415(c)(3) of the Code, in excess of $80,000, as adjusted for inflation pursuant to Section 414(q)(1) of the Code.

      A Participant is a Highly Compensated Employee for a particular Plan Year if he or she meets the definition of Highly Compensated Employee in effect for that Plan Year.

6. <u>Sixth Change</u>.    Section 1.31, definition of "Highly Compensated Former Employee," is replaced with the following:

      1.31    <u>Highly Compensated Former Employee</u> includes any former Employee who was a Highly Compensated Employee when such Employee separated from service, or who was a Highly Compensated Employee at any time after attaining age 55.

7. <u>Seventh Change</u>.    Section 1.34, definition of "Leased Employee," is replaced with the following:

      1.34    <u>Leased Employee</u> means any person (other than an employee of the recipient) described in Sections 414(n)(2) and 414(o)(2) of the Code who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Section 414(n)(6) of the Code) on a substantially full-time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient. Contributions or benefits provided to a Leased Employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer.

Balt1:230630:2:9/29/99
15164-18

AMT000744

8.  Eighth Change.  Section 1.37, definition of "Non-Highly Compensated Employee," is amended to read as follows:

> 1.37  Non-Highly Compensated Employee means any employee who is not a Highly Compensated Employee.

9.  Ninth Change.  Section 1.53, definition of "Top Paid Group," is replaced with the following:

> 1.53  Intentionally Omitted.

10. Tenth Change.  Effective as of January 1, 1998, the first paragraph of Section 4.05(a)(v), definition of "Compensation," is amended to read as follows:

> (v)  "Compensation" shall mean the total remuneration paid during a calendar year (beginning January 1 and ending December 31) to an employee (in respects of periods during which such person was an employee) by an Employer as reported by the Employer to the Federal government on Form W-2, or on such other form as may be designated for the purposes of withholding tax by the Federal government, plus salary reductions under Sections 125 and 401(k) of the Code.

11. Eleventh Change.  Effective as of January 1, 1998, Section 4.05(a)(v)(A), exclusions from Compensation, is amended to read as follows:

> (A)  Employer contributions to a plan of deferred compensation which are not includable in the employee's gross income for the taxable year in which contributed (other than salary reductions under Section 401(k) of the Code), or employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the employee, or any distributions from a plan of deferred compensation;

12. Twelfth Change.  Effective as of January 1, 1998, Section 4.05(a)(v)(D), exclusions from Compensation, is amended to read as follows:

> (D)  Other amounts which received special tax benefits (other than salary reductions under Section 125 of the Code), or contributions made by the Employer (other than salary reductions) towards the purchase of an annuity described in Section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the employee).

Balt1:230630:2:9/29/99
15164-18

AMT000745

13. <u>Thirteenth Change</u>.  Effective January 1, 2000, the second paragraph of Section 4.05(b)(ii) is replaced with the following:

If the benefit payable to a Participant is in a form other than a straight life annuity with no ancillary benefits, the benefit is to be adjusted to a straight life annuity beginning at the same age which is the actuarial equivalent of such benefit, using whichever of the following assumptions produces the greater equivalent annual benefit: (i) the mortality table and interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) the mortality table specified in Section 415(b)(2)(E) of the Code and an interest rate of five percent (5%).  For forms of benefit payments subject to Section 417(e)(3) of the Code, the 5% interest rate in (ii) is replaced by the interest rate specified in Section 417(e)(3)(ii) of the Code.  The adjustment shall be in accordance with, rules determined by the Commissioner of Internal Revenue.  For the purposes of the adjustment described in this Section, the following values will not be taken into account:

(1)    the value of a qualified joint and survivor annuity as defined in Section 417(b) of the Code to the extent that such value exceeds the sum of the value of a straight life annuity beginning on the same date, and the value of any post-retirement death benefits that would be payable absent the qualified joint and survivor annuity;

(2)    the value of benefits not directly related to retirement benefits, such as pre-retirement death benefits; and

(3)    the value of benefits which reflect post-separation cost of living increases pursuant to Section 415(d)(1) of the Code.

