**Exhibit 2**

ARTICLES OF INCORPORATION

OF

NATIONAL RAILROAD PASSENGER
CORPORATION

[Incorporated March 30, 1971]

As amended through February 1999

AMT005537

## ARTICLES OF INCORPORATION
### OF
## NATIONAL RAILROAD PASSENGER CORPORATION

We, the undersigned natural persons of the age of twenty-one years or more, and citizens of the United States of America, acting as incorporators appointed by the President of the United States under Section 302 of the Rail Passenger Service Act of 1970, Public Law 91-518, approved October 30, 1970, 84 Stat. 1327, and desiring to organize a corporation under said Act and under the District of Columbia Business Corporation Act (29 D.C. Code, Chapter 9), adopt, by direction of all the Incorporators so appointed, the following Articles of Incorporation for such Corporation.

### ARTICLE I

Section 1.01.  The name of the corporation is:

NATIONAL RAILROAD PASSENGER CORPORATION.

Section 1.02.  As used in these Articles--

(a)  "Passenger Service Act" means the Rail Passenger Service Act of 1970, Public Law 91-518, approved October 30, 1970, 84 Stat. 1327, including any amendments thereto as may be made from time to time.

(b)  "Corporation Act" means the District of Columbia Business Corporation Act, 29 D.C. Code, Chapter 9, including any amendments thereto as may be made from time to time.

(c)  "Incorporators" means the persons appointed by the President of the United States as incorporators pursuant to Section 302 of the Passenger Service Act.

(d)  Any term defined in Section 102 of the Passenger Service Act and not otherwise defined in these Articles shall have the meaning assigned to such term in such Section 102.

### ARTICLE II

Section 2.01.  The period of duration of the Corporation is perpetual.

### ARTICLE III

Section 3.01.  The purposes for which the Corporation is organized are--

(a)  To provide intercity rail passenger service and generally to further and carry out the purposes and achieve the objectives of the Passenger Service Act; and

AMT005538

(b) To do everything necessary, desirable, advisable or convenient for the furtherance and accomplishment of the purposes and the achievement of the objectives of the Passenger Service Act, and to do all other things incidental thereto or connected therewith, including without limitation, to acquire, own, use, convey and otherwise dispose of and deal in real and personal property or any interest therein.

Section 3.02.  The Corporation --

(a)  Shall have all of the powers set forth in the Passenger Service Act as the powers of the corporation authorized to be created by such Act; and

(b)  Shall have all of the powers set forth in the Corporation Act as the powers of a corporation organized under the Corporation Act.

## ARTICLE IV

Section 4.01.  The aggregate number of shares which the Corporation is authorized to issue is 88,160,000 consisting of 78,160,000 shares of Preferred Stock, par value $100 per share, and 10,000,000 shares of Common Stock, par value $10 per share.

Section 4.02(a).  The Preferred Stock may be divided into and issued in one or more series. All shares of Preferred Stock shall be of equal rank and shall be identical except in respect of the rate of dividend and in respect of the matters that may be fixed by the Board of Directors as hereinafter provided, and each share of each series shall be identical with all other shares of such series except as to the date from which dividends are cumulative. Subject to the provisions of Sections 4.02(b) to 4.02(g), inclusive, which provisions shall apply to all Preferred Stock, the Board of Directors hereby is expressly authorized to divide such Preferred Stock into one or more series and with respect to each such series prior to the issuance of any shares thereof to fix:

(i)  The number of shares of the series, which number the Board of Directors may (except where otherwise provided in the creation of the series) increase or decrease (but not below the number of shares thereof then outstanding).

(ii)  The dates at which dividends, if declared, shall be payable, and the dates from which dividends shall be cumulative.

(iii)  The price at and the terms and conditions on which shares of the series may be redeemed, subject to the provisions of Section 4.06 hereof.

(iv)  Sinking-fund provisions, if any, for the purchase or redemption of shares of the series.

(v)  Additional voting rights, if any, not inconsistent with those provided in Section 4.02(f) hereof.

- 3 -

AMT005539

The Board of Directors is authorized to adopt from time to time resolutions fixing with respect to each such series the matters described in clauses (i) through (v) above and such resolutions shall be effective when a statement thereof is filed pursuant to Section 908a of the Corporation Act.

Section 4.02(b). The holders of Preferred Stock of each series, in preference to the holders of Common Stock, shall be entitled to receive out of any funds legally available and when as declared by the Board of Directors dividends in cash at the rate fixed in these Articles for such series and no more, payable quarterly on the dates fixed for such series. Such dividends shall be cumulative, in the case of shares of each particular series, from and after the date or dates fixed with respect to such series. No dividends may be paid upon or declared or set apart for any of the Preferred Stock unless at the same time a like proportionate dividend for the same quarterly dividend period shall be paid upon or declared or set apart for all Preferred Stock of all series then issued and outstanding and entitled to receive such dividend.

Section 4.02(c). In no event so long as any Preferred Stock shall be outstanding shall any dividends be paid or declared or any distribution be made on the Common Stock, nor shall any Common Stock be purchased, retired or otherwise acquired by the Corporation, unless all accrued and unpaid dividends on Preferred Stock for the current quarterly dividend period shall have been declared and paid or a sum sufficient for payment thereof set apart.

Section 4.02(d). Subject to the terms of each series and to the provisions of Section 4.02(g) and Section 4.06, the Corporation may from time to time redeem all or any part of the Preferred Stock of any series at the time outstanding at the option of the Board of Directors at the applicable redemption price of such series fixed in accordance with the provisions of Section 4.02(a), together in each case with accrued and unpaid dividends to the redemption date.

Notice of every such redemption shall be mailed, postage prepaid, to the holders of record of the Preferred Stock to be redeemed at their respective addresses then appearing on the books of the Corporation, not less than thirty nor more than sixty days prior to the date fixed for redemption. At any time before or after notice has been given as above provided, the Corporation may deposit the aggregate redemption price of the shares of Preferred Stock to be redeemed with any bank or trust company having capital and surplus of more than $5,000,000, named in such notice, and direct that such amount be paid to the respective holders of the shares of Preferred Stock so to be redeemed, or surrender of the stock certificate or certificates held by such holders. Upon the making of such deposit and the giving of such notice, such holders shall cease to be shareholders with respect to such shares and shall have no interest in or claim against the Corporation with respect to such shares except only to receive such money from such bank or trust company without interest or to exercise, on or before the redemption date, any unexpired privileges of conversion. In case less than all of the outstanding shares of a series of Preferred Stock are to be redeemed, the Corporation shall select by lot the shares to be redeemed in such manner as shall be prescribed by the Board of Directors.

- 4 -

If the holders of shares of Preferred Stock which shall have been called for redemption, and which shall not have been converted on or before the redemption date, shall not, within six years after such deposit, claim the amount deposited for the redemption thereof, any such bank or trust company shall, upon demand, pay over to the Corporation such unclaimed amounts and thereupon such bank or trust company and the Corporation shall be relieved of all responsibility in respect thereof and to such holders.

Any shares of Preferred Stock which are redeemed by the Corporation pursuant to the provisions of this Section and any shares of Preferred Stock which are purchased or otherwise acquired by the Corporation, including any shares of Preferred Stock converted into shares of Common Stock, shall be cancelled and shall be restored to the status of authorized but unissued shares of Preferred Stock without serial designation.

Section 4.02(e).  The holders of Preferred Stock of any series shall, in case of liquidation, dissolution or winding up of the affairs of the Corporation, be entitled to receive in full out of the assets of the Corporation, including its capital, before any amount shall be paid or distributed among the holders of the Common Stock, an amount equal to $100 per share plus an amount equal to all dividends accrued and unpaid thereon to the date of payment of the amount due pursuant to such liquidation, dissolution or winding up of the affairs of the Corporation.  In case the net assets of the Corporation legally available therefor are insufficient to permit the payment upon all outstanding shares of Preferred Stock of the full preferential amount to which they are respectively entitled, then such net assets shall be distributed ratably upon outstanding shares of Preferred Stock in proportion to the full preferential amount to which each such share is entitled. After payment to the holders of Preferred Stock of the full preferential amounts as aforesaid, holders of Preferred Stock as such shall have no right or claim to any of the remaining assets of the Corporation.

The merger or consolidation of the Corporation into or with any other corporation, or the merger of any other corporation into it, or the sale, lease or conveyance of all or substantially all the property or business of the Corporation, shall not be deemed to be a dissolution, liquidation or winding up of the affairs of the Corporation for the purposes of this Section.

Section 4.02(f).  Except as otherwise provided in Section 4.07 hereof, the holders of Preferred Stock shall be entitled to ten votes for each share of such stock upon all matters presented to the shareholders; and, except as provided for herein or required by law, the holders of Preferred Stock and Common Stock shall vote together as one class on all matters.

Section 4.02(g).  Subject to and upon compliance with the provisions of this Section, shares of Preferred Stock of each series at any time outstanding shall be convertible, at the option of the holders thereof, at any time (or, in the case of shares called for redemption, then until and including the close of

- 5 -

AMT005541

business on the date fixed for redemption but not thereafter if payment of the redemption price has been duly provided for by the date fixed for redemption) into fully paid and nonassessable shares of Common Stock at the rate of ten shares of Common Stock for each share of Preferred Stock.

The holder of each share of Preferred Stock may exercise the conversion privilege in respect thereof by delivering to the Corporation or to any transfer agent of the Preferred Stock of such services the certificate for the share to be converted accompanied by written notice that the holder elects to convert such share. Conversion shall be deemed to have been effected immediately prior to the close of business on the date when such delivery is made, and such date is referred to in this Section as the "conversion date." On the conversion date or as promptly thereafter as practicable the Corporation shall issue and deliver to the holder of the shares of Preferred Stock surrendered for conversion, or on his written order, a certificate for the number of shares of Common Stock issuable upon the conversion of such shares of Preferred Stock. The person in whose name the stock certificate is to be issued shall be deemed to have become a holder of Common Stock of record on the conversion date. No adjustment shall be made for any dividends on such shares of Preferred Stock or for dividends on the shares of Common Stock issued on conversion.

The Corporation shall reserve and keep available out of the authorized and unissued shares of Common Stock the full number of shares of Common Stock into which all shares of Preferred Stock from time to time outstanding are convertible, but shares of Common Stock held in the treasury of the Corporation may in its discretion be delivered upon conversion of shares of Preferred stock.

Section 403. There are hereby created nine series of Preferred Stock having the following respective designations, and entitled to dividends at the following respective rates per share:

| Designation of Series | Dividend Rate Per Share |
|---|---|
| $6.00 Cumulative Convertible Preferred Stock | $ 6.00 per annum |
| $6.50 Cumulative Convertible Preferred Stock | $ 6.50 per annum |
| $7.00 Cumulative Convertible Preferred Stock | $ 7.00 per annum |
| $7.50 Cumulative Convertible Preferred Stock | $ 7.50 per annum |
| $8.00 Cumulative Convertible Preferred Stock | $ 8.00 per annum |

- 6 -

AMT005542

| Designation of Series | Dividend Rate Per Share |
|---|---|
| $8.50 Cumulative Convertible Preferred Stock | $ 8.50 per annum |
| $9.00 Cumulative Convertible Preferred Stock | $ 9.00 per annum |
| $9.50 Cumulative Convertible Preferred Stock | $ 9.50 per annum |
| $10.00 Cumulative Convertible Preferred Stock | $10.00 per annum |

Each such series shall have the relative rights and preferences set forth in Sections 4.02(b) to 4.02(g) hereof, inclusive. The Board of Directors may fix the number of shares and other relative rights and preferences of each such series in accordance with the provisions of Section 4.02(a) hereof.

