# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WADE F. HALL,
*et al.*,

        Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION,
*et al.*,

        Defendants.

Case No. 1: 06-CV-01539 (GK)
Next Scheduled Court deadline: March
15, 2007 (Plaintiffs' Opposition to
Defendants' Motion for Summary
Judgment)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

John R. Wellschlager
Robert A. Gaumont
(Admitted *Pro Hac Vice*)
DLA PIPER US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

Mark Muedeking
D.C. Bar No. 387812
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
Telephone (202) 861-3900
*Attorneys for Defendants*

TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   PROCEDURAL HISTORY ............................................................................ 4

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ............................. 6

    A.    The Plan Gives the Committee A Fiduciary Discretionary
          Authority to Determine Eligibility of Benefits and to Construe
          the Plan's Terms ....................................................................................... 6

    B.    Plaintiffs File Their Claim with the Committee ..................................... 7

    C.    The Committee Members And The Committee's Legal Counsel .......... 8

    D.    The Committee Meets to Discuss Plaintiffs' Claim .............................. 8

    E.    The Committee's Counsel Provides Advice Concerning the Claim ........ 9

    F.    The Committee Meets Again to Consider Plaintiffs' Claim ................... 9

    G.    The Committee Exercises Its Fiduciary Discretionary Authority
          To Deny Plaintiffs' Claim ..................................................................... 10

    H.    The Plan Appeals Officer Affirms the Committee's Claim Denial ........ 11

IV.   SUMMARY JUDGMENT STANDARD .................................................... 12

V.    ARGUMENT

    A.    The Committee's Decision Should Stand ............................................. 12

          1.    Abuse of discretion is the applicable standard where,
                  as here, the plan gives the Committee discretionary
                  authority to determine eligibility or construe terms
                  of the Plan. ............................................................................... 13

          2.    The Committee's decision was reasonable and should be
                  affirmed under any standard. ................................................... 15

    B.    Plaintiffs are barred in this case from raising any arguments
          or submitting any facts that were not presented to the
          Committee for consideration ................................................................. 18

C.    The Amtrak Board of Directors Did Not Ever Amend the Plan
      To Include a Railroad Retirement Supplement ...............................................21

D.    The Unanimous Consent Resolutions of September 14, 2001
      Constituted Valid Board Action ....................................................................22

      1.    Amtrak's President, a non-voting board member, was not
            required to sign the unanimous consent resolution. ...........................23

      2.    The Secretary of Transportation is allowed to delegate
            to the Deputy Secretary the authority to sign unanimous consent
            resolutions...........................................................................................25

VI.   CONCLUSION ........................................................................................26

## I.    INTRODUCTION

In *Hall I*, this Court dismissed one count based on Plaintiffs' failure to exhaust their administrative remedies by not filing a claim with the Retirement Plan Committee (the "Committee"). This Court noted that the central issue to be determined by the Committee would be whether "Amtrak's Board validly amended the Retirement Plan on September 14, 2001." *See* August 5, 2005 Order, *Hall I*, Docket No. 80, at p. 16.

After an extensive review, the Committee determined that the September 14, 2001 Board action was valid. Plaintiffs had argued that the resolution was invalid because one of the Board members, Governor A. Lynwood Holton, did not personally sign the resolution for the Board to proceed by unanimous consent. The Committee found, however, that Governor Holton (i) understood the substance of the actions that was put before Board members on September 14, 2001; (ii) intended to sign the Board resolutions personally, but was prevented because of the circumstances surrounding the September 11, 2001 terrorist attacks; and (iii) authorized and directed the Board's assistant corporate secretary to affect a signature on his behalf. The Committee further determined that this authorization served as a delegation of a ministerial task, not an improper delegation of a discretionary authority as a member of the Board. Thus, the Committee rightly concluded that the version of the Amtrak Voluntary Retirement Plan ("VERP") which was authorized by the Amtrak Board of Directors on September 14, 2001 for management to implement was the operative version of the VERP which was made available to eligible Amtrak Employees, including the Plaintiffs. The Committee provided an extensive explanation for its decision, and this decision was affirmed by the Plan's appeal officer.

This is the issue that this Court must consider, on an abuse of discretion standard, *if* this Court determines that the Board actually amended the Plan on July 26, 2001, rather than delegated to management the authority to implement the VERP. That issue was exhaustively briefed in the motions for summary judgment and oppositions and replies in *Hall v. National Railroad Passenger Corp.*, Case No. 1:03-CV-01764 (the "*Hall I*" case), Docket Nos. 85, 87, 91.

The Committee, the Plan's appeal officer, and their respective legal counsel, Venable LLP, developed such a comprehensive administrative record and issued such well supported decisions that Plaintiffs do not even attempt to dispute the reasonableness of their findings on the September 14, 2001 action. Plaintiffs know that a straightforward attack on the integrity of the administrative process would be ineffective. The undisputed facts show that the Committee and the Plan's appeal officer performed their tasks diligently and in good faith, and that they rendered a decision that is reasonable, well informed and correct.

Instead, Plaintiffs make two arguments in their summary judgment motion in this case – the first of which is old and already briefed, the second of which is new and waived because it was never presented to the Committee. First, Plaintiffs seek to reopen the record in *Hall I* concerning the July 26, 2001 Board authorization that permitted management to implement the VERP Plan, mostly by submitting for the record e-mail messages from two Amtrak employees, Warren Reisig and William Herrmann. These e-mails and other documents are inadmissible; Plaintiffs presented them without foundation or any authentication from the person from whom the e-mails were supplied or purportedly received. And they are irrelevant to and distracting from this case since they have no bearing on the legal issues relating to the September 14, 2001 Board action.

