IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WADE F. HALL,<br>  *et al.*,<br>           **Plaintiffs,**<br>     v.<br>**NATIONAL RAILROAD PASSENGER CORPORATION,**<br>  *et al.*,<br>           **Defendants.** | Case No.  1: 06-CV-01539 (GK)<br>Next Scheduled Court deadline: March 15, 2007 (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rules 7(h) and 56.1, defendants National Railroad Passenger Corporation ("Amtrak"), Retirement Plan Committee for the Retirement Income Plan for Employees of National Railroad Passenger Corporation (the "Committee"), and Retirement Income Plan for Employees of National Railroad Passenger Corporation (the "Plan") (collectively "Defendants") respectfully submit this response to Plaintiffs' Statement of Material Facts.

**I.     INTRODUCTION**

Plaintiffs' purported "Statement of Facts" actually consists of 90 paragraphs of argument – few of which actually relate to the issues in *Hall II*.  These paragraphs rely on 77 exhibits, most of which are provided without any type of authentication (except from Plaintiffs' lawyer) or any type of foundation.  Few of these purported "facts" are "material" – few of them address the

issue of the Committee's adjudication of Plaintiffs' claim, and none of them was presented by the Plaintiffs to the Committee for consideration. If the Plaintiffs believed that these e-mails and other documents purportedly generated by Amtrak management had any bearing on its claim, Plaintiffs were required to present these "facts" to the Committee. Because they failed to do so, this Court should summarily disregard these exhibits as immaterial.

The Rules require "a *concise* statement of facts," (emphasis added) and Plaintiffs' statement is no more succinct than it is material to the issues in *Hall II*. Because of the sheer number of Plaintiffs' "facts" (which are mostly arguments unrelated to the issues in *Hall II*), Defendants have responded to them by organizing them by the source of the information upon which these facts are allegedly based.

## II.    DEFENDANTS' RESPONSE

| Paragraph Number | Response to Plaintiffs' Statement of Purported Material Facts |
|---|---|
| 1 | Defendants agree that the first two sentences of this paragraph are undisputed facts. The last sentence, however, appears to be produced from a document (which Plaintiffs conclude is an "actuaries' presentation") that has not been authenticated. Plaintiffs have not laid any type of foundation for this document, and it is pure hearsay.<br><br>Finally, Plaintiffs include – in a footnote – a case citation commenting on the contents of the document. This is pure argument, and a wholly inappropriate use of a "Statement of Facts." |
| 2, 3, 4, 5, 22, 23, 24, 25, 26, 29, 30, 31, 35, 36, 37, 38, 39, 40, 41, 45, 47, 55, 69, 70 | These paragraphs are wholly immaterial to the issues in *Hall II*.<br><br>These paragraphs all appear to be based on purported e-mails or e-mail attachments from Warren Reisig – a former Amtrak employee. There is no authentication of these emails; Plaintiffs declined to depose him. Plaintiffs have provided no foundation for these emails. Further, these e-mails are hearsay -- there is no evidence in the record concerning Mr. Reisig's responsibilities and whether his statements would constitute a party admission. |

| Paragraph Number | Response to Plaintiffs' Statement of Purported Material Facts |
|---|---|
| | Mr. Reisig was not a Board member and his views are immaterial to determining the Board's intent.<br><br>Plaintiffs have failed to support these purported "facts" with admissible evidence from the record. |
| 6 | This paragraph is wholly immaterial to the issues in *Hall II*.<br><br>Plaintiffs claim, without explanation, that from "metadata" they can tell that this document was produced by Mr. Reisig's computer.  It is provided without authentication or foundation, and is hearsay and, therefore, is not evidence upon which a "fact" can be based at summary judgment. |
| 7, 8 | These paragraphs are wholly immaterial to the issues in *Hall II*.<br><br>This document is provided without authentication or foundation. Plaintiff had an opportunity to depose Amtrak's directors and actually deposed one – Governor Holton.  Yet, there is no evidence that the document attached as Exhibit 16 (which Plaintiffs call a "briefing book" for the directors) was ever actually shown to any director.<br><br>As a result, Plaintiffs have failed to produce admissible evidence from the record in support of these "facts." |
| 9 | Defendants agree that the first sentence of this paragraph is an undisputed fact.<br><br>The remainder of this paragraph is argument, purportedly based on language from the Pension Plan.  The Pension Plan speaks for itself. |
| 10 | This document upon which this paragraph is based is without foundation or authentication and it is hearsay.  Plaintiffs have failed to produce admissible evidence from the record in support of this fact. |
| 11, 12, 13, 14 | These paragraphs are wholly immaterial to the issues in *Hall II*.<br><br>These documents are provided without authentication or foundation.  Plaintiff had an opportunity to depose Amtrak's directors and actually deposed one – Governor Holton.  Yet, there is no evidence that either of the two documents described by Plaintiffs as an "Executive Summary" or, for that matter, any of the other documents cited in these paragraphs was ever actually shown to any director.  Indeed, in Paragraph 11, FN 9, Plaintiffs |

