# EXHIBIT E

# VENABLE LLP

| | | |
|---|---|---|
| Two Hopkins Plaza, Suite 1800 | Telephone 410-244-7400 | www.venable.com |
| Baltimore, Maryland 21201-2978 | Facsimile 410-244-7742 | |

| | | |
|---|---|---|
| Barbara E. Schlaff | (410) 244-7494 | beschlaff@venable.com |

## Memorandum – Privileged and Confidential

TO:
**Amtrak Retirement Plan Committee**

FROM:
Barbara E. Schlaff
Robert J. Bolger, Jr.

RE:
Hall Claims

DATE:
December 8, 2005

We are writing to provide the Committee with background information, an overview of the pending litigation, and an explanation of the claims for benefits filed on August 5, 2005 by Wade F. Hall, Hattie N. McCoy-Kemp and Victoria F. Staton.

### Background Information

In 2001, Amtrak was considering ways to reduce its operating costs through a workforce reduction. In order to minimize the number of involuntary dismissals, Amtrak decided to implement a voluntary early retirement window, which would open on September 15, 2001 and close on October 31, 2001.

*July 26, 2001 Board Meeting.* On July 26, 2001, at a meeting of Amtrak's Board of Directors, the Board took action to approve a Voluntary Early Retirement Program ("VERP") that included two components: (1) an additional 5 years of age for purposes of determining the early retirement reduction applicable under Amtrak's qualified defined benefit pension plan – the Retirement Income Plan for Employees of National Railroad Passenger Corporation ("Amtrak Pension Plan" or "Plan"), and (2) a monthly supplement payable until a participant qualified for unreduced Railroad Retirement Benefits ("Railroad Retirement Supplement").

*September 14, 2001 Board Action By Consent.* Before the window opened to eligible Amtrak Plan participants on September 15, 2001, it became apparent that the cost of the VERP, as approved by the Board on July 26, 2001, was going to be significantly higher than originally estimated. Therefore, on September 14, 2001, the Board, by written consent, took action to approve a scaled-back version of the VERP. Under this new approach, instead of a monthly supplement payable until a participant qualified for unreduced Railroad Retirement Benefits, each participant would receive a $15,000 lump sum payment. The additional 5 years of age for purposes of determining the early retirement reduction applicable under the Amtrak Pension Plan remained in place.

BA3 – 315417

**HALL2000020**

PRIVILEGED AND CONFIDENTIAL

We have used the generic phrase "took action to approve" above with respect to the Board, because the legal impact of certain actions taken by the Board is in dispute and is central to the claims in front of the Committee. Specifically, there is a dispute regarding whether the action taken at the July 26, 2001 Board meeting actually amended the Amtrak Pension Plan on such date, or merely authorized management to draft and execute an amendment to the Plan at a later date. Moreover, there is a dispute regarding whether the action taken by the Board on September 14, 2001 was effective to authorize the reduction in the VERP.

### Overview Of Litigation

*Plaintiffs' Complaint.* On August 19, 2003, Eli Gottesdiener, Esq. filed a complaint on behalf of plaintiffs Wade F. Hall, Hattie N. McCoy-Kemp and Victoria Staton in U.S. District Court for the District of Columbia, claiming in essence that numerous current and former Amtrak employees were shortchanged in connection with the 2001 VERP and were entitled to additional payments. The case was assigned to Judge Gladys Kessler. The complaint sought certification as a class action on behalf of three classes of plan participants, each class similarly situated to one of the named plaintiffs.

Mr. Gottesdiener ultimately filed an amended version of this complaint on December 1, 2004. This version is referred to in the litigation as the "Second Amended Complaint" and is the currently operative version of the complaint.

The Second Amended Complaint contains three counts:[1]

*Count I: Breach Of Fiduciary Duty For Failure To Comply With Plan Terms.* ERISA imposes a duty on plan fiduciaries to ensure that a plan is operated in accordance with its terms. Count I of the Second Amended Complaint alleges that the July 2001 Board actions to approve the VERP were effective to amend the Plan to provide for the more generous version of the VERP, but the September 2001 Board actions to approve the reduced VERP were ineffective. Count I alleges that as a result, when the early retirement window opened on September 15, 2001, the Plan then in effect provided for the more generous version of the VERP, yet the Plan's fiduciaries failed to follow such Plan terms and instead acted as though the reduced VERP was in place. Count I alleges that this is a breach of fiduciary duty.

*Count II: Violation Of ERISA's "Anti-Cutback" Rule.* ERISA provides participants with the assurance that certain types of benefits (but not all benefits) which have already accrued under a qualified retirement plan (such as the Plan) cannot be reduced or eliminated through a plan amendment. This is referred to as ERISA's "anti-cutback" rule, and benefits which are protected from cutback are referred to as "Protected Benefits". Count II alleges the Railroad Retirement Supplement is a Protected Benefit which cannot be reduced by plan amendment, and that the Board's action on September 14, 2001 purporting to reduce the VERP violated the anti-cutback rule. Count II is an alternative theory to Count I, because Count II is premised on the September 2001 Board actions to approve the reduced VERP being effective from a Board action perspective, but illegal as a violation of the anti-cutback rule.

