# EXHIBIT J



**Gottesdiener**
**Law Firm, PLLC**

New York | Washington, D.C.
www.gottesdienerlaw.com

1025 Connecticut Ave, N.W. #1000
Washington, D.C. 20036
Tel: 202.243.1000
Fax: 202.243.1001

**Eli Gottesdiener**
eli@gottesdienerlaw.com

February 9, 2006

<u>Via Overnight Mail</u>

Lorraine Green
Vice President, Human Resources
National Railroad Passenger Corporation
60 Massachusetts Avenue, N.E.
Washington, D.C. 20004-1008

Dear Ms. Green:

This is an appeal from the January 23, 2006 denial of the claim made on August 5, 2005 by Wade F. Hall, Hattie N. McCoy-Kemp, and Victoria F. Staton for benefits due under the Retirement Income Plan For Employees Of National Railroad Passenger Corporation (the "Plan").

1.     We are informed that you have been selected to serve as the named fiduciary responsible for providing my clients with a full and fair review of their benefit claim denial. If you were so designated, we believe that your intimate involvement in the matters in question requires you to recuse yourself. Indeed, the factual record suggests that you authorized the printing of pamphlets to be sent to VERP eligible employees on September 14th without even knowing whether or not the Board had taken official action to amend the Plan. (We have previously incorporated other documents and arguments by reference – this is merely an example of the reasons why you should have no further involvement with this matter).

2.     Neither you nor the Committee have the power, by law or by virtue of the Plan instrument, to render a decision as to whether or not a certain provision or provisions did or did not become a part of the Plan as a matter of federal or District of Columbia law. You should therefore decline to adjudicate this appeal, vacate the Committee's decision and inform Judge Kessler that my clients have exhausted their administrative remedies and neither the Committee nor you have the jurisdiction to adjudicate my clients' claim for benefits until the Court decides whether the September 14, 2001 purported Plan amendment was duly enacted under District of Columbia corporations law and federal pension law. Any other decision simply underscores your and the Committee's lack of objectivity.

3.     The Committee's decision is entitled to no weight because it delayed its decision unreasonably and in conjunction with an admitted attempt by the Plan sponsor to avoid the judicial adjudication of the validity of the September 14th amendment, in a misguided effort to gain litigative advantage. Again, you are unable to objectively review this evidence of the

Lorraine Green                                    Gottesdiener Law Firm, PLLC
February 9, 2006
Page 2

Committee's bias and collusion with the Plan sponsor in this fashion due to the position you hold
and your intimate involvement in the matters in question referenced above.

      4.     The Committee's decision is entitled to no weight because it ignored two of three
arguments advanced for why the Board did not, as a matter of law, take valid action on
September 14th to amend the Plan. As to the contentions the Committee makes for why an
exception should be made for the Board's failure to comply with the statutory unanimous
consent procedures, they are without merit. The statute is plain on its face, and its requirements
clear. Compliance with them is not optional, or waivable. Nor is a Director's duty under the
statute delegable as the Committee states or implies.

      5.     The Committee's decision is entitled to no weight because the Committee
impertinently ignored our explicit request for all documents and information relevant to this
claim. *See* Claim Ltr. at 6. ERISA § 503(a)(2), 29 U.S.C. § 1133(a)(2) provides, "in accordance
with regulations of the Secretary, every employee benefit plan shall . . . afford a reasonable
opportunity to any participant whose claim for benefits has been denied for a full and fair review
by the appropriate named fiduciary of the decision denying the claim." ERISA § 503(a)(2), 29
U.S.C. § 1133(a)(2).

     The regulation applicable to my clients' claim states that any plan's claims review
procedure must "[p]rovide that a claimant shall be provided, upon request and free of charge . . .
copies of all documents, records, and other information relevant to the claimant's claim for
benefits. Whether a document, record or other information is relevant to a claim for benefits
shall be determined by reference to paragraph (m)(8) of this section." 29 C.F.R. § 52560.503-
1(h)(2)(iii). Paragraph (m)(8) provides in pertinent part: "A document, record, or other
information shall be considered "relevant" to a claimant's claim if such document, record, or
other information: (i) Was relied upon in making the benefit determination; (ii) Was submitted,
considered, or generated in the course of making the benefit determination, without regard to
whether such document, record, or other information was relied upon in making the benefit
determination; (iii) Demonstrates compliance with the administrative processes and safeguards
required pursuant to paragraph (b)(5) of this section in making the benefit determination." *Id.* §
52560.503-1(m)(8).

     The Committee's failure to even acknowledge my clients' request let alone discharge
their duties under this notice-and-comment regulation is strong evidence of its bias and inability
to fairly consider my clients' claims.

      6.     Before recusing yourself from further involvement in this matter, you should
immediately cause to be provided to us all "documents, records and other *information,*" *id.*
(emphasis added), relevant to my clients' claim including but not limited to:

      (1)     All documents and information regarding the selection and appointment of
the Members of the Committee who purported to adjudicate this claim, and all documents

Lorraine Green                                      Gottesdiener Law Firm, PLLC
February 9, 2006
Page 3

regarding the removal or resignation of the Members who were serving since shortly after my clients filed suit in August 2003, including all reasons why those Members are no longer serving on the Committee and the timing of their resignation or removal vis-a-vis this claim for benefits.

(2)    All documents and information regarding your selection and appointment by the Board of Directors *or* any other person or persons as the person or named fiduciary with authority to provide my clients with a full and fair review of their claim.[1]

(3)    All documents and information regarding all communications or other interactions between the Committee or any of its Members and Committee counsel[2] regarding this claim.[3]

(4)    All documents and information in the possession, custody or control of the Committee or any of its Members regarding this claim.

(5)    All documents and information in the possession, custody or control of Committee counsel regarding this claim.

(6)    All documents and information regarding all communications or other interactions between the Committee or its Members regarding this claim and counsel for the Sponsor (or for any current or former director, officer or employee or agent of the Sponsor).[4]

(7)    All documents and information regarding all communications or other interactions between the Committee or its Members and any other fiduciary (including but not limited to the Sponsor, as fiduciary), named fiduciary or other person regarding this matter.

(8)    All drafts of the Committee's January 23, 2006 denial letter.

(9)    All interview notes or notes taken or made in connection with the adjudication of this claim.

(10)    All emails written or received in connection with this claim.

---

[1] A copy of the written instrument by which the Amtrak Board of Directors designated you to serve in that capacity must also be provided under ERISA § 104(b)(2) and/or (b)(4), which we hereby invoke.
[2] Including but not limited to Barbara E. Schlaff and Robert J. Bolger.
[3] "Claim" for purposes of this letter includes but is not limited to all factual and legal matters pertaining to this claim.
[4] Counsel for the Sponsor includes but is not limited to John R. Wellschlager, Mark Muedking, Joy Napier-Joyce, Katrina Kamantauskas-Holder, Roxane Sokolove Marenberg, Desmond T. McIlwain, Alicia Serfaty, William Herrmann. All references to the Sponsor including any current or former director, officer or employee or agent of the Sponsor acting in whole or in part in a non-fiduciary capacity.

Lorraine Green                                    Gottesdiener Law Firm, PLLC
February 9, 2006
Page 4

(11)    All other documents or information generated in connection with this claim, including audio or videotapes.

(12)    All documents reviewed in whole or in part by the Committee or any of its Members or any of its counsel in connection with this claim.

(13)    All retainer and related agreements pertaining to the retention of counsel for the Committee as relates to this claim, including all bills, invoices, expenses reports, etc.

(14)    All documents pertaining to the validity of the 12/23/94 version of the Plan that are or were in the Committee's possession, custody or control, or that of any of its Members or of its counsel.

(15)    All information of which the Committee, any of its Members or its counsel are aware pertaining to the validity of the 12/23/94 version of the Plan.

(16)    All documents and information that reflect or constitute what the Committee calls "subsequent actions of the Board in authorizing amendments to the Plan, and otherwise acting with respect to the Plan" such that they can be deemed to be "an implied ratification of the 1994 restatement of the Plan," with specific reference to exactly which actions constitute such ratification. Also produce all documents and information indicating whether the Sponsor has ever informed the Internal Revenue Service as to its failure to properly amend the Plan or any theory that can be likened to the Committee's that this failure to amend can be or was cured retroactively and/or through implied ratification. Also produce all documents and information pertaining to any consideration that the Committee has given to its obligations to inform current or prior participants regarding these matters.

(17)    All documents and information that comprise "the extensive record in this matter" that the Committee and/or any of its Members and/or any of its counsel considered (in whole or in part) in denying my clients' claim.

(18)    All documents and information reflecting cooperation or informational or other exchanges among the Committee and the Sponsor in connection with the adjudication of this claim, including but not limited to the timing of the Committee's denial and all considerations bearing on the timing of the Committee's denial (including but not limited to considerations pertaining to the briefing schedule set by Judge Kessler in the District Court case and the Committee's ability to withhold decision until such time as it may have been deemed advantageous to the Sponsor (or the Committee) as a litigant in the District Court case. Included in this request are all documents and information bearing on why the Committee's denial was faxed to me by Amtrak's Deputy General Counsel William Herrmann, with particular reference to what role he or anyone else acting in whole or in part on behalf of the Sponsor had in any aspect of the adjudication of my clients' claim.

Lorraine Green                                          Gottesdiener Law Firm, PLLC
February 9, 2006
Page 5


     Please provide the above-referenced documents, records and information to us on a rolling basis and, if you have not already denied the appeal for the reason set forth in paragraph 2 above, please hold this appeal in abeyance until I have had an opportunity to make further arguments after I have received all relevant documents, records and information.

     If you refuse to produce any of the requested documents, records or information kindly explain specifically what is being withheld and specifically why, with reference with the numbered subparagraphs above.


                    Sincerely,


                    Eli Gottesdiener


Cc:   Wade F. Hall
       Hattie N. McCoy-Kemp
       Victoria F. Staton



**Gottesdiener**
**Law Firm, PLLC**

New York | Washington, D.C.
www.gottesdienerlaw.com

1025 Connecticut Ave, N.W. #1000
Washington, D.C. 20036
Tel: 202.243.1000
Fax: 202.243.1001

**Eli Gottesdiener**
eli@gottesdienerlaw.com

March 20, 2006

<u>Via Facsimile</u>

Lorraine Green
Vice President, Human Resources
National Railroad Passenger Corporation
60 Massachusetts Avenue, N.E.
Washington, D.C.  20004-1008

Dear Ms. Green:

       In regards to your letter of March 16, 2006, we do not agree that you have accurately
characterized the state of the proceedings.  Moreover, your letter provides additional grounds for
your recusal.

       1.      You identify yourself as the "Plan Appeals Officer."  While you at one point say
that "I will hold your appeal in abeyance for the time being," you otherwise show that you have
not clearly distinguished your role as a named fiduciary for deciding participant appeals from
your role as a corporate HR employee.  Thus, your letter contains repeated references to "we" –
"we are assembling certain documents . . . . We expect this process to be completed in the next
week or two . . . . your clients will have 60 days from the time we deliver the materials we are
producing ....."  This is all the more striking in that your letter ignores that we have asked you to
recuse yourself and to do so immediately.  In that setting you have not taken the care to even
speak to the appellants in terms that attempt to communicate an independence from your
employer or the Committee's whose denial you are supposed to independently review.

       I also note that you sent your letter through Amtrak's Deputy General Counsel William
Herrmann who is a named Defendant in this matter even though the Committee did the same
thing previously and as a result I am already requesting documents and information bearing on
why the Committee's denial was faxed to me in that manner, "with particular reference to what
role he or anyone else acting in whole or in part on behalf of the Sponsor had in any aspect of the
adjudication of my clients' claim."  Whether you recuse yourself or not, that item should now be
read to encompass all documents and information bearing on Mr. Herrmann's role or the Law
Department's role in the processing of an appeal directed to you personally as a supposedly
independent adjudicator.  We reiterate our request that you step aside immediately, except insofar

Lorraine Green                                              Gottesdiener Law Firm, PLLC
March 20, 2006
Page 2

as you are assisting in the production of documents (that we should already have in our possession).[1]

      2.     You also misstate the state of the proceedings.  You say that "your clients will have 60 days from the time we deliver the materials we are producing *to perfect their appeal*." (emphasis added).  Our appeal has been perfected – it is the denial by the Committee that was inadequate because it ignored our statutory right to relevant documents, explicitly requested in the original claim letter.   We requested that our perfected appeal be held in abeyance until such time as we have received the materials we should already have, have had an opportunity to review them, and have had "an opportunity to make further arguments."  I will construe your letter as providing my clients with 60 days from the receipt (or "deliver[y]") of the materials you ("we") "are producing" to make such further arguments as they deem appropriate.

           Sincerely,

           Eli Gottesdiener

Cc:    Wade F. Hall
        Hattie N. McCoy-Kemp
        Victoria F. Staton
        John R. Wellschlager, Esq.

---

[1] As you communicated with me by facsimile through Mr. Herrmann and did not provide me any direct facsimile number, I am faxing this letter to the attention of Mr. Herrmann, who I can only assume is acting as your counsel in this matter.  All your communications with him or anyone else acting as your counsel or advisor in this matter are subject to our pending requests for documents, records and information.



**Gottesdiener**
**Law Firm, PLLC**

New York | Washington, D.C.
www.gottesdienerlaw.com

1025 Connecticut Ave, N.W. #1000
Washington, D.C. 20036
Tel: 202.243.1000
Fax: 202.243.1001

Eli Gottesdiener
eli@gottesdienerlaw.com

May 16, 2006

<u>Via Facsimile and Overnight Mail</u>

Lorraine Green
Vice President, Human Resources
National Railroad Passenger Corporation
60 Massachusetts Avenue, N.E.
Washington, D.C. 20004-1008

Dear Ms. Green:

This is in further to the appeal of Wade F. Hall, Hattie N. McCoy-Kemp, and Victoria F. Staton ("Plaintiffs") dated February 9, 2006 from the January 23, 2006 denial of the claim Plaintiffs made on August 5, 2005 for benefits due under the Retirement Income Plan For Employees Of National Railroad Passenger Corporation (the "Plan"). This letter -- together with Plaintiffs' prior submissions, the letters of the Plan's Retirement Plan Committee (the "Committee") and your or your counsel's letters to Plaintiffs, and all documents, records and other information relevant to Plaintiffs' benefit claim determination at the initial or review level (whether produced or withheld), and all documents produced (or withheld by the defense) or filed with the Court by either side in *Hall v. National Railroad Passenger Corp.,* 03-1764 (GK) (D.D.C.), all of which are hereby submitted for your consideration -- constitutes Plaintiffs' appeal and the record of such appeal from the Committee's January 23rd denial.

**The Claims Process to Date**

On August 5, 2005, Plaintiffs filed their claim for benefits with the Committee. Plaintiffs contend that they were and are entitled to elect the July 26, 2001 VERP with the Railroad Retirement Supplement because the Amtrak Board did not take "action" to amend the Pension Plan and remove the Railroad Retirement Supplement from the Plan. More specifically, Plaintiffs claim that management's attempt to cutback the VERP containing the Railroad Retirement Supplement was ineffective under ERISA and as a matter of corporate law in light of the terms of the Amtrak Plan and the laws and by-laws governing the conduct of Amtrak's corporate affairs.

In support of that contention, Plaintiffs explained in their August 5th letter -- including by incorporation by reference, among other things, more detailed arguments made in the *Hall v. National Railroad Passenger Corp.,* 03-1764 (GK) (D.D.C.) litigation under Count I of their Second Amended Complaint, *see* Claim Ltr. at 5 -- that in accordance with ERISA's

Lorraine Green                                        Gottesdiener Law Firm, PLLC
May 16, 2006
Page 2

requirements, Plan § 13.01 provides a procedure for amending the Plan and identifies the persons who have authority to do so. *See* ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3). Specifically, Plan § 13.01 states that only the Company's Board may amend the Plan and, more specifically, that any amendment to the Plan may be effective only "by action of [the Company's] Board." Plaintiffs explained that under ERISA this means that the Board had to have taken effective corporate action according to its governing statutes, articles of incorporation and by-laws in order to have taken "action" within the meaning of the Plan and ERISA.[1]

Plaintiffs explained that the D.C. Business Corporations Act ("DCBCA") requires the board manage the business and affairs of the corporation through "action . . . taken" at "meeting[s]" of the board pursuant to a quorum, D.C. Code § 29-101.42(b), and that the DCBCA governs Amtrak's internal operations to the extent not inconsistent with federal law, *see* 49 U.S.C. § 24301(e). Plaintiffs noted that while the DCBCA also allows for action to be taken by a board without a meeting, D.C. Code § 29-101.136 ("Requirements of action without meeting"), such action will be valid only "if a consent shall be signed . . . by all of the members of the board" permitting action in the absence of a meeting and "setting forth the action so taken." *Id.* (emphasis added).[2] Plaintiffs also noted that Amtrak's By-Laws § 4.12, "Unanimous Written Consent," contains a provision parallel to the DCBCA with verbatim language.[3]

Plaintiffs explained that it is undisputed that on the day in question, September 14, 2001, which was the eve of the start of the September 15-October 31, 2001 VERP window, the Board did not meet. Instead, Plaintiffs showed, management attempted to get the Board to consent to act in the absence of even a telephonic meeting and take "action" via the written unanimous

---

[1] In *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), the Supreme Court confirmed that a purported ERISA plan amendment not adopted in accordance with a plan's amendment procedures is ineffective to alter the terms of such plan and that it was appropriate for adversely affected participants to have such purported amendments declared ineffective on that basis.

[2] The provision reads in full: "Any action required or permitted to be taken at a meeting of the shareholders of a corporation or of the board of directors or of any committee thereof may be taken without a meeting if a consent in writing setting forth the action so taken shall be signed by all of the shareholders entitled to vote with respect to the subject matter thereof, or by all of the members of the board or of such committee as the case may be, and such written consent is filed with the minutes of proceedings of the shareholders or the board or the committee. Such consent shall have the same force and effect as a unanimous vote of the shareholders or the board or the committee, as the case may be, and may be stated as such in any article or document filed with the Mayor under this chapter."

[3] Amtrak has acknowledged, for example in a brief filed with the United States Supreme Court, that "Amtrak's corporate governance is dictated by the company's Articles of Incorporation and Bylaws." Respondent's Brief, *Lebron v. National Railroad Passenger Corporation*, No. 93-1525 at *5 (S. Ct. Sept. 8, 1994).

Lorraine Green                                      Gottesdiener Law Firm, PLLC
May 16, 2006
Page 3

consent.[4]  However, none of the Directors, including Governor Holton, ever signed anything
referencing their agreement to act in the absence of a meeting.  The draft resolutions
management proffered to the Directors on September 14th were originally designed for use
during an in-person meeting scheduled for September 12th but postponed (briefly, until
September 20th) due to the events of September 11th.  While they may have been appropriate for
use during an in-person meeting and could also have been easily adapted for a telephonic
meeting, they were not appropriately modified for use as unanimous written "consent" forms
because they do not reflect consent to take "the action" "set[] forth" "without meeting."[5]

        Additionally, Plaintiffs showed that one Director, former Virginia Governor Linwood
Holton, did not read or sign the draft resolutions that management proposed to the Board to
eliminate the Railroad Retirement Supplement, or the Executive Summary that management
tendered along with the draft resolutions.  Instead, Plaintiffs explained, Mr. Holton merely
discussed the matter with John Carten, an Amtrak staff member who also acted as a Board
assistant secretary, and then, without discussing the matter with anyone else (including any
member of the Amtrak Board), Governor Holton purportedly gave Mr. Carten oral consent to
"sign" "for" him.

        There is a dispute as to the manner in which Governor Holton indicated he wanted or
expected his "signature" to be placed on the draft resolution and what if anything Amtrak's
General Counsel knew about Mr. Carten's actions before Plaintiffs challenged the validity of the
September 14th resolutions in the *Hall* litigation.  Governor Holton indicated that he was
surprised at the manner in which Mr. Carten manifested the Governor's agreement to what had
been described to him – by using a photocopy of Governor Holton's signature that did not
disclose that it had been placed there not by Governor Holton but by another, authorized party.

---

[4] District of Columbia law and the Corporation's by-laws permit meetings to be conducted telephonically such that a
meeting of the Board is no less a meeting within the meaning of the DCBCA and the By-Laws simply because it is
held by that means.  In fact, Amtrak's Board has on numerous occasions availed itself of the convenience and
flexibility that rule allows and nothing in the record suggests it was not possible for Amtrak to convene a telephonic
meeting of the Board between September 12th and September 15th.  Plaintiffs argued that management's failure to
proceed on that basis does not excuse non-compliance with the law and by-laws' written unanimous consent
procedures.

[5] "Resolutions Authorizing Amendment to 2001 Voluntary Early Retirement Plan" consists of two resolutions
preceded by three "whereas" clauses that state:  "WHEREAS, This Board previously approved a Voluntary Early
Retirement Plan that provided certain enhanced pension benefits for eligible employees; and WHEREAS,
Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the
pension plan funding; and WHEREAS, Management has set forth in the attached Executive Summary the terms of
the proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board;
therefore, be it RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached
Executive Summary is authorized and approved; and be it FURTHER RESOLVED, That the President and Chief
Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the
attached Executive Summary."  Plaintiffs have also argued that the resolutions are defective as consents because
they were not "filed with the minutes of proceedings of . . . the board," as required.

Lorraine Green                                          Gottesdiener Law Firm, PLLC
May 16, 2006
Page 4

(Of course, in virtually all other cases of this sort, an original signature is affixed by someone other than the person whose assent is being manifested but the signer in that case uses a backslash and his or her initials or full name to disclose not just his or her identify but first and foremost the fact that the person whose name or authority did not actually sign the document in question). Amtrak's General Counsel also tried to distance herself from Mr. Carten's actions, claiming not to have had prior knowledge of this practice. Plaintiffs argued all of this testimony was self-serving and unreliable and that Mr. Carten's actions as well as the Governor's and General Counsel's attempts to distance themselves from those actions is strong circumstantial evidence that all of them knew or suspected what they were doing was wrong.

Assuming the failure to satisfy the express "consent" and the express "sign[ing]" requirements of the law and by-laws could be overlooked, Plaintiffs argued that there is nevertheless an insurmountable "meeting-of-the-minds" problem: while the Directors' signatures on the resolutions are, as a matter of law, sufficient to signify their mutuality of assent to the exact terms of the resolutions as among themselves, Mr. Carten's placement of a photocopy of Governor Holton's signature on a previously blank draft resolution form obviously has no such legal significance. Without the presumption of mutuality of assent that the asserter's signature conveys, Governor Holton would have to have had in his mind as a matter of fact precisely what was detailed in the resolutions and accompanying Executive Summary. However, it is undisputed that Governor Holton did not have and did not read either of those documents. Nor did Mr. Carten read them to him verbatim. This precludes any possibility of mutuality of assent as between him and the rest of the Board.

Regarding the claims procedure, Plaintiffs contended that the Plan had failed to establish and maintain a reasonable claims procedure and that the Plan and current Summary Plan Description ("SPD") "are both defective in multiple material respects regarding the required claims process and process." *Id.* at 4. Plaintiffs also argued that neither the current Members of the Committee nor any employee of Amtrak under the circumstances should be involved in the determination of Plaintiffs' claim and that an independent decision maker, not selected by Amtrak, should be utilized in this instance because of their personal and professional conflicts of interest with respect to the matters at hand.[6]

---

[6] Plaintiffs explained, for example, that because the Plan is a defined benefit plan, every payment of increased benefits by the Plan increases the contribution obligation of the Corporation which is already in desperate financial straights and under constant threat of dismantlement. Here, Plaintiffs explained, it is extremely unlikely that an Amtrak employee (especially one with additional conflicts of interest arising from prior direct involvement in the adoption or implementation of either VERP) could objectively decide whether the Board of Directors and top level management procedurally failed to amend the Plan to eliminate the Railroad Retirement Supplement with the result that the Company would have to pay tens of millions of dollars in contributions. Plaintiffs added that it would be especially inappropriate to permit a Committee Member such as William Herrmann to sit in judgment on Plaintiffs' claim since his judgment and conduct are or may be at issue in the *Hall* litigation (where he is a Defendant and a material witness) and in the context of Plaintiffs' claim for benefits. Mr. Herrmann would be essentially ruling on the correctness of his own conduct and advice given in connection with the original and reduced VERP and as to the communications and alleged miscommunications to participants regarding both VERPs.

Lorraine Green                                    Gottesdiener Law Firm, PLLC
May 16, 2006
Page 5


Plaintiffs asked that in the event of an adverse determination that the Committee produce, among other relevant information, all documents upon which it relied in making any such adverse determination. *Id.* at 6.

On November 1, 2005, the Committee wrote Plaintiffs, through counsel, informing them, of among other things, that "special circumstances require a 90-day extension of time for processing the claims." The Committee stated that the Committee had made that determination that special circumstances required a 90-day extension of time for the processing of Plaintiffs' claim "[i]n accordance with 29 CFR Sec. 2560.503-1(f)(1)." November 1st Ltr. at 1. The Committee did not cite any basis in the Plan or SPD for the extension or more generally address Plaintiffs' contention that the Plan had failed to establish and maintain a reasonable claims procedure. Regarding Plaintiffs' request that the Committee recuse itself, the Committee said: "You assert that an independent adjudicator should be appointed to decide the claims, because you believe the Committee is biased and incapable of fair adjudication of the claims. We don't believe that assertion is well taken, and we reject it." *Id.* at 3. No reason was provided, nor did the Committee state that it intended to supply a reason at some future point.

On January 23, 2006, the Committee denied Plaintiffs' claim. Under the heading: "Steps Taken By the Committee In Adjudicating The Claims," the Committee assured Plaintiffs that:

> The Committee has given extensive and careful consideration to the claims of the Claimants. The Committee has engaged independent legal counsel to assist it in properly executing our fiduciary duties in deciding those claims. Counsel has reviewed the extensive record in this matter, including the litigation pleadings, depositions of Linwood Holton (former Amtrak Director and former Governor of Virginia), Alicia Serfaty (Amtrak's Corporate Secretary and General Counsel), John Carten (Amtrak's Director-Board Liaison and an Assistant Corporate Secretary), and Medaris Oliveri (an Assistant Corporate Secretary), Board of Directors' resolutions, Plan amendments, and the materials provided to Amtrak employees relating to the VERP. In addition, counsel spoke with Ms. Serfaty and Mr. Carten concerning this matter.

Jan. 23rd Denial Ltr. at 3.[7]

Notwithstanding the specificity of these disclosures in respect to the steps the Committee and its counsel Venable, LLP ("Venable") had taken before the Committee rendered its decision, the Committee omitted any mention of the fact that the Committee and Venable also had

---

[7] Given the Committee's statements here and elsewhere in its letter regarding its reliance on "counsel to assist it" and the Committee's further statements that "Counsel" (and not the Committee) reviewed the extensive record in this matter, and "counsel" (not the Committee) spoke to the two witnesses identified above, all references herein to the Committee should be deemed to refer to counsel and vice versa, unless the context plainly indicates otherwise.

Lorraine Green                                          Gottesdiener Law Firm, PLLC
May 16, 2006
Page 6

numerous contacts with Amtrak's outside litigation counsel and Amtrak's Deputy General
Counsel Mr. Herrmann who apparently had arranged for Venable to be hired in the first place,
once Amtrak (and not the Committee Members) decided Venable would be suitable counsel for
the Committee.[8]

The basic reason the Committee gave in its January 23rd denial letter for denying
Plaintiffs' claims was because the Committee concluded that "the version of the [VERP]
containing the reduced benefits approved by the Board . . . on September 14, 2001 was the
effective final and operative version of the VERP, and superseded the earlier version of the
VERP approved at a meeting of Amtrak's Board of Directors on July 26, 2001." *Id.* at 1.  The
Committee reached that determination while acknowledging that the Board did not actually
comply with the terms of D.C. Code § 29-101.136 and By-Laws § 4.12 "because Governor
Holton did not personally sign the written consent." *Id.* at 5.[9]

The Committee did not address the fact that the "written consent" that the other
Directors did personally sign did not state or manifest their consent that the Board take official
"action" with respect to the matter in the absence of a formal meeting with a quorum.  The
Committee appears to have assumed that that requirement could also be ignored even though
the signed resolutions are equally consistent with an intent on the part of one or more of the
signing Directors that the Board would still be taking the action referenced in an official and
legally effective manner only after first discussing the matter during a meeting.[10]

The Committee concluded that it did not matter that not all Directors signed the
resolutions approving a reduced VERP because the signature requirement was nothing more than
a "ministerial" act that any board member was free to "delegate[e]" to a third-party. *Id.* at 5
(emphasis added).  The Committee found compliance with the signature requirement should be
excused here "because Governor Holton fully understood and agreed with the content of the

---

[8] The Committee Members were not "introduced" to their counsel until after Amtrak decided Venable would
represent them.  *See* April 21st log and April 21st production, discussed below.

[9] The Committee indicated that it was relying on Mr. Holton's and Mr. Carten's depositions in the *Hall* litigation to
determine as a matter of fact what occurred on September 14, 2001.  It did not explain why it did not rely on the
other sources of factual information which it stated the Committee or counsel had reviewed as to the events of
September 14, 2001.  The Committee did not make any attempt to reconcile the discrepancies in their testimony or
to question Governor Holton further.

[10] The Committee did not address the fact that nothing in the resolutions is inconsistent with one or more of the
Directors believing that a telephonic meeting would still be held.  Under those circumstances, a pre-signed
resolution might be necessary or useful as a proxy or for otherwise evidencing one or more Directors' agreement
with management's proposal, whether or not other Directors, after discussion, may wish to decline to adopt the
proposal or to modify it.

Lorraine Green                                    Gottesdiener Law Firm, PLLC
May 16, 2006
Page 7

resolutions and intended to manifest his agreement in writing." *Id.*[11]

        The Committee did not dispute that Governor Holton did not read nor had read to him
verbatim the resolutions in question and did not read nor had read to him verbatim the
accompanying Executive Summary. The Committee also did not dispute that Governor Holton
had no prior notice or warning of the changes to the VERP that management would be
proposing. The Committee did not explain the basis for its conclusion that the Governor fully
understood and fully agreed with what the signing Directors understood and agreed when all he
received was a summary from a staff member who was himself paraphrasing the resolutions
based on his (the staff member's) understanding of them.

        As an alternative basis for its denial of Plaintiffs' claim, the Committee held even if the
Board failed to comply with the statute and by-law's unanimous written consent procedure as a
matter of corporate law, that "technical" non-compliance could be excused as a matter of ERISA
law because although the plan specified that the sponsor could amend the plan only through by
"action of its Board," the plan did not "require[e] any more specific methodology." *Id.* at 3.
(stating that Amtrak has reserved the right in the Plan document to amend the Plan 'by action of
its Board', without requiring any more specific methodology"). The Committee explained that
"courts have held that an ERISA plan amendment should not be invalidated for technical
violations of a plan's procedures unless there is a showing of bad faith or active concealment on
the part of the sponsor." *Id.* at 5. The Committee cited no case law to support its assertion or
discuss whether there is authority to the contrary.[12]

---

[11] More particularly, the Committee said: "The Committee finds that because Governor Holton fully understood and
agreed with the content of the resolutions and intended to manifest his agreement in writing, the Governor's
instruction to Mr. Carten to affix the Governor's signature to the consent was no more than the delegation of a
ministerial act to Mr. Carten. The Committee finds that such delegation of a purely ministerial act is not
inconsistent with the requirement that the consent be unanimously approved in writing by the directors with voting
power." *Id.*

[12] Having found that the failure to comply with the statute and by-laws constituted a "technical" violation, the
Committee went on to say that it found no reason to believe the Board had not acted in good faith. It did not discuss
questions Plaintiffs raised about the manner in which Mr. Carten chose to show Governor Holton's agreement with
what had been described to him or assess the candor and conduct of other persons involved directly and indirectly in
the events of September 14th. The Committee asserted that "the Board acted in good faith, to the best of its abilities
in light of the September 11, 2001 terrorist attacks," although it did not say that it found that a telephonic meeting
was not possible between September 12th and September 15th. It also did not reference the evidence well known
to Amtrak as to Governor Holton's habits and that with advance notice Governor Holton could have easily made
arrangements to receive and review personally all necessary papers and sign (and/or modify) any resolutions or
consents that met with his approval. The Committee asserted that "Amtrak clearly communicated to eligible
Amtrak employees before the window opened on September 15, 2001 that the terms of the VERP had changed
from the terms previously communicated to them." The Committee did not address the evidence to which Plaintiffs
have pointed in support of arguments to the contrary or mention the fact that the issue is a contested one. The
Committee rejected what it said it understood to be Plaintiffs McCoy-Kemp's and Staton's challenges to the
purported releases they signed upon terminating employment with Amtrak, saying "[t]he Committee rejects this
claim, because the Committee finds that the terms of the VERP were accurately represented to Ms. McCoy-Kemp and
Ms. Staton." *Id.* at 6.

Lorraine Green                                                    Gottesdiener Law Firm, PLLC
May 16, 2006
Page 8

Without reference to its November 1st letter, the Committee again denied Plaintiffs' contention that an independent adjudicator should be appointed to decide Plaintiffs' claims, this time adding that "[t]he Committee is composed of new members who were not directly involved in the adoption and implementation of the VERP.  In addition, we have been assisted by independent legal counsel in our consideration of the claims."  *Id.* at 6.[13]  The Committee did not say why it had not provided this explanation earlier.[14]

In conclusion, under the heading "Claims Procedure of the Plan and Right to Bring Civil Action," the Committee said:  "See attached Section XV of the Plan, setting forth the Plan's claims procedures."[15]  The Committee made no reference to the SPD or Plaintiffs' contention that it was defective and the Plan had failed to establish and maintain a reasonable claims procedure.  The Committee also omitted mention of Plaintiffs' specific request for pertinent documents, failed to produce any such documents, and did not inform Plaintiffs that they had the right to "be provided, upon request and free of charge . . . all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 52560.503-1(h)(2)(iii).

The Committee closed by stating that "[t]he Claimants have 60 days following receipt of this letter to appeal this adverse determination.  The officer of Amtrak designated to adjudicate appeals is the Vice President, Human Resources, Ms. Lorraine Green.  Appeals may be directed to Ms. Green's attention at National Railroad Passenger Corporation, 60 Massachusetts Avenue, NE, Washington, D.C. 20002.  If there is an adverse determination on appeal, the Claimants have a right to bring a civil action under Section 502(a) of ERISA."  As it had in its initial November 1st letter, the Committee open-copied on its letter:  "Counsel to the Committee" Barbara E. Schlaff and Robert J. Bolger of Venable and John R. Wellschlager, "Counsel to the Company."

---

[13] The Committee also said "ERISA clearly contemplates that employees of a plan sponsor may serve as fiduciaries responsible for claims adjudication under a plan" – a point Plaintiffs had acknowledged originally in seeking the recusals but noting that this is not an ordinary or routine "claims adjudication" or claim for benefits. *See* Claim Ltr. at 3.

[14] The Committee also addressed what it characterized as Plaintiffs' contention that "the most recent restatement of the Plan (executed December 30, 1994, effective January 1, 1989) was not properly authorized by Amtrak's Board and consequently actions taken pursuant to it are unauthorized." *Id.* However, the Committee did not address the context in which Plaintiffs raised the issue – namely, the need for Amtrak employees to be recused from deciding the issue. The Committee responded as follows: "Assuming for purposes of this claim (without deciding the matter) that the 1994 restatement of the Plan was not properly authorized when originally adopted, the Committee nonetheless rejects this claim on the basis that subsequent actions of the Board in authorizing amendments to the Plan, and otherwise acting with respect to the Plan, amount to an implied ratification of the 1994 restatement of the Plan. We also note that it is the Committee's duty under ERISA to administer the Plan in the best interests of all Plan participants and beneficiaries. If we were to conclude that the 1994 restatement of the Plan was not properly adopted, the tax qualification of the Plan could be jeopardized - a result which would be detrimental to all Plan participants and beneficiaries." *Id.* The Committee added that its determination in this regard "results from [the foregoing] reason . . ., not from a specific Plan provision." *Id.* at 7.

[15] The Committee's reference was to a two page excerpt from the "Printed 12/23/94" version of the Plan.

Lorraine Green                                          Gottesdiener Law Firm, PLLC
May 16, 2006
Page 9

On February 9, 2006, Plaintiffs appealed the denial of their claim.[16] As an initial matter, Plaintiffs requested that you (Ms. Green) recuse yourself from this matter because of "your intimate involvement in the matters in question." Plaintiffs added that, for example, the factual record suggests that "you authorized the printing of pamphlets to be sent to VERP eligible employees on September 14th without even knowing whether or not the Board had taken official action to amend the Plan."

Plaintiffs further objected that the Committee had violated and ignored Plaintiffs' rights to receive all documents, records and information relevant to their claim and asked that this be immediately corrected and Plaintiffs' appeal be held in abeyance pending the required requested disclosures and Plaintiffs' submission of further arguments after having had an opportunity to review same.

On February 16, 2006, Plaintiffs wrote Venable to ask whether it was representing the new Committee Members in connection with Plaintiffs' claim for benefits and/or in any capacity in the *Hall* litigation. Plaintiffs also asked Amtrak's outside litigation similar questions in a letter that same day.

Venable responded on February 22, 2006, stating that the firm represented the Committee Members "in connection with [Plaintiffs'] claim for benefits" and that Venable did not represent any party in the *Hall* litigation. Venable also said: "We also have been retained to represent Ms. Lorraine Green in her fiduciary capacity as the plan's appeals officer in connection with the August 5, 2005 claim." Venable did not reference the fact that on February 9th, Plaintiffs had asked you to recuse yourself.[17]

On March 16, 2006, you wrote Plaintiffs' counsel, again without reference to Plaintiffs' request that you recuse youself, saying that you were in receipt of Plaintiffs' appeal and that "[p]ursuant to your request, we are assembling certain documents, records and information which

---

[16] Without objection from the Committee, Plaintiffs incorporated by reference "all arguments and points raised in prior filings or any form of written communication concerning the invalidity of the September 14, 2001 amendment, and the validity of July 26, 2001 amendment," and "the deposition testimony of all witnesses deposed in this case with particular reference to Governor Holton, John Carten and Alicia M. Serfaty," and "all documents Plaintiffs have ever reference[d] on the[se] topics including documents not yet produced or withheld for any reason." Claim Ltr. at 5. Plaintiffs continue that pursuant of incorporation, supplemented with the summary contained on page 1 of this letter, and submit for your consideration all documents, records and information there referenced.

[17] On February 24, 2006, counsel for Amtrak in the *Hall* litigation stated that his firm represented only the Committee in the litigation but not the individual Committee members: "They are not named as individuals . . . and thus we could not represent them in such a capacity." In that same letter, Amtrak and the Committee for the first time disclosed to Plaintiffs that two of the new Members were recommended for appointment in April 2005 and a third in June 2005 following the March/April 2005 resignations of the prior Members. Attachments to the letter indicate that two of the appointments were actually (on April 21, 2005) but nothing attached indicates the third recommended appointment (of Mr. Hardison) was ever actually made.

Lorraine Green                                    Gottesdiener Law Firm, PLLC
May 16, 2006
Page 10

you have asked for.  We expect this process to be completed in the next week or two."  You also
said: "pursuant to your request, I will hold [Plaintiffs'] appeal in abeyance for the time being."
On March 20, 2006, Plaintiffs responded by, among other things, explaining that Plaintiffs see
in your letter additional grounds for your recusal.

    Plaintiffs did not hear from you again until April 21, 2006 when, under cover of a letter
sent on your behalf by Venable, you forwarded Plaintiffs some of the documents they had
originally requested of the Committee on August 5th and, through you, again on February 9th.
*See* Venable Ltr., April 21, 2006.

    The Venable April 21st letter states that Venable represents you "in [your] capacity as
appeals officer" under the Plan and that "[o]n behalf of Ms. Green, we are responding to your
request in your letter to Ms. Green dated February 9, 2006, for documents, records and other
information in connection with the determination by the Retirement Plan Committee of the Plan,
as set forth in the letter to you dated January 23, 2006, relating to [Plaintiffs'] claim for benefits."
The letter continues:  "Please note that we have determined that some of the documents you
requested in your February 9, 2006 letter are not relevant under the applicable regulations and
others are privileged or work product and such documents are not being produced."  Venable Ltr.
at 1.  The letter continues:  "We are enclosing with this letter all non-privileged, non-work
product relevant documents responsive to your request, and a list of those documents which are
being withheld."  *Id.*

    The Venable letter also states:  "We have not enclosed copies of the pleadings filed in the
*Hall v. National Passenger Railroad Corp.* litigation because you already have them."  *Id.*
However, the letter does not assert or explain how or which of those filings were relevant to the
Committee's determination within the meaning of the Department of Labor claims regulations.[18]

    The Venable letter concludes by saying that "as the appeals officer under the Plan," you
will "provide a response to the substance of the matters raised in [Plaintiffs'] letters . . . dated
February 9, 2006 and March 20, 2006, following receipt of [Plaintiffs'] 'further arguments', as
described in [Plaintiffs'] March 20, 2006 letter."  No reason was given for the continued failure
to address Plaintiffs' requests for your recusal, as to which Plaintiffs had not indicated they
believed they needed to make any "further arguments."

---

[18] From the documents produced, it appears that Venable used the word "pleadings" to refer to pleadings (which
under the Federal Rules of Civil Procedure are limited to complaints, answers, counterclaims, etc.) as well as other
other court filings such as motions, memoranda, etc., that do not qualify as "pleadings." As of today's date, the
docket in *Hall* contains over 90 separate entries of the pleadings and other filings.

Lorraine Green                                                    Gottesdiener Law Firm, PLLC
May 16, 2006
Page 11

**Plaintiffs' Further Appeal of the Denial of Their Claim**

### 1.    Request for Recusals.

Plaintiffs reiterate their request that you recuse yourself as appeals officer in this matter and also seek the recusal of Venable and Mr. Herrmann from any further involvement in the adjudication of Plaintiffs' claims.

In your case, as previously indicated, Plaintiffs believe that you have multiple, direct, disqualifying personal and professional conflicts of interest as regards the VERP, these claims for benefits and the *Hall* litigation. You have direct personal and professional reasons for denying Plaintiffs' claims without regard for their merit and you are a material witness in both this matter and the *Hall* litigation on a number of potentially important issues. Plaintiffs believe that your failure to recuse yourself by now, or even acknowledge or respond to Plaintiffs' repeated requests for recusal, shows the extent to which these conflicts have affected your judgment. Your use of Venable and Mr. Herrmann as your legal counsel in this matter provides further evidence of the extent to which you have allowed your conflicts to influence you.

As regards Venable, its conflicts of interest and the manner in which it has thus far acted requires it too to withdraw from further involvement here. Without attempting to be exhaustive (which in any event is not possible due to extensive withholding of relevant documents, records and other information, discussed below), Venable's lack of objectivity in this matter -- presumably borne of its positional conflicts as counsel to numerous plan sponsors and desire to earn fees -- is evidenced by, among other things, its attempt to represent you after having represented the Committee, whose decision you are supposed to review -- indeed, review *de novo*. Venable cannot objectively review its own work. Because that decision and reasoning was effectively Venable's, using Venable as your counsel guarantees that Plaintiffs will not get a full and fair review of either the decision or its reasoning.

Further evidence of the effect that Venable's conflicts have had on its judgment can be seen in its failure to even acknowledge Plaintiffs' request for pertinent information regarding the determination of their claim and failure to promptly right that wrong when Plaintiffs explicitly brought it to Venable's attention. It took Venable close to three months to send Plaintiffs any documents under cover of its April 21st letter. When it finally did, it engaged in the withholding of clearly relevant documents on grounds plainly spurious (discussed below).[19]

---

[19] Much of the withheld material appears to be material that, if disclosed, would show the bias and collusion on the part of those involved in the handling of Plaintiffs' claim to ensure the matter is resolved in a way and at a pace that affords Amtrak the maximum litigative advantage in the *Hall* litigation. Venable appears to have been unaware of Plaintiffs' request for relevant information prior to February 9th or the law's requirement that such information be disclosed upon request and thus unaware that its statements on January 23rd about how independent and thorough its review had been could be challenged with evidence from its own files. Now, rather than simply disclose all relevant documents, records and other information, Venable has compounded the problem by stonewalling.

Lorraine Green                                    Gottesdiener Law Firm, PLLC
May 16, 2006
Page 12

Plaintiffs also continue to maintain that Mr. Herrmann's involvement in the Committee's consideration of Plaintiffs' claim as counsel to the Committee was inappropriate. His apparent continuing involvement at the appellate level, in any capacity, is equally improper. Mr. Herrmann is personally and professionally conflicted in multiple ways in these matters and his presence, literally or figuratively, in any phase of these proceedings (other than as a witness being questioned as such) taints them and makes them fundamentally unfair to Plaintiffs. That you and Venable did not insist that he remain walled-off from these proceedings again shows the degree to which you lack the necessary independence to be involved any further here.

**2.    Improper Denial of All Documents, Records and Other Information Relevant to the Committee's Claim Determination.**

Plaintiffs have been denied the documents, records and other information relevant to their claim that they specifically requested and to which they were and are entitled. Full compliance with the claims regulations was essential for Plaintiffs to receive a meaningful opportunity to be heard and to obtain a full and fair review of their claims.[20] Together with the Plan's failure to establish and maintain a reasonable claims process, the extensive withholding of highly relevant materials and information has deprived Plaintiffs of their rights to a fair and impartial hearing.

(1)    "Privilege."

None of the withholdings based on privilege are proper or even colorable. Venable's April 21st letter states: "Please note that we have determined that some of the documents you requested in your February 9, 2006 letter *are not relevant* under the applicable regulations and *others are privileged or work product* and such documents are not being produced. We are enclosing with this letter all non-privileged, non-work product relevant documents responsive to your request, and a list of those documents which are being withheld." April 21st Ltr. at 1 (emphasis added). This is a direct acknowledgement that all of documents or portions of documents withheld on grounds of privilege **are** "relevant under the applicable regulations" – but you have decided to withhold them anyway.[21] That is improper under the regulations which do not recognize claims of privilege whenever the documents (or other information) in question satisfy the regulations' special definition of relevance. Thus, if a document was "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination," it must be produced.

Moreover, even assuming that you or the Committee can invoke privilege, here there would be no such valid claim. Either the withheld material is within the fiduciary exception to

---

[20] Full compliance was equally necessary for Plaintiffs to be able to convincingly establish the bias of decision makers involved in the claims and appeals process.

[21] The contention, as appears on the log, that some of these documents or document portions can also be withheld separately on the grounds of "scope" is addressed below.

Lorraine Green                                          Gottesdiener Law Firm, PLLC
May 16, 2006
Page 13

the attorney-client privilege and/or work product privileges, and/or in the case of the repeated invocation of "work product" for notes or documents created by Amtrak's litigation counsel but which were directly or indirectly submitted to the Committee or its counsel in connection with the benefit determination, any claim of privilege was plainly waived. The withheld materials and information should be disclosed immediately.[22]

        (2)    "Scope."

The "scope" objections are simply designed to help conceal the record of extensive contacts between you, the Committee and Venable on the one hand and Amtrak on the other that demonstrate the bias and collusion infecting this process. Given the Committee's admission of the extent to which it relied on counsel's investigation, opinions and legal advice to reach its determination, for "relevan[ce]" purposes under the regulations, all documents "submitted [to Venable], considered [by Venable], or generated [by Venable] in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination," must be produced.

        (3)    "Other Information."

Plaintiffs' repeated request for other, relevant "information" has been repeatedly ignored. The regulations are clear and require disclosure not just of relevant documents and records but also "other information" relevant to the determination of Plaintiffs' claim. The Committee, through counsel, conducted interviews of witnesses, and of other counsel. All of the information obtained from those interviews or conversations are relevant and must be produced.

        (4)    Other documents.

Numerous categories of materials specifically requested have been ignored, such Venable's billing statements, invoices and documents reflecting who hired Venable, when, how much the firm has been paid and what were and are the source of those payments. All of these documents (and/or information) should have been disclosed. Plaintiffs request that you instruct Venable to disclose those materials and information now.

Plaintiffs provide two additional examples rather than demonstrate item-by-item the extent to which Plaintiffs have been denied documents, records and information relevant to the determination of their claim.

---

[22] Nevertheless, Plaintiffs do **not** request your or your replacement's decision be held in abeyance while you do so, if you do so. These proceedings were and are fundamentally unfair even without regard to these improper withholdings and Plaintiffs are not required to further delay their return to federal court based on an unrealistic hope that they will suddenly have their claims fully and fairly adjudicated.

Lorraine Green                                             Gottesdiener Law Firm, PLLC
May 16, 2006
Page 14

First, notwithstanding the express language of the regulation, Plaintiffs have not received any documents or records that demonstrate compliance with the administrative processes and safeguards required by 29 C.F.R. § 52560.503-1(b)(5) including, without limitation, processes and safeguards to assure that plan provisions were and are applied consistent with governing plan documents and consistently with respect to similarly situated claimants. Nor, if there are no such documents or records, have Plaintiffs been provided with the "other information" that no such documents or record exist.

Second, Venable ignores the governing regulations' requirement that the claimants be provided copies of all relevant documents, records and information as to the *Hall* filings referenced in the Venable April 21st letter when it says it is not producing copies of those filings "because [Plaintiffs] already have them." Putting aside the most basic objection that Plaintiffs' possession or access to those documents does not provide Venable with any basis under the regulations -- which contain no "you-already-have-them" exception – to withhold them, the critical point is that without Venable at least *identifying which ones are relevant* within the meaning of the claims regulation, Plaintiffs are left as much in the dark as if they were not told anything at all about the filings.[23]

3.      **Plaintiffs' Claim Should Be Granted Because the Amtrak Board of Directors Took No Action to Amend the Pension Plan on September 14, 2001.**

An objective adjudicator would have readily concluded that the Amtrak Board did not "take[]" "action" on September 14, 2001 within the meaning of D.C. Code § 29-101.136 and/or Amtrak's By-Laws § 4.12, based on a thorough and impartial review of the facts. Similarly, an objective adjudicator would have concluded that *because* the Amtrak Board did not "take[]" "action" on September 14, 2001 within the meaning of D.C. Code § 29-101.136 and/or Amtrak's By-Laws § 4.12, it also did not take "action" within the meaning of Plan § 13.01 on September 14, 2001 to amend the VERP to eliminate the Railroad Retirement Supplement. The terms of the statute and by-laws are plain and admit of no exception: board action without a meeting is valid only if "[the] consent *shall* be signed . . . by all of the members of the board," D.C. Code § 29-101.136 (emphasis added); By-Laws § 4.12 (emphasis added). Here, there was no consent to proceed without a meeting, nor was the draft resolution management tendered "signed by all of the members of the board."

Regrettably, the Committee's desire to save Amtrak what it would cost if those provisions were applied as written and the unamended Plan implemented as it existed just prior

---

[23] Plaintiffs are confused as well by the fact that, notwithstanding its assertion that it would not provide any filings from the *Hall* case, Venable did indeed do so. Plaintiffs found several defense filings -- no plaintiff-filings – among the documents produced. Read literally (but, again, with the apparently intended modification to the word "pleadings"), the January 23rd letter's representation that "Counsel has reviewed . . . the litigation pleadings" means all filings, including Plaintiffs' submissions, were reviewed. Whatever the truth is, Plaintiffs are entitled to know it, to a detailed listing of all of the relevant *Hall* filings or copies of exactly what was reviewed and hence, by definition, relevant.

Lorraine Green                                              Gottesdiener Law Firm, PLLC
May 16, 2006
Page 15


to the failed, purported September 14, 2001 reduced VERP amendment, have caused it to ignore the explicit, unambiguous language of D.C. Code § 29-101.136 and By-Laws § 4.12, and the indisputable principles governing the amendment of ERISA plans.

The Committee's (*i.e.,* Venable's) discussion of the issue presented never once quotes or discusses the text of the law and by-law it is supposed to be applying, so transparently result-oriented is it. The Committee insists that the act of complying with the express requirements of the law and by-laws of the Corporation as regards the taking of formal corporate action in the absence of a meeting can be "delegat[ed]" but cites nothing in support of that contention, which is really nothing more than the Committee's attempt at an excuse. The related contention that the act of personally signing the consent to proceed without a meeting (and to authorize the corporate business at issue) should be deemed "ministerial" is another unsubstantiated, unprincipled assertion that fails to join issue with the facts, the law and/or Plaintiffs' actual contentions.

Sincerely,

Eli Gottesdiener


Cc:    Barbara E. Schlaff, Esq. (via email)
       Robert J. Bolger, Jr., Esq. (via email)
       Harry I. Atlas, Esq. (via email)
       William H. Herrmann, Esq. (via facsimile)
       John R. Wellschlager, Esq. (via email)
       Desmond T. McIlwain, Esq. (via email)