## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **WADE F. HALL**, | : |
| **HATTIE N. MCCOY-KEMP,** | : |
| **VICTORIA F. STATON,** | : |
|  | : |
| **On behalf of themselves and on** | : **No.  06-CV-1539 (GK)** |
| **behalf of all others similarly situated,** | : |
|  | : **Class Action** |
| **Plaintiffs,** | : |
|  | : **Next scheduled Court deadline:** |
| **v.** | : **N/A-Briefing complete as to this** |
|  | : **motion; Defendants' reply to** |
|  | : **Plaintiffs' opposition to** |
|  | : **Defendants' summary** |
|  | : **judgment motion due** |
|  | : **April 15, 2007** |
|  | : |
| **RETIREMENT INCOME PLAN FOR** | : |
| **EMPLOYEES OF NATIONAL RAILROAD** | : |
| **PASSENGER CORPORATION,** *et al.* | : |
|  | : |
| **Defendants.** | : |
|  | : |

### PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION
### FOR PARTIAL SUMMARY JUDGMENT UNDER COUNT ONE

Eli Gottesdiener
**GOTTESDIENER LAW FIRM, PLLC**
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C.  20036
Telephone:     (202) 243-1000
Facsimile:     (202) 243-1001

Dated:  March 15, 2007          *Attorney for Plaintiffs and the proposed Class*

## Introduction

### September 14, 2001

Amtrak agrees that on September 14, 2001 its Pension Plan specified that it could be amended only "by action of [Amtrak's] Board," Ex. 1, Plan § 13.01, and that this reference to Board "action" means "action" as defined by Amtrak's governing statutes, namely, the Rail Passenger Service Act of 1970 ("RPSA") and the District of Columbia Business Corporations Act ("DCBCA"), D.C. Code § 29-101.01 *et seq.* (the latter controls so long as not inconsistent with the former, *see* 49 U.S.C. § 24301(e)).  Amtrak also does not dispute that because the Board did not meet on September 14, 2001, under the DCBCA (and hence ERISA, *see Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995)), Amtrak could only have amended the Plan that day by showing that the Board took "action" in the absence of a meeting in compliance with the strict requirements of the DCBCA's unanimous written consent provision, DCBCA § 29-101.136, which permits action without a meeting only if "a consent in writing setting forth the action so taken shall be **signed by all . . . of the members of the board** . . . and such written consent is filed with the minutes of proceedings of. . . the board."  DCBCA § 29-101.136 (emphasis added).

Amtrak now concedes that three of the Board's seven members – George Warrington, Norman Mineta and Linwood Holton – did not sign a written consent to amend the VERP as required by the DCBCA -- on September 14, 2001 or indeed ever. But Amtrak's opposition to Plaintiffs' summary judgment motion provides the Court with no colorable basis for excusing this serial non-compliance with the statute.  In place

of statutory analysis, Amtrak offers rhetoric.  Where it should be joining issue with Plaintiffs' specific arguments, Amtrak seems to not see them.

In addition, Amtrak's arguments are misleading.  Trying to parlay the fact that Plaintiffs were required to exhaust internal plan remedies into a rubber-stamp of the Plan's denial of Plaintiffs' benefit claim, Amtrak seeks to re-frame this case (*Hall II*) as if it were a routine benefit claim, such as a pension miscalculation case that might involve the interpretation of ambiguous plan terms such as "credited service," or a long-term disability that might involve conflicting medical testimony and messy factual disputes. But this is no routine claim, no fact of any consequence is disputed, and no plan or contractual provisions unique to this Plan are involved entitling the relevant fiduciary (Lorraine A. Green, Amtrak's HR Vice President, who was chosen as the Plan's "designated officer on review" by Amtrak's Board to decide Plaintiffs' claim and who, after refusing to recuse herself, was the sole person responsible for the ultimate denial of Plaintiffs' claim) to deference.

Instead, Plaintiffs present a purely **statutory** claim, requiring *de novo* review of Ms. Green's decision.  Although it may seem to lend plausibility to Amtrak's assertion that Ms. Green's decision warrants deference, the fact that Plaintiffs went through claims process changes literally nothing in that regard:  the plaintiff in *Holt v. Winpisinger,* 811 F.2d 1532 (D.C. Cir.1987), also first exhausted the plan's internal claims process before filing suit.  But because her claim involved a dispute not over what the plan said but whether <u>as a matter of law</u> under the statute she had sufficient vesting service to be entitled to a pension, the D.C. Circuit found that strictly irrelevant, and held she was entitled to *de novo* review of the trustees' decision denying her claim precisely because it

turned on a question of law, namely, there the interpretation of ERISA's vesting

provision as well as an application of common-law principles of agency:

> Trustee rulings on questions of law do not command [deference] . . . . The question whether an individual is an employee or an independent contractor, involving as it does both an interpretation of a statute -- ERISA -- and an application of common-law principles of agency, is a question of law. **We owe no more deference to the District Court when deciding questions of law *than that court owed to the plan's Administrators.***

*Id.* at 1536 (footnotes omitted) (emphasis added).

     *Holt* is controlling and indeed on all fours with this case.  Plaintiffs' entire claim

turns solely on whether or not Amtrak, via effective Board "action" within the meaning

of the DCBCA, amended the Pension Plan on September 14 within the meaning of

ERISA.  This Court's review must be *de novo* under *Holt.*

     How then does Amtrak distinguish *Holt*?  Well, Amtrak does not discuss,

distinguish or even cite *Holt.*   To read Amtrak's brief, one would never know *Holt* or the

*Holt* principle exists – just like one would never learn that the *Holt* principle seems to be

the law everywhere.  *See, e.g.,  Samaroo v. Samaroo,* 193 F.3d 185, 189 (3rd Cir. 1999)

(applying *de novo* review where question was whether order was a qualified domestic

relations order (QDRO) under ERISA); *Spacek v. Maritime Ass'n, ILA Pension Plan*, 134

F.3d 283, 288 (5th Cir. 1998) (no deference owed to plan administrator's statutory

interpretation); *Burrey v. Pacific Gas & Elec. Co*., 159 F.3d 388, 391-392 (9th Cir. 1998)

(whether plaintiffs were "leased employees" under the Tax Code is a question of law

reviewed de novo); *Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1100 (5th Cir.1990)

("we accord no deference to the [plan administrator's] conclusions as to the controlling

law, which involve statutory interpretation"); *Matassarin v. Lynch,* 174 F.3d 549, 563-64

(5th Cir. 1999); *Weil v. Terson Co. Retirement Plan Administrative Committee*, 913 F.2d 1045, 1048 (2d Cir. 1990).

Amtrak's position that the Plan's denial of Plaintiffs' claim for benefits is entitled to deference is without merit. Amtrak's additional points should also not delay the Court long.[1]

## July 26, 2001

The other question presented for decision is whether on July 26, 2001 the Board (acting unanimously, and during a lawfully called and convened meeting) enacted the VERP with the Railroad Retirement Supplement in the first place, either as an amendment to the Pension Plan or as a stand-alone ERISA plan.

In their opening brief, Plaintiffs showed that the Board's Resolutions and Meeting Minutes from July 26, 2001 are unambiguous and no other sense can be made than that the Board amended the Pension Plan (or enacted the VERP as a stand-alone ERISA plan) that day. Amtrak does nothing to rebut Plaintiffs' showing that it is fanciful to suggest that the Board did not amend the Pension Plan on July 26 with the VERP but instead delegated to management the Board's sole and exclusive discretionary power to amend the Plan (or not) in that respect. Plaintiffs demonstrated that there is no admissible,

---

[1] Plaintiffs in this brief show that as a matter of law Defendants are not entitled to a deferential standard of review under *Holt* and/or because Defendants cannot carry their burden to show that the Plan contains language conferring discretion on the relevant decision maker for the Plan (in this case, Lorraine A. Green, Amtrak's Vice President, Human Resources, who was the designated officer on review under the Plan's Claims Procedures, Article XV) sufficiently clear to displace the default *de novo* review standard established in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989). Only in the event the Court disagrees with those contentions is there a need to reach Plaintiffs further, factual contentions that application of a deferential standard (or summary judgment in Defendants' favor) is premature because there are genuine issue of material fact concerning the administrative record, whether Plaintiffs' ERISA due process rights were violated and whether the Committee and/or Ms. Green were operating under one or more conflicts of interest that tainted their decisions and the decision making process.

objective documentary evidence to support Amtrak's contention that on July 26 (and again on September 14) the Board delegated its discretionary power to amend the Plan to management instead of amending the Plan itself. Plaintiffs showed, in addition, that Amtrak's theory is implausible for any number of reasons and an impossibility even given Amtrak's version of events since such a delegation, under Plan's amendment clause, would have itself required a Plan amendment, which Amtrak says did not happen on July 26 (or September 14).

Finally, Plaintiffs also showed that any doubt that the Board amended the Plan that day with the VERP is dispelled by Amtrak itself, which between July 26 and September 14, 2001 repeatedly stated, through its directors, officers, employees, and counsel, that the Board <u>did</u> amend the Pension Plan on July 26, that the VERP <u>was</u> officially adopted, and that <u>no</u> additional approval was necessary and indeed any deviation from the terms of the Plan as announced and adopted by the Board <u>would violate the law</u> and jeopardize the Plan's tax-qualified status. *See, e.g.,* Stmnt. ¶¶ 18-48, 68-77.

Amtrak offers no merits-based response to any of these points, other than refer the Court generally to briefs Amtrak has filed in the separate action, *Hall I.* Defs. Mem. at 22. But as Defendants themselves complain (without foundation or any showing of cognizable prejudice, as discussed more fully below), Plaintiffs' presentation of the July 26 question is different than it was in *Hall I,* as Plaintiffs told the Court last fall it would be when the question on the table was whether *Hall II* should be stayed or whether Plaintiffs should be given the chance to move for summary judgment as they now have.

Briefs Amtrak wrote two years ago cannot respond to the arguments and evidentiary showing Plaintiffs presented for the first time in January 2007.

Amtrak's other procedural objections regarding the July 26 question are also meritless and addressed below.

### Discussion

I.    **Amtrak Never Eliminated the Railroad Retirement Supplement from the <u>VERP, on September 14, 2001 or at Any Other Time</u>.**

A.    **Mr. Warrington's signed written consent was required for effective Board "action" within the meaning of the Plan, the DCBCA and <u>ERISA.</u>**[2]

Amtrak makes no real attempt to rebut Plaintiffs' statutory argument that Mr. Warrington's signed written consent was a *sine qua non* for effective Board "action" within the meaning of the Plan, the DCBCA and ERISA.  Amtrak does not even try to argue that the statute is ambiguous in its requirement that written consents signed by "all" directors be obtained in order for a board to take action without a meeting, not just consents signed by those with voting power.  Nor could it:  as Plaintiffs previously demonstrated, since 1954, Congress has explicitly required, via DCBCA § 29-101.136, the consent of "all" directors to take action without a meeting, not just those "entitled to vote" on the matter at issue as Congress permits, in the self-same statute, in the case of shareholders who wish to take action without a meeting.  Congress retained this requirement (and even replicated it in the 1962 non-profit version of DCBCA § 29-101.136) in the face of numerous state enactments restricting the consent requirement only to those directors entitled to vote.  *See* Pls. Mem. at 47 (citing a 1962 Wisconsin case involving one such more lenient statute).

---

[2] Amtrak's contention that Plaintiffs "waived" this argument is addressed in Section II, below.

Amtrak does assert that it would be "nonsensical" and "absurd" for a unanimous consent statute to require from a director such as Mr. Warrington, who could not have voted on the matter at issue had an actual meeting been held, a consent to dispense with such a meeting.  Defs. Mem. at 4, 24.  But it purposefully ignores that Plaintiffs discussed various sensible reasons, with citation to authority, for such a requirement in their opening brief at pages 47-49.

Whether or not it is a good idea to require a non-voting director to consent to dispense with a meeting (which, for example, may be the only opportunity for that director to have his or her voice heard or even urge his fellow directors to take a more go-slow approach to the issue at hand) is obviously a question on which reasonable legislators could and do differ.  Congress is not alone in having adopted and adhered to the "all" directors consent requirement.  Many states retain the same requirement, *see* Pls. Mem. at 46-49, as does the ABA's Model Business Corporation Act, which, like the DCBCA, requires the consent of "all" directors but not all shareholders:  shareholders can act without a meeting if those "entitled to vote" are unanimous.  *See* Model. Bus. Corp. Act §§ 7.04, 8.21 (Section of Business Law, ABA).

With the law's strong preference (and former *insistence*) that boards act only pursuant to actual meetings of at least a quorum, it is difficult to see how it can be "absurd" to think that empowering a non-voting board member to veto action taken without a meeting will not in many cases serve a useful purpose.  Surely, the salutary effects that the give-and-take of an actual meeting (even if brief, even telephonic) can have are well-known and even empirically verified.  *See, e.g.*, Stephen M. Bainbridge, *Why a Board?  Group Decisionmaking in Corporate Governance,* 55 Vand. L. Rev. 1, 3

(2002) ("A wealth of experimental data suggests that groups often make better decisions than individuals. Even more strikingly, the conditions under which groups outperform individuals in laboratory settings have important similarities to board decisionmaking"; "because interacting groups produce better decisions, the requirement that the board act only after meeting as a collective body actually has a sound basis"; "there seems to be a legitimate basis for otherwise formalistic rules").

Similarly unpersuasive is Amtrak's alternative "argument" that By-Law § 4.12, which provides that unanimous consent resolutions need be signed only by Board members "with voting power," excuses Amtrak's non-compliance with DCBCA § 29-101.136. Defs. Mem. at 4, 23. Plaintiffs use scare quotes around the word "argument" to underscore that Amtrak makes no real argument – there is merely an assertion (twice) that implies (incorrectly) that a by-law can trump a conflicting statutory provision. *E.g.,* 8 *Fletcher Cyclopedia of the Law of Private Corporations* § 4190 (Current through 2006 Supp.) (where the articles of incorporation or the bylaws conflict with the statute under which the corporation was established, the statute controls). DCBCA § 29-101.04 and § 101.24 clearly restrict the Corporation to enacting bylaws consistent with the DCBCA. Bylaw § 4.12 cannot be relied upon to excuse Amtrak's failure to obtain Mr. Warrington's signed written consent because it conflicts with the governing statute, DCBCA § 29-101.136.[3]

---

[3] Amtrak's claim that Mr. Warrington "ratif[ed]" the Board's September 14 action, Defs. Mem. at 25, is an assertion made without citation to any record evidence or without even an indirect reference to the document or documents signed by Mr. Warrington that supposedly embody this "ratification." As such, it should be disregarded. To the extent Amtrak is arguing that it is unlikely Mr. Warrington would have withheld his consent, that is not a cognizable argument in defense of a failure to satisfy the statute. *See, e.g., Whitaker v. Vastine,* 601 S.W.2d 398, 403 (Tex. Civ. App. Dallas 1980) (refusing to consider argument as to what directors "would have agreed to" had proper unanimous consent procedure been followed); *see also Holcombe v.*

### B.    A consent signed by Secretary Mineta was also required for the Board to act in the absence of a meeting.[4]

Amtrak also cannot articulate a justification for its failure to obtain a written consent signed by Secretary Mineta to amend the VERP.  More specifically, Amtrak advances no argument for how the Court could read 49 U.S.C. § 24302(a)(2)(ii), which merely provides that a sitting Secretary may be "represented *at Board meetings* by his designee," 49 U.S.C. § 24302(a)(2)(ii) (emphasis added), as displacing the very different requirement set forth in DCBCA § 29-101.136 that "all" members of the board, including a sitting Secretary, personally sign a consent to take action in the absence of such a meeting.  Clearly, § 24302(a)(2)(ii)'s "at Board meetings" means something for directors can "act[]" in other ways, do other things, and have numerous other responsibilities apart from simply physically attending board meetings.  Congress could have easily said that a sitting Secretary serving as a director can use a designee to fulfill any and all of his duties as a director if Congress had indeed been so minded.  The fact that Congress specified "at Board meetings" must be given effect as words of limitation.[5]  In short, it is simply not possible to read the words "at Board meetings" as relieving a sitting Secretary from personally signing the written consent required of "all" directors by DCBCA § 29-101.136.

---

*Trenton, etc., Co.*, 80 N. J. Eq. 122, 130, 82 Atl. 618 (1912) (board failure-to-meet case; "it is presumed that if the absent members had been present they might have dissented and their arguments might have convinced the majority of the unwisdom of their proposed action, and thus have produced a different result"), *aff'd* 82 N. J. Eq. 364, 91 Atl. 1069.

[4] Amtrak's argument that Plaintiffs "waived" this argument is addressed in Section II, below.

[5] "Courts are obliged to give effect, to the extent that it is possible, to every word in the statute, because 'Congress cannot be presumed to do a futile thing.'" *The Fertilizer Institute v. Browner*, No. Civ. A. 98-1067 (GK), 1999 WL 33521297, * 5 (D.D.C.  April 15, 1999) (citation omitted).

Amtrak, without engaging the **text** of either of these two statutory provisions, baldly asserts that literal application of one (DCBCA § 29-101.136), in light of the other (§ 24302(a)(2)(ii)), would be "absurd" because it is inconsistent of Congress to relieve a sitting Secretary of Transportation of the burden of attending an actual Amtrak Board meeting yet still require the Secretary personally to agree to dispense with a meeting altogether and personally sign a written consent before the Board could act in the absence of a meeting.  Defs. Mem. at 26.

But there is no contradiction, as Plaintiffs argued previously.[6]  It is one thing to relieve the Secretary of the requirement to attend a meeting at which minutes are kept and numerous additional procedural safeguards must be observed, and something entirely different to say he no longer has the obligation to personally perform the distinct duty of determining when the Board should dispense with a meeting and take action summarily, a setting in which the sole safeguard *is* the direct involvement of all directors.

Amtrak invokes "9/11" to excuse its failure to obtain consents signed by Governor Holton as well as Secretary Mineta.  *See* Defs. Mem. at 4, 26.  But (addressing only the case of Secretary Mineta for the moment), there nothing in the record (and Defendants cite to nothing in the record) supporting the notion that had Secretary Mineta and/or Amtrak realized that the DCBCA required his signature on a unanimous consent resolution that Secretary Mineta's responsibilities in connection with the aftermath of September 11 would have prevented him signing a consent to amend the VERP on September 14 if he indeed decided that was the appropriate thing for the Board to do.  To the contrary:  Deputy Secretary Jackson, who was presumably as busy as the Secretary,

---

[6] Amtrak again refuses to acknowledge and join issue with Plaintiffs' argument.

found time to review, sign and fax the consent back to Amtrak on September 14 notwithstanding the events of 9/11.  On this record, the Court should assume that Secretary Mineta could have too, *if* he agreed that amending the VERP was the right course of action.  Nothing in the record suggests he did.

### C.    A consent signed by Governor Holton was also required for the Board to act in the absence of a meeting.[7]

Amtrak has two responses to the fact that Governor Holton did not sign a consent to amend the VERP, each unavailing.

First, Amtrak asserts that the signature requirement of the DCBCA is merely ministerial, a mindless task a director can delegate to whomever and whenever he likes.  Defs. Mem. at 13, 15-18.  Again, Amtrak ignores Plaintiffs' arguments, here, that the signature requirement is a purposefully imposed, non-delegable duty personal to each director then in office.  Pls. Mem. at 5-8, 50-52.  Amtrak does not engage the statutory text (which it mis-cites and never once quotes when discussing Governor Holton, *see, e.g.,* Defs. Mem. at 15), which is unambiguous and obligatory, and ignores the related statutory provisions, which show Congress relieving shareholders in other sections of the DCBCA of the burden of signing personally because in those limited settings that is what Congress wanted to do.  Ignoring Plaintiffs' multiple authorities Amtrak cites and discusses *District of Columbia v. White,* 435 A.2d 1055 (D.C. 1981), *see* Defs. Mem. at 15-16, as if it were a relevant case.  But *White* in fact did not involve a statute requiring a personal signature at all:  D.C. Code § 31-102 merely required that no teacher be fired by

---

[7] Amtrak's argument that the designated officer on review's contrary "finding" is entitled to deference is addressed in Section II, below.

the D.C. public school without the *written recommendation* of the superintendent. *Id.* at 1056-57.

Amtrak's second line of defense is, again, 9/11. *See* Defs. Mem. at 16. But as Defendants well know (they provide not a single record citation in support of their assertions), 9/11 had nothing to do with Amtrak's failure to obtain a consent signed by Governor Holton on September 14.[8] Amtrak's failure to obtain a written consent signed by Governor Holton on September 14 was a purely function of Amtrak's willingness to bend the rules for Governor Holton which made it easier for Amtrak to secure his "consent" on the matters which required it. Governor Holton's own deposition testimony reveals that 9/11 cannot possibly be blamed for Amtrak's non-compliance with the DCBCA: if on or about September 14, **9/11 did not prevent Governor Holton from attending a charity ball in Richmond or picking up oysters in Readville**, Ex. 57, Tr. 116, it surely cannot be said to have prevented him from going to the local Kinko's and personally attending to his duties as an Amtrak director.

Put another way, this case does not provide any occasion for the Court to decide whether DCBCA § 29-101.136 contains some kind of "emergency exception" to the personal signature requirement. There was no emergency: Governor Holton did not sign a consent because he and Amtrak mistakenly thought it was sufficient for him to give his oral consent to a resolution and the Executive Summary it incorporated that he never even read, let alone signed. The law says otherwise. 9/11 had nothing to do with it.

---

[8] It had everything to do with why the Board did not hold its previously scheduled meeting on September 12 but that is a given, not the question presented here. It is also uncontroverted that there was no reason precluding the Board from meeting by telephone on September 12, 13 or 14. *See* Stmnt. ¶ 53.

## II.    Amtrak's Procedural Objections to Plaintiffs' September 14 Showing Are Unavailing.

### A.    Review of the denial of Plaintiffs' benefit claim is *de novo*.

As required by the Court's Order of August 5, 2005, Plaintiffs filed and exhausted the Plan's internal claims process.  *See* Ex. 76 (claim, denial, appeal and appeal denial letters).  Their claim was denied on appeal by Amtrak's Vice President Lorraine Green, designated by Amtrak's Board as the Plan's "designated officer on review," Plan § 15.01, for essentially the same reasons as Amtrak offers here.  *Id.*

The entire thrust of Amtrak's defense to the contention that the Board failed to take valid "action" on September 14 is to claim deference to Ms. Green's contrary legal interpretation.  But as shown above, *Holt* forecloses deference under the circumstances.

Although *Holt* makes it unnecessary for the Court to decide the question, if the Court does reach the question it should hold that the Plan does not confer the appeals officer with discretion sufficient to warrant deference under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

The relevant provision is contained in the Plan's "Claims Procedure" article, Article XV, specifically Plan § 15.01.  It states that when a claim is made and denied and appealed:  "To the extent permitted by law, the decision of . . . the designated officer on review . . . shall be final and binding on all parties *if* it is supported by the facts which were considered *and* is reasonably based on the applicable provisions of law, the Plan and the trust instrument."  Plan § 15.01 (emphasis added).  This may empower but it does not confer **discretion** on the appeals officer:  the appeals officer can decide appeals but only by reference to external, objective standards, not discretionary ones.

In *Fitts v Federal National Mortgage Ass'n.*, 236 F.3d 1 (D.C. Cir. 2001), the D.C. Circuit held that there is no discretion conferred when the empowering clause says nothing more than that the designated officer has the ability to decide the claim. That is all § 15.01 really says: the designated officer's decision should be upheld *if correct*. That is a grant of decision making authority, not discretionary authority. It is at best ambiguous and any ambiguity in this regard must be construed against the drafter. *Mobley v. Cont'l Cas. Co.*, 383 F. Supp. 2d 80, 85 (D.D.C. 2005).[9]

Indeed, Section 15.01 does not say anything about discretion, anything about sole decision making authority, or anything about power to independently construe plan terms or find facts. The facts, the law, the proper reading of the Plan – these are all things, according to § 15.01, that are external to the fiduciary that the fiduciary is directed to use as the basis for his or her decision. The fiduciary's own, discretionary fact-finding, plan term-finding and law-finding authority under § 15.01 is non-existent. Even if intended to confer the kind of discretionary authority required to displace *de novo* review, the language of Section 15.01 is too weak and unclear to satisfy Defendants' burden to prove the language in question clearly and unambiguously confers discretion.[10]

---

[9] *Accord Mobley*, 383 F. Supp. 2d at 85-88 (rejecting company's argument that the plan's language – "Benefits will be paid monthly immediately after [the company] receive[s] due written proof of loss" – granted it discretionary authority); *Kinstler,* 181 F.3d at 251-52 (holding that "satisfactory" whether in the phrase "satisfactory proof" or "proof satisfactory to [the decision-maker]" is an inadequate method of granting discretion and stating that "the better reading of 'satisfactory proof' is that it establishes an objective standard, rather than a subjective one"); *Baxter v. Lynn,* 886 F.2d 182, 188 (8th Cir. 1989) (plan language providing trustees have final authority to determine all matter of legibility merely describes trustees' mandatory role and does not grant authority to construe ambiguous terms).

[10] *See, e.g., Simkins v. Nevadacare, Inc.*, 229 F.3d 729, 733 (9th Cir. 2000); *Sandy v. Reliance Standard Life Ins. Co.,* 222 F.3d 1202, 1203-04 (9th Cir. 2000); *Kinstler v. First Reliance Standard Life Insurance Co.*, 181 F.3d 243, 249 (2d Cir.1999).

Amtrak knows this – Plaintiffs alerted them to the problems with § 15.01, *see* Pls. Mem. at 46 n.33 – but instead of frankly discussing the issue, Amtrak decided not to mention § 15.01 or Article XV. Instead, Amtrak talks exclusively about another provision, Plan Article X, § 10.03(i), which does have language that could satisfy *Firestone* if it applied. But § 10.03(i) does not apply. Section 10.03(i) is not in the Claims Procedure article but rather in the "General Administration" article. It is axiomatic that in construing legal texts, "the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

To avoid § 15.01 and lay claim to § 10.03(i), Amtrak focuses, throughout its brief, on the decision of the Committee and its decision making process, not Ms. Green and her decision and decision making process. *See, e.g.,* Defs. Mem. at 6, 14. But the Committee's decision in essence falls away as the Plan's decision once it is appealed: Section 15.01 of Article XV provides that the Committee only decides claims initially; it lacks jurisdiction over any claim, such as Plaintiffs, once it is appealed*,* as Plaintiffs' was. This is consistent with ERISA and the governing Department of Labor regulations, under which claimants are guaranteed a full and fair review, 29 U.S.C. § 1133, ERISA § 503, of both "**the[ir] claim** *and* the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1) (emphasis added). Thus, once a claimant appeals, the decision maker for the Plan becomes the "designated officer on review," an employee so designated by the Board (in this case, Ms. Green).

That is precisely Amtrak's problem: if one wants to know if the Plan confers discretion on the appeals officer, there is only one place to look: Article XV, the only place that mentions the appeals officer. Even the Committee in denying Plaintiffs' claim

didn't make any reference to § 10.03(i) of the General Administration article: it

specifically and exclusively invoked Article XV.  *See* Ex. 76, Ltr. dated January 23,

2006.[11]

Ironically, because of their attempt to misdirect the Court's focus to the

Committee, Defendants never actually request deferential review of *Ms. Green's* decision

and decision making process.  They should be held to what they asked for and denied

deferential review without more – even assuming all the deference in the world to the

Committee's action, that does not translate into deference to the only decision that

counts, that of the Plan, that of Ms. Green on appeal.[12]

_____

[11] Also consider what Amtrak told this Court two years ago, on February 1, 2005, in moving to dismiss Count One of *Hall I* for failure to exhaust, before realizing it had a *Firestone* problem: "Plaintiffs were required to submit a written claim for benefits to the Retirement Plan Committee pursuant to Article XV . . . . If such a claim is denied, that same article provides a procedure for appealing the denial to a duly designated Officer of Amtrak."  Defs. Mem. (Doc. 58) at 10. Consider too what Amtrak's Board said, while that motion was pending, in May 2005, in appointing Ms. Green to handle Plaintiffs' appeal in the event Plaintiffs were required to exhaust and any other such appeals: "Pursuant to the Amtrak Retirement Income Plan, Article XV, Section 15.01, any claims regarding unpaid benefits are submitted to the Retirement Plan Committee for an initial determination.  In the event the Retirement Plan Committee fails to fully satisfy the claimant, the claim may be appealed to a person who is an officer of the company and has been designated by the Board of Directors as a fiduciary of the Retirement Income Plan in accordance with Section 402(a)(2) of ERISA.  Management recommends that Vice President, Human Resources, Lorraine Green, be designated as a fiduciary of the Retirement Income Plan and the company officer designated to hear benefit claim appeals for the Retirement Income Plan. WHEREAS, Amtrak's Retirement Income Plan contains a claims procedure for processing denial of benefit claims; and WHEREAS, The Plan claims resolution procedure includes a final appeal to a company officer who is appointed as a fiduciary to the Plan; therefore, be it RESOLVED, That the Board of Directors hereby appoints Lorraine Green, Vice President, Human Resources and Amtrak Officer, as the appeal officer and a fiduciary to the Retirement Income Plan as set forth in the Plan document."  *See* Ex. A.

[12] A final reason why *de novo* review applies, even without regard to the foregoing arguments, is because the Plan's summary plan description, intended to be an employee's foremost resource on the terms of the Plan which must disclose all "circumstances which may result in the disqualification, ineligibility, or denial or loss of benefits," ERISA § 102(b), 29 U.S.C. § 1022(b); *see also* 29 C.F.R. § 2520.102-3(1), failed to disclose to participants that the Plan's fiduciaries have discretion to deny benefit claims; the SPD merely says that they have the power to do so and that the participant can then challenge the denial in court.  *See* Ex. B.  Courts have held that such a violation of the SPD requirement results in the plan losing any discretionary authority to which

**B.    Even a deferential standard of review would not help Amtrak.**

Even if the Court were to somehow find *Holt* distinguishable and conclude that the Amtrak Plan did confer sufficient discretion upon the designated officer on review, it would not matter.  Even given deference, Ms. Green's decision is arbitrary and capricious because it flies in the face of the undisputed facts and the plain language of the DCBCA which required such written consents signed by "all" of members of the board, not some or even most of them.  Even where a plan administrator has discretion to interpret the plan, "the interpretation may not controvert the plain language of the document." *Donovan v. Carlough*, 576 F. Supp. 245, 249 (D.D.C. 1983), *aff'd mem.*, 753 F.2d 166 (D.C. Cir. 1985) (interpretation contradicting plan language held arbitrary and capricious).[13]  *Accord Zervos v. Verizon New York. Inc*., 252 F.3d 163, 175 (2d Cir. 2001); *Epright v. Environmental Resources Mgmt. Inc.,* 81 F.3d 335, 339 (3d Cir. 1996); *Davis v. Burlington Industs. Inc*., 966 F.2d 890, 895 (4th Cir. 1992); *Harris v. Pullman Standard. Inc*., 809 F.2d 1495, 1498-1499 (11th Cir. 1987); *Rhoton v. Central States. S.E. and S.W. Areas Pen. Fund*, 717 F.2d 988, 990 (6th Cir. 1983): *Dennard v. Richards Group. Inc*., 681 F.2d 306, 314 (5th Cir. 1982).[14]

---

it could otherwise lay claim.  *See, e.g., Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir. 2005) ("An employee must be told in clear terms that the administrator reserves the authority to construe terms in the plan").

[13] As noted, there is no dispute that the Plan's reference to Board "action" means "action" as defined by Amtrak's governing statutes, meaning, principally, the DCBCA.  Where a plan thus incorporates a statute, the administrator's interpretation is an interpretation of the statute.

[14] As shown in Plaintiffs' opposition to Defendants' cross-motion for summary judgment, even if the Court were to find *Holt* distinguishable, conclude that Plan § 15.01 passes muster under *Firestone* and disagree with the proposition set forth immediately above in the text, Plaintiffs are still entitled to show, after discovery and further briefing, that Ms. Green's decision is entitled to no deference and was procedurally and substantially unreasonable as a factual matter even if entitled to deference.

C.     **Plaintiffs waived no arguments, whatever the standard of review**.

Finally, Amtrak is wrong that Plaintiffs are barred from arguing here that Amtrak failed to obtain consents from Mr. Warrington and Secretary Mineta because Plaintiffs did not "effectively" make those specific arguments during the Plan's internal claims process. Defs. Mem. at 19. In effect, Amtrak argues that Plaintiffs were not only required to exhaust their benefit **claim** but also every possible ***theory or argument*** supporting that claim.

This is wrong factually as well as legally. As the Committee itself recognized in an interim letter sent to Plaintiffs stating back to them the Committee's understanding of Plaintiffs' claim, Plaintiffs mounted a general challenge to the effectiveness of Board's action on September 14 to amend the Plan, as opposed to a challenge based solely on Amtrak's failure to obtain a written consent signed by Governor Holton, Ex. C at 2, and Plaintiffs <u>did</u> argue a theory that asserted that Amtrak did not obtain consents from Mr. Warrington and Secretary Mineta.[15]

Plus, courts have consistently rejected the argument that an ERISA participant not only must exhaust his claim before proceeding to court (itself a requirement not

---

[15] In their August 5, 2005 claim letter, Plaintiffs asserted that "[a]ll Board Members needed to personally sign a unanimous consent resolution" but that not all Board members had done so, without limiting themselves to the failures to comply with the DCBCA relative to Governor Holton. Ex. 76, Aug. 5, 2005 at 4. Moreover, without objection, Plaintiffs "incorporate[d] by reference all arguments and points raised in prior filings or any form of written communication concerning the invalidity of the September 14, 2001 amendment." *Id.* As discussed in Plaintiffs' May 16, 2006 appeal letter, Plaintiffs specifically asserted that Amtrak failed to obtain consents from not just Governor Holton but other directors which necessarily included Mr. Warrington and Secretary Mineta. *See* Ex. 76, May 16, 2006 Ltr. at 3, first paragraph. (In any event, Defendants' disclosure violations set forth in Count Two (which Defendants do not address) disentitle Defendants from arguing waiver on the facts here where Plaintiffs were not given during the claims process the documents, records and other information to which they were statutorily entitled).

contained within the statute[16]) but also every possible theory supporting that claim, on

pain of seeing such arguments waived and unavailable on the merits or otherwise.  *E.g.,*

*Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186-87 (3d Cir. 1984) (ERISA does

not require issue or theory exhaustion, only claim exhaustion); *Smith v. Ret. Fund Trust*

*of Plumbing, Heating & Piping Ind. of S. Cal.*, 857 F.2d 587, 592 (9th Cir. 1988) (same);

*Parry v. SBC Comm., Inc.*, 375 F. Supp. 31, 60 (D. Conn. 2005) (same); *Novella v.*

*Westchester County,* 2004 WL 1752820, *6 (S.D.N.Y. Aug. 4, 2004) (same); *Bahnaman*

*v. Lucent Tech., Inc.,* 219 F. Supp. 2d 921, 927 (N.D. Ill. 2002) (same); *Millitello v.*

*Central States Southeast and Southwest Areas Pension Fund*, 209 F.Supp.2d 923, 932

(N.D. Ill. 2002) (same).

Defendants do not cite or discuss any of these authorities, relying instead

primarily on *non-ERISA* administrative law cases to support their waiver theory.  *See*

Defs. Mem. at 18 & n.2.  The few ERISA cases Defendants do cite, *see* Defs. Mem. at

18-19, are inapposite because they involve the attempted introduction of new, factually

disputed <u>evidence</u>, not, as here, pure argument based on undisputed facts already in the

record.[17]

---

[16] Nothing in ERISA expressly requires that a benefit claimant exhaust plan administrative
remedies prior to bringing a civil action. ERISA does, however, require a plan to have a claims
procedure and a full and fair review process for denied claims.  ERISA § 503; 29 C.F.R. §
2560.503-1.

[17] Amtrak's own Ex. L shows that the Committee and designated officer on review had before
them the undisputed fact that Amtrak did not obtain consents signed by Mr. Warrington and
Secretary Mineta.  *See, e.g.,* Defs. Mem. Ex. L, Bates Nos. Committee 00037-42, Hall2000342-
47; Committee 00544-49, Hall2000812-17; Committee 00638-42, Hall2000902-06; Committee
00719-24, Hall2000980-85; Committee 00797-802, Hall20001030-35; Committee 00816-820,
Hall20001049-53; Committee 00827-32, Hall20001058-63; Committee 001149-1154.  Those
facts were not disputed in the claims process just as they are not disputed now.

The Supreme Court's decision in *Sims v. Apfel,* 530 U.S. 103 (2000), confirms that there is no waiver of theories in a non-adversarial claims process such as the ERISA internal plan claims process at issue here. *Sims* held that Social Security claimants who exhaust administrative remedies need <u>not</u> also exhaust **issues** in a request for administrative review in order to preserve judicial review of those issues. *Id.* at 110. *Sims* is expressly predicated on the notion that SSA proceedings are not adversarial, *id.* at 110-11, which makes this an *a fortiori* case: the ERISA claims process is not only non-adversarial, *e.g., Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 771 (8th Cir. 2001), but administered by the claimant's *fiduciary* to boot.[18]

In short, Plaintiffs waived none of their arguments.

### III.    The Board Officially Enacted the VERP with the Railroad Retirement Supplement on July 26, 2001.

As noted, Amtrak has no merits-based response to rebut Plaintiffs' showing that the Board validly amended the Pension Plan on July 26, 2001 to add the VERP with the Railroad Retirement Supplement (or enacted it as a stand-alone ERISA plan). Moreover, Defendants fail to identify *any* material facts that they contend are genuinely at issue and need to be litigated, together with references to the record relied upon, as required by Local Rules 7(h), 56.1. They merely assert that the facts asserted are not supported by

---

[18] The Court in *Sims* explained that "[w]here the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest." *Id.* at 108. It cited as an example a proceeding before the Department of Labor, where the regulations require the parties taking an appeal to "lis[t] the specific issues to be considered on appeal," as precisely the sort of proceeding it had in mind--one where the parties are required to determine the issues and therefore a court should "ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Id.* at 106 (*quoting* 20 C.F.R. § 802.211(a) (1999)). The DOL ERISA claims regulations, *see* 29 C.F.R. § 2560.503-1, stand in sharp contrast to the DOL regulations discussed in *Sims* and impose no such issue exhaustion requirements on participants. *Id.* (Indeed, per Justice O'Connor's concurrent that points up yet another reason issue exhaustion cannot be found here: as in *Sims,* Plaintiffs here were not put on <u>notice</u> of any such issue exhaustion requirement).

admissible evidence (which is mistaken) – *they never say with citation to record evidence that Plaintiffs misstate the facts.*  A mere listing of evidentiary complaints about *the way* in which one's adversary party would prove the facts it asserts (particularly when those complaints lack merit according to the Federal Rules of Evidence) is not an adequate substitute for a concise statement of what material facts (backed up with record cites) need to be litigated.[19]  The Court should treat all of Plaintiffs' factual assertions (provided it determines they have record support) as conceded.  *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 153-54 (D.C. Cir. 1996) (district court is to deem as admitted moving party's facts that are uncontroverted by the nonmoving party's Rule 7(h) (then-Rule 108(h)) statement).

Amtrak's procedural complaints regarding Plaintiffs' July 26 showing are unavailing. *First,* Amtrak argues that the numerous emails and other documents referenced in Plaintiffs' motion in which Amtrak and its employees admitted that the Board had in fact amended the Plan on July 26 to add the VERP with the Railroad Retirement Supplement that were not specifically referenced by Plaintiffs in prior briefings cannot now be referenced because Plaintiffs did not specifically refer to them in the claims process or ask the July 26 question to be decided by the Committee.  Defs. Mem. at 3.  There are multiple problems with this argument.

First, the Court did not impose nor did Amtrak ask it to impose any exhaustion requirement with respect to the July 26 question.  *See* Court's August 5, 2005 Order (Doc. 80) at 14; Defs. Mtn to Dismiss (Doc. 58); Defs. Reply (Doc. 64).  In any event, Plaintiffs' August 5, 2005 claim letter does specifically incorporate by reference (without

---

[19] Amtrak's "Counter Statement of Facts" is obviously also not an adequate substitute.  It merely sets out, from Defendants' perspective, allegedly undisputed facts about the 2005-2006 claims process Plaintiffs pursued before filing *Hall II.*

objection from the Committee or Ms. Green) Plaintiffs' arguments and all documents

Plaintiffs ever referenced supporting "the validity of the July 26, 2001 amendment." Ex.

76, Aug. 5 Ltr. at 4. Notes from the Committee's October 25, 2005 meeting show it

understood that "[t]he Committee needs to consider if the Board adopted the VERP in

July." Defs. Ex. L, Committee01578, as does the Committee's November 1 letter to

Plaintiffs, Ex. C at 2.[20] Amtrak does not identify any document attached to Plaintiffs'

motion that Plaintiffs failed to incorporate by reference. Nor, whether incorporated or

not, can Amtrak credibly argue unfairness since all of the documents come from

Defendants' own files.

 *Second,* Amtrak seems to suggest that Plaintiffs should have never briefed the

July 26 question here at all because it was briefed in *Hall I* along with numerous other

issues. Defs. Mem. at 3. This ignores Defendants' oft-made point that the Court may

never need reach those other issues and that the parties and the Court went over all this in

detail at the November 3, 2006 status conference, *see* Ex. D, when the Court denied

Amtrak's motion to stay proceedings in *Hall II.*[21]

 Nor do Plaintiffs understand the formal basis for Defendants' objection  *Hall II* is

a civil action separate and distinct from *Hall I.* Defendants have themselves explained

that Plaintiffs have no claim in *Hall II* if the Board did not amend or adopt the VERP on

July 26. If Plaintiffs are in violation of some Court order or rule for having attempted to

demonstrate as part of their motion for summary judgment in this separate, independent

---

[20] Presumably both Ms. Green and the Committee agreed with Plaintiffs on that score since neither premised their denials on Amtrak's argument that there was no VERP in the first place.

[21] This was after Plaintiffs explained in writing as well as at the hearing that they wanted the July 26 and September 14 questions briefed and decided in tandem, *see* Pls. Opp. to Defs. Mtn. to Stay (*Hall II* Doc. 11) at 7-8, an opportunity they did not have in *Hall I* because of the dismissal of former Count One intervened.

civil action the necessary precondition for such judgment, Plaintiffs are unaware of it. The bottom line is, again, there is no unfairness. *See* Ex. D, Tr. 13 (defense counsel: "if all we have to do is put together our motion for summary judgment in Hall 2 and provide some documents in response to document requests, then, you know, I agree with the Court, there's not a tremendous amount of prejudice and that's fine").[22]

 *Third,* Amtrak interposes hearsay, lack of foundation, lack of authentication objections to the introduction of some of its admissions but none of these objections are well-taken. Amtrak's "no authentication" objections reflect a misunderstanding of the law's requirements which are quite liberal. There certainly is no requirement of "authentication from the person from whom the e-mails were supplied or purportedly received," Defs. Mem. at 2, whatever that means. Instead, Fed. R. Evid. 901(a), which Defendants do not cite, merely requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Once a *prima facie* showing has been made to the court that document is what its proponent claims, as Plaintiffs have done through undersigned counsel's unrebutted declaration, it should be admitted; at that point, burden of going forward with respect to authentication shifts to opponent to rebut *prima facie* showing by presenting evidence to trier of fact which would raise questions as to genuineness of document. *E.g., Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F. Supp. 1190, 1219-20 (E.D. Pa.1980). Not surprisingly, Amtrak has raised no such questions about the documents which it Bates labeled and

---

[22] Plaintiffs also cannot understand how Amtrak can dispute the materiality of documents bearing on whether the Board amended the Pension Plan on July 26 issue when it comes to the admission of evidence damaging to its case on that point and then *on the same page of its brief* parts stress that the July 26 question is *the* threshold issue that the Court must decide before the Court should even address whether the Board took valid action on September 14. *Compare* Defs. Mem. at 2, lines 1-2 *with id.,* last three lines.

produced from in its files.  Put another way, the material fact of the authenticity of Plaintiffs' exhibits is not genuinely at issue, having not been properly or sufficiently controverted by Defendants.

Amtrak's "no foundation" objections fare no better.  The foundational requirement for Fed. R. Evid. 801(d)(2) admissions of a party opponent is satisfied by a mere showing of relevance:  when Amtrak itself declares Plaintiffs have no case without first showing there was valid Board action on July 26 to amend the Plan to adopt the VERP, it makes no sense to argue there is no foundation for the receipt of party opponent admissions that that is exactly what the Board did that day. [23]  It is well-settled that an admission is not objectionable merely because it may be not based on personal knowledge or is in the form of an opinion.  *See, e.g., U.S. v. Haldeman*, 559 F.2d 31, 110 (D.C. Cir. 1976) (lack of firsthand knowledge and opinion rule did not bar introduction of admissions).  Legal opinions, or opinions expressing conclusions of law (*e.g.,* "the Board amended the Pension Plan on July 26 to add the VERP"), are perfectly admissible admissions.  *E.g.,* 2 McCormick On Evid. § 256 (6th ed., current through 2006); *Donlin v. Aramark Corp.,* 162 F.R.D. 149, 150 (D. Utah 1995).

Amtrak's "hearsay" objection ignores that admissions are by definition *not* hearsay.  Fed. R. Evid. 801(d)(2) excludes from the definition of hearsay any statement that is

---

[23] Amtrak's objection that Plaintiffs "provided no foundation that such documents were actually reviewed by the Board or any Board member," Defs. Mem. at 21, is doubly flawed.  Plaintiffs' party opponent in question is *Amtrak,* not the Board.  The statements were made or adopted by Amtrak via its officers and employees (including its Deputy General Counsel) – Amtrak does not act or speak solely via its Board.  Moreover, it is irrelevant whether the admissions were seen by those to whom they were or may have been directed for the party-admissions rule depends on no such showing.  *See South Central Bank & Trust Co. v. Citicorp Credit Services,* 863 F. Supp. 635, 646 (N.D. Ill. 1994) (draft letter never mailed nonetheless a "statement").

offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship....

Fed. R. Evid. 801(d)(2).[24]

The challenged emails and documents are admissible under any and each of these subparagraphs.  The party statement rule (Fed. R. Evid. 801(d)(2)(A)) applies because all of the documents at issue were Bates labeled and produced to Plaintiffs by Amtrak, from Amtrak's files.[25]  The emails and letters sent to participants by William H. Herrmann, Amtrak's Deputy General Counsel and Warren Reisig, Amtrak's Director of Compensation & Benefits, are also separately receivable under the authorized statement rule (Fed. R. Evid. 801(d)(2)(C)), since they were plainly "statement[s] by a person authorized by the party to make a statement concerning the subject."  Fed. R. Evid. 801(d)(2)(C).  The vicarious admissions rule (Fed. R. Evid. 801(d)(2)(D)) is equally applicable since these were all "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(D).[26]

---

[24] "Admissions by a party opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system, rather than satisfaction of the conditions of the hearsay rule."  Fed.R.Evid. 801(d)(2) Advisory Committee Note.

[25] *See, e.g., Nestle Co., Inc. v. Chester's Market, Inc.*, 571 F.Supp. 763, 775 n.9 (D. Conn. 1983), *rev'd on other grounds*, 756 F.2d 280 (2d Cir.  1985) ("The other documents produced from Nestle's own files . . . consisting of internal memoranda and correspondence, are admissible as admissions").

[26] Amtrak's statement contending "there is no evidence in the record concerning what [Messrs. Herrmann and Reisig's] role is at Amtrak, *if any,*" Defs. Mem. at 21 (emphasis added), is frivolous.  Amtrak explicitly authenticated the Herrmann-Reisig emails to PB about the VERP attached to the *Hall I* Complaint as Ex. 13, *see Hall I* Ans. ¶ 13, and went out of its way to mention "Mr. Herrmann" by name so it could endorse as "fully consistent with ERISA" "the

## CONCLUSION

The purported amendment eliminating the Railroad Retirement Supplement from the Plan's VERP should be declared null and void.  The Court should also declare that the VERP as described in the Board's official records of July 26 did indeed become a part of the Amtrak Pension Plan that day in accordance with the Plan's amendment procedure.


Dated:  March 15, 2007                    Respectfully submitted,


                                          _s/Eli Gottesdiener_
                                          Eli Gottesdiener (D.C. Bar 420764)
                                          Gottesdiener Law Firm, PLLC
                                          1025 Connecticut Avenue, N.W.
                                          Suite 1000
                                          Washington, D.C. 20036
                                          Telephone:  (202) 243-1000
                                          Facsimile:   (202) 243-1001
                                          eli@gottesdienerlaw.com

                                          *Attorney for Plaintiffs and the proposed Class*

---

statements made by Amtrak's Deputy General Counsel," meaning Herrmann, to PB.  *Id.*  (This is an illustration of the fourth kind of admission made by Amtrak:  the adoptive admission, *see* Fed. R. Evid. 801(d)(2)(B)).  As for Mr. Reisig, among the evidence in the record establishing his role at Amtrak ("if any"), is John Carten's deposition testimony in which Mr. Carten discusses in detail Mr. Reisig, his role at Amtrak and his role in connection with the VERP.  *See* Ex. 14, Tr. 250-54.  Obviously, and especially when it comes to two of the central figures in this case, the minimal foundational requirements of Fed. R. Evid. 801(d)(2)(C) and (d)(2)(D) have been amply satisfied here.