Prior to January 1, 2000, adjustment for an alternative form of payment shall be determined using an interest rate assumption equal to the greater of: (i) the interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) an interest rate of five percent (5%).

14. <u>Fourteenth Change</u>.  Effective January 1, 2000, the following is added to the end of the last paragraph of Section 4.05(b)(ii):

Effective January 1, 2000, actuarial equivalence will be based on whichever of the following assumptions produces the lesser equivalent amount: (i) the mortality table and interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) 5% and the mortality table specified in Section 415(b)(2)(E) of the Code.

Balt1:230630.2:9/29/99
15164-18

AMT000746

.

## RESOLUTIONS ADOPTING AMENDMENTS TO DEFINED BENEFIT RETIREMENT INCOME PLAN AND MANAGEMENT AND AGREEMENT EMPLOYEE RETIREMENT SAVINGS PLANS

WHEREAS,  The Corporation wishes to amend the National Railroad Passenger Corporation Retirement Savings Plan, the National Railroad Passenger Corporation Defined Benefit Retirement Income Plan, and National Railroad Passenger Corporation's Retirement Savings Plan for Agreement Employees (collectively, the "Plans") (1) to comply with the Uruguay Round Agreements Act of 1994 ("GATT"), the Uniformed Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, and the Internal Revenue Service Restructuring and Reform Act of 1998 (collectively, the "GUST Acts"), (2) to permit the President and CEO to make certain technical and administrative amendments to the Plans, and (3) to correct certain drafting errors in the Plans; and

WHEREAS, Section 13.01 of the Plans provides that the Corporation may amend the Plans at any time, subject to Board approval; therefore be it

RESOLVED, That the President and CEO is authorized and directed to prepare and execute an Amendment to each Plan to bring the Plan into compliance with the GUST Acts, including, effective January 1, 2000, the use of the interest rate and mortality table in Section 417(e) of the Internal Revenue Code of 1986 as amended by GATT, and to correct any drafting errors in each Plan; and

FURTHER RESOLVED, That the Plans are amended to permit the President and CEO to amend the Plans to assure that they continue to qualify under the Internal Revenue Code (the "Code"), and to comply with all other applicable laws, to provide for the proper administration of the Plans, to clarify the terms of the Plans, and to remedy any inconsistencies, ambiguities and omissions, provided that any such amendment shall be in compliance with the Board Statement of Policy as then in effect; and

FURTHER RESOLVED, That the President and CEO is authorized and directed to prepare and execute an Amendment to each Plan implementing the foregoing resolutions; and

AMT000741

FURTHER RESOLVED, That the President and CEO is authorized and directed to take such further actions and to execute such documents (including amendments) as he may deem advisable or desirable to adopt and implement the foregoing amendments to the Plans and to carry out the provisions of the Plans as so amended, including obtaining a determination letter from the Internal Revenue Service that each Plan, as amended, continues to qualify under Code sections 401 and 501.

National Railroad Passenger Corporation
Board of Directors
Adopted December 8, 1999

AMT000742

Amendment I

to

Retirement Income Plan for Employees of
National Railroad Passenger Corporation

National Railroad Passenger Corporation wishes to amend the Retirement Income Plan
for Employees of National Railroad Passenger Corporation (the "Plan") to comply with
the requirements of the Uruguay Round Agreements Act of 1994 ("GATT"), the
Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"),
the Small Business Job Protection Act of 1996 ("SBJPA"), the Taxpayer Relief Act of
1997 ("TRA 97"), and the Internal Revenue Service Restructuring and Reform Act of
1998 ("RRA"), and to make certain other changes to the Plan.

Pursuant to Section 13.01 of the Plan, the Plan is hereby amended, effective as of January
1, 1997 or such other date as provided below, as follows:

1.  First Change.  Section 1.18(c), relating to family aggregation rules in the definition of
    "Compensation," is deleted.

2.  Second Change.  Section 1.22, definition of "Employee," is amended by adding the
    following paragraph after the third paragraph thereof:

        A person is not an "Employee" or an "employee" at any given
        time, unless, at such time, the Employer or Affiliated Employer, in
        accordance with its standard personnel policies, treats that person as a
        common-law employee.  Any later determination that the person was a
        common-law employee of any Employer or Affiliated Employer during
        such period shall not control.

3.  Third Change.  Section 1.25, definition of "Family Member," is replaced with the
    following:

        1.25  Intentionally Omitted.

4.  Fourth Change.  A new Section 1.29A is added to read as follows:

        1.29A  GATT Rate means the applicable interest rate as defined in
        Section 417(e) of the Code.

Balt1:230630:2:9/29/99
15164-18

AMT000743

5. <u>Fifth Change</u>.   Section 1.30, definition of "Highly Compensated Employee," is replaced with the following:

    1.30   <u>Highly Compensated Employee</u> includes Highly Compensated Active Employees and Highly Compensated Former Employees.

    A Highly Compensated Active Employee includes any employee of the Employer, or of an Affiliated Employer, who:

    (a) was a 5-percent owner at any time during the Plan Year or the preceding Plan Year, or

    (b) for the preceding Plan Year, had compensation, as defined in Section 415(c)(3) of the Code, in excess of $80,000, as adjusted for inflation pursuant to Section 414(q)(1) of the Code.

    A Participant is a Highly Compensated Employee for a particular Plan Year if he or she meets the definition of Highly Compensated Employee in effect for that Plan Year.

6. <u>Sixth Change</u>.   Section 1.31, definition of "Highly Compensated Former Employee," is replaced with the following:

    1.31   <u>Highly Compensated Former Employee</u> includes any former Employee who was a Highly Compensated Employee when such Employee separated from service, or who was a Highly Compensated Employee at any time after attaining age 55.

7. <u>Seventh Change</u>.   Section 1.34, definition of "Leased Employee," is replaced with the following:

    1.34   <u>Leased Employee</u> means any person (other than an employee of the recipient) described in Sections 414(n)(2) and 414(o)(2) of the Code who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Section 414(n)(6) of the Code) on a substantially full-time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient. Contributions or benefits provided to a Leased Employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer.

-2-

AMT000744

8. <u>Eighth Change</u>.  Section 1.37, definition of "Non-Highly Compensated Employee," is amended to read as follows:

>       1.37    <u>Non-Highly Compensated Employee</u> means any employee who is not a Highly Compensated Employee.

9. <u>Ninth Change</u>.  Section 1.53, definition of "Top Paid Group," is replaced with the following:

>       1.53    Intentionally Omitted.

10. <u>Tenth Change</u>.   Effective as of January 1, 1998, the first paragraph of Section 4.05(a)(v), definition of "Compensation," is amended to read as follows:

>       (v)  "Compensation" shall mean the total remuneration paid during a calendar year (beginning January 1 and ending December 31) to an employee (in respects of periods during which such person was an employee) by an Employer as reported by the Employer to the Federal government on Form W-2, or on such other form as may be designated for the purposes of withholding tax by the Federal government, plus salary reductions under Sections 125 and 401(k) of the Code.

11. <u>Eleventh Change</u>.  Effective as of January 1, 1998, Section 4.05(a)(v)(A), exclusions from Compensation, is amended to read as follows:

>       (A)    Employer contributions to a plan of deferred compensation which are not includable in the employee's gross income for the taxable year in which contributed (other than salary reductions under Section 401(k) of the Code), or employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the employee, or any distributions from a plan of deferred compensation;

12. <u>Twelfth Change</u>.  Effective as of January 1, 1998, Section 4.05(a)(v)(D), exclusions from Compensation, is amended to read as follows:

>       (D)  Other amounts which received special tax benefits (other than salary reductions under Section 125 of the Code), or contributions made by the Employer (other than salary reductions) towards the purchase of an annuity described in Section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the employee).

Balt1:230630:2:9/29/99
15164-18

AMT000745

13. <u>Thirteenth Change</u>.  Effective January 1, 2000, the second paragraph of Section 4.05(b)(ii) is replaced with the following:

> If the benefit payable to a Participant is in a form other than a straight life annuity with no ancillary benefits, the benefit is to be adjusted to a straight life annuity beginning at the same age which is the actuarial equivalent of such benefit, using whichever of the following assumptions produces the greater equivalent annual benefit: (i) the mortality table and interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) the mortality table specified in Section 415(b)(2)(E) of the Code and an interest rate of five percent (5%).  For forms of benefit payments subject to Section 417(e)(3) of the Code, the 5% interest rate in (ii) is replaced by the interest rate specified in Section 417(e)(3)(ii) of the Code.  The adjustment shall be in accordance with rules determined by the Commissioner of Internal Revenue.  For the purposes of the adjustment described in this Section, the following values will not be taken into account:

> (1)    the value of a qualified joint and survivor annuity as defined in Section 417(b) of the Code to the extent that such value exceeds the sum of the value of a straight life annuity beginning on the same date, and the value of any post-retirement death benefits that would be payable absent the qualified joint and survivor annuity;

> (2)    the value of benefits not directly related to retirement benefits, such as pre-retirement death benefits; and

> (3)    the value of benefits which reflect post-separation cost of living increases pursuant to Section 415(d)(1) of the Code.

> Prior to January 1, 2000, adjustment for an alternative form of payment shall be determined using an interest rate assumption equal to the greater of: (i) the interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) an interest rate of five percent (5%).

14. <u>Fourteenth Change</u>.  Effective January 1, 2000, the following is added to the end of the last paragraph of Section 4.05(b)(ii):

> Effective January 1, 2000, actuarial equivalence will be based on whichever of the following assumptions produces the lesser equivalent amount: (i) the mortality table and interest rate specified in Section 1.04 (Actuarial Equivalent); or (ii) 5% and the mortality table specified in Section 415(b)(2)(E) of the Code.

Balt1:230630:2:9/29/99
15164-18

AMT000746

15. <u>Fifteenth Change</u>. Effective as of the date this Amendment is adopted, the following phrase is added to the beginning of Section 4.05(e):

> For limitation years beginning before January 1, 2000,

16. <u>Sixteenth Change</u>. Section 5.02(d) is amended by adding the following to the end thereof:

> The Retirement Plan Committee may provide the information after the Participant's Annuity Starting Date, provided the Participant (and Spouse) are given an election period of at least 30 days after the information is provided. A Participant may elect (with any applicable spousal consent) to waive any requirement that the information be provided at least 30 days before the Participant's Annuity Starting Date (or to waive the 30-day election period under the preceding sentence) if the distribution commences more than 7 days after the information is provided.

17. <u>Seventeenth Change</u>. Effective January 1, 2000, Sections 5.03(a)(iii) and 5.03(a)(iv) are amended by substituting "(based on the GATT Rate for the month of November preceding the Plan Year during which the payment is made)" for the parenthetical beginning with "(based on the Interest Rate used by the Pension Benefit Guaranty Corporation . . . ."

18. <u>Eighteenth Change</u>. Effective January 1, 2000, the second, third, fourth and fifth sentences of Section 5.04 are replaced with the following:

> For purposes of this subsection, the lump-sum Actuarial Equivalent shall be determined based on the GATT Rate for the month before the date the present value is to be distributed, and the mortality table specified in Section 417(e)(3)(ii) of the Code.

19. <u>Nineteenth Change</u>. Effective January 1, 2000, the last paragraph of Section 5.04(c)(ii) is amended by substituting "(based on the GATT Rate for the month of November preceding the Plan Year including the Annuity Starting Date)" for the parenthetical beginning with "(based on the Interest Rate used by the Pension Benefit Guaranty Corporation . . . ."

20. <u>Twentieth Change</u>. Effective for distributions on or after January 1, 2000, Sections 5.04, 5.08 and 5.09 are amended by substituting "$5,000" for "$3,500" each time it appears.

Balt1:230630:2:9/29/99
15164-18

AMT000747

15. Fifteenth Change.  Effective as of the date this Amendment is adopted, the following phrase is added to the beginning of Section 4.05(e):

> For limitation years beginning before January 1, 2000,

16. Sixteenth Change.  Section 5.02(d) is amended by adding the following to the end thereof:

> The Retirement Plan Committee may provide the information after the Participant's Annuity Starting Date, provided the Participant (and Spouse) are given an election period of at least 30 days after the information is provided.  A Participant may elect (with any applicable spousal consent) to waive any requirement that the information be provided at least 30 days before the Participant's Annuity Starting Date (or to waive the 30-day election period under the preceding sentence) if the distribution commences more than 7 days after the information is provided.

17. Seventeenth Change.  Effective January 1, 2000, Sections 5.03(a)(iii) and 5.03(a)(iv) are amended by substituting "(based on the GATT Rate for the month of November preceding the Plan Year during which the payment is made)" for the parenthetical beginning with "(based on the Interest Rate used by the Pension Benefit Guaranty Corporation . . . ."

18. Eighteenth Change.  Effective January 1, 2000, the second, third, fourth and fifth sentences of Section 5.04 are replaced with the following:

> For purposes of this subsection, the lump-sum Actuarial Equivalent shall be determined based on the GATT Rate for the month before the date the present value is to be distributed, and the mortality table specified in Section 417(e)(3)(ii) of the Code.

19. Nineteenth Change.  Effective January 1, 2000, the last paragraph of Section 5.04(c)(ii) is amended by substituting "(based on the GATT Rate for the month of November preceding the Plan Year including the Annuity Starting Date)" for the parenthetical beginning with "(based on the Interest Rate used by the Pension Benefit Guaranty Corporation . . . ."

20. Twentieth Change.  Effective for distributions on or after January 1, 2000, Sections 5.04, 5.08 and 5.09 are amended by substituting "$5,000" for "$3,500" each time it appears.

- 5 -

21. Twenty-first Change. The third full paragraph of Section 5.05, relating to minimum required distributions, is replaced with the following:

> Notwithstanding the above, effective January 1, 1997, if a Participant is not a 5-percent owner of the Employer or an Affiliated Employer (as defined in Section 416(i) of the Code), distributions shall be made or commenced, in accordance with Code Section 401(a)(9) and regulations thereto, not later than the April 1 of the calendar year following the later of the calendar year (1) in which the Participant attains age seventy and one-half (70-1/2) or (2) in which the Participant retires. In the case of a 5-percent owner, or in the case of any Participant in years beginning after December 31, 1988 but prior to January 1, 1997, distributions shall be made or commenced not later than April 1 of the calendar year following the calendar year in which such Participant attains age seventy and one-half (70-1/2). To the extent that Participants are exempt from Code section 401(a)(9) under the transition rules of Section 1121(d)(4) of the Tax Reform Act of 1986, or in the event the Plan is determined to be a governmental plan as defined in Code Section 414(d), the preceding shall not apply.

22. Twenty-second Change.  Effective January 1, 2000, Sections 5.08(b)(i) and 5.08(b)(ii) are amended by substituting "GATT Rate" for "Applicable Interest Rate."

23. Twenty-third Change. Effective January 1, 2000, Section 5.08(c) is amended to read as follows:

> (c)    Determination of Amount of Benefits.
>
> (i)    For purposes of determining the amount of a Participant's vested accrued benefit, the interest rate used shall not exceed the GATT Rate.
>
> (ii)    In no event shall the amount of the benefit or annuity determined under this Section 5.08(c) be less than the greater of:
>
> (A)    the amount of such benefit determined under the Plan's provisions for determining the amount of benefits other than Plan Section 5.08; or
>
> (B)    the amount of such benefit determined using the GATT Rate.

- 6 -

24. Twenty-fourth Change. Effective January 1, 2000, Section 5.08(e) is replaced with the following:

   (e)    GATT Rate.

   (i)    For purposes of this Section 5.08, "GATT Rate" shall mean the annual rate of interest on 30-year Treasury securities for the month before the date distribution commences.

   (ii)    Notwithstanding the foregoing, if the provisions of the Plan other than Section 5.08(e) so provide, the GATT Rate shall be determined for the month of November preceding the Plan Year in which a distribution occurs rather than for the month before the date distribution commences.

25. Twenty-fifth Change. Effective as of January 1, 1999, Section 5.10(b)(i), definition of "eligible rollover distribution," is replaced with the following:

   (i)    Eligible rollover distribution: An eligible rollover distribution is any distribution to a recipient that qualifies as an eligible rollover distribution under Section 402(c)(4) of the Code or any successor provision.

26. Twenty-sixth Change. The third sentence of Section 8.01 is amended by deleting the clause after (ii) and replacing it with:

   the annuity rate based on such Participant's age when his benefits begin again and based on the mortality table specified in Section 417(e)(3)(ii) of the Code and the GATT Rate for the month before the date his benefits begin again.

27. Twenty-seventh Change. A new Section 8.03 is added to read as follows:

   8.03    Actuarial Adjustment for Employment After Age 70-1/2. The Accrued Benefit of a Participant who retires in a calendar year after the calendar year in which the Participant attains age 70-1/2 shall be actuarially increased to the extent required by Code section 401(a)(9)(C), even if the Participant is employed in section 203(a)(3)(B) service as described in Department of Labor regulation section 2530.203-3.

Balt1:230630:2:9/29/99
15164-18

AMT000749

28. Twenty-eighth Change. Effective as of August 5, 1997, the final phrase in Article
XII, Limitation of Assignment, is amended to read as follows:

, except to such extent as may be provided pursuant to a qualified
domestic relations order, permitted under section 401(a)(13) of the Code
(relating to offsets in the case of fiduciary breaches and other improper
acts), or otherwise required by law.

29. Twenty-ninth Change. Effective as of the date this Amendment is adopted, Section
13.01 is replaced with the following:

13.01  Amendment. The Sponsor reserves the right at any time
and from time to time, by action of its Board, to modify or amend the Plan
in whole or in part. In addition, the Vice President of Human Resources
may amend the Plan to assure that it continues to qualify under the Code
and to comply with all other applicable laws, to provide for the proper
administration of the Plan, to clarify the terms of the Plan, and to remedy
any inconsistencies, ambiguities and omissions, provided that no such
amendment shall have a material impact on Plan benefit or costs. Any
amendment may be made retroactively if deemed necessary or appropriate
by the Sponsor or the Vice President of Human Resources, to the extent
permissible under law.

The Plan shall not be modified or amended in such manner
as would (1) cause or permit any portion of the Trust Fund to be used for
or diverted to purposes other than for the exclusive benefit of Participants,
Spouses, Retired Participants, and Former Participants, and their
Beneficiaries, (2) cause or permit any portion of the Trust Fund to revert
to, or become the property of any Employer, until all liabilities pursuant to
the Plan are satisfied, (3) increase the duties or liabilities of the Trustee
without its written consent, or (4) have the effect of reducing the amount
of a Participant's Accrued Benefit which has been vested and
nonforfeitable, determined as of the later of the date such amendment is
adopted or becomes effective, except to the extent that such amendment or
modification is necessary to qualify the Plan under Section 401 of the
Code and to qualify the Trust as a tax-exempt trust under Section 501 of
the Code.

30. Thirtieth Change. Effective as of January 1, 1989, Section 14.05(a)(ii) is amended to
read as follows:

(ii)  such Employee's average compensation (as defined in
Section 416 of the Code and the regulations thereunder) for the period of
consecutive Plan Years (not exceeding 5) ending with the most recent Plan
Year with respect to which the Plan is determined to be a Top Heavy Plan,

- 8 -

and during which such Employee had the greatest aggregate compensation (within the meaning of Section 416(c)(1)(D) of the Code).

31. <u>Thirty-first Change</u>.   Effective as of January 1, 1989, Section 14.06, <u>Top Heavy Limitation on Compensation Requirement</u>, is amended to read as follows:

> For any Plan Year prior to January 1, 1989 with respect to which the Plan is determined to be a Top Heavy Plan, the annual Compensation (as defined in Section 1.18) of each Participant taken into account under the Plan shall not exceed the first $200,000 of such Compensation; provided, however, that as of January 1 of each calendar year, the dollar limitation determined by the Commissioner of Internal Revenue for that calendar year pursuant to Section 416(d)(2) of the Code shall be substituted for the immediately preceding dollar amount.

32. <u>Thirty-second Change</u>.   Effective as of December 12, 1994, a new Section 18.05 is added as follows:

> 18.05   <u>Special Rules Relating to Veterans' Reemployment Rights</u>. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Section 414(u) of the Code.

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to be duly executed in its name and on its behalf on this ˙*30ⁱᵗ* day of *NOVEMBER*, ~~1999.~~ *2001*

National Railroad Passenger Corporation

By: _Lorraine A. G____

Balt1:230630:2:9/29/99
15164-18

AMT000751

24. Twenty-fourth Change. Effective January 1, 2000, Section 5.08(e) is replaced with the following:

    (e)    GATT Rate.

    (i)    For purposes of this Section 5.08, "GATT Rate" shall mean the annual rate of interest on 30-year Treasury securities for the month before the date distribution commences.

    (ii)    Notwithstanding the foregoing, if the provisions of the Plan other than Section 5.08(e) so provide, the GATT Rate shall be determined for the month of November preceding the Plan Year in which a distribution occurs rather than for the month before the date distribution commences.

25. Twenty-fifth Change. Effective as of January 1, 1999, Section 5.10(b)(i), definition of "eligible rollover distribution," is replaced with the following:

    (i)    Eligible rollover distribution: An eligible rollover distribution is any distribution to a recipient that qualifies as an eligible rollover distribution under Section 402(c)(4) of the Code or any successor provision.

26. Twenty-sixth Change. The third sentence of Section 8.01 is amended by deleting the clause after (ii) and replacing it with:

the annuity rate based on such Participant's age when his benefits begin again and based on the mortality table specified in Section 417(e)(3)(ii) of the Code and the GATT Rate for the month before the date his benefits begin again.

27. Twenty-seventh Change. A new Section 8.03 is added to read as follows:

    8.03    Actuarial Adjustment for Employment After Age 70-1/2. The Accrued Benefit of a Participant who retires in a calendar year after the calendar year in which the Participant attains age 70-1/2 shall be actuarially increased to the extent required by Code section 401(a)(9)(C), even if the Participant is employed in section 203(a)(3)(B) service as described in Department of Labor regulation section 2530.203-3.

-7-

28. <u>Twenty-eighth Change</u>.  Effective as of August 5, 1997, the final phrase in Article XII, <u>Limitation of Assignment</u>, is amended to read as follows:

> , except to such extent as may be provided pursuant to a qualified domestic relations order, permitted under section 401(a)(13) of the Code (relating to offsets in the case of fiduciary breaches and other improper acts), or otherwise required by law.

29. <u>Twenty-ninth Change</u>.  Effective as of the date this Amendment is adopted, Section 13.01 is replaced with the following:

> 13.01  <u>Amendment</u>.  The Sponsor reserves the right at any time and from time to time, by action of its Board, to modify or amend the Plan in whole or in part.  In addition, the Vice President of Human Resources may amend the Plan to assure that it continues to qualify under the Code and to comply with all other applicable laws, to provide for the proper administration of the Plan, to clarify the terms of the Plan, and to remedy any inconsistencies, ambiguities and omissions, provided that no such amendment shall have a material impact on Plan benefit or costs.  Any amendment may be made retroactively if deemed necessary or appropriate by the Sponsor or the Vice President of Human Resources, to the extent permissible under law.

> The Plan shall not be modified or amended in such manner as would (1) cause or permit any portion of the Trust Fund to be used for or diverted to purposes other than for the exclusive benefit of Participants, Spouses, Retired Participants, and Former Participants, and their Beneficiaries, (2) cause or permit any portion of the Trust Fund to revert to, or become the property of any Employer, until all liabilities pursuant to the Plan are satisfied, (3) increase the duties or liabilities of the Trustee without its written consent, or (4) have the effect of reducing the amount of a Participant's Accrued Benefit which has been vested and nonforfeitable, determined as of the later of the date such amendment is adopted or becomes effective, except to the extent that such amendment or modification is necessary to qualify the Plan under Section 401 of the Code and to qualify the Trust as a tax-exempt trust under Section 501 of the Code.

30. <u>Thirtieth Change</u>.  Effective as of January 1, 1989, Section 14.05(a)(ii) is amended to read as follows:

> (ii)    such Employee's average compensation (as defined in Section 416 of the Code and the regulations thereunder) for the period of consecutive Plan Years (not exceeding 5) ending with the most recent Plan Year with respect to which the Plan is determined to be a Top Heavy Plan,

- 8 -

AMT000750

and during which such Employee had the greatest aggregate compensation (within the meaning of Section 416(c)(1)(D) of the Code).

31. <u>Thirty-first Change</u>.   Effective as of January 1, 1989, Section 14.06, <u>Top Heavy Limitation on Compensation Requirement</u>, is amended to read as follows:

For any Plan Year prior to January 1, 1989 with respect to which the Plan is determined to be a Top Heavy Plan, the annual Compensation (as defined in Section 1.18) of each Participant taken into account under the Plan shall not exceed the first $200,000 of such Compensation; provided, however, that as of January 1 of each calendar year, the dollar limitation determined by the Commissioner of Internal Revenue for that calendar year pursuant to Section 416(d)(2) of the Code shall be substituted for the immediately preceding dollar amount.

32. <u>Thirty-second Change</u>.   Effective as of December 12, 1994, a new Section 18.05 is added as follows:

18.05   <u>Special Rules Relating to Veterans' Reemployment Rights</u>. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Section 414(u) of the Code.

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to be duly executed in its name and on its behalf on this *30th* day of *November* , ~~1999.~~ 2001

National Railroad Passenger Corporation

By: _Lorraine A. G_____

- 9 -

AMT000751

Amendment V

to

Retirement Income Plan for Employees of
National Railroad Passenger Corporation

National Railroad Passenger Corporation wishes to amend the Retirement Income Plan for
Employees of National Railroad Passenger Corporation (the "Plan") in accordance with IRS Notice
2005-5 to reduce the cash-out limit applicable to participants from $5,000 to $1,000.

Pursuant to Section 13.01 of the Plan, Section 5.04 of the Plan is hereby amended, effective for
mandatory distributions made under the Plan on or after March 28, 2005, to add the following
second sentence (revisions are underlined):

> 5.04    Payment of Small Benefits.    In lieu of the form of retirement benefit
> provided under Article IV, the deferred vested benefit provided under Article VI, or
> the Spouse's Benefit provided under Article VII, the Retirement Plan Committee
> shall direct the Trustee to distribute the entire amount of such benefit to a Participant
> or his surviving Spouse upon the Participant's retirement or termination of
> employment with the Employer, or death, as the case may be, in one lump-sum
> Actuarial Equivalent payment of the present value of such benefit, provided that the
> lump-sum Actuarial Equivalent does not exceed $5,000.    With respect to a
> distribution to a Participant only, if the amount of the Participant's vested benefit is
> $1,000 or less, the Plan Administrator may pay such amount, in a lump sum, to the
> Participant without the written consent of the Participant. [...]

IN WITNESS WHEREOF, National Railroad Passenger Corporation has caused this instrument to
be duly executed in its name and on its behalf on this _2/_ day of _December_ 2005.

National Railroad Passenger Corporation

By: _Lorraine A. Green_
Name: _Lorraine Green_
Title: _VP Human Resources_

~BALT1:4152861.v1 |9/29/05
15164-18

HALL2 003429