Section 4.04.  The Common Stock shall be subject to the terms of the Preferred Stock and each series thereof.  Each share of Common Stock shall be equal to every other share of Common Stock.  Subject to the preferential rights of the Preferred Stock, the holders of Common Stock shall be entitled to such dividends as the Board of Directors may declare from funds legally available therefor. Except as provided in Section 4.07 hereof, the holders of shares of Common Stock shall be entitled to one vote for each share of such stock upon all matters presented to the shareholders; and except as provided for herein or required by law, the holders of Common Stock and Preferred Stock shall vote together as one class on all matters.

Section 4.05.  No holder of shares of any class of the Corporation now or hereafter outstanding shall have any preemptive right to purchase or have offered to him for purchase any shares or other securities of the Corporation, whether now or hereafter authorized.

Section 4.06.  The Corporation shall not redeem or repurchase any shares of any issue of its stock prior to November 1, 1975.  The conversion of Preferred Stock into Common Stock pursuant to Section 4.02(g) hereof and the surrender to the Corporation of Common Stock pursuant to Section 401(a)(3) of the Passenger Service Act shall not constitute a redemption or purchase of the Preferred Stock so converted or of the Common Stock so surrendered for purposes of this Section.

Section 4.07.  In all elections for Directors, the holders of Preferred Stock shall only be entitled to vote separately as a class for the Directors to be elected by the Preferred Stock and the holders of Common Stock shall only be entitled to vote separately as a class for the Directors to be elected by the Common Stock.

**AMT005543**

In all such elections each holder of Preferred Stock entitled to vote shall have the right to vote, in person or by proxy, the number of shares of Preferred Stock held by him for as many persons as there are Directors to be elected by the Preferred Stock, or to cumulate said shares and give one candidate as many votes as the number of Directors to be elected by the Preferred Stock multiplied by the number of his shares of Preferred Stock shall equal, or to distribute such votes on the same principle among any number of such candidates.

In all such elections each holder of Common Stock entitled to vote shall have the right to vote, in person or by proxy, the number of shares of Common Stock held by him for as many persons as there are Directors to be elected by the Common Stock, or to cumulate said shares and give one candidate as many votes as the number of Directors to be elected by the Common Stock multiplied by the number of his shares of Common Stock shall equal, or to distribute such votes on the same principle among any number of such candidates.

## ARTICLE V

Section 5.01.  The issuance, transfer, holding and ownership of shares of the Corporation shall be subject to the limitations and restrictions thereon set forth in the Passenger Service Act; provided, however, that for the purposes of such limitations and restrictions, shares of the Corporation the holder of record of which is (i) a commercial bank or trust company subject to regulation or examination under the laws of the United States or any State of the United States or the nominee of any such bank or trust company, (ii) a securities broker or dealer having its principal place of business in the United States and registered in accordance with Section 15 of the Securities Exchange Act of 1934 or the nominee of any such broker or dealer, or (iii) a clearing corporation, as defined in Section 8-102 of the District of Columbia Uniform Commercial Code (D.C. Code § 28:8-102), or the nominee of any such clearing corporation, shall not be deemed to be owned by such holder of record if such shares are bene-ficially owned by and are held subject to the direction or control of a person or persons other than such bank, trust company, broker, dealer, clearing corporation or nominee.

Section 5.02.  The Board of Directors may by By-laws establish or authorize such procedures consistent with the provisions of applicable law and of these Articles relating to the issuance, transfer, holding, ownership and voting of shares of the Corporation as the Board of Directors deems necessary or appropri-ate to carry out the provisions of the Passenger Service Act and these Articles.

Section 5.03.  Any holder of record of one or more shares of the Corporation shall, regardless of the percentage of outstanding shares of the Corporation held by him, have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, the Corporation's record of shareholders and to make extracts therefrom.

AMT005544

Section 5.04.  Nothing in these Articles shall be deemed to render invalid any action taken by vote of the shareholders of the Corporation on the ground that in the taking of such action shares were voted in violation of the provisions of these Articles or of any By-law, rule or regulation adopted by virtue of Section 5.02 of the Articles unless the Corporation at the time of such vote had actual knowledge that the voting of such shares would be in violation thereof.

## ARTICLE VI

Section 6.01.  The minimum amount of capital with which the Corporation shall commence business shall be not less than $1,000.

## ARTICLE VII

Section 7.01.  The Board of Directors of the Corporation shall consist of nine persons who are citizens of the United States, as follows:

(a)  The Secretary of Transportation, ex officio.  The Secretary of Transportation may be represented at meetings of the Board by his deputy, the Administrator of the Federal Railroad Administration or the General Counsel of the Department of Transportation.

(b)  The President of the Corporation, who shall serve as Chairman.

(c)  Three members appointed by the President of the United States, by and with the advice and consent of the Senate, in accordance with Section 303 (a)(1)(C) of the Passenger Service Act.

(d)  Two members nominated by commuter authorities and selected by the President of the United States in accordance with Section 303(a)(1)(D) of the Passenger Service Act.

(e)  Two members selected annually the the preferred stockholders of the Corporation.

Five members shall constitute a quorum for the purpose of conducting the business of the Board.

Section 7.02.  Vacancies in the Board of Directors shall be filled in accordance with Section 303(a)(3) of the Passenger Service Act.

Section 7.03.  Any Director may also serve the Corporation in any other capacity and shall receive for such services such remuneration as shall be authorized by the Board of Directors.

Section 7.04. Funds of or belonging to the Corporation, and any other funds that may be available therefor, may be used to pay or reimburse any Incorporator, Director or other person for reasonable expenses (including compensation

- 9 -

AMT005545

for services) and obligations authorized or approved by the Incorporators or the
Board of Directors heretofore or hereafter incurred in connection with the ini-
tial organization and operation of the Corporation and activities and
transactions incident thereto.

Section 7.05.  The Incorporators, Directors and officers of the Corporation,
as well as other persons specified in the By-laws, shall have such rights of
indemnification by the Corporation, including provision for insurance, as are
provided in or authorized by the By-laws, without prejudice to any other rights
of indemnification or other rights to which any such persons may be entitled.

Section 7.06.  Directors and officers shall have such qualifications as are
set forth in the Passenger Service Act.

ARTICLE VIII

Section 8.01.  The address, including street and number, of the initial
registered office of the Corporation is:

> 918 Sixteenth Street, N.W.
> c/o C T Corporation System
> Washington, DC  20006

and the name of its initial registered agent at such address is:

> C T Corporation System

ARTICLE IX

Section 9.01.  The number of Directors constituting the initial Board of
Directors of the Corporation is eight.  The names and addresses, including
street and number, if any, of the persons who are to serve as Directors until
April 29, 1971 and until their successors are appointed are:

| NAME | ADDRESS |
|---|---|
| Catherine May Bedell | 4101 Cathedral Avenue, N.W.<br>Washington, DC  20016 |
| Frank S. Besson, Jr. | 1116 Collingwood Road<br>Alexandria, VA  22308 |
| David E. Bradshaw | 230 North Michigan Avenue<br>Chicago, IL  60601 |
| John J. Gilhooley | 280 Park Avenue<br>New York, NY  10017 |

- 10 -

AMT005546

| NAME | ADDRESS |
|------|---------|
| David W. Kendall | 1881 First National Building<br>Detroit, MI 48226 |
| Arthur D. Lewis | 1 Battery Park Plaza<br>New York, NY 10004 |
| Charles Luna | 15401 Detroit Avenue<br>Lakewood, OH 44107 |
| John P. Olsson | 8023 Fenway Road<br>Bethesda, MD 20034 |

## ARTICLE X

Section 10.01.  The name and address, including street and number, any any, of each incorporator is:

| NAME | ADDRESS |
|------|---------|
| Catherine May Bedell | 4101 Cathedral Avenue, N.W.<br>Washington, DC 20016 |
| Frank S. Besson, Jr. | 1116 Collingwood Road<br>Alexandria, VA 22308 |
| David E. Bradshaw | 230 North Michigan Avenue<br>Chicago, IL 60601 |
| John J. Gilhooley | 280 Park Avenue<br>New York, NY 10017 |
| David W. Kendall | 1881 First National Building<br>Detroit, MI 48226 |
| Arthur D. Lewis | 1 Battery Park Plaza<br>New York, NY 10004 |
| Charles Luna | 15401 Detroit Avenue<br>Lakewood, OH 44107 |
| John P. Olsson | 8023 Fenway Road<br>Bethesda, MD 20034 |

## ARTICLE XI

Section 11.01.  The Corporation reserves the right to amend these Articles in the manner now or hereafter prescribed by law; provided that--

- 11 -

AMT005547

(a)  No amendment before the acceptance by the Board of Directors of any subscription to shares of the Corporation's stock shall become effective unless it has been approved by the President of the United States.

(b)  After acceptance by the Board of Directors of any subscription to shares of the Corporation's stock, no amendment shall become effective unless notice of the meeting of the Board of Directors called for the purpose of considering such amendment, including a statement of the proposed amendment or of the substance thereof, shall have been mailed, telegraphed or delivered to each Director and a copy thereof shall have been mailed, telegraphed or delivered to the President of the United States, and any other person or persons whom the President of the United States may have designated from time to time, at least ten days before the date of such meeting.

Dated March 17, 1971

/s/ Catherine May Bedell
CATHERINE MAY BEDELL


/s/ Frank S. Besson, Jr.
FRANK S. BESSON, JR.


/s/ David E. Bradshaw
DAVID E. BRADSHAW


/s/ John J. Gilhooley
JOHN J. GILHOOLEY


/s/ David W. Kendall
DAVID W. KENDALL


/s/ Arthur D. Lewis
ARTHUR D. LEWIS


- 12 -

AMT005548

/s/ Charles Luna
CHARLES LUNA

/s/ John P. Olsson
JOHN P. OLSSON

INCORPORATORS

The foregoing Articles of Incorporation of National Railroad Passenger Corporation are hereby approved pursuant to Section 302 of the Rail Passenger Service Act of 1970 this 26th day of March, 1971.

/s/ Richard Nixon
PRESIDENT OF THE UNITED STATES

- 13 -

AMT005549

**<u>Exhibit 3</u>**

**CONFIDENTIAL**

Sept. 14, 2001

AMT015058

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

National Railroad Passenger Corporation<br>
Board of Directors<br>
Adopted September 14, 2001

AMT015059

CONFIDENTIAL

### Amtrak Board of Directors
### Agenda Item Executive Summary

**Title**:  Amended Management Voluntary Early Retirement Plan

**Background**:

As part of Amtrak's efforts to streamline its organization, eliminate inefficiencies and reduce costs, the Board approved a Voluntary Early Retirement Plan (VERP) at its meeting on July 26, 2001.  The VERP as approved had two main components: (i) five years of age added to Amtrak's pension formula; and (ii) a full supplement to the Railroad Retirement benefits that would otherwise be available until age 65.  Management planned to fund the VERP benefits through the accumulated surplus in Amtrak's Retirement Income Plan Trust (the "Fund").  Because a portion of the pension funds in this Fund are invested in the stock market and the market has experienced a recent downturn, before proceeding further with the VERP Senior Management requested an updated actuarial analysis to ensure that the integrity of the pension fund is preserved.

The updated analysis showed that if Management proceeded with the plan as originally formulated, the surplus in the Fund would be depleted and the company would be required to make a significant contribution to the Fund as early as 2003.  According to the actuary, as a result of a combination of market conditions, additional accrued liabilities and withdrawals, the forecasted surplus in the Fund has declined from approximately $42 million in December 2000 to $18.6 million on August 31, 2001.[1]  While Management expects the Fund to continue to grow over the long term, it has nevertheless determined that it would be prudent to offer a more modest VERP than originally envisioned and maintain a surplus in the Fund.  Consequently, Management proposes to eliminate the second component of the plan, the more costly Railroad Retirement supplement, and instead offer a one-time lump sum payment of $15,000.

The revised VERP would provide that any management employee 55 years of age or older with 10 or more years of Amtrak service who files retirement papers between September 15 and October 31, 2001 will receive the following retirement package:

- Five years of age added to the pension formula; and
- A one-time lump sum payment of $15,000.00

---

[1] The reduction of what appears to be $23.3 million accounts for approximately $3.1 million of pension payments, $7.5 million of accruals and $11.7 million of investment loss.  Our actuary indicates that Amtrak's investment return over the last five calendar years was 74% or 12% per annum compounded annually.

AMT015060

**CONFIDENTIAL**

In order to receive benefits, an employee must elect to retire from Amtrak during the window period and sign a release agreement. The employee must also agree not to exercise seniority rights back into an agreement-covered position.

Based on current actuarial forecasts and the anticipated costs of this amended plan, the Fund will show at least a $10 million surplus and Amtrak will therefore continue to enjoy a contribution holiday for several more years. Management estimates that participation in the VERP will be somewhere between 50 to 60 percent, down from 75% expected for the original plan. At these levels of participation, the VERP as revised is estimated to cost approximately $ 7.2 million at 50 percent participation and $8.6 million at 60 percent.

**Recommended Action**:
Management recommends that the Board approve the attached resolutions authorizing an amendment to the Voluntary Early Retirement Plan as set forth above.

**AMT015061**

CONFIDENTIAL

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

Approved:

_____
Board Member

September 14, 2001
Date

AMT015062

CONFIDENTIAL

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

Approved:

_____          September 14, 2001
Board Member                              Date

AMT015063

CONFIDENTIAL

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

Approved:

Board Member

September 14, 2001
Date

AMT015064

Case 1:06-cv-01539-GK   Document 20-5   Filed 01/16/2007   Page 23 of 110

**CONFIDENTIAL**

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.


Approved:


_____
**Board Member**

<u>September 14, 2001</u>
Date



**AMT015065**

CONFIDENTIAL

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan
that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended
benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the
terms of proposed amended Voluntary Early Retirement Plan which has been
fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the
attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is
authorized to take all necessary steps to implement the terms of the plan
described in the attached Executive Summary.

Approved:

_____
Board Member

September 14, 2001
Date

AMT015066

09/14/2001  15:47     601-485-1911                CITY OF MDN                              PAGE  01

CONFIDENTIAL

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.


Approved:


Board Member                                              September 14, 2001
                                                          Date


AMT015067

**Exhibit 4**

# Piper Rudnick

6225 Smith Avenue
Baltimore, Maryland 21209-3600
*main* 410.580.3000 *fax* 410.580.3001

JOHN R. WELLSCHLAGER
john.wellschlager@piperrudnick.com
*direct* 410.580.4281

April 7, 2004

**_UPS NEXT DAY AIR_**

Eli Gottesdiener
Gottesdiener Law Firm, PLLC
176 Seeley Street
Suite 8D
Brooklyn, New York  11218-1246

      Re:    Wade F. Hall, et al. v. National Railroad Passenger Corporation, et al.
              <u>Case No. 1:03CV01764</u>

Dear Eli:

      Enclosed are the Amtrak Board Resolutions from January 1992 through December 2003, as they were kept in the ordinary course of business.  They are Bates labeled AMT014308 through AMT015234.  I have removed a limited number of Resolutions on privilege grounds (17, to be exact), and I will be supplementing our privilege log accordingly.

      Please call me with any questions.

                    Very truly yours,

                    John R. Wellschlager

/des
Enclosures
cc:    Desmond McIlwain
       Mark Muedeking, Esquire

**<u>Exhibit 5</u>**

December 2000

COMMITTEE 02679

## RESOLUTIONS RELATING TO COMPENSATION FOR MEMBERS OF THE BOARD OF DIRECTORS

WHEREAS, Section 4.10 of the Bylaws of the Corporation provides that from time to time the Board of Directors shall specify by resolution the compensation that members of the Board shall receive for time spent in the performance of duties; therefore, be it

RESOLVED, That members of the Board of Directors, not employed by the federal government or not otherwise employed by the Corporation (as a full-time employee), shall receive $600 per diem when engaged in the actual performance of duties; and

FURTHER RESOLVED, That "performance of duties" includes participation in Board meetings and Board committee meetings; participation in conferences or meetings with management regarding corporate business; and participation in other conferences, meetings or events regarding corporate business as requested by the Chairman of the Board or the President and Chief Executive Officer. "Performance of duties" does not include travel time, casual visits to corporate headquarters or other facilities or personal travel. Questions relating to the definition of "performance of duties" shall be resolved by the Chairman of the Board, subject to Board review; and

FURTHER RESOLVED, That members of the Board of Directors, not employed by the federal government, shall be eligible to receive, at the Corporation's expense, the healthcare benefits available to members of the Corporation's Management Committee; and

FURTHER RESOLVED, That Section 4.10 of the Bylaws of the Corporation is amended to include the following language: "Compensation for members of the Board of Directors may also include healthcare benefits and other insurance;" and

FURTHER RESOLVED, That these resolutions shall be effective January 1, 2001.

National Railroad Passenger Corporation
Board of Directors
Adopted December 14, 2000

AMENDED AND RESTATED BYLAWS

of

NATIONAL RAILROAD PASSENGER CORPORATION

(Updated Through December 2000)

COMMITTEE 02681

## TABLE OF CONTENTS

(This Table of Contents is not a part of the Bylaws.)

Page

ARTICLE I        General Provisions
                 Section 1.01        Rules of Construction        1

ARTICLE II       Offices
                 Section 2.01        Registered Office        2
                 Section 2.02        Other Offices        2

ARTICLE III      Shareholders
                 Section 3.01        Meetings        3
                 Section 3.02        Notice of Meetings        3
                 Section 3.03        Adjournments        3
                 Section 3.04        Notice or Waiver of Notice        4
                 Section 3.05        Quorum        4
                 Section 3.06        Organization        5
                 Section 3.07        Order of Business        5
                 Section 3.08        Voting List – Proxies        5
                 Section 3.09        Inspectors of Votes        7
                 Section 3.10        Appointment of Independent        8
                                     Public Accountants

ARTICLE IV       Board of Directors
                 Section 4.01        General Powers        9
                 Section 4.02        Number, Term of Office and        9
                                     Qualifications
                 Section 4.03        Organization of Directors'        9
                                     Meetings

COMMITTEE 02682

|  |  |  | Page |
|---|---|---|---|
| | Section 4.04 | Resignations | 10 |
| | Section 4.05 | Regular Meetings | 10 |
| | Section 4.06 | Special Meetings | 10 |
| | Section 4.07 | Conference Telephone Meeting | 11 |
| | Section 4.08 | Quorum, Manner of Acting and Adjournment | 11 |
| | Section 4.09 | Filling Vacancies on Board | 11 |
| | Section 4.10 | Compensation | 11 |
| | Section 4.11 | Outside Interests | 12 |
| | Section 4.12 | Unanimous Written Consent | 12 |
| ARTICLE V | Committees | | |
| | Section 5.01 | Executive Committee | 13 |
| | Section 5.02 | Outside Directors Committee | 13 |
| | Section 5.03 | Committees in General | 13 |
| | Section 5.04 | Committee Procedure | 14 |
| ARTICLE VI | Officers | | |
| | Section 6.01 | Officers | 16 |
| | Section 6.02 | Election, Term of Office and Qualifications | 16 |
| | Section 6.03 | Removal | 17 |
| | Section 6.04 | Resignation | 17 |
| | Section 6.05 | Vacancies | 17 |
| | Section 6.06 | The Chairman and the Vice Chairman of the Board | 17 |
| | Section 6.07 | The President | 18 |
| | Section 6.08 | The Executive Vice Presidents and Vice Presidents | 19 |
| | Section 6.09 | The Secretary | 19 |
| | Section 6.10 | The Chief Financial Officer | 20 |

COMMITTEE 02683

Page

| | | | |
|---|---|---|---|
| | Section 6.11 | The Treasurer | 20 |
| | Section 6.12 | The Controller | 21 |
| | Section 6.13 | Compensation | 21 |
| ARTICLE VII | Shares and Their Transfer | | |
| | Section 7.01 | Certificates for Shares | 22 |
| | Section 7.02 | Transfer of Stock | 22 |
| | Section 7.03 | Substituted Certificates | 22 |
| | Section 7.04 | Regulations | 23 |
| | Section 7.05 | Closing Transfer Books-Fixing Record Date, Etc. | 23 |
| ARTICLE VIII | Seal | | |
| | Section 8.01 | Seal | 25 |
| ARTICLE IX | Indemnification and Insurance | | |
| | Section 9.01 | Indemnification | 26 |
| | Section 9.02 | Liability Insurance | 29 |
| ARTICLE X | Amendment of Bylaws | | |
| | Section 10.01 | Amendment of Bylaws | 30 |

COMMITTEE 02684

## BYLAWS

### of

## NATIONAL RAILROAD PASSENGER CORPORATION

### ARTICLE I

### General Provisions

Section 1.01. Rules of Construction.

For the purposes of these Bylaws, words importing the masculine gender include the feminine as well.

The word "person" includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.

COMMITTEE 02685

# ARTICLE II

Offices

Section 2.01. Registered Office.

The registered office of the Corporation shall be in the District of Columbia.

Section 2.02. Other Offices.

The Corporation may also have offices at such other places, either within or without the District of Columbia, as the Board of Directors may from time to time authorize.

2

COMMITTEE 02686

# ARTICLE III

## Shareholders

### Section 3.01. Place of Meetings.

Meetings of the shareholders shall be held at the Corporation's principal place of business in the District of Columbia or at such other place within or without the District of Columbia as may be designated in the notice of the meeting.

### Section 3.02. Notice of Meetings.

Meetings of the shareholders may be called by the Board of Directors, the Chairman of the Board, the President, the Secretary, or the holders of not less than one-fifth of all of the shares of the Corporation outstanding and entitled to vote at such meeting. Upon request in writing delivered either in person or by registered mail to the President or Secretary of the Corporation by any person or persons entitled to call a meeting of shareholders, such officer shall cause to be given, to the shareholders entitled thereto, notice of a meeting to be held not less than ten nor more than fifty days after the receipt of such request, as such officer shall fix. If such notice is not given within twenty days after the delivery or mailing of such request, the person or persons calling the meeting may fix the time of the meeting and give, or cause to be given, notice in the manner hereinafter provided.

### Section 3.03. Adjournments.

Any meeting of shareholders may be adjourned from time to time by a majority of the votes of the shareholders present in person or represented by proxy at the meeting and entitled to vote thereat, whether or not a quorum be present.

3

### Section 3.04. Notice or Waiver of Notice.

Except as hereinafter otherwise provided, notice of each meeting of shareholders, shall be given to each shareholder of record entitled to vote at such meeting by delivering a written or printed notice thereof to him personally or by mailing or telegraphing such notice to him, charges prepaid, addressed to him at his address as it appears on the books of the Corporation, not less than ten days and not more than fifty days before the day on which the meeting is to be held. Every such notice shall state the place, day and hour of the meeting and the purpose of the meeting. Attendance by any shareholder, in person or by proxy, at any meeting of which he is entitled to notice shall constitute a waiver by him of notice of such meeting except where such attendance is for the express purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened. A written waiver of notice of any meeting signed by a person entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to giving of such notice to such person. When a meeting is adjourned, it shall not be necessary, except when required by law, to give any notice of the adjourned meeting or of the business to be transacted thereat otherwise than by announcement at the meeting at which such adjournment is taken.

### Section 3.05. Quorum.

A shareholders' meeting shall not be organized for the transaction of business unless a quorum is present. The presence in person or by proxy of the holders of a

4

majority of the outstanding shares of the Corporation entitled to vote shall be necessary to, and shall constitute, a quorum; provided that if a quorum is found to exist at any duly organized meeting, a quorum shall be deemed to continue to exist until final adjournment of such meeting, whether on the same day or a later day, notwithstanding the withdrawal of the holders of enough shares to leave less than the number necessary to constitute a quorum.

Section 3.06. Organization.

At each meeting of the shareholders a chairman chosen by a majority of the votes of the shareholders present in person or represented by proxy at the meeting and entitled to vote thereat shall act as chairman of such meeting and preside thereat.  The Secretary of the Corporation, or in his absence, an Assistant Secretary of the Corporation, shall act as Secretary at all meetings of the shareholders.  In the absence from any such meeting of the Secretary and all the Assistant Secretaries, the chairman of the meeting may appoint any person to act as Secretary of the meeting.

Section 3.07. Order of Business.

The order of business to be followed at any meeting at which a quorum is present shall be as established by the chairman of the meeting, unless objection thereto shall be made by a shareholder, in which event the order of business shall be established by a majority of the votes of the shareholders present in person or represented by proxy at the meeting and entitled to vote thereat.

Section 3.08. Voting List--Proxies.

(a) At least five days before each meeting of shareholders, the Secretary of the Corporation shall make, or cause to be made, a complete list of the shareholders entitled to vote at the meeting arranged in alphabetical order as to each class of stock

5

with the address of and the number of shares held by each. Such list shall be kept on file at the principal place of business or at the registered office of the Corporation or at the office of its transfer agent or registrar, and shall be subject to inspection, for any proper purpose, at any time during usual business hours, by any shareholder entitled to vote.

(b) Any shareholder may vote either in person or by proxy, provided that a proxy shall not be valid if granted to a person who under applicable law may not own shares of the class covered by such proxy. A proxy may authorize the casting of votes in any manner authorized by the Articles of Incorporation, as the holder of such proxy may determine in his discretion, or may require that such votes be cast in a particular manner. Every proxy shall be executed in writing by the shareholder or by his duly authorized attorney-in-fact and filed with the Secretary or with the Inspectors of Votes. No proxy shall be valid after eleven months from the date of its execution, unless a longer period is expressly provided therein. Every proxy shall be revocable at the pleasure of the person executing it or his personal representatives or assigns; provided that the parties to a valid pledge or to an executory contract of sale may agree in writing as to which of them shall vote the stock pledged or sold until the contract of pledge or sale is fully executed and the shares transferred on the stock records of the Corporation.

(c) Upon the demand of any shareholder, the vote upon any matter shall be by ballot. On a vote by ballot, each ballot shall be signed by the shareholder voting or by the holder of his proxy, and shall state the class and number of shares voted. At all meetings of the shareholders, all matters properly submitted to the shareholders (except matters the manner of deciding which is especially regulated by law, the Articles of Incorporation or these Bylaws) shall be decided by a majority of the votes of the shareholders of the Corporation present in person or represented by proxy and entitled to vote at such meeting. Shares owned by the Corporation shall not be voted,

6

directly or indirectly, and shall not be counted in determining the existence of a quorum or in determining the total number of outstanding shares for voting purposes.

Section 3.09. Inspectors of Votes.

In advance of any meeting of shareholders the Board of Directors may appoint three Inspectors of Votes to act at such meeting and at any adjournment or adjournments thereof. If such Inspectors are not so appointed, the chairman of any such meeting may, and on the request of any shareholder or his proxy shall, make such appointments. No such Inspector need be a shareholder of the Corporation.

In case any person appointed as such Inspector shall fail or refuse to act, the vacancy may be filled by appointment made by the Board of Directors in advance of the meeting; or if not so filled, such vacancy may, and on request of any shareholder or his proxy shall, be filled at the meeting by the chairman thereof.

The decision, act or certificate of a majority of the Inspectors shall be effective in all respects as the decision, act or certificate of all.

The Inspectors of Votes, or if no Inspectors are appointed, the Secretary of the meeting, shall determine the number of shares outstanding, the voting power of each, the shares represented at the meeting, the existence of a quorum, the authenticity, validity and effect of proxies; receive votes, ballots, assents or consents; hear and determine all challenges and questions in any way arising in connection with the vote; count and tabulate all votes, assents and consents; determine and announce the result of the voting; and do such acts as shall be proper to conduct the election or vote with fairness to all shareholders. On request, the Inspectors, or the Secretary of the meeting, as the case may be, shall make a report in writing of any challenge, question or matter determined by them and shall make and execute a certificate of any fact found by them. The certificate of the Inspectors, or the Secretary of the meeting, as the

7

COMMITTEE 02691

case may be, shall be prima facie evidence of the facts stated therein and of the vote as certified.

Section 3.10. Appointment of Independent Public Accountants.

Once each year on such day as shall be determined by the Board of Directors, the Board, after receiving a recommendation from the Audit Committee or other appropriate committee if one has been duly appointed, shall appoint independent public accountants for the purpose of auditing and certifying the annual financial statements of the Corporation for its current fiscal year.

COMMITTEE 02692

## ARTICLE IV

### Board of Directors

#### Section 4.01. General Powers.

The affairs and business of the Corporation shall be managed by the Board of Directors.

#### Section 4.02. Number, Term of Office and Qualifications.

The Board of Directors shall consist of the number of persons specified for the Board of Directors in 49 U.S.C. § 24302, as amended or superseded by successor statutory provisions from time to time, according to the method of appointment or selection and for the term of office set forth in the applicable statute(s). As specified in 49 U.S.C. § 24302, the President of the Corporation shall be a Director ex officio. For all purposes of these Bylaws and applicable law, including the D.C. Business Corporation Act, the President shall be a Director like any other Director except that he shall have no power to vote as a Director, nor shall his presence be counted toward determination of whether a quorum exists at a meeting.

#### Section 4.03. Organization of Directors' Meetings.

At all meetings of the Board of Directors the Chairman of the Board, or, in his absence, the Vice Chairman of the Board, or in the absence of the Chairman of the Board and the Vice Chairman of the Board, a chairman chosen by a majority of the Directors with voting powers present shall act as chairman of such meeting and preside thereat. The Secretary, or in his absence, an Assistant Secretary, shall act as Secretary at all meetings of the Board. In the absence from any such meeting of the Secretary and all the Assistant Secretaries, the Chairman may appoint any person to act as Secretary of the meeting.

9

COMMITTEE 02693

Section 4.04. Resignations.

Any Director of the Corporation may resign at any time by giving written notice of his resignation to the Corporation. Such resignation shall take effect at the time received unless another time is specified therein. The acceptance of such resignation shall not be necessary to make it effective.

Section 4.05. Regular Meetings.

Regular meetings of the Board of Directors shall be held within the District of Columbia or elsewhere at such regular intervals as may be fixed by resolution adopted by a majority of the number of Directors then in office. Notice of each regularly scheduled meeting shall not be required to be given as long as the meeting is held on the dates specified in the meeting resolution.

Section 4.06. Special Meetings.

Special meetings of the Board of Directors shall be held whenever called by the Chairman of the Board, the President or any two of the Directors. Notice of each such meeting shall be sent to each Director at his address appearing on the books of the Corporation or supplied by him to the Corporation for the purpose of notice, at least two days before the day on which the meeting is to be held, by facsimile, receipt confirmed, or delivered to him personally or by recognized overnight courier not later than the day before the day on which the meeting is to be held. Every such notice shall specify the place, day and hour of the meeting. A waiver of notice of any meeting in writing signed by the Director entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. Attendance of a Director at any meeting shall constitute a waiver by him of notice of such meeting except where a Director attends for the express purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened.

10

Section 4.07. Conference Telephone Meetings.

Notwithstanding the provisions of Section 5 of Appendix A hereto, any or all Directors may participate in a meeting of the Board of Directors or a Committee of the Board by means of conference telephone or by any means of communication by which all persons participating in the meeting are able to hear one another, and such participation shall constitute presence in person at the meeting.

Section 4.08. Quorum, Manner of Acting and Adjournment.

A majority of the total number of Directors with voting powers fixed by statute shall constitute a quorum for the purpose of conducting the business of the Board. Except as otherwise specifically provided by statute, the Articles of Incorporation or these Bylaws, the acts of a majority of the Directors with voting powers present at a meeting at which a quorum exists shall be the acts of the Board of Directors. A majority of the Directors with voting powers present at any meeting may adjourn the meeting from time to time. Each Director other than the President shall be entitled to one vote.

Section 4.09. Filling Vacancies on Board.

Vacancies shall be filled in the same manner as in the case of the original selections.

Section 4.10. Compensation.

Each of the Directors, other than any employed by the Federal Government or the Corporation itself, shall receive compensation at the rate so specified from time to time by the Board of Directors by resolution for time spent engaged in the performance of duties. Compensation for members of the Board of Directors may also include healthcare benefits and other insurance. In addition, each Director shall be reimbursed

11

COMMITTEE 02695

for necessary business travel and subsistence expenses incurred in attending meetings of the Board or of a duly constituted committee of the Board. Each Director shall also be reimbursed for secretarial or professional staff support which is reasonably required, in accordance with policies established by the Board.

Section 4.11. Outside Interests.

The Board of Directors shall from time to time adopt appropriate rules and regulations providing for the disclosure and, if necessary, resolution of any direct or indirect financial or employment interest or relationships of Directors, officers and key employees and members of their immediate families in or with any entities with which the Corporation does or contemplates doing business and governing the conduct of Directors, officers and key employees with respect to contracts and transactions with such entities.

Section 4.12. Unanimous Written Consent.

Any action required or permitted to be taken at a meeting of the Board of Directors, or the action of any committee of the Board, may be taken without a meeting if a consent in writing setting forth the action so taken shall be signed by all of the members of the Board of Directors with voting power, or committee thereof, then in office, and the written consent is filed with the minutes of proceedings of the Board of Directors or committee.

12

COMMITTEE 02696

## ARTICLE V

## Committees

Section 5.01. <u>Executive Committee.</u>

The Board of Directors, by resolution adopted by a majority of the Directors with voting powers then in office may designate three or more Directors to constitute an Executive Committee, to have and exercise, consistent with applicable law, all of the authority of the Board of Directors in the management of the business and affairs of the Corporation in between meetings of the Board of Directors. One of the members of the Executive Committee shall be the Secretary of Transportation or his designee. The Executive Committee may authorize the seal of the Corporation to be affixed to all papers which may require it.

Section 5.02. Outside Directors' Committee.

The Board of Directors, by resolution adopted by a majority of the total number of Directors with voting powers then in office, may designate all of the Directors with voting powers to constitute an Outside Directors Committee. This Committee shall have and may exercise such authority of the Board of Directors between meetings of the Board of Directors as the resolution creating the Committee shall specify.

Section 5.03. Committees in General.

The Board of Directors may appoint such other committees as it may deem appropriate to perform such functions as it may designate. Each such committee shall consist of not less than three Directors with voting powers then in office, and, other than the Outside Directors' Committee, may also include the President as a non-voting member.

13

COMMITTEE 02697

## ARTICLE VI

### Officers

### Section 6.01. Officers.

The officers of the Corporation shall be a President and such Executive Vice Presidents and Vice Presidents as may from time to time be elected by the Board of Directors, a Secretary and a Treasurer. The Board of Directors may elect such other officers, including assistant officers, as it may deem necessary, each of whom shall have such authority and perform such duties as the Board of Directors may from time to time determine. The officers of the Board shall be a Chairman and a Vice Chairman.

### Section 6.02. Election, Term of Office and Qualifications.

Officers of the Corporation shall be elected by the Board of Directors to serve at the pleasure of the Board. Each officer shall hold his office until his successor shall have been duly elected and qualified in his stead or until he shall resign or shall have been removed in the manner hereinafter provided. No individual other than a citizen of the United States shall be an officer of the Corporation. No officer may have any employment or financial relationship with any rail carrier during the time of his employment by the Corporation, except that the holding of securities issued by a rail carrier shall not be deemed to be violative of this prohibition, provided that the officer who holds such securities recuses himself from any decisions which bear directly on such rail carrier and makes full public disclosure of such holdings. Each officer who holds rail carrier securities shall, upon notice to the President of the Corporation and other officers, delegate to another officer the responsibility for exercising powers of his office in connection with any matter bearing directly on rail carriers whose securities he holds. Any two or more offices may be held by the same person.

16

Section 6.03. Removal.

Any officer elected by the Board of Directors may be removed by the affirmative vote of a majority of the number of Directors with voting powers then in office. The Board of Directors shall consult with the President to receive his recommendation with respect to proposed terminations of officers other than the President. In addition, any officer of the Corporation may be removed by the President, whenever in his judgment the best interests of the Corporation will be served thereby, after consultation with the Executive Committee (or after consultation with the Chairman and the Vice Chairman, in the event that the Board has not designated an Executive Committee or a meeting of the Executive Committee cannot reasonably be convened promptly enough to consider the proposed removal).

Section 6.04. Resignation.

Any officer of the Corporation may resign at any time by giving written notice of his resignation to the Corporation. Such resignation shall take effect at the time specified therein, if any, and if no time is specified therein shall take effect when given. The acceptance of such a resignation shall not be necessary to make it effective.

Section 6.05. Vacancies.

Any vacancy in any office because of death, resignation, removal, disqualification or any other cause may be filled by the Board of Directors at any regular or special meeting thereof.

Section 6.06. The Chairman and the Vice Chairman of the Board.

The Board of Directors, by a vote of a majority of all members with voting powers present, shall elect annually from among its members a Chairman of the Board. The Chairman shall serve in such capacity at the pleasure of the Board or until a successor

17

COMMITTEE 02701

has been duly elected and qualified, or until he shall resign or otherwise vacate the office or Board membership. The Chairman shall, if present, preside at all meetings of the Board. He shall appoint members to committees of the Board with the Board concurrence. He shall advise and consult with the other members of the Board of Directors on matters of policy. In addition, the Chairman shall carry out all functions required of him by these Bylaws and shall perform such other duties as from time to time may be assigned to him by the Board.

The Board of Directors, by a vote of a majority of all members with voting powers present, shall elect annually from among its members a Vice Chairman of the Board. The Vice Chairman of the board shall serve in such capacity at the pleasure of the Board, or until his successor has been duly elected and qualified, or until he shall resign or otherwise vacate his office or Board membership. In the absence of the Chairman of the Board, the Vice Chairman shall act in all respects in the stead of the Chairman during such absence. In addition, the Vice Chairman shall carry out all functions required of him by these Bylaws and shall perform such other duties as from time to time may be assigned to him by the Board.

Section 6.07. The President.

The President of the Corporation shall be the Chief Executive Officer of the Corporation. The Chief Executive Officer shall have general supervision of the affairs of the Corporation, subject to the policies and direction of the Board of Directors, and shall supervise and direct all officers and employees of the Corporation, but may delegate in his discretion any of his powers to any officer or such other executives as he may designate.

The President shall perform such other duties as the Board of Directors may from time to time assign to him.

18

In the order designated by the President, the Executive Vice Presidents and Vice Presidents shall, in the absence of the President, perform his duties as Chief Executive Officer of the Corporation.

Section 6.08.  The Executive Vice Presidents and Vice Presidents.

Each Executive Vice President and Vice President shall have such powers and perform such duties as from time to time may be assigned to him by the Board of Directors or the President.

Section 6.09.  The Secretary.

The Secretary shall:

(a) see that all notices are duly given in accordance with applicable law and these Bylaws;

(b) be custodian of the seal of the Corporation and affix such seal to all documents the execution of which, on behalf of the Corporation under its seal, is authorized by the Board of Directors or the Executive Committee, if any, or by any officer or agent of the Corporation to whom power to authorize the affixing of such seal shall have been delegated;

(c) keep, or cause to be kept, in books provided for the purpose, minutes of the meetings of the shareholders, of the Board of Directors, and each committee of the Board;

(d) keep or cause to be kept registers or other appropriate records of the shareholders of all classes of stock;

19

COMMITTEE 02703

(e) see that the books, reports, statements, certificates, voting lists and all other documents and records required by law are properly kept and filed;

(f) sign such instruments as require the signature of the Secretary; and,

(g) in general, perform all the duties incident to the Office of Secretary and such other duties as from time to time may be assigned to him by the Board of Directors.

Section 6.10. The Chief Financial Officer.

The Chief Financial Officer shall have supervisory authority for all financial affairs of the Corporation. The Treasurer and the Controller shall report to the Chief Financial Officer. The Chief Financial Officer shall perform all duties incident to the office of the Chief Financial Officer and such other duties as from time to time may be assigned to him by the Board of Directors.

Section 6.11. The Treasurer.

The Treasurer shall be responsible for all receipts and disbursements of the Corporation and the custodianship of the Corporation's funds. He shall have full authority, directly or by his delegation to selected officers or other employees, to receive and give receipts for all monies due and payable to the Corporation from any source whatever, and to endorse checks, drafts, and warrants in its name and on its behalf. He shall be responsible for depositing the funds of the Corporation in its name in such depositories as may be designated by him, shall sign or delegate the signing of all checks, notes and drafts and shall be charged with the general establishment of the Corporation's policies and procedures relating to short-term financing, cash management, credits and collections and insurance.

The Treasurer shall perform such other duties as from time to time may be assigned to him by the Board of Directors.

20

COMMITTEE 02704

If requested by the Board of Directors, the Treasurer shall give a bond for the faithful discharge of his duties in such sum and with such sureties as the Board of Directors shall determine.

Section 6.12. The Controller.

The Controller shall be the Chief Accounting Officer of the Corporation and shall arrange for the keeping of adequate records of all assets, liabilities and transactions of the Corporation.

Section 6.13. Compensation.

The compensation of the officers shall be fixed from time to time by the Board of Directors.  Except with the prior approval of the Board of Directors, and consistent with the Corporation's conflict of interest policy then in effect, no officer of the Corporation shall receive any salary from any source other than the Corporation during his period of employment by the Corporation.

21

COMMITTEE 02705

ARTICLE VII

Shares and Their Transfer

Section 7.01. Certificates for Shares.

Shares of stock of the Corporation shall be represented by certificates for shares in such form as the Board of Directors may from time to time prescribe. No certificate representing any share shall be issued until such share is fully paid. No certificate for shares of stock of the Corporation shall be valid unless it shall have been signed by the President or a Vice President and by the Secretary or an Assistant Secretary and shall have been impressed with the corporate seal; provided, however, that to the extent permitted by law, the signatures of such officers or any of them and such corporate seal may be a facsimile.

Section 7.02. Transfer of Stock.

Except as otherwise provided by law, transfer of shares of stock of the Corporation shall be made on the books of the Corporation only by the holder thereof, or by his attorney thereunto authorized by a duly executed power of attorney, and on surrender of the certificate or certificates for such shares properly endorsed and the payment of all taxes on the transfer thereof. The Corporation shall have the right to treat the person whose name is registered upon its books as the holder of any shares of its stock as the absolute owner of such shares, and, except as otherwise provided in these Bylaws, such person shall have the exclusive right to vote and to receive dividends thereon.

Section 7.03. Substituted Certificates.

Any person claiming a certificate for shares alleged to have been lost, stolen or destroyed shall make an affidavit or affirmation of that fact, shall give the Corporation

22

and its registrar or registrars and its transfer agent or agents a bond of indemnity satisfactory to the Board of Directors or to the Executive Committee or to the President or a Vice President and the Secretary or the Treasurer, and, if required by the Board of Directors or the Executive Committee or such officers, shall advertise the same in such manner as may be required, whereupon a new certificate may be executed and delivered of the same tenor and for the same number of shares as the one alleged to have been lost, stolen or destroyed.

### Section 7.04. Regulations.

The Board of Directors may make such rules and regulations as it may deem expedient concerning the issue, transfer and registration of certificates for shares of stock of the Corporation. It may appoint one or more transfer agents and one or more registrars and may require all certificates of stock to bear the signature of either a transfer agent or a registrar or both.

### Section 7.05. Closing Transfer Books-Fixing Record Date, Etc.

Insofar as permitted by law, the Board of Directors shall have power to close the stock transfer books of the Corporation for a period not exceeding fifty days preceding the date of any meeting of the shareholders, or the date fixed for the payment of any dividend or distribution, or the date for the allotment of rights, or the date when any change or conversion or exchange of shares will be made or go into effect. If the stock transfer books are so closed for the purpose of determining shareholders entitled to notice of or vote at a meeting of shareholders, such books shall be closed for at least ten days immediately preceding the date of such meeting. If the stock transfer books are so closed for any purpose, written or printed notice of the closing shall be mailed at least ten days before the closing to each shareholder of record of the Corporation at his address appearing on the records of the Corporation, or supplied by him to the

23

Corporation for the purpose of notice. While the stock transfer books of the Corporation are closed, no transfer of shares shall be made thereon. In lieu of closing the stock transfer books as aforesaid, the Board of Directors may, in its discretion, fix a time, not more than fifty days prior to the date of any meeting of shareholders or the date fixed for the payment of any dividend or distribution, or the date for the allotment of rights, or the date when any change or conversion or exchange of shares will be made or go into effect, and, in the case of a meeting of shareholders, not less than ten days before the date of the meeting, as a record date for the determination of shareholders entitled to notice of, or to vote at any such meeting, or entitled to receive payment of any such dividend or distribution, or to receive any such allotment of rights, or to exercise the rights in respect of any such change, conversion or exchange of shares. If a record date shall be fixed as aforesaid, such persons as shall be shareholders of record on the date so fixed, and only such persons, shall be entitled to notice of, or to vote at, such meeting, or to receive payment of such dividend, or to receive such allotment of rights, or to exercise such rights, as the case may be, notwithstanding any transfer of any shares on the books of the Corporation after any record date so fixed as aforesaid. If the stock transfer books of the Corporation shall not be closed as herein provided and if a record date for the determination of shareholders entitled to receive notice of, or to vote at, any shareholders' meeting shall be fixed as herein provided, the date on which notice of the meeting is given shall be in accordance with Section 3.04 of these Bylaws and shall be the record date for such determination.

24

COMMITTEE 02708

## ARTICLE VIII

Seal

Section 8.01. Seal.

The Corporation shall have a corporate seal, which shall be in the form of a circle and shall bear the full name of the Corporation and the words and figures "Corporate Seal - District of Columbia -- 1971" or words and figures of similar import.

25

COMMITTEE 02709

## ARTICLE IX

### Indemnification and Insurance

Section 9.01. Indemnification.

(a)    General:  The Corporation's intent is to indemnify and hold harmless its Directors, officers, employees and designated agents to the fullest extent permitted by law when such individuals meet the standard of conduct set forth in subsection (c).  An Indemnitee, defined in Section 9.01(b), shall enjoy a presumption of indemnification under this Section so long as he has acted within the scope of his duties to the Corporation and in accordance with the good faith standard of conduct set forth in Section 9.01(c).

(b)    Who may be indemnified:  "Indemnitees" include each person who is a party, or is threatened to be made a party, to a lawsuit or other action or proceeding, because he is or was: (1) a Director, officer or employee of the Corporation; or (2) serving at the written request of the Corporation as a Director, officer or employee of another business enterprise; or (3) a person acting as an agent of the Corporation if designated by the President or Vice President and General Counsel as an agent entitled to indemnification by the Corporation.

(c)    Standard of conduct:  In all cases, the Indemnitee must have acted within the scope of his duties to the Corporation, in good faith, and in a manner he reasonably believed to be in (or not opposed to) the best interests of the Corporation.  In addition, in the case of criminal proceedings, the Indemnitee must not have had reasonable cause to believe that his or her conduct was unlawful.  In the case of actions brought by

26

or in the right of the Corporation, in addition to meeting the standard of conduct set forth herein, the Indemnitee must not have been finally adjudged by the relevant court or other body to be liable for gross negligence or misconduct in the performance of his or her duty to the Corporation, unless, and then only to the extent, that that court or other body rules that the Indemnitee nonetheless is fairly and reasonably entitled to indemnity for expenses or other liabilities or losses.  The termination of any lawsuit or proceeding by judgment, order, settlement, or conviction, shall not by itself create a presumption that the person did not meet the standards of conduct set forth in this clause (c).

  (d) Liabilities for which the Corporation will indemnify:

    1. Expenses (including attorneys' fees), and liabilities and other losses suffered such as judgments, decrees, fines, and penalties, all to the extent actually and reasonably incurred by the Indemnitee in connection with a lawsuit or proceeding (except that if the lawsuit or proceeding was commenced by the Indemnitee, the Corporation shall be required to indemnify only if the lawsuit or proceeding was authorized by the Board of Directors).

    2. Amounts to be paid in settlement of lawsuits or proceedings (if approved by the Vice President and General Counsel or the President in advance of settlement).

  (e) Procedure:

    1. In all cases, the Corporation shall determine whether the Indemnitee meets the required standard of conduct and, consequently, whether indemnification is appropriate.  For officers or directors, the

27

COMMITTEE 02711

determination shall be made either: (i) by the Board of Directors, by a majority vote of a quorum consisting of Directors with voting powers who have no personal conflict of interest (disinterested Directors) with respect to the lawsuit or proceeding; or (ii) if a quorum cannot be obtained, or if a majority of disinterested Directors so directs, by independent legal counsel (compensated by the Corporation) in a written opinion. The President or the Vice President and General Counsel of the Corporation (or if designated by the Vice President and General Counsel for this purpose, the Deputy General Counsel for Tort Claims and Litigation), shall make the determination for all employees or agents.

2. The Corporation may pay expenses of an Indemnitee in advance of the final legal conclusion of the lawsuit or proceeding. The Board of Directors may authorize advancement of expenses to a Director or officer upon receipt of an undertaking from the Indemnitee that he or she shall repay those monies advanced by the Corporation if a court shall ultimately determine that he or she was not entitled to such indemnification. The President or Vice President and General Counsel (or, if designated for this purpose by the Vice President and General Counsel, the Deputy General Counsel for Tort Claims and Litigation) may authorize advancement of expenses, on terms and conditions as he or she deems appropriate and in the best interest of the Corporation, to any Indemnitee who is an employee or agent.

28

(f)    Non-exclusivity: The rights this Bylaw confers on any Indemnitee are not exclusive of any other rights which the Indemnitee may have under law, the Articles of Incorporation, agreements, insurance, vote of shareholders or otherwise. If the Indemnitee is entitled to indemnification under this Bylaw because of his serving at the request of the Corporation as a director, officer, or employee of another business enterprise, the Corporation's obligation to indemnify as specified in this Bylaw shall be reduced by any amount the Indemnitee collects as indemnification or advancement of expenses from the other business enterprise.

Section 9.02. Liability Insurance.

The Corporation may purchase and maintain insurance on behalf of any person who is or was an incorporator, Director, officer, employee or designated agent of the Corporation or is or was serving at the request of the Corporation as a Director, officer, employee or designated agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Corporation would have the power to indemnify him against such liability under the provisions of this Article or of the District of Columbia Business Corporation Act.

29

COMMITTEE 02713

## ARTICLE X

### Amendment of Bylaws

Section 10.01. Amendment of Bylaws.

These Bylaws may be amended by the vote of a majority of the Directors with voting powers then in office at a meeting at which a quorum is present.

30

COMMITTEE 02714

**Exhibit 6**

# Amtrak
# Early Out Programs



Meeting May 29, 2001

AMT(AON)000486



# Areas for Consideration

←Eligibility
  ←Targeted
  ←Across the board
←Benefits
  ←"Normal" structures
←Expense
←Funding the benefits
←Timeline

AMT(AON)00487

**Amtrak**

2

**AON** *Aon Consulting*



# Early Out Program

←Must be voluntary

←Offered for a short period of time

←Often part of a broader Reduction in Force

←Utilizes excess pension assets

  ←Saves Amtrak cash

←Usually does not save expense charges

AMT(AON)000488

**Amtrak**

3

**AON**  *Aon Consulting*



# Eligibility

← Age or Age and Service (e.g., 55 or 50/5)

← Points (Age + Service = 80)

← Based on skill sets

← Specific locations

← By individual

  ← Must show non-discrimination (watch out for other, non-pension types of discrimination)

AMT(AON)000489

**Amtrak**

4

**AON** *Aon Consulting*



# Eligibility – Age and Service

Number Eligible

Age

|   | 50 | 55 | 60 |
|---|---|---|---|
| 5 | 913 | 359 | 103 |
| 10 | 805 | 308 | 85 |
| 15 | 672 | 265 | 74 |
| 20 | 596 | 232 | 61 |
| 25 | 270 | 111 | 26 |

Service

Salary ($000) Eligible

Age

|   | 50 | 55 | 60 |
|---|---|---|---|
| 5 | 59,828 | 23,930 | 6,983 |
| 10 | 52,552 | 20,631 | 5,763 |
| 15 | 44,482 | 18,114 | 5,100 |
| 20 | 39,592 | 16,065 | 4,205 |
| 25 | 19,099 | 8,266 | 1,998 |

Service

AMT(AON)000490

**Amtrak**

5

 Aon Consulting



# Amtrak Population

**Amtrak - Age 50 with 5 years of Service**





# Eligibility – Age + Service

| Rule of ➜ | 80 | 75 | 70 | All |
|---|---|---|---|---|
| Count | 286 | 559 | 688 | 913 |
| Salaries | 19,905 | 37,587 | 45,353 | 59,828 |

(Salaries are $000)

AMT(AON)000492

**Amtrak**

7

**AON** *Aon Consulting*



# Amtrak Population



**Amtrak - Rule of 80, 75, 70**

Legend:
- ♦ Rule of 80
- ■ Rule of 75
- ▲ Rule of 70

AMT(AON)000493

**Amtrak**

8

 *Aon Consulting*



# Benefit Structures

←Unreduced or highly subsidized early retirement benefits

   ←May require general testing

←Years of service/Years of age (e.g., 5+5)

←Temporary supplement (to 62, 65, SSNRA)

←Lump sum payments

←Additional benefit

   ←Based on service, salary, or flat amount

**Amtrak**

9

 *Aon Consulting*



# Non-Pension Benefits

←Continued health or medical benefits

←Severance payments

←Personal financial planning, and/or

←Retirement counseling

**Amtrak**

10

 *Aon Consulting*



# Amtrak Plan - Expense

←Value of all added benefits treated as an expense when employees accept

←Possible Plan curtailment

←Service Cost will decrease

←Value of medical benefits also are recognized immediately

AMT(AON)00496

**Amtrak**

11

**AON** *Aon Consulting*



# Cost of Selected
# Early Out Options

←There is a one-time charge (FAS88)

| Benefit | Pension Charge*<br>($ million) |
|---|---|
| Add 5 years of age | $14.1 |
| Add 5 years of service (Only age 55) | $4.8 |
| Add 5 years of age + 5 years of service (5+5) | $31.5 |
| Rule of 80 | $14.9 |
| Rule of 75 | $30.8 |
| Rule of 70 | $35.3 |

Includes medical to age 55.
Assumes 100% acceptance and no replacement.

**Amtrak**

12

 *Aon Consulting*

AMT(AON)000497



# Amtrak Plan – Cash

← Current overfunding
  ← $17.6 million at Actuarial Asset Value
  ← Another $28.0 million at Market Value
    ← Might restate 2000 Schedule B
  ← Underlying cost of the Plan is $5.7 million annually
  ← Watch for Additional Funding Charge
← Adding liabilities will reduce the length of the contribution "holiday"

**Amtrak**

13

**AON** *Aon Consulting*



# Cost of Selected Early Out Options

← Benefits change the cash holiday period

| Benefit | Added Liability ($ million) |
|---|---|
| Add 5 years of age | $ 10.0 |
| Add 5 years of service (Only age 55) | $ 4.6 |
| Add 5 years of age + 5 years of service (5+5) | $ 26.7 |
| Rule of 80 | $ 14.1 |
| Rule of 75 | $ 27.8 |
| Rule of 70 | $ 31.4 |

\* Assumes 100% acceptance and workers not replaced.
   Plus medical payouts.

AMT(AON)00499



14

 *Aon Consulting*



# Acceptance Rates

←Acceptance rate depends on value of benefits offered

←In other plans

 ←1 x pay gets about 80%

 ←.5 x pay gets about 50%

 ←.25 x pay gets about 30-35%

←Amtrak may have higher acceptance rates

 ←Strength of the existing programs



# Benefit Vehicles

← Direct payment – for non-annuity benefits

← Severance Pay Plans

    ← Cannot require "retirement"

    ← All payments made within 24 months

    ← Limited to 2 x annual compensation

← Qualified Plan

    ← Subject to ERISA requirements

    ← Early retirement subsidies might be limited

← Non-qualified arrangements





# Qualified Plan
# Non-discrimination

←Based on group eligible for benefits

←Watch for "effectively available"

  ←Need decent NHC acceptance rate

←Will there be an employer "veto"?

←Consider paying HCE outside of the
retirement plan

AMT(AON)00502

**Amtrak**

17

 *Aon Consulting*



# Communication

←Must give employees enough information to choose prudently

←Good description of the program

←Individualized calculations are needed

←Watch for coercion

AMT(AON)000503

**Amtrak**

18

**AON** *Aon Consulting*



# Election Period

←May have to notify staff before program is ready
  ←Retroactive eligibility?

←Adequate to make knowledgeable and informed decision

←Usual period is 30 to 90 days
  ←Have been as short as 7 days, as long as six months
  ←Can be a delay between election and leaving

←ADEA Waivers
  ←Needed?
  ←30 day period





# Timeline



**AMTRAK Early Out Timeline**

| | 5/29 | 6/18 | 7/8 | 7/28 | 8/17 | 9/6 | 9/26 |
|---|---|---|---|---|---|---|---|
| Plan design | | | | | | | |
| Communication - forms | | | | | | | |
| Communication general, booklet | | | | | | | |
| Benefit calculations | | | | | | | |
| Communication pieces printed | | | | | | | |
| Benefits announced | | | | | | | |
| Statements printed | | | | | | | |
| Forms mailed | | | | | | | |
| Election period | | | | | | | |
| ADEA Waiver period | | | | | | | |
| ADEA revocation period | | | | | | | |
| Forms returned | | | | | | | |
| Retirement processing | | | | | | | |
| Retirements begin | | | | | | | |

AMT(AON)000505

**Amtrak**

20

 *Aon Consulting*



# Timeline

| Task | Start Date | Duration | End Date |
|------|-----------|----------|----------|
| Plan design | 5/30/01 | 15 | 6/13/01 |
| Communication - forms | 6/11/01 | 14 | 6/24/01 |
| Communication general, booklet | 6/11/01 | 21 | 7/1/01 |
| Benefit calculations | 6/13/01 | 20 | 7/2/01 |
| Communication pieces printed | 6/24/01 | 8 | 7/1/01 |
| Benefits announced | 7/2/01 | 1 | 7/2/01 |
| Statements printed | 7/2/01 | 5 | 7/6/01 |
| Forms mailed | 7/9/01 | 1 | 7/9/01 |
| Election period | 7/11/01 | 52 | 8/31/01 |
| ADEA Waiver period | 7/12/01 | 45 | 8/25/01 |
| ADEA revocation period | 8/25/01 | 7 | 8/31/01 |
| Forms returned | 8/31/01 | 1 | 8/31/01 |
| Retirement processing | 9/1/01 | 30 | 9/30/01 |
| Retirements begin | 10/1/01 | 1 | 10/1/01 |

AMT(AON)000506

**Amtrak**

21

 *Aon Consulting*



# Timeline - Considerations

←Timeline is very tight for 10/1/01

←Before design is finalized

  ←Discrimination testing must be completed

  ←Costing must be done

  ←Medical benefits determined

←ADEA waivers take 52 days

  ←Are they needed?

←Benefit calculations – how to do them?

AMTT(AON)000507

**Amtrak**

22

**AON** *Aon Consulting*



# Timeline

←Communication pieces

   ←Memo to all employees

   ←Memo to affected staff

   ←Statement/Election form

   ←Booklet

   ←List of those eligible for the program

←What type of meetings, counseling will we provide?

AMT(AON)000508

**Amtrak**

23

**AON** *Aon Consulting*



# Timeline

←Did we leave adequate time for processing?

AMT(AON)000509

**Amtrak**

24

**AON** *Aon Consulting*



# Next Steps

AMT(AON)000510

**Amtrak**

25

 *Aon Consulting*

**<u>Exhibit 7</u>**

NATIONAL RAILROAD PASSENGER CORPORATION





| | | | |
|---|---|---|---|
| Date | May 17, 2001 | From | Warren Reisig |
| To | Lorraine Green | Department | Human Resources |
| | Paula Porter | Subject | Early Retirement Window |
| | | cc | |

Message    The following represents some broad steps in designing an early retirement window.  I have requested that our actuary calculate financial impact on the pension trust and Amtrak's P&L (profit and loss statement).  We should have some results within two weeks.

- Design the option, i.e., rule of 85, add 5 years of age and service
- Determine impact on pension trust (will accelerate future funding) and impact on the company's P&L statement (expense will need to be recorded on the profit and loss statement of the company)
- Review for nondiscrimination (against IRS regulations)
- Seek Board of Director approval (retirement plan as well as Board's statement of policy require seeking Board approval).
- Communicate to eligible participants
- Determine process regarding filling positions of employees who elect the option.

E–AMT 0023539

**Exhibit 8**

NATIONAL RAILROAD PASSENGER CORPORATION

# Memo
# Memo



| | | | |
|---|---|---|---|
| Date | May 14, 2001 | From | Warren Reisig |
| To | Paula Porter | Department | Human Resources |
| | | Subject | Savings Plan Match |
| | | cc | |

Message

- Current Savings Plan match is $7,265,000 per year.
- Savings Plan document requires a board action to change the match (see attached article 13.01 of the plan document).
- Board of Director statement of policy requires board approval for any benefit program change that has a financial change of 10% or more (statement of policy does not state increase or decrease).
- It would be a good administrative practice (this is not an IRS regulation) to give employees enough advance notice so that they could change their contribution election to the plan. Many employees base their contribution so as to maximize the company match.

E-AMT 0023647

**<u>Exhibit 9</u>**

NATIONAL RAILROAD PASSENGER CORPORATION

SAVINGS PLAN

As Amended and Restated
Effective January 1, 1989

Printed 12/23/94

# Table of Contents

| | | | |
|---|---|---|---|
| Article 1 | | Name and Effective Date ........................... | 1 |
| | 1.01 | Name of Plan ............................... | 1 |
| | 1.02 | Effective Date ............................. | 1 |
| Article 2 | | Definitions ................................ | 2 |
| | 2.01 | Affiliated Employer ......................... | 2 |
| | 2.02 | Authorized Leave of Absence .................. | 2 |
| | 2.03 | Beneficiary ............................... | 3 |
| | 2.04 | Board of Directors ......................... | 3 |
| | 2.05 | Break in Service ........................... | 3 |
| | 2.06 | Code .................................... | 4 |
| | 2.07 | Company .................................. | 4 |
| | 2.08 | Compensation .............................. | 5 |
| | 2.09 | Effective Date ............................. | 6 |
| | 2.10 | Employee ................................. | 6 |
| | 2.11 | Employee Account ........................... | 8 |
| | 2.12 | Employer ................................. | 9 |
| | 2.13 | Entry Date ................................ | 9 |
| | 2.14 | ERISA .................................... | 9 |
| | 2.15 | Fund ..................................... | 9 |
| | 2.16 | Hour of Service ............................ | 9 |
| | 2.17 | Named Fiduciary ........................... | 11 |
| | 2.18 | Participant ............................... | 11 |
| | 2.19 | Plan ..................................... | 11 |
| | 2.20 | Plan Administrator .......................... | 11 |
| | 2.21 | Plan Year ................................. | 11 |
| | 2.22 | Profits ................................... | 12 |
| | 2.23 | Rollover Contribution ....................... | 12 |
| | 2.24 | Savings Plan Committee ...................... | 12 |
| | 2.25 | Service .................................. | 12 |
| | 2.26 | Trust Agreement ............................ | 13 |
| | 2.27 | Trustee .................................. | 13 |
| | 2.28 | Valuation Date ............................. | 13 |
| | 2.29 | Vested Benefit ............................. | 13 |
| | 2.30 | Withdrawal Date ............................ | 13 |

Article 3    Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15
          3.01    Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . .    15
          3.02    Application for Participation . . . . . . . . . . . . . . . . . .    15
          3.03    Termination of Participation . . . . . . . . . . . . . . . . . .    16
          3.04    Reemployment of Terminated Participant or
                  Former Employee; Change in Employment
                  Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16
          3.05    Transfer of Participant to Another
                  Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

Article 4    Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17
          4.01    Basic Employer Contributions . . . . . . . . . . . . . . . . . .    17
          4.02    Voluntary Contributions . . . . . . . . . . . . . . . . . . . .    18
          4.03    Non-Discrimination Testing . . . . . . . . . . . . . . . . . .    19
          4.04    Change of Contribution Rate and
                  Suspension of Contributions . . . . . . . . . . . . . . . . . .    24
          4.05    Payment to the Trustee . . . . . . . . . . . . . . . . . . . . .    25
          4.06    Acceptance of Rollover Contributions . . . . . . . . . . . .    25
          4.07    Maximum Benefit and Contribution
                  Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . .    26

Article 5    Investment Elections and Accounts of Participants . . . . . . . . .    32
          5.01    Participant Investment Elections . . . . . . . . . . . . . . .    32
          5.02    Investment Alternatives . . . . . . . . . . . . . . . . . . . . .    32
          5.03    Valuation of the Fund . . . . . . . . . . . . . . . . . . . . . .    32
          5.04    Valuation of Accounts . . . . . . . . . . . . . . . . . . . . . .    32
          5.05    Determination of Account Balances Binding . . . . . .    33

Article 6    Withdrawals and Loans . . . . . . . . . . . . . . . . . . . . . . . .    34
          6.01    Withdrawals from Voluntary Accounts
                  and Employee Basic Accounts . . . . . . . . . . . . . . . . .    34
          6.02    Hardship Withdrawals from Salary
                  Deferral Accounts . . . . . . . . . . . . . . . . . . . . . . . . .    34
          6.03    Suspension of Voluntary Contributions
                  and Salary Deferral Contributions
                  for Participants Who Make Withdrawals . . . . . . . . .    36
          6.04    Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36

Article 7    Termination Payments . . . . . . . . . . . . . . . . . . . . . . . . .    38
          7.01    Termination Payment . . . . . . . . . . . . . . . . . . . . . .    38
          7.02    Reemployment of Terminated Participants . . . . . . . .    39

Article 8      Death and Disability Payments . . . . . . . . . . . . . . . . . . . . . . . . .    40
               8.01    Death Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    40
               8.02    Disability Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . .    40

Article 9      Method of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    41
               9.01    Form and Method of Payment of Benefits . . . . . . . . .    41
               9.02    Designation of Beneficiary . . . . . . . . . . . . . . . . . . . . .    42
               9.03    Limitation on Date Benefit Begins . . . . . . . . . . . . . .    42
               9.04    Direct Rollover of Eligible Rollover
                       Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    44
               9.05    Annuity Starting Date . . . . . . . . . . . . . . . . . . . . . . .    45
               9.06    Payment in Respect of a Qualified
                       Domestic Relations Order . . . . . . . . . . . . . . . . . . . . .    46

Article 10     Plan Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    47
               10.01   Savings Plan Committee . . . . . . . . . . . . . . . . . . . .    47
               10.02   Administrative Responsibility of the
                       President of the Company . . . . . . . . . . . . . . . . . . . . .    47
               10.03   Administrative Powers and Duties of
                       the Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    47
               10.04   Delegation and Allocation of
                       Responsibilities of the Committee . . . . . . . . . . . . . .    48
               10.05   Limitation of Liability . . . . . . . . . . . . . . . . . . . . . . .    49
               10.06   Consultations and Reliance . . . . . . . . . . . . . . . . . . .    49
               10.07   Action by the Majority . . . . . . . . . . . . . . . . . . . . . . .    49
               10.08   Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    50
               10.09   Disqualification of a Member . . . . . . . . . . . . . . . . .    50

Article 11     Control and Management of Assets . . . . . . . . . . . . . . . . . . . .    51
               11.01   Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    51
               11.02   Duties of the Savings Plan Committee
                       With Respect to Control and Management
                       of Plan Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    51

Article 12     Fiduciary Liability Insurance and Indemnification . . . . . . . . . .    53
               12.01   Fiduciary Liability Insurance . . . . . . . . . . . . . . . . . .    53
               12.02   Indemnity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    53

Article 13     Amendments to or Termination of the Plan . . . . . . . . . . . . . .    54
               13.01   Right of Company to Amend or Terminate
                       the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    54
               13.02   Termination of Plan . . . . . . . . . . . . . . . . . . . . . . . .    54
               13.03   Withdrawal of an Employer . . . . . . . . . . . . . . . . . . .    54

| | | | |
|---|---|---|---|
| Article 14 | | Top Heavy Provisions | 56 |
| | 14.01 | Top Heavy Plan Requirements | 56 |
| | 14.02 | Definitions | 56 |
| | 14.03 | Determination of Top Heavy Plan | 59 |
| | 14.04 | Top Heavy Minimum Contribution Requirement | 60 |
| | 14.05 | Top Heavy Limitation on Compensation Requirement | 61 |
| | 14.06 | Top Heavy Adjustments in the Maximum Benefit and Contribution Limitations | 61 |
| | 14.07 | Top Heavy Vesting Requirements | 61 |
| | | | |
| Article 15 | | Miscellaneous | 63 |
| | 15.01 | Rights of Employees | 63 |
| | 15.02 | Notice of Address | 63 |
| | 15.03 | Data | 63 |
| | 15.04 | Merger | 63 |
| | 15.05 | Fund to be for the Exclusive Benefit of Participants | 64 |
| | 15.06 | Facility of Payment | 64 |
| | 15.07 | Restrictions on Alienation | 64 |
| | 15.08 | Headings | 65 |
| | 15.09 | Construction | 65 |
| | 15.10 | Exclusion and Separability | 65 |

## ARTICLE 13

### Amendments to or Termination of the Plan

13.01    <u>Right of Company to Amend or Terminate the Plan</u>. While it is the intention of the Company to continue the Plan indefinitely, the Company reserves the right to terminate its contributions or modify, amend or terminate the Plan in whole or in part at any time by an instrument in writing pursuant to authority of a vote of the Board of Directors; provided, however, that the Plan shall not be amended in such manner as would cause or permit any part of the Fund to be diverted to purposes other than for the exclusive benefit of participants of the Plan and their Beneficiaries, nor in such manner as would cause or permit any portion of such corpus to revert to, or become the property of any Employer prior to the satisfaction of all liabilities under the Plan with respect to such participants or to increase the duties or liabilities of the Trustee without its written consent.

13.02    <u>Termination of Plan</u>. In the event that the Plan is terminated or partially terminated, or in the event of a complete discontinuance of contributions, the right of all participants (or those participants so affected in the case of a partial termination) to benefits accrued under the Plan as of the date of such termination, partial termination or discontinuance of contributions, shall be nonforfeitable; and after providing for the expenses of the Plan, the remaining assets of the Plan shall be allocated by the Committee. The Committee may continue the Fund and distribute benefits in accordance with the provisions of the Plan and Trust Agreement or liquidate the entire Fund.

13.03    <u>Withdrawal of an Employer</u>. Each employer which adopts the Plan shall have the right at any time to terminate its participation in the Plan for its Employees or to withdraw its share of assets from the Fund while the Plan continues in effect for the Employees of each other Employer. In the event of such withdrawal or termination, such Employer shall deliver to the Company and the Committee, at least one month prior to the effective date of such termination or withdrawal, a certified copy of the vote of its governing body authorizing such termination or withdrawal. The Committee will advise the Trustee

54

**Exhibit 10**

To:              reisigw@amtrak.com
From:            Ron_DeStefano@aoncons.com
Cc:
Bcc:
Received Date:   2001-05-25 14:07:42
Subject:         Proposal for Early Out program [.]

Warren, as we discussed, attached is the presentation Charlie and I put together
in response to your Early Out request. It is in PowerPoint format so there is
not a lot of descriptive material. We will talk on Friday, May 1, 2001 at 2:30
to go over it and point out what I think would be important to you. I am also
attaching the first presentation, from our meeting just over a week ago.

This was put together with a wide choice of options so that you might use it as
a presentation to management (it might have to be simplified a bit). I would be
happy to help you put together something if you think it would be useful.
Please note a few things

All costs assume the entire eligible group is offered the benefit, provided they
meet the eligibility conditions. The costs further assume 100% take the offer -
the actual estimates have to be adjusted to reflect the anticipated level of
acceptance. I can show you how to do that.

As illustrated, the time frame is very tight - you should be aware of that if
you have discussions with management. The ADEA period itself leaves you little
time to do the calculations and put together the communications materials.

We can talk about the rest next week. Hope you have a great weekend!

Ron

(See attached file: Early Out Program.ppt)(See attached file: 5-15-2001
presentation.ppt)

Attachments:

Microsoft PowerPoint 97
Microsoft PowerPoint 97~

E-AMT 0009765

**Exhibit 11**

To:                    Reisig, Warren
From:                  Reisig, Warren
Cc:
Bcc:
Received Date:         2001-09-09 17:44:20
Subject:

---

---

Attachments:

Timeline.doc

E-AMT 0029054

- Requested Aon to put present typical design options and costs. Request was made verbally. Presentation provided on 5/25. Supplement was not an option presented.
- Numerous conference calls during June and early July took place to work through various logistical issues and designs being discussed by Amtrak senior management.
- Conference call with Aon on 7/18 to discuss VERP issues. Forward Reisig's first draft of board resolution to Aon (via e-mail).
- Cost data for revised board resolution was given verbally (cannot find an e-mail with that data).
- Sent RRB file to Aon (8/15) with actual RRB estimates.
- Received new cost estimates from Aon (8/24). The reason for this updated was to determine the cost of possibly adding another 6 employees (those reaching age 55 as of 12/31 as opposed to 10/31).

- Requested Aon to put present typical design options and costs. Request was made verbally. Presentation provided on 5/25. Cost of 5 years of age provided; cost of supplement was not provided.
- Numerous conference calls during June and early July took place to work through various logistical issues and designs being discussed by Amtrak senior management.
- Conference call with Aon on 7/18 to discuss VERP issues. Forwarded final design.
- Cost data for revised board resolution (Simonson) was given verbally on 7/24 (cannot find an e-mail with that data). Cost was written in notebook.
- Board meeting 7/26.
- Sent RRB file to Aon (8/15) with actual RRB estimates.
- Received new cost estimates from Aon (8/24). The reason for this updated was to determine the cost of possibly adding employees (those reaching age 55 as of 12/31 as opposed to 10/31). Discussed new costs estimates via phone conference with Byl Herrmann. This is where it was identified that the cost of the supplement was under estimated. Initial cost estimates in July (prior to having the actual file from the RRB) used $1,000 as an estimate of the RRB supplement. After receiving RRB file, full supplement estimate of $2,200 was used.
- Pension plan assets as of 1/1/01 used to determine surplus with material provided from Aon on 5/25.
- Pension plan assets valued as of 7/31 and used to calculate surplus beginning 8/28; Pension plan assets as of 8/31 used in surplus estimates from 9/5 forward.

AMT018410

**Exhibit 12**

From: Helen_Reynolds@aoncons.com
Sent: Monday, July 16, 2001 4:09 PM
To: Ron_DeStefano@aoncons.com; Charles_M_Kramer@aoncons.com
Cc: Reisig, Warren
Subject: Amtrak Early Retirement

Ron/Charlie:

Warren Reisig called to say that Amtrak will be going forward with the early
retirement window, pending Board approval on July 26. Warren would like the
window to run from September 15 through November 30, and he estimates 300
employees will be eligible.

Warren would like to meet with the three of us, by phone, sometime this week to
discuss our role. He is available the rest of this week, with the exception of
Friday afternoon. Please let me know as soon as you can when you are available
for a conference call. I estimate the call to last one hour or less.

Helen

AMT007086

**Exhibit 13**

**Staff Reduction Options**

| Program | | Program Provisions | | |
|---|---|---|---|---|
| **Voluntary Separation Program** | | | | |
| | Eligibility | All active management employees with the exception of Management Committee, E-Band, and employees in technical positions (listed by title). | | |
| | Effective Date | Plan will be effective during a window period to be determined. Plan will run concurrently with the early retirement window. | | |
| | Participation | <ul><li>Employee must submit application form during window period</li><li>Employee agrees to resign employment Employee signs a release agreement</li><li>Employee elects not to exercise seniority rights back into a union position</li></ul> | | |
| | Design | Severance Payment | 2 weeks salary for each year of completed Amtrak service, with a minimum of 4 weeks, up to a maximum of 18 weeks | |
| | | Health Insurance | Amtrak will pay the first 6 months of COBRA coverage for medical insurance, if employee currently participates in the Amtrak medical plan | |
| **Early Retirement Window[1]** | | | | |
| | Eligibility | Amtrak active management employees age 55 (or older) with 10 or more years of Amtrak service. No exceptions. Exhibit I shows 337 employees eligible as of 7/1/2001. Eligibility as of 1/1/2001 was 308 (number previously given to legal) | | |
| | Effective Date | Plan will be effective during a window period to be determined. Plan will run concurrently with the early retirement window. Assuming Board approval in July, retirement date for employees who elect this option will be 12/1/2001. | | |
| | Participation | <ul><li>Employee must execute election form during window period</li><li>Employee signs a release agreement</li><li>Employee elects not to exercise seniority rights back into a union position</li></ul> | | |

---

[1] Board approval is necessary

E-AMT 0017184

| | Design | Pension | • Add 5 years of age to pension formula<br>• Lump sum payment 3 months salary; or<br>• Monthly supplement (equal to railroad retirement annuity) until earliest date employee is able to commence railroad retirement annuity |
|---|---|---|---|
| | | Health Insurance | Employees able to participate in the retiree medical plan. |
| **Restructuring Staff Adjustment**[2] | | | |
| | Eligibility | All active management employees | |
| | Effective Date | Will run following the voluntary separation program and the early retirement window. | |
| | Participation | Amtrak management decides which employees are terminated | |
| | Design | Severance Payment | 1 week of salary for each year of completed Amtrak service, with a minimum of 2 weeks, up to a maximum of 6 weeks.  Employees who sign a release agreement will receive an additional lump sum payment of $2,500 |
| | | Health Insurance | Employees offered COBRA at own expense |

---

[2] Board approval will be needed to amend the severance plan.

E-AMT 0017185