Most important, the July 26, 2001 Board action issue in *Hall I* was presented by both sides as ripe for summary adjudication back in November 2005 and was not presented to the Committee for consideration. Plaintiffs cannot reopen the summary judgment record on this issue by seeking to admit additional documents that Plaintiffs had in their possession when dispositive motions for *Hall I* were filed and that Plaintiffs failed to present to the Committee for consideration in its adjudication. Plaintiffs are effectively trying to use *Hall II* as a means to file amended summary judgment papers for *Hall I.* Absent a showing that Plaintiffs presented these documents or any new arguments relating to the July 26, 2001 Board action to the Committee for consideration in their decision (which did not happen), Plaintiffs are bound by the *Hall I* record as it stood when this Court dismissed one of their counts for failure to exhaust administrative remedies. This was the principal part of the administrative record that the Committee considered in rendering its decision. This Court's dismissal (without prejudice) of one of the *Hall I* counts was not an invitation to Plaintiffs for serial re-briefing of issues that were germane only to *Hall I.*

Second, Plaintiffs concoct a completely new argument concerning the September 14, 2001 Board action – one that, again, was not presented to the Committee. Specifically, Plaintiffs argue that the Board failed to take effective action on September 14, 2001 not only because Governor Holton directed the Board's assistant secretary to execute his resolution for him, but because the Secretary of Transportation (then the Honorable Norman Y. Mineta) and the President and Chief Executive Officer of Amtrak (then George D. Warrington) did not sign the unanimous consent resolutions on September 14, 2001. As a threshold matter, Plaintiffs waived this new argument because, again, Plaintiffs failed to present this argument in its claim to the Committee. It is well settled that when a litigant has an obligation to exhaust remedies, like here,

3

that litigant can only appeal those arguments that the litigant actually presented to the administrative body. In the ERISA context, Plaintiffs are bound by their administrative record.

That said, Plaintiffs' interpretation of District of Columbia Business & Corporations Act, § 29-101.136 as requiring that non-voting directors, like Mr. Warrington, vote on unanimous resolutions relating to actions upon which they have no vote is nonsensical, contrary to the Bylaws, and not supported by case law. Likewise, Plaintiff's interpretation of 49 U.S.C. § 24302(a)(6) as meaning that the Deputy Secretary of Transportation cannot consider and sign a unanimous consent resolution even though he can act and vote for the Secretary in every meeting of the Board is ridiculous – even more so when one considers the transportation environment in the days following 9/11.

## II.    PROCEDURAL HISTORY

This case, *Hall II*, is the second iteration of a claim that this Court dismissed in *Hall I*, except now the case has an administrative record and a decision by a committee with fiduciary discretion to determine eligibility and interpret plan terms. Plaintiffs first made these same basic allegations in Count I of its Second Amended Complaint in *Hall I* that Plaintiffs filed in December 2004. In August 2005, this Court dismissed (without prejudice) that count because Plaintiffs had failed to exhaust the Plan's internal claims process.

In November 2005, Defendants filed a motion for summary judgment as to the claims that were not dismissed, arguing that the case should be dismissed for two reasons. First, the Railroad Retirement Supplement at issue in this case is not a protected benefit under ERISA § 204(g), 29 U.S.C. § 1054(g) and, therefore, the "anti-cutback" provisions of ERISA simply do not apply, as a matter of law. Second, *even if* the Railroad Retirement Supplement is a protected

benefit, Amtrak's Board of Directors did not amend the Amtrak retirement plan in July 2001 to include such a supplement. Thus, the Board's decision not to offer that supplement could not be considered a "cutback" for purposes of ERISA § 204(g), 29 U.S.C. § 1054(g). As Defendants stated in their summary judgment motion:

> [In July 2001] [t]he Board of Directors merely delegated its authority to the President and Chief Executive Officer to implement certain proposals, one of which included a Railroad Retirement Supplement that would require an amendment of the Amtrak Retirement Plan. Management never acted upon its delegated authority to amend the Amtrak Retirement Plan to include a Railroad Retirement Supplement, and instead ultimately enacted the proposal approved by the Board of Directors on September 14, 2001. There accordingly was nothing officially in place for the Board of Directors to "cutback" in its September 14, 2001 meeting.

See Hall I; Docket Entry No. 85, Defendants' Motion for Summary Judgment at p. 8.

Immediately following this Court's dismissal of Count I, Plaintiffs raised that claim before the Retirement Plan Committee. The Committee denied Plaintiffs' claim. Plaintiffs then appealed this adverse determination to the officer of Amtrak that is designated to adjudicate appeals, Ms. Lorraine Green, Vice President for Human Resources. Ms. Green also denied Plaintiffs' claim.

Plaintiffs then filed this lawsuit. Count I of Plaintiffs' complaint seeks judicial review of the claims that the Committee already decided. Count II of Plaintiffs' complaint seeks additional documents allegedly withheld.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.    The Plan Gives the Committee A Fiduciary Discretionary Authority to Determine Eligibility of Benefits and to Construe the Plan's Terms.**

1.    Plaintiffs are all participants in the Plan, a copy of which is attached as Exhibit A. *See* Complaint ¶¶ 6-8.

2.    The Plan provides that the President of Amtrak appoints members of the Committee. *See* Plan, Exhibit A, § 10.01, at p. 58. The Committee must consist of at least three (3) persons, drawn upon Amtrak employees or members of the Board. *Id.*

3.    The Committee serves as both the Plan Administrator and the Named Fiduciary to the Plan. *Id.*

4.    The Plan provides the Committee with complete independence from Amtrak's Board of Directors (the "Board") in serving as Plan Administrator and Named Fiduciary. Specifically, the Plan states that "[t]he Board shall have no duty with respect to the administration of the Plan other than the ratification of the appointment of a Board member to the Committee." *Id.* § 10.02, at p. 58.

5.    The Plan also provides the Committee with complete discretionary authority to interpret the Plan and decide issues of eligibility. Specifically, the Plan states that the Committee has the power:

> To construe and interpret the Plan, correct defects, make factual determinations, and to decide any and all matters arising under the Plan, including the right to remedy possible ambiguities, inconsistencies or omissions; provided, however, that all such interpretations and decisions shall be applied in a uniform and nondiscriminatory manner to all Employees similarly situated, and shall be final and binding on all parties.

*Id.* § 10.03(i), at p. 59.

6.     In performing these functions, the Committee has the right to rely on the advice on experts, including legal counsel, "to render advice upon request with regard to any matters arising under the Plan." *Id.* § 10.03(f), at p. 58. The Plan specifically states that the Committee shall be entitled to rely "upon all opinions and recommendations given by any legal counsel retained by or on behalf of the Plan," and that the Plan is protected by law for all actions taken in good faith reliance upon such opinions and recommendations. *Id.* § 10.06, at p. 60.

**B.     Plaintiffs File Their Claim with the Committee.**

7.     On or about August 5, 2005, counsel to Plaintiffs made a claim for benefits to the Committee. *See* Exhibit B (the "Claim"). The Claim was filed the same day that this Court dismissed Count I of Plaintiffs' claim in *Hall II* based on Plaintiffs' failure to exhaust their administrative remedies.

8.     In the Claim, Plaintiffs argued that the September 14, 2001 amendment to the Plan was invalid because A. Linwood Holton, former Governor of Virginia, did not personally sign the resolution. *Id.* at p. 4-5.

9.     The Claim did not make any substantive assertions that the Amtrak Board of Directors "amended" the Plan on July 26, 2001, rather than authorize management to make any such changes. This is one of the issues fully briefed in the *Hall I* lawsuit.

10.     The Claim also did not assert that the Board action on September 14, 2001 was invalid because Amtrak's President and CEO, George D. Warrington and the Secretary of Transportation, Norman Y. Mineta, did not sign a unanimous consent resolution. Quite the opposite, Plaintiffs repeatedly argued that the actions of Governor Holton (and management)

constituted the problem.   Plaintiffs even went so far as to argue that the other directors were

victims; thus:

> [T]he other Directors were left in the dark and had no earthly idea
> that employees' benefits were being proposed to be cut with one
> Director's personal signature and direct physical engagement as to
> the operative documents cavalierly tossed to the side by
> management whose own crass mistakes caused the fire-drill
> atmosphere from being forced on the Directors in the first place (9-
> 11 or no).

*Id.* at 5.

## C.    The Committee Members And The Committee's Legal Counsel

11.       The Committee members during the time of consideration of this claim were Jeff

Carnicelli, Matt Hardison and Paula Porter.  *See* Exhibit C, Affidavit of Jeffrey Carnicelli at ¶¶

2-3 .  All were Amtrak employees; no one was a Director.  *Id.* at ¶ 3.

12.       The Committee engaged the law firm of Venable LLP to provide counsel to them

in considering this claim.  *Id.* at ¶ 4.  The Committee primarily received advice and counsel from

two partners at Venable, Robert J. Bolger, Jr., Esq. and Barbara E. Schlaff.  *Id.*  Mr. Bolger and

Ms. Schlaff have been practicing in the employee benefit and corporate law fields for decades.

*Id.*

## D.    The Committee Meets to Discuss Plaintiffs' Claim

13.       On or about October 25, 2005, the Committee met to discuss Plaintiffs' Claim.

*See Id.* ¶ 5; Exhibit D (minutes to October 25, 2005 Committee meeting).  During this meeting,

Venable advised the Committee on its fiduciary responsibilities under the Plan, as well as other

matters.  *See* Exhibit C (Carnicelli Affidavit) ¶ 6.

14.     The Committee also elected Ms. Porter as chairperson of this claim, and Mr. Carnicelli as secretary of the claim. *See* Exhibit D.

**E.    The Committee's Counsel Provides Advice Concerning the Claim**

15.     On or about December 8, 2005, the Committee's counsel, Ms. Schlaff and Mr. Berger, provided a memorandum to the Committee summarizing and analyzing Plaintiffs' claim. *See* Exhibit C (Carnicelli Affidavit) ¶ 7; Exhibit E.

16.     This memorandum identifies the circumstances surrounding Governor Holton's delegation of affixing the September 14, 2001 resolutions with his signature as the principle issue to be resolved by the Committee in adjudicating this claim.  Exhibit E at p. 5.  The memo cites to deposition testimony and the papers filed in the *Hall I* action, among other documents *Id.* at 5-6.  It concludes by stating that legal counsel will discuss and advise on these issues further with the Committee at its next meeting. *Id.*

**F.    The Committee Meets Again to Consider Plaintiffs' Claim**

17.     On or about December 14, 2005, the Committee convened again to discuss Plaintiffs' claim. *See* Exhibit F (minutes to December 14, 2005 Committee meeting); Exhibit C (Carnicelli Affidavit)¶ 8.  The Committee made factual findings with respect to the Claim at this meeting. *Id.*; *Id.*

18.     During this meeting, the Committee concluded that "the version of the Amtrak Voluntary Retirement Plan ("VERP") which was approved by the Amtrak Board of Directors on September 14, 2001 was the operative version of the VERP which was made available to eligible Amtrak Employees, including the Claimants, during the election window commencing on September 15, 2001 and ending on October 31, 2001." *See* Exhibit F.

9

19.    On or about January 20, 2006, a special meeting of the Committee was conducted, with counsel, by telephone. *See* Exhibit C (Carnicelli Affidavit) ¶ 9. During that meeting, the Committee instructed counsel to execute the determination letter on behalf of the Committee. *See* Exhibit G (minutes to January 20, 2006 special meeting of the Committee).

**G.    The Committee Exercises Its Fiduciary Discretionary Authority to Deny Plaintiffs' Claim.**

20.    On January 23, 2006, the Committee sent official notice to the Plaintiffs, in the form of an eight (8) page letter, explaining to the Plaintiffs that the Committee had denied their claims, and providing the Committee's reasoning for the denial. *See* Exhibit H ("Committee's Claim Denial Letter").

21.    The Committee's Claim Denial Letter included ten (10) findings of fact, mostly relating to the September 14, 2001 Board action. *Id.* at pp. 3-5.

22.    The Committee then made two conclusions relating to Governor Holton's action. First, the Committee acknowledged that under Amtrak's Bylaws, § 4.12, and the District of Columbia Business Corporation Act, § 29-101-1.136, the Board can act by unanimous consent. The Committee noted that Plaintiffs objected to the Board's unanimous consent on September 14, 2001 because Governor Holton did not personally sign the consent. The Committee then made the following finding:

> The Committee finds that because Governor Holton fully understood and agreed with the content of the resolutions and intended to manifest his agreement in writing, the Governor's instructions to Mr. Carten to affix the Governor's signature to the consent was no more than the delegation of ministerial act to Mr. Carten. The Committee finds that such a delegation of a purely administrative act is not inconsistent with the requirement that the consent be unanimously approved in writing by the directors with voting power. …

Exhibit H, Committee's Claim Denial Letter at p. 5.

23.      While the Committee expressly found that there was no "technical defect" to Governor Holton's execution through a subordinate of the September 14, 2001 unanimous consent, the Committee concluded that, even if there was some "technical defect," it would not invalidate the actions of September 14, 2001 absent some showing of "bad faith or active concealment on the part of the sponsor." *Id.* The Committee concluded, however, that the Board acted in "good faith [and] to the best of its abilities in light of the September 11, 2001 terrorist attacks." *Id.*

## H.    The Plan Appeals Officer Affirms the Committee's Claim Denial.

24.      On or about February 9, 2006, Plaintiffs filed an appeal to Amtrak's Vice President of Human Resources, Lorraine Green, who was designated as the Plan appeal officer, and filed purported supplements to this appeal on March 20, 2006 and May 16, 2006.  *See* Exhibit J; Exhibit I (Affidavit of Lorraine Green) ¶ 3.

25.      On or about July 14, 2006, Ms. Green denied the appeal in a letter to the Plaintiffs. *See* Exhibit K.  Ms. Green then provided a point by point refutation to the issues that Plaintiffs' raised in their appeal letters, and cited specific instances in Governor Holton's deposition (which the Committee reviewed) where the Governor stated that he authorized the Board's assistant secretary to affix his signature to the consent.  Exhibit K, at pp. 7-12.

26.      In response to the request by Plaintiffs for documents, the Committee produced the administrative record of materials for this claim.  *See* Exhibit I ¶ 5.  To the extent that these documents are not already included as an exhibit in this case or otherwise in the record of *Hall I*, or *Hall II* these documents are attached as Exhibit L.

## IV.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil procedure provides that summary judgment "shall be rendered forthwith" if there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law.  The United States Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The non-movant's opposition must consist of more than mere unsupported allegations or denials and must be supported by competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The non-movant's evidence, therefore, must be that which will permit a reasonable jury to find in its favor; evidence that is "merely colorable" or "not sufficiently probative" is insufficient to oppose summary judgment. *See Plain v. AT&T Corp.*, 424 F. Supp. 2d 11, 15 (D.D.C. 2006).

## V.    ARGUMENT

### A.    The Committee's Decision Should Stand.

The administrative record in this case shows that Governor Holton understood the substance of the actions that was put before Board members on September 14, 2001 and intended to sign the Board resolutions personally, but was prevented from doing so because of the circumstances surrounding the September 11, 2001 terrorist attacks.  Further, the record shows that Governor Holton authorized and directed the Board's assistant corporate secretary to affect a

signature on his behalf. This was a simple delegation of a ministerial task, not an improper

delegation of a discretionary authority as a member of the Board. While the Committee's actions

should be affirmed under any standard, the analysis for this Court is especially straightforward

because the proper standard is "abuse of discretion" or, put another way, whether the Committee

acted with the "reasonableness."

1.   **Abuse of discretion is the applicable standard where, as here, the Plan gives the Committee discretionary authority to determine eligibility or construe terms of the Plan.**

Courts review administrative decisions of ERISA claims adjudications under the

"arbitrary and capricious" standard when the plan "gives the administrator a fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"

*See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Boivin v. U.S.

Airways*, 446 F.3d 148, 156 n. 9 (D.C. Cir. 2006); *Communication Workers of Amer. v. AT&T*,

40 F.3d 426, 433 (D.C. Cir. 1994). In *Doe v. MAMSI Life and Health Ins. Co.*, 2007 WL 188110

(D.C. Cir. Jan 25, 2007), the court considered a plan that allowed the administrator to "adopt

reasonable policies, procedures, rules and interpretations to promote orderly and efficient

administration of this Contract, and the Employer agrees to cooperate with [the administrator] in

administering such rules and regulations." *Id.* at *7. The court concluded that this language

"confers discretion and merits the application of *Firestone*'s deferential standard of review." *Id.*;

*see also Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452 (D.C. Cir. 1992) (finding *Firestone*'s

deferential standard of review appropriate for similar plan).

Here, the Plan provides the Committee with a "fiduciary discretionary authority to

determine eligibility of benefits and to construe the Plan's terms." *Firestone Tire*, 489 U.S. at

13

115.    Specifically, it names the Committee as "the Plan Administrator" and the "Named Fiduciary" and provides that the Board has no duties relating to the administration of the Plan. Exhibit A, §§ 10.01, 10.02 at p. 58.  Like the plans in *Doe* and *Block*, the Plan also provides the Committee with complete discretionary authority to interpret the Plan and decide issues of eligibility.  Specifically, the Plan states that the Committee has the power:

> To construe and interpret the Plan, correct defects, make factual determinations, and to decide any and all matters arising under the Plan, including the right to remedy possible ambiguities, inconsistencies or omissions; provided, however, that all such interpretations and decisions shall be applied in a uniform and nondiscriminatory manner to all Employees similarly situated, and shall be final and binding on all parties.

*Id.* § 10.03(i), at p. 59.

Because the Committee served as the fiduciary with the discretion to interpret Plan terms and determine eligibility, this Court should review the Committee's decision for "reasonableness."  *See Block*, 952 F.2d at 1452.  Under the arbitrary and capricious standard as applied in ERISA, the court should not overturn a plan administrator's reasoned decision even if an alternative argument is also reasonable.  *Id*; *see also Mobley v. Continental Casualty Co.*, 405 F. Supp. 2d 42, 48 (D.D.C. 2005) (holding that a plan administrator's decision will not be overturned under the deferential ERISA standard of review so long as the decision is reasonably supported by the administrative record); *accord Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (under the arbitrary and capricious standard "a court is not to substitute its judgment" for that of the administrator).

14

2.    **The Committee's decision was reasonable and should be affirmed under any standard.**

In determining "reasonableness," the central inquiry is whether the administrator reasonably construed and applied the terms of the plan to the plaintiff's claim. *Block*, 952 F.2d at 1454. Here, the administrator – the Plan – not only construed the terms reasonably, but in a manner that was manifestly correct.

As the Committee noted in its claim denial letter, under Amtrak's Bylaws, § 4.12, and the District of Columbia Business Corporation Act, § 29-101-1.136, the Board can act by unanimous consent. Specifically, § 4.12 ("Unanimous Written Consent") states:

> Any action required or permitted to be taken at a meeting of the Board of Directors, or the action of any committee of the Board, may be taken without a meeting if a consent in writing setting forth the action so taken shall be signed by all of the members of the Board of Directors with voting power, or committee thereof, then in office, and the written consent is filed with the minutes of proceedings of the Board of Directors or committee.

Exhibit L, at COMMITTEE 02550 (Bylaws at p. 12).

Ministerial functions like executing a signature on a document, however, can be delegated so long as the director retains and does not delegate the decision-making function. In *District of Columbia v. White*, 435 A.2d 1055 (D.C. Ct. App. 1981) for example, the District of Columbia Court of Appeals considered a trial court's ruling that a terminated school system employee must be reinstated with backpay because the superintendent of the schools had not signed the employee's termination letter and the statute at issue required "the written recommendation of the superintendent of schools." *Id.* at 1056.

In response to the argument that the superintendent had improperly "delegated" this authority to others, the appellate court noted that the superintendent retained all of the decision-making function concerning termination, and merely "instructed his Director of Personnel to perform the ministerial function of preparing the dismissal letter to effectuate a decision [the superintendent] already had made." *Id.* at 1057. "Full discretion to recommend the termination of appellee and the responsibility for the decision rested with Superintendent Reed." *Id.*

The court in *White* also performed an analysis of the policy reasons for why the statute required a signature and found that they were satisfied by the performance of the superintendent. Thus:

> The purpose underlying the former § 31-102's requirement of a written recommendation from the Superintendent was to assure that the final personnel decisions emanate from that office. In this case, Superintendent Reed was well aware of appellee's poor employment record. ***The absence of his signature on the dismissal letter does not negate the fact that he exercised his personal discretion to terminate appellee's employment.*** Nor does it indicate a dereliction of duty on his part for not reviewing the actual final letter of dismissal, since he had ordered the action to be taken. Therefore, we conclude that the role played by the Superintendent in the termination of appellee's employment fulfilled his statutory obligation under § 31-102.

*Id.* (emphasis added).

The administrative record shows that the Committee (with the assistance of counsel) adjudicated exactly what should have been adjudicated in this claim – whether or not Governor Holton's instruction to the Board's assistant corporate secretary was no more than the delegation of a ministerial function performed in the environment immediately after 9/11. Specifically, the Committee made the following three findings of fact that relate to Governor Holton's ministerial delegation:

- Based on the deposition testimony of Governor Holton and Mr. Carten [the Amtrak Board's assistant corporate secretary], it appears that Governor Holton was not in his office when the faxed consent resolutions and Executive Summary were sent to him on September 14, 2001. However, Governor Holton contacted Mr. Carten, and Governor Holton and Mr. Carten had a telephone conversation on September 14, 2001, during which Mr. Carten reviewed with Governor Holton the Executive Summary and the requested consent resolutions.

- Governor Holton did not personally affix his signature to the consent resolutions which were faxed to him. Rather, after his telephone conversation with Mr. Carten regarding the consent resolutions, Governor Holton instructed Mr. Carten to affix the Governor's signature to the consent. Based on Governor Holton's instructions, Mr. Carten copied and pasted Governor Holton's signature to the consent resolutions and filed this counterpart with the other counterparts to the consent resolutions on September 14, 2001.

- Governor Holton … understood the context and nature of the change to the July 2001 VERP which was being proposed on September 14, 2001. When questioned about the matter in his deposition, Governor Holton confirmed that he understood the proposed changes to the July 2001 VERP, and he intended to approve the changes proposed on September 14, 2001. Because he was not in a position to fax his signature to the resolutions back to Amtrak on September 14, 2001, he asked Mr. Carten to affix his signature to the resolutions.

*See* Exhibit H, Committee's Claim Denial Letter, at pp. 4-5 (Nos. 6-8).

Considering the circumstances surrounding the affixing of Governor Holton's signature, the Committee concluded that Governor Holton's instruction was "no more than the delegation

17

of a ministerial act to Mr. Carten."[1]  *Id.* at p. 5.  As such, the Committee rightly concluded that the Board's actions on September 14, 2001 were valid.

**B.    Plaintiffs Are Barred In This Case From Raising Any Arguments Or Submitting Any Facts That Were Not Presented to the Committee for Consideration.**

It is well settled that when a party is required to exhaust its administrative remedies before pursuing a claim, then any argument that was not raised before the administrative body cannot be raised to the reviewing court.  *See United Transp. Union v. Surface Transportation Board*, 114 F.3d 1242, 1244-45 (D.C. Cir. 1997).  Put another way, "claims not presented to the agency may not be made for the first time to a reviewing court."  *See United Transp. Union v. ICC*, 43 F. 3d 697, 701 (D.C. Cir. 1995) (quoting *Washington Ass'n for Television & Children v. FCC*, 712 F.2d 677, 680 (D.C. Cir. 1983)).[2]

"Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record made later in another forum."  *See Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1455 (D.C. Cir. 1992); *see also Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 147

---

[1] Alternatively, the Committee found that, even if there was a "technical defect" in the execution of the resolution, it was excused because the parties were engaging in a good faith response to the disruptions from the 9/11 terrorist attacks and Amtrak engaged in no active concealment.  The Committee expressly found, however, no "technical defect."  *Id.* at p. 5.

[2] In *American Ganealogies, Inc. v. United States Postal Service*, 717 F. Supp. 895 (D.D.C. 1989), this Court explained the policy rationale for declining to consider any arguments that were not raised on the administrative level when a litigant was required (like Plaintiffs in this case) to exhaust their administrative remedies before proceeding in court.  There, this Court said that "[b]ecause a reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented, absent exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time."  *Id.* at 900 (internal citations omitted).

18

(D.C. Cir. 1998) (citing *Heller* and declining to consider any issue outside of administrative record); *Steever v. Bristol-Myers Co.*, 727 F.Supp. 986, 989 (D. Md. 1989) (Courts "will review only those facts available to the Plan Administrator at the time of his decision."). In *Lane v. Director of Employee Benefits, Gannett Co.*, 253 F.Supp. 2d 57, 63 & n. 6 (D. Mass. 2003), the court concluded that this issue is so well settled, that every circuit found limits "its review to the record that was before the plan administrator."

Consistently throughout the litigation of (i) *Hall I*; (ii) the administrative claims process before the Committee; and (iii) *Hall II*, Plaintiffs have resisted their administrative remedies and being limited to the record and issues presented before the Committee. In *Hall I*, Plaintiffs argued that they need not exhaust their administrative remedies because the Committee would be required to interpret ERISA. *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint at pp. 40-41 (Docket No. 62, *Hall I*). This Court rejected that argument, noting that it was clear "that resolution of [the *Hall II*] claims turns on whether Amtrak's Board validly amended the Retirement Plan on September 14, 2001," in accordance with the Plan, Amtrak's bylaws and applicable D.C. corporate law. *See* August 5, 2005 Court Order at pp. 16-17 (Docket No. 80 in *Hall I*). This Court's instruction to Plaintiffs appears clear: Plaintiffs need to raise all of the arguments that they have to the Committee. The implication of that instruction is equally clear: Plaintiffs' arguments are appropriate for Committee review and are not purely ERISA-related issues that only this Court should decide.

Here, Plaintiffs raise two arguments that they did not raise effectively before the Committee, and that are not supported by the administrative record. First, Plaintiffs argue that the Board amended the Plan with its Board action on July 26, 2001. Plaintiffs' Motion for

19

Partial Summary Judgment at pp. 37-45. This issue actually was fully briefed in *Hall I* by both parties, and has been ripe since the dispositive motions deadline in that case in November 2005. If Plaintiffs wanted this issue adjudicated in *Hall II* then Plaintiffs were required to submit these arguments (and their supporting documents, including the new ones filed with this summary judgment motion) to the Committee. Plaintiffs did not do so, and as result, they are precluded from raising these additional arguments for the first time here. Plaintiffs cannot ask this Court to guess as to how the Committee *might* view these additional arguments that Plaintiffs are making for the first time now.

Second, Plaintiffs are arguing, again for the first time, that the Board failed to take effective action on September 14, 2001 not only because Governor Holton directed the Board's assistant secretary to execute his resolution for him, but because the Secretary of Transportation (then the Honorable Norman Y. Mineta) and the President and Chief Executive Officer of Amtrak (then George D. Warrington) did not sign unanimous consent resolutions. Again, Plaintiffs were required to make these arguments to the Committee. Plaintiffs' claim letter to the Committee does not include these arguments, nor do the subsequent letters sent by Plaintiffs. The Committee's January 23, 2006 letter exhaustively sets forth its basis for denying Plaintiff's claim, as does the July 14, 2006 letter from Ms. Green. Both letters include substantial fact finding relating to the Governor Holton/ September 14, 2006 unanimous consent resolution

issue. If Plaintiffs had additional arguments to make concerning different directors (including non-voting directors) then Plaintiffs were required to make those arguments to the Committee.[3]

## C.    The Amtrak Board of Directors Did Not Ever Amend the Plan to Include a Railroad Retirement Supplement.

In Defendants' summary judgment motion in the *Hall I* case, Defendants argued why the Railroad Retirement Supplement was not implemented in July 2001. *See Hall I*, Document Number 85, at pp. 25-29. In response to Plaintiff's opposition, Defendants provided further argument relating to this issue. *See Hall I*, Document Number 91, at pp. 18-27.

Plaintiffs are now making the same arguments that they made in *Hall I* relating to the July 2001 Board action, but with additional documents – mostly e-mails from two Amtrak employees, Warren Reisig and William Herrmann. Plaintiffs deposed neither of these individuals, and there is no evidence in the record concerning what their role is at Amtrak, if any. There are also no sworn statements providing a foundation or indication of authentication for any of the other documents that Plaintiffs attached. Plaintiffs also have filed as exhibits several documents allegedly created by management for use by the Board, but have provided no foundation that such documents were actually reviewed by the Board or any Board member.

---

[3]    Plaintiffs also might have made these assertions about the CEO of Amtrak and the Secretary of Transportation in any of their papers in *Hall I* (including the complaint, first amended complaint, second amended complaint, or the summary judgment briefing) or, for that matter, in their complaint in *Hall II* (although by then it was waived for failure to bring it before the Committee). Plaintiffs always have been grasping for new arguments as to why the Board's September 14, 2001 action is supposed to be invalid, but these arguments (made for the first time in a summary judgment motion of a claim that has already been dismissed once and adjudicated administratively) have to be the most untimely of them all.

Plaintiffs took one deposition of an Amtrak director (Governor Holton), but Plaintiffs fail to show whether he authenticated any of these documents.

The only evidence in the record concerning the Board's intent is the affidavit testimony of Alicia Serfaty, Amtrak's General Counsel at the time and an excerpt of deposition testimony of Governor Holton, an Amtrak Board member at the time. They were Exhibits A and B to Defendants' summary judgment motion in *Hall I*. *See Hall I* Document Number 85.[4] They provided uncontroverted testimony that the Board's intent in July 26, 2001 was to delegate to management the authority to change the Plan.

In the event that this Court does not find that Plaintiffs are precluded from making additional arguments because of its failure to present them to the Committee or in prior briefing on this issue, Defendants respectfully refer this Court to and incorporate by reference the arguments made and evidence submitted previously by the Defendants in *Hall I*.[5]

**D.    The Unanimous Consent Resolutions of September 14, 2001 Constituted Valid Board Action**

After five years of litigation, including two rounds of summary judgment briefing, three complaints, a claim to the Committee and an appeal of the Committee's decision, Plaintiffs have

---

[4]    Plaintiffs filed the entire deposition transcript of Governor Holton as Exhibit 57 to its summary judgment motion in this case.

[5]    Plaintiff's case citations for this point were, with one exception, taken directly from Plaintiffs' opposition to motion for summary judgment in *Hall I*, and Defendants addressed those cases in its reply in *Hall I*. *See Hall I*, Docket No. 91 at pp. 19-20. The one new case that Plaintiffs cited, *Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254 (D.C. Cir. 1994), does not even concern the amendment of a plan, but whether an employer who deducts part of his employees' salary for the purpose of funding a pension plan and fails to actually contribute the money, holds himself open to ERISA liability because the plan is "established." *Kenney* is inapposite.

managed to fabricate a ***completely new*** reason for why it believes that the Board's actions on September 14, 2001 were invalid. According to Plaintiffs, the unanimous consent resolutions were invalid because they were not signed by Mr. Warrington, Amtrak's President and CEO at the time, and Mr. Mineta, who was the Secretary of Transportation at the time.

As explained above, the fairest way of disposing of Plaintiffs' new arguments is to hold them to the issues that they adjudicated before the Committee (not to mention in their *Hall I* summary judgment papers and their complaints). If, however, this Court believes that it is required to address these arguments even though they have been waived, Defendants will address each in turn.

### 1.    Amtrak's President, a non-voting board member, was not required to sign the unanimous consent resolution.

Plaintiffs argue that the Board was required to obtain the signature of its President, even though, under Amtrak's bylaws, the President is *ex officio* – a non-voting Board member whose presence does not even count in determining whether a quorum exists at a meeting. Amtrak's By-Laws § 4.02. Further, Amtrak's bylaws specifically state that unanimous consent resolution need only be signed by "members of the Board of Directors with voting power." *Id.* § 4.12 ("Unanimous Written Consent").

Plaintiffs base their argument on § 29-101.136 of the DCBCA, which states, in relevant part, that unanimous consents for shareholders, boards and board committees "shall be signed by all of the shareholders entitled to vote with respect to the subject thereof, or by all of the members of the board or of such committee as the case may be." Plaintiffs now argue that because the statute contains an "entitled to vote" modifier on the shareholders and does not for the board members (or, for that matter, the committee members), then that means that even non-

voting board members or committee members must sign unanimous consent resolutions before a board or committee acts by unanimous consent.

There is a much more plausible explanation – while the voting rights for classes of shareholders is a well established and, often times, highly litigated issue, it is rare for individuals to be appointed members of a board or committee and not have voting rights. Amtrak does have its President serve as an *ex officio* non-voting board member and, as a result, its bylaws relating to unanimous consent resolutions specifically provide that non-voting board members need not sign such resolutions.

The one case that Plaintiffs cite in support of their position actually proves Defendants' point. In *Solstace Capital II, Ltd. Partnership v. Ritz*, 2004 WL 765939 (Del. Ch. April 6, 2004),[6] the Delaware Chancery Court considered a case where two directors (who viewed themselves as interested) declined to sign a unanimous consent resolution leaving the resolution signed by only the two established disinterested directors. The court held that the unanimous consent could not just be comprised of the two disinterested directors. In *Solstace*, however, all four directors were voting directors. Thus, all of the voting directors (i.e. the ones that do not serve *ex officio*) needed to sign the unanimous consent resolution. That is exactly what happened here.

What Plaintiffs are arguing would lead to the absurd result that unanimous consent resolutions by boards or board committees that were not signed by their *ex officio* (i.e. non-voting) members would be invalid. Considering how frequently that board committees meet (or

---

[6] This is an unpublished case that has never been cited.

decide not to meet) without their *ex officio* members, one would think that, if Plaintiffs construction were accurate, there would be authority on point (and a lot of litigation). In reality, *ex officio* members need not attend meetings, cannot vote, do not count toward a quorum, and are not needed to sign unanimous consent resolutions.

In any event, Plaintiffs' speculation that Mr. Warrington may not have joined in a unanimous consent resolution on September 14, 2001 to authorize the modification of the Plan is wrong because, under the resolution, Mr. Warrington was given the authority to make the modification. This resolution specifically provides that "the President and Chief Executive Officer is authorized to take all necessary steps to implement" the change to the Plan. Mr. Warrington used that authority and modified the VERP – an act which demonstrates a ratification of the Board's passage of this resolution. Thus, even if Mr. Warrington was something other than an *ex officio* director who did not count toward quorums, could not vote and could not sign unanimous consents, his subsequent action of exercising his authority to implement the VERP would have served as ratification of the September 14, 2001 Board activity.

2. **The Secretary of Transportation is allowed to delegate to the Deputy Secretary of Transportation the authority to sign unanimous consent resolutions.**

Plaintiffs also argue that the Board was required to obtain the signature of the Secretary of Transportation, and that the signature of the Deputy Secretary of Transportation (Mr. Michael Jackson) was insufficient, notwithstanding the fact that Amtrak's enabling statute specifically provides, in relevant part, that "[t]he Secretary may be represented at a meeting of the board only by the Deputy Secretary of Transportation. ..." 49 U.S.C. § 24302(a)(6).

Again, Plaintiffs argument fails because it would read an absurd result into a pretty straightforward statute.  If the Deputy of Secretary of Transportation is statutorily permitted to represent (and cast votes as) the Secretary at a meeting, then he is also permitted to represent the Secretary in a unanimous consent resolution.

To read the statute otherwise would mean that in the days immediately following 9/11 – when the Secretary was dealing with all of the transportation implications of this attack – the Secretary could not allow his Deputy to act in his capacity at precisely the time when such representation was needed most.  Congress passed subsection (6) of 49 U.S.C. § 24302(a) precisely because there are times when a Cabinet Secretary's attention is needed elsewhere and Congress did not want the Secretary to be distracted by Amtrak board activity while this was happening.  Plaintiffs are providing this Court with an absurd reading of this statute.

## VI.    CONCLUSION

For these reasons, Defendants request that this Court deny Plaintiffs' Motion for Partial Summary Judgment and grant Defendants' Motion for Summary Judgment.

Respectfully submitted,

_____/s/_____
John R. Wellschlager
Robert A. Gaumont
(Admitted *Pro Hac Vice*)
DLA PIPER US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

Mark Muedeking
D.C. Bar No. 387812
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C.  20036-2412
Telephone (202) 861-3900
Facsimile (202) 223-2085

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of February 2007, copies of the Defendants'

Motion for Summary Judgment, Memorandum In Support of Defendants' Summary Judgment

Motion and in Opposition to Plaintiffs' Partial Motion for Summary Judgment (and exhibits

thereto) were electronically filed to:

Eli Gottesdiener, Esquire
Gottesdiener Law Firm
498  7th Street
Brooklyn, New York

*Attorney for Plaintiffs*

_____/s/_____
Robert A. Gaumont

28