| Paragraph Number | Response to Plaintiffs' Statement of Purported Material Facts |
|---|---|
|  | admit that "[i]t is not clear" even to them which documents were shown to the directors.<br><br>Plaintiffs have failed to produce admissible evidence in support of the "facts" in these paragraphs. |
| 15, 16, 17 | The Board resolutions speak for themselves. Plaintiffs should not be paraphrasing them or making arguments relating to them in a "Statement of Facts." |
| 18 | This paragraph is wholly immaterial to the issues in *Hall II*.<br><br>This paragraph is based on a document that is being provided without foundation, either from the person who Plaintiffs' alleged sent it (former Amtrak President George Warrington) or of the recipients – alleged by Plaintiffs as "all employees." There is no indication that this document was ever actually sent or that any employee ever actually received it.<br><br>There is no support for the allegations in this paragraph. |
| 19 | This paragraph is wholly immaterial to the issues in *Hall II*.<br><br>Defendants agree that at least one news story ran during this time – the story cited in paragraph 19. The story itself is hearsay. |
| 20 | This paragraph is wholly immaterial to the issues in *Hall II*.<br><br>These documents are without authentication or foundation, and are hearsay. Plaintiffs have failed to produce admissible evidence in support of the allegations in this paragraph. |
| 21, 68 | These statements of "fact" are pure argument and inappropriate for inclusion in a "Statement of Facts." |
| 27-28 | These paragraphs are wholly immaterial to the issues in *Hall II*.<br><br>These documents appear privileged (although Defendants would need more information concerning how they were obtained to state that conclusively). They are also without foundation or authentication, and are hearsay. |
| 32, 33, 34, | These paragraphs are wholly immaterial to the issues in *Hall II*.<br><br>These documents are without authentication or foundation, and are hearsay. Plaintiffs have failed to produce admissible evidence in support of the allegations in this paragraph. |

| Paragraph Number | Response to Plaintiffs' Statement of Purported Material Facts |
|---|---|
| 42 | This paragraph is wholly immaterial to the issues in *Hall II*

This whole paragraph is based on two versions of unsigned letters, purportedly from Mr. Hermann (who was never deposed). They are not authenticated, they lack foundation and are hearsay. Further, there is no indication as to whether these letters were even sent.

Plaintiffs have failed to produce any admissible evidence to support the allegations in this paragraph. |
| 43 | This paragraph is wholly immaterial to the issues in *Hall II*

This whole paragraph is based on purported e-mails from Aon (which was never deposed). These emails are hearsay, lack foundation and have not been properly authenticated.

Plaintiffs have failed to produce any admissible evidence to support the allegations in this paragraph. |
| 44, 46, 49 | These are more allegations based on documents that Plaintiffs claim were presented to the Board, but that Plaintiffs have failed to show were actually presented. The documents upon which Plaintiffs base the allegations in these paragraphs (including an unsigned letter) lack foundation and have not been properly authenticated – it is not admissible evidence upon which facts may rest at summary judgment. |
| 48 | This paragraph is wholly immaterial to the issues in *Hall II*.

This is an unsigned letter from Stanley Bagley – it lacks authentication, foundation and is hearsay. There is no indication as to whether this document was sent to anyone. |
| 52, 53, 54 | These paragraphs are based on paraphrasing of the depositions of Governor Holton, Ms. Serfaty and Mr. Carten. These deposition transcripts speak for themselves. |
| 55, 56 | These documents speak for themselves. |
| 57 | This fact is undisputed. |
| 58 | This is argument, and inappropriate, as written, in a "Statement of Facts." George Warrington did not sign because, as a non-voting *ex officio* member, he was not required to. Deputy Secretary Jackson was Secretary Mineta's delegate and he signed. |

| Paragraph Number | Response to Plaintiffs' Statement of Purported Material Facts |
|---|---|
| | Governor Holton instructed Mr. Carten to effectuate his signature on his behalf. |
| 59, 60, 61, 62, 63, 64, 65 | These paragraphs are based on paraphrasing of the depositions of Governor Holton, Ms. Serfaty and Mr. Carten. These deposition transcripts speak for themselves. |
| 66, 67, 78 | The documents have been provided without foundation or authentication – most are hearsay. These documents are not evidence upon which facts averred in a summary judgment motion can be based. |
| 71, 72, 73, 74, 75, 76, 77, | These paragraphs all appear to be based on purported e-mails from William Herrmann. There is no authentication of these emails; Plaintiffs declined to depose him. Plaintiffs have provided no foundation for these emails. Further, these e-mails are hearsay.<br><br>In addition, Plaintiffs, again, impermissibly include argument in these "factual" assertions, including citations to case law. This is an inappropriate use of a "Statement of Facts."<br><br>The documents are not evidence by which facts averred in a summary judgment motion can be based. |
| 79, 80 | It is undisputed that Ms. Green executed this document. Plaintiffs, however, have inappropriately included argument relating to its substance and its relationship to other documents that are in dispute. The document speaks for itself. |
| 81-90 | The documents between Amtrak, Amtrak's counsel and the IRS speak for themselves. These documents are inadmissible for summary judgment purposes. |

### III.   DEFENDANTS' COUNTER STATEMENT OF FACTS

**A.   The Plan Gives the Committee A Fiduciary Discretionary Authority to Determine Eligibility of Benefits and to Construe the Plan's Terms.**

1.      Plaintiffs are all participants in the Plan, a copy of which is attached as Exhibit A.

*See* Complaint ¶¶ 6-8.

2.	The Plan provides that the President of Amtrak appoints members of the Committee. *See* Plan, Exhibit A, § 10.01, at p. 58. The Committee must consist of at least three (3) persons, drawn upon Amtrak employees or members of the Board. *Id.*

3.	The Committee serves as both the Plan Administrator and the Named Fiduciary to the Plan. *Id.*

4.	The Plan provides the Committee with complete independence from Amtrak's Board of Directors (the "Board") in serving as Plan Administrator and Named Fiduciary. Specifically, the Plan states that "[t]he Board shall have no duty with respect to the administration of the Plan other than the ratification of the appointment of a Board member to the Committee." *Id.* § 10.02, at p. 58.

5.	The Plan also provides the Committee with complete discretionary authority to interpret the Plan and decide issues of eligibility. Specifically, the Plan states that the Committee has the power:

> To construe and interpret the Plan, correct defects, make factual determinations, and to decide any and all matters arising under the Plan, including the right to remedy possible ambiguities, inconsistencies or omissions; provided, however, that all such interpretations and decisions shall be applied in a uniform and nondiscriminatory manner to all Employees similarly situated, and shall be final and binding on all parties.

*Id.* § 10.03(i), at p. 59.

6.	In performing these functions, the Committee has the right to rely on the advice on experts, including legal counsel, "to render advice upon request with regard to any matters arising under the Plan." *Id.* § 10.03(f), at p. 58. The Plan specifically states that the Committee shall be entitled to rely "upon all opinions and recommendations given by any legal counsel

retained by or on behalf of the Plan," and that the Plan is protected by law for all actions taken in good faith reliance upon such opinions and recommendations. *Id.* § 10.06, at p. 60.

**B.     Plaintiffs File Their Claim with the Committee.**

7.      On or about August 5, 2005, counsel to Plaintiffs made a claim for benefits to the Committee. *See* Exhibit B (the "Claim"). The Claim was filed the same day that this Court dismissed Count I of Plaintiffs' claim in *Hall II* based on Plaintiffs' failure to exhaust their administrative remedies.

8.      In the Claim, Plaintiffs argued that the September 14, 2001 amendment to the Plan was invalid because A. Linwood Holton, former Governor of Virginia, did not personally sign the resolution. *Id.* at p. 4-5.

9.      The Claim did not make any substantive assertions that the Amtrak Board of Directors "amended" the Plan on July 26, 2001, rather than authorize management to make any such changes. This is one of the issues fully briefed in the *Hall I* lawsuit.

10.     The Claim also did not assert that the Board action on September 14, 2001 was invalid because Amtrak's President and CEO, George D. Warrington and the Secretary of Transportation, Norman Y. Mineta, did not sign a unanimous consent resolution. Quite the opposite, Plaintiffs repeatedly argued that the actions of Governor Holton (and management) constituted the problem. Plaintiffs even went so far as to argue that the other directors were victims; thus:

> [T]he other Directors were left in the dark and had no earthly idea that employees' benefits were being proposed to be cut with one Director's personal signature and direct physical engagement as to the operative documents cavalierly tossed to the side by management whose own crass mistakes caused the fire-drill

atmosphere from being forced on the Directors in the first place (9-11 or no).

*Id.* at 5.

**C.   The Committee Members And The Committee's Legal Counsel**

11.   The Committee members during the time of consideration of this claim were Jeff Carnicelli, Matt Hardison and Paula Porter.  *See* Exhibit C, Affidavit of Jeffrey Carnicelli at ¶¶ 2-3 .  All were Amtrak employees; no one was a Director.  *Id.* at ¶ 3.

12.   The Committee engaged the law firm of Venable LLP to provide counsel to them in considering this claim.  *Id.* at ¶ 4.  The Committee primarily received advice and counsel from two partners at Venable, Robert J. Bolger, Jr., Esq. and Barbara E. Schlaff.  *Id.*  Mr. Bolger and Ms. Schlaff have been practicing in the employee benefit and corporate law fields for decades. *Id.*

**D.   The Committee Meets to Discuss Plaintiffs' Claim**

13.   On or about October 25, 2005, the Committee met to discuss Plaintiffs' Claim. *See Id.* ¶ 5; Exhibit D (minutes to October 25, 2005 Committee meeting).  During this meeting, Venable advised the Committee on its fiduciary responsibilities under the Plan, as well as other matters.  *See* Exhibit C (Carnicelli Affidavit) ¶ 6.

14.   The Committee also elected Ms. Porter as chairperson of this claim, and Mr. Carnicelli as secretary of the claim.  *See* Exhibit D.

**E.   The Committee's Counsel Provides Advice Concerning the Claim**

15.   On or about December 8, 2005, the Committee's counsel, Ms. Schlaff and Mr. Berger, provided a memorandum to the Committee summarizing and analyzing Plaintiffs' claim. *See* Exhibit C (Carnicelli Affidavit) ¶ 7; Exhibit E.

16.     This memorandum identifies the circumstances surrounding Governor Holton's delegation of affixing the September 14, 2001 resolutions with his signature as the principle issue to be resolved by the Committee in adjudicating this claim. Exhibit E at p. 5. The memo cites to deposition testimony and the papers filed in the *Hall I* action, among other documents *Id.* at 5-6. It concludes by stating that legal counsel will discuss and advise on these issues further with the Committee at its next meeting. *Id.*

**F.    The Committee Meets Again to Consider Plaintiffs' Claim**

17.     On or about December 14, 2005, the Committee convened again to discuss Plaintiffs' claim. *See* Exhibit F (minutes to December 14, 2005 Committee meeting); Exhibit C (Carnicelli Affidavit)¶ 8. The Committee made factual findings with respect to the Claim at this meeting. *Id.*; *Id.*

18.     During this meeting, the Committee concluded that "the version of the Amtrak Voluntary Retirement Plan ("VERP") which was approved by the Amtrak Board of Directors on September 14, 2001 was the operative version of the VERP which was made available to eligible Amtrak Employees, including the Claimants, during the election window commencing on September 15, 2001 and ending on October 31, 2001." *See* Exhibit F.

19.     On or about January 20, 2006, a special meeting of the Committee was conducted, with counsel, by telephone. *See* Exhibit C (Carnicelli Affidavit) ¶ 9. During that meeting, the Committee instructed counsel to execute the determination letter on behalf of the Committee. *See* Exhibit G (minutes to January 20, 2006 special meeting of the Committee).

**G.      The Committee Exercises Its Fiduciary Discretionary Authority to Deny Plaintiffs' Claim.**

20.     On January 23, 2006, the Committee sent official notice to the Plaintiffs, in the form of an eight (8) page letter, explaining to the Plaintiffs that the Committee had denied their claims, and providing the Committee's reasoning for the denial.  *See* Exhibit H ("Committee's Claim Denial Letter").

21.     The Committee's Claim Denial Letter included ten (10) findings of fact, mostly relating to the September 14, 2001 Board action.  *Id.* at pp. 3-5.

22.     The Committee then made two conclusions relating to Governor Holton's action. First, the Committee acknowledged that under Amtrak's Bylaws, § 4.12, and the District of Columbia Business Corporation Act, § 29-101-1.136, the Board can act by unanimous consent. The Committee noted that Plaintiffs objected to the Board's unanimous consent on September 14, 2001 because Governor Holton did not personally sign the consent.  The Committee then made the following finding:

> The Committee finds that because Governor Holton fully understood and agreed with the content of the resolutions and intended to manifest his agreement in writing, the Governor's instructions to Mr. Carten to affix the Governor's signature to the consent was no more than the delegation of ministerial act to Mr. Carten.  The Committee finds that such a delegation of a purely administrative act is not inconsistent with the requirement that the consent be unanimously approved in writing by the directors with voting power. …

Exhibit H, Committee's Claim Denial Letter at p. 5.

23.     While the Committee expressly found that there was no "technical defect" to Governor Holton's execution through a subordinate of the September 14, 2001 unanimous consent, the Committee concluded that, even if there was some "technical defect," it would not

invalidate the actions of September 14, 2001 absent some showing of "bad faith or active concealment on the part of the sponsor." *Id.* The Committee concluded, however, that the Board acted in "good faith [and] to the best of its abilities in light of the September 11, 2001 terrorist attacks." *Id.*

### H. The Plan Appeals Officer Affirms the Committee's Claim Denial.

24. On or about February 9, 2006, Plaintiffs filed an appeal to Amtrak's Vice President of Human Resources, Lorraine Green, who was designated as the Plan appeal officer, and filed purported supplements to this appeal on March 20, 2006 and May 16, 2006. *See* Exhibit J; Exhibit I (Affidavit of Lorraine Green) ¶ 3.

25. On or about July 14, 2006, Ms. Green denied the appeal in a letter to the Plaintiffs. *See* Exhibit K. Ms. Green then provided a point by point refutation to the issues that Plaintiffs' raised in their appeal letters, and cited specific instances in Governor Holton's deposition (which the Committee reviewed) where the Governor stated that he authorized the Board's assistant secretary to affix his signature to the consent. Exhibit K, at pp. 7-12.

26.     In response to the request by Plaintiffs for documents, the Committee produced the administrative record of materials for this claim. *See* Exhibit I ¶ 5. To the extent that these documents are not already included as an exhibit in this case or otherwise in the record of *Hall I*, or *Hall II* these documents are attached as Exhibit L.

Respectfully submitted,

_____/s/_____
John R. Wellschlager
Robert A. Gaumont
(Admitted *Pro Hac Vice*)
DLA PIPER US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

Mark Muedeking
D.C. Bar No. 387812
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
Telephone (202) 861-3900
Facsimile (202) 223-2085

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of February 2007, copies of the Defendants' Response to Plaintiffs' Statement of Material Facts was electronically filed to:

>Eli Gottesdiener, Esquire
>Gottesdiener Law Firm
>498 7th Street
>Brooklyn, New York
>
>*Attorney for Plaintiffs*

_____/s_____
Robert A. Gaumont