---

[1]    The Court has not yet certified the case as a class action; the class action request is still before the Court.

-2-

BA3 – 315417

HALL2000021

PRIVILEGED AND CONFIDENTIAL

***Count III: Breach Of Fiduciary Duty By Amtrak's Former Presidents For Failure To Appoint Plan Committee.*** ERISA requires a specified fiduciary to be responsible for Plan administration. The terms of the Plan contemplate that a committee will be appointed for this purpose. Claim III alleges that from approximately 1995 to October 2003, no committee was duly appointed for this purpose, effectively leaving the Plan without a responsible steward, and that this alleged failure to appoint a committee constituted a breach of fiduciary duty by former Amtrak Presidents Gunn, Warrington and Downs.

***Defendant's Response.*** In a Motion to Dismiss filed on December 21, 2004, Amtrak provided a response to each count of the plaintiffs' complaint:

***Count I: Breach Of Fiduciary Duty For Failure To Comply With Plan Terms.*** With respect to Count I, Amtrak provided a threefold response:

(1) Amtrak asserted that there was no failure to operate the Amtrak Pension Plan in accordance with its terms, because the July 26, 2001 Board action did not actually amend the Plan to provide for the more generous version of the VERP. Rather, such Board action merely authorized management to adopt such an amendment in the future, and the amendment ultimately adopted on November 30, 2001 provided for the reduced version of the VERP. Therefore, Amtrak asserts that the more generous VERP was not provided for under the terms of the Plan when the window opened on September 15, 2001.

(2) Amtrak also asserted that the plaintiffs failed to allege with particularity in their complaint the basis for their claim that the September 14, 2001 Board action purporting to reduce the VERP was ineffective.

(3) Finally, Amtrak asserted that the plaintiffs' claim of fiduciary breach for failure to operate in accordance with plan terms is actually a claim for benefits. As ERISA generally requires that a claimant fully exhaust his or her rights under a plan's claims procedures before bringing a lawsuit for benefits in court, and the claimants had not done so, Amtrak asserted that their lawsuit was premature.

***Count II: Violation Of ERISA's "Anti-Cutback" Rule.*** With respect to Count II, Amtrak asserted that as a matter of law, the September 14, 2001 Board action did not amount to a prohibited cutback because the Railroad Retirement Supplement was not a Protected Benefit under ERISA.

***Count III: Breach Of Fiduciary Duty By Amtrak's Former Presidents For Failure To Appoint Plan Committee.*** With respect to Count III, Amtrak asserted that (1) plaintiffs lacked standing to bring the claim, and (2) certain aspects of the claim were brought too late – after the expiration of the relevant statute of limitations.

***Court Order.*** On August 5, 2005, Judge Kessler issued an order partially granting and partially denying Amtrak's motion to dismiss the Second Amended Complaint. Specifically, with respect to each Count, the order provides as follows:

BA3 – 315417

HALL2000022

PRIVILEGED AND CONFIDENTIAL

***Count I: Breach Of Fiduciary Duty For Failure To Comply With Plan Terms.*** Judge Kessler agreed with the third portion of Defendant's response — that Count I was more appropriately cast as a claim for benefits under the Plan as opposed to a claim for breach of fiduciary duty. She ruled that plaintiffs' lawsuit was premature because they had not exhausted the Plan's claims procedures. Given that this ruling disposed of Count I, Judge Kessler did not take a position on the first or second portion of Defendant's response (i.e., regarding whether the July 26, 2001 Board action actually amended the Plan, and whether the September 14, 2001 Board action was effective to reduce the VERP). Rather, Judge Kessler dismissed Count I without prejudice so that plaintiffs could present their claims for benefits to the Committee.

***Count II: Violation of ERISA's "Anti-Cutback" Rule.*** Judge Kessler ruled that it was premature to dismiss Count II on Amtrak's Motion to Dismiss. Rather, she instructed the parties to brief the issue for a Motion for Summary Judgment, with the possibility of oral arguments. Amtrak filed such Motion for Summary Judgment on November 1, 2005 and it is now pending before Judge Kessler.

***Count III: Breach of Fiduciary Duty By Amtrak's Former Presidents For Failure To Appoint Plan Committee.*** Judge Kessler partially dismissed Count III on a technical basis. Specifically, she ruled that plaintiffs' lawsuit with respect to certain of the alleged fiduciary breaches was filed too late under the relevant statute of limitations. Judge Kessler allowed Count III to continue with respect to the alleged fiduciary breaches that are not time-barred.

### Explanation Of Claims Before The Committee

As explained above, the claims for benefits by Mr. Hall, Ms. McCoy-Kemp and Ms. Staton are before the Committee at this time pursuant to Judge Kessler's dismissal of Count I without prejudice. The Committee must render a decision on the claims. If the Committee grants the claims, that probably would render the lawsuit partially or entirely moot. If the Committee decides to deny the claims, the Plaintiffs will be able to appeal that decision to the company officer designated by the Board to decide appeals. If the Committee again denies the claims on appeal, the Plaintiffs will be able to reinstate Count I of the lawsuit at that time.

*Statement of Claims*

We have attached for your reference a copy of the claims letter dated August 5, 2005. As set forth in the letter, the specific claim for each claimant is different because of the manner in which they interacted with the VERP, as follows:

***Hall Claim.*** With respect to Mr. Hall (who did not accept the VERP, continued working for Amtrak and retired under the generally applicable terms of the Plan), the claim is for the full value of the VERP as approved by the Board on July 26, 2001 (plus interest).

***McCoy-Kemp Claim.*** With respect to Ms. McCoy-Kemp (who accepted the VERP as reduced by the Board on September 14, 2001), the claim is for the difference in value between the VERP as approved on July 26, 2001 and the VERP benefit she actually received (plus interest).

BA3 – 315417

HALL2000023

PRIVILEGED AND CONFIDENTIAL

*Staton Claim.*  With respect to Ms. Staton (who did not accept the VERP, was later terminated and paid severance), the claim is for the difference in value between the VERP as approved by the Board on July 26, 2001 and the severance (plus interest).

*Alternative Claim.*  In the alternative, and only if it is determined that the Plan <u>was</u> properly amended on September 14, 2001, the claimants have asserted that the most recent restatement of the Plan (executed December 30, 1994, effective January 1, 1989) was not properly authorized by Amtrak's Board and consequently actions taken pursuant to it are unauthorized.

*No Claim Of Detrimental Reliance.*  The claimants are not claiming that they were damaged by detrimentally relying on the version of the VERP which was initially approved by the Board on July 26, 2001.

### Basis For Claims

As explained above, the crux of the claim before the Committee is that the July 26, 2001 Board action operated as a Plan amendment, and that the September 14, 2001 Board action purportedly amending the Plan was invalid.  Therefore, under plaintiffs' theory, the terms of the VERP as approved by the Board on July 26, 2001 were part of the Plan, and remained in place when the early retirement window opened on September 15, 2001 to eligible Amtrak Plan participants.

Based on our preliminary review of the documents, pleadings and other information we have seen so far, there does not appear to be a dispute regarding the facts surrounding the July 26, 2001 Board meeting.  Rather, the dispute with respect to such meeting appears to center on the legal impact of the action taken at that meeting – that is, whether there was an actual Plan amendment or mere authorization to amend the Plan in the future.

In contrast, there is uncertainty regarding the facts surrounding the September 14, 2001 Board action by written consent, as well as questions regarding the legal impact of the action.  Specifically, the basis for the claimants' assertion that the September 14, 2001 Board action was invalid is as follows:

Under D.C. corporate law principles, a Board of Directors can act through a <u>majority vote</u> taken at a duly convened meeting at which a quorum is present, or through <u>unanimous written consent</u> of the Board taken without a meeting.  If the action is taken at a proper meeting, only a majority of the Directors must agree to it.  In contrast, if the action is taken without a meeting, all Directors must agree to it and evidence their agreement in writing, signed by all of the Directors with voting power.

Amtrak had scheduled a Board of Directors meeting for September 12, 2001 in order to approve the reduction to the VERP.  As this turned out to be the day after the September 11, 2001 terrorist attacks, the Board meeting was cancelled.  Therefore, in order to reduce the benefits offered in the VERP before the early retirement window opened on September 15, 2001, Amtrak elected to have the Board to approve the reduction by unanimous written consent in lieu of a meeting.

A preliminary review of the information we have seen so far indicates that all of the directors at that time except one – Governor Linwood Holton – personally executed counterparts dated as of September 14, 2001 approving the VERP reduction.  The dispute centers around what actions Governor

BA3 – 315417

HALL2000024

PRIVILEGED AND CONFIDENTIAL

Holton took, and the legal effect of such actions.   Specifically, deposition testimony indicates that Governor Holton did not personally sign the consent resolution form that now bears his signature, but rather, his signature was placed on the consent, with his permission and authorization, by Amtrak's Assistant Corporate Secretary, John Carten.  Deposition testimony indicates it is possible that Governor Holton did not actually review a copy of the consent form and resolutions before authorizing his signature to be affixed to it, but rather, might have simply discussed the substance of the proposed VERP reduction with Mr. Carten.  If so, there are questions concerning whether Governor Holton's oral consent and authorization is sufficient – and thus – whether the Board action taken on September 14, 2001 is effective.

We have a meeting scheduled with the Committee next week to further discuss this matter.   If you would like to discuss this memorandum before the meeting, please contact Barbara Schlaff at (410) 244-7494, or Bob Bolger at (202) 344-4902.

*     *     *     *     *

Enclosure:  Claims Letter Dated August 5, 2005

BA3 – 315417

**HALL2000025**