UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WADE F. HALL, et al., | : | Civil Action Nos. |
| | : | 03-1764 |
| Plaintiffs | : | 06-1539 |
| v. | : | |
| | : | |
| RETIREMENT INCOME PLAN FOR | : | November 3, 2006 |
| EMPLOYEES OF NATIONAL RAILROAD | : | |
| PASSENGER CORPORATION, et al., | : | |
| | : | |
| Defendants | : | 12:00 p.m. |

. . . . . . . . . . . . . . . . : . . . . . . . . . . . .

TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE GLADYS KESSLER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs: ELI GOTTESDIENER, ESQUIRE
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 243-1000

For the Defendant: JOHN R. WELLSCHLAGER, ESQUIRE
ROBERT A. GAUMONT, ESQUIRE
DLA PIPER
The Marbury Building
6225 Smith Avenue
Baltimore, MD  21209-3600
(410) 580-4281

Court Reporter: REBECCA STONESTREET, RPR, CRR
Official Court Reporter
Room 6415, U.S. Courthouse
Washington, D.C. 20001
(202) 354-3249

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

2

1               P R O C E E D I N G S

2          THE COURT:  This is the case of Wade Hall, et al.

3     versus the Retirement Income Plan For Employees of National

4     Railroad Passenger Corporation, et al.  This is 06-1539.  Would

5     counsel please identify themselves for the record?

6          MR. GOTTESDIENER:  Good morning, Your Honor.

7     Eli Gottesdiener on behalf of the plaintiffs.

8          MR. WELLSCHLAGER:  Good morning, Your Honor.  John

9     Wellschlager from DLA Piper, on behalf of defendants.  With me

10     today is Bob Gaumont, also from DLA Piper, and

11     Desmond Macalain (ph) from Amtrak.

12          THE COURT:  And counsel, I know I always say this, but

13     please remember to talk into the mic and not too fast so our

14     court reporter can get it all down.

15          I want to -- actually, there are two cases before me

16     today, the brand new case which I've set for an initial

17     scheduling conference, and then counsel requested that I hold a

18     status in the old case, or the first case, 03-1764, and that

19     certainly did make sense to me.  Let me get the files in order.

20          I do want to thank counsel for making the change in the

21    time today.  I'm sort of embarrassed in that I was moderating a

22    panel at Georgetown law school today, and somehow I had the idea

23    that it was yesterday, and showed up yesterday morning, which

24    didn't make me happy at all.  And then, of course, I had to show

25    up today, so I appreciate everybody being able to make this

3

1    later.

2         All right.  As we all know, there is a brand new

3    complaint filed.  Here's my first question, and it is for

4    plaintiff's counsel.  I haven't set down the two complaints side

5    by side, but I've certainly re-read a lot of materials.

6    Mr. Gottesdiener, in one or two sentences, would you please tell

7    me the differences between the two complaints?

8         MR. GOTTESDIENER:  Hall 1 had a count one that the

9    Court dismissed on August 5th of 2005.

10        THE COURT:  I know.  So count one of Hall 1 is gone.

11        MR. GOTTESDIENER:  Well, without prejudice the Court

12    dismissed it for failure to exhaust the plan's internal remedial

13    process.  We exhausted that process without any relief.

14        THE COURT:  I know that.

15        MR. GOTTESDIENER:  So Hall 2, this is much simplified,

16    is old count one of Hall 1.  So it is, in essence, the same

17    case.

18         THE COURT:  All right.

19         MR. GOTTESDIENER:  That is simplified.  There's an

20    additional count.  As the Court may know, the Department of

21    Labor issued notice and comment regulations in connection with

22    the claims process, and entitled claimants to a whole panoply of

23    documents in connection with their prosecution of their claims,

24    and so as a separate count, we allege failure to provide

25    documents --

4

1         THE COURT:  A separate count in Hall 2?

2         MR. GOTTESDIENER:  Yes, ma'am.

3         THE COURT:  So is that count two?

4         MR. GOTTESDIENER:  Yes, ma'am.

5         THE COURT:  So count two of Hall 2 is failure to

6    provide appropriate documents.  Right?

7         MR. GOTTESDIENER:  Correct.

8         THE COURT:  And what else is in Hall 2?

9         MR. GOTTESDIENER:  As to count one, Your Honor, the

10    only thing that I would say is that it is much more amplified

11    than it was in the original.

12         THE COURT:  Well, that may be.  That may be.  But the

13    essence is the same?

14         MR. GOTTESDIENER:  Absolutely, Your Honor.

15         THE COURT:  And there are only two counts in Hall 2?

16         MR. GOTTESDIENER:  Yes, ma'am.

17         THE COURT:  All right.  That's perfectly clear.

18         Then my question is -- I want to see one other thing.

19    In Hall 1 we have pending the plaintiffs' amended motion for

20    class certification, and that became ripe in March of this year;

21    we have plaintiffs' motion for partial summary judgment under

22    count two; and we have defendant's motion for summary judgment.

23         Now --

24         MR. GOTTESDIENER:  Which covers count two and count

25    three, so they're effectively cross motions as to two.

5

1         THE COURT:  All right.  My question is, Hall 1, count

2    two, is what?

3         MR. GOTTESDIENER:  Is the two claims that we bring that

4    the statute prevented the withdrawal or cutback of the benefit

5    that was promised.  That is a statutory matter.

6         THE COURT:  And that matter is also fully briefed, and

7    I see with great wincing that that became ripe in June of 2005.

8      I think that's right.

9          MR. GOTTESDIENER:  Our affirmative motion.  But then

10   they filed their own motion in November, and I think the last

11   brief there was filed in January of 2006.

12          THE COURT:  That's correct.

13          Given all of that, I don't really understand your

14   opposition to defendant's motion in Hall 2 to stay the

15   proceedings in Hall 2 until I rule on the motions.  Obviously,

16   the summary judgment motions.  Let's put aside certification for

17   now, but the summary judgment motions in Hall 1.

18          Why in the world shouldn't they be cleared out first?

19   I know they're old, and I regret that, everyone.  I can't make

20   you an exact promise, but I can tell you that I'm not involved

21   in the tobacco case anymore, and so that gives you some idea of

22   how much time I'll have.  Not on my hands, but time.  So why

23   shouldn't I deal with those very substantive motions first?

24          MR. GOTTESDIENER:  Because you can avoid the

25   complicated issues that are raised in counts two and three by --

6

1          THE COURT:  Counts two and three of Hall 1?

2          MR. GOTTESDIENER:  Of Hall 1.

3          THE COURT:  Let's always talk about Hall 1 or 2.

4       MR. GOTTESDIENER:  Yes.  Sorry about that.  By focusing

5    on the dual threshold questions that are mirror images of each

6    other.  Two dates, July 26th and September 14th, both sides have

7    the contention that on those days there was no amendment to the

8    pension plan at all.

9       Plaintiffs contend in their opposition to the motion to

10   stay that in addition to making no showing of a success on the

11   merits, unless the Court already has a view --

12      THE COURT:  I do not wish to get on to the merits now.

13   I know you included a great deal of material in your opposition

14   about the merits, and none of that should have been included.

15   But let's finish your answer, please.

16      MR. GOTTESDIENER:  Your Honor, I'm sorry.  I want to be

17   clear with the Court.  I was not about to talk about the merits,

18   I was about to talk about the fact that they made no showing on

19   the merits, which I believe is required to prevail on a motion

20   to stay a piece of litigation.  A litigant has filed a lawsuit,

21   and there needs to be some showing, under a traditional

22   calculus, some showing, Your Honor, I would submit, of some

23   likelihood of success on the merits, as well as a balancing of

24   harms.

25      I'll focus on the harms.  I was not going to talk about

7

1    the merits.  My only comment was if the Court already had, and

2    I'm not asking the Court, a view on the merits --

3            THE COURT:  I don't.  No, I don't.

4            MR. GOTTESDIENER:  I assumed so, Your Honor.  I just

5    wanted to make sure -- I was not asking the Court to tell me.

6            Assuming that's the case, then it's as if we were back

7    three years ago, Your Honor.  They said they wanted to file a

8    motion to dismiss on Hall 1; I said let's have some discovery.

9    Your Honor denied their motion to stay discovery pending the

10    decision on their motion to dismiss.

11            We're in a situation where assuming there's no showing

12    on the merits, it's a question of what's the presumption, what's

13    the default.  The default is a litigant gets to go forward.  But

14    more important, what's the harm.  The harm to the plaintiffs is

15    very real, because they have made a threshold argument that on

16    July 26th, there was no amendment to the pension plan.  We have

17    an argument - and I'm not going to get into the merits, it's

18    just the structure - that on September 14th there also was no

19    amendment.  The 14th amendment is the one that hurt us.

20            They say, hey, this whole dispute about you were hurt

21    or you had a right in count two and count three of Hall 1, you

22    don't even need to reach that because there was never any

23    benefit at all.  There was never an amendment to the pension

24    plan at all.  So they're mirror images, in a way.

25         But more important from the plaintiffs' point of view,

8

1    Your Honor, the two questions legally and factually are

2    inextricably intertwined.  They are legally mirror images.  The

3    facts and the arguments as to when the board acts in a way

4    that's recognized by ERISA are so closely linked, that to take

5    their claim in isolation, which is a threshold issue in the

6    cross motions for summary judgment, and not also deal with the

7    same question, in effect, in what we want to submit in a motion

8    for summary judgment on count one of Hall 2, which we could do

9    very soon --

10         THE COURT:  Haven't you concluded your discovery in

11   Hall 1?

12         MR. GOTTESDIENER:  Hall 1's discovery is concluded.

13   And I would only add that the Court did dismiss the current

14   Hall 2 claim well before the deadline for discovery, so there

15   may be some small things that we were literally not able to do.

16   Because the Court -- before the discovery cutoff -- the Court

17   dismissed in August and the discovery cutoff wasn't until

18    November.  So once you told us to go through the administrative

19    process first --

20         THE COURT:  You stopped discovery?

21         MR. GOTTESDIENER:  -- I couldn't conduct discovery at

22    least on the aspects that were September 14th only or

23    September 14th primarily, because that was out of the case for

24    the moment.

25         THE COURT:  What discovery do you have to do in Hall 2

9

1    in order to be prepared to file your motion for summary judgment

2    in Hall 2?

3         MR. GOTTESDIENER:  Probably very little.  I have issued

4    document discovery requests, and they are almost due at this

5    point.  I may not have to do -- I may not have to do much at

6    all, Your Honor.  It's really just a pure legal question, I just

7    want to make sure that there's no factual disputes as to what

8    occurred on September 14th.

9         THE COURT:  So if you had the procedure you would

10    prefer, you would get your motion for summary judgment in Hall 2

11    filed in - just approximately, now, we're talking this through -

12    60 days or less, 30 to get your motion done, and perhaps a tiny

13    bit of discovery to finish up.

14         And then, of course, there would be time for responses

15    and replies, but the motion would be ripe in approximately a

16    total of 120 days, just approximately, now.  And at that point

17    what would be before me, in your view, would be all of the

18    pending ripe - and there are two - dispositive motions in

19    Hall 1, as well as your motion for summary judgment in Hall 2.

20    Is that correct?

21         MR. GOTTESDIENER:  Yes, Your Honor.

22         THE COURT:  And so in your view, given how little

23    discovery you believe is necessary in Hall 2, you're essentially

24    saying that any stay would only preclude you -- "only" may not

25    be the right word, but -- well, I'll use it.  Would only

10

1     preclude you from filing your summary judgment in Hall 2?

2          MR. GOTTESDIENER:  Bingo.  That's exactly it.  They

3     haven't asked for just a stay of discovery, they've asked for a

4     stay of proceedings.  And it's exactly that point, Your Honor.

5     It's that we are going to be prejudiced and they are helped by

6     having their July 26th, 2001 question in isolation.  The synergy

7     between the two points makes our point, and we just ask that we

8     be allowed to get that back in front of the Court.  It's not a

9    foreign issue.  It was on the table.  We stumbled over it in

10   discovery, and we kind of litigated it until the Court said,

11   well, there is this presumption of exhaustion so you need to go

12   do that.

13        So it's not anything new.  The arguments have been out

14   there, we're ready to go.  We could write it all up.

15        THE COURT:  Let me hear from defendant now.

16   Mr. Wellschlager, please?

17        MR. WELLSCHLAGER:  Thank you, Your Honor.  I guess I'm

18   a little bit surprised to hear about the limited scope of

19   discovery that plaintiff's counsel has in mind.

20        THE COURT:  Well, when I was reading all these papers,

21   it was very hard for me to figure everything out, as you can

22   tell from all of my questions this morning.  So go ahead.

23        MR. WELLSCHLAGER:  I can appreciate that, Your Honor.

24   But before we get to the issue of how much discovery Hall 2

25   really will entail, if we were to think about it carefully, I

11

1    think it's important to note that Hall 1, by virtue of the

2    motions that are before the Court, basically has three possible

3    outcomes.  And I don't want to be too presumptuous about where

4       the Court might go with this, but I think there's just three

5       outcomes.

6               One would be to agree with our position that no

7       amendment took place in July 2001.  And that basically trumps

8       everything, trumps Hall 1, trumps Hall 2 if no amendment took

9       place in July.  And I'm not going to get into the merits, but

10      that's one outcome.

11              Another outcome is the Court agrees with plaintiffs

12      across the board and grants their motion for summary judgment.

13      And while it's entitled to partial motion for summary judgment,

14      the issue that the Court will be deciding will have a resonating

15      effect with respect to the rest of the case.  And if the Court

16      agrees with the plaintiffs across the board, that trumps

17      everything.  Hall 1 is done, Hall 2 is done.  Hall 2 and Hall 1

18      ask for the exact same relief.

19              And then there's a third scenario whereby the Court

20      could, I suppose, disagree with defendants that an amendment

21      took place -- or didn't take place in July, but disagree with

22      plaintiffs that there was a violation of the anti-cutback

23      statute in September.  And it's only in that scenario that

24      Hall 2 becomes relevant.

25              So we have three possible outcomes, two of which render

1    Hall 2 completely irrelevant, and one of which, you know, brings

2    Hall 2 into play.

3         THE COURT:  Other than writing an opposition to a

4    motion for summary judgment, and perhaps doing a little bit of

5    discovery, we won't define little bit, I don't see any waste of

6    resources on the part of defendants in this case if we proceed

7    so that everything is in front of me; i.e., all dispositive

8    motions.

9         MR. WELLSCHLAGER:  I can certainly see your point,

10   Your Honor.  And if that were the case and we were looking at

11   something like 60 days out, that logic would have some appeal.

12        But Hall 2 involves, as a threshold issue, the question

13   of what the standard of review should be in reviewing the

14   actions at the administrative claims process level of the plan

15   committee.

16        THE COURT:  There's a fair amount of case law out there

17   on that subject.

18        MR. WELLSCHLAGER:  There's a fair amount of case law

19   out there, Your Honor.  But I've understood from previous

20   occasions that plaintiffs' position on that particular issue is

21   that they need to take a great deal of discovery with respect to

22   how that claims review process took place with respect to bias

23    issues, with respect to the composition of the plan committee,

24    with respect to the selection of counsel, all sorts of issues.

25    And maybe that was just Mr. Gottesdiener sort of talking off the

13

1    top of his head, and I'm not going to hold him to it, but if

2    that's where we're going with this, a whole sort of round of

3    discovery that bears on the standard of review, and then what I

4    had in mind or envisioned was a briefing schedule on that issue

5    because it will inform the scope of discovery, it will inform

6    the way we put together our papers on the merits, and then

7    motions for summary judgment, if that's where we're going with

8    Hall 2, I think it's a tremendous waste of resources.

9        But look, if all we have to do is put together our

10   motion for summary judgment in Hall 2 and provide some documents

11   in response to document requests, then, you know, I agree with

12   the Court, there's not a tremendous amount of prejudice and

13   that's fine.

14       THE COURT:  Well, Mr. Gottesdiener, do you want to say

15   anything more about discovery?  I'm going to hold you to what

16   you say today.

17       MR. GOTTESDIENER:  I would only say, Your Honor, that

18    we cite the Holt case at the bottom of page four, note two.

19    It's controlling D.C. Circuit authority that it's a question of

20    law that the Court must review de novo construction of the

21    statute, whether they complied with ERISA in amending the plan.

22        THE COURT:  The standard of review is not the issue

23    before me.  I asked you about discovery.

24        MR. GOTTESDIENER:  I'm sorry, Your Honor.  I thought I

25    was being responsive, because I was about to say that discovery

14

1    is not necessary because of that.  If the Court were to disagree

2    with that, conceivably we could, on other grounds, show that

3    there was no deference that should be due and that de novo was

4    the proper standard, and discovery would be appropriate for

5    that.  But we're willing to forego that, Your Honor, because the

6    law is so clear that deciding like what is an employee, what is

7    a plan amendment, that's a question of law.  You don't defer to

8    a plan administrator on that.  It's not an interpretation of the

9    plan terms, it's an interpretation of the law, which is what we

10    pay judges to do.  So that is a de novo question, and the courts

11    are very clear; more important, the D.C. Circuit is clear on

12    that.

13        So the standard is de novo.  And, in the alternative,

14     it's so clear that even if there was a deferential standard,

15     it's the plain language of the statute and the plan put together

16     so we don't need discovery.  We're much happier.  If that means

17     that we need to trim back, and it's just a little bit, the

18     document requests, we don't need it.  We don't need it.

19          THE COURT:  All right.  I take you at your word on

20     that.  I'm prepared to enter the following order.  I won't do it

21     this minute, of course, but I just want to make sure that this

22     works.

23          You have issued your document requests.  Isn't that

24     right?

25          MR. GOTTESDIENER:  Yes.

15

1          THE COURT:  When are they due?

2          MR. GOTTESDIENER:  A few days.

3          MR. WELLSCHLAGER:  November 11th, Your Honor.

4          THE COURT:  All right.  Therefore, I'm going to be a

5     little generous with time because of holidays and all, and

6     because I want to get these two cases in the right posture so

7     that sometime fairly early next year, obviously it would take

8     time to deal with everything, I can put in the time and deal

9      with all of these motions.

10         In Hall 2 - all of my rulings will actually be in

11     Hall 2 - plaintiffs' motion for summary judgment would be due

12     January 15th.  I think that's pretty generous.

13         MR. GOTTESDIENER:  Yes, Your Honor.  Thank you.

14         THE COURT:  Defendant's opposition would be due

15     February 15th, and then plaintiffs' reply would be due

16     March 1st.  Obviously that proposed schedule encompasses the

17     completion -- or it assumes, I should say, the completion of all

18     discovery and the preparation of plaintiffs' opening brief by

19     the January 15th date.  And it also assumes that the defendant's

20     motion to stay the proceedings in Hall 2 would be denied.

21         Now, I think that's the result of our conversation this

22     morning, and clarification of certain issues.  And just to make

23     one other thing clear, I would also provide that other than the

24     discovery to be completed before January 15th and the briefing

25     of the plaintiffs' motion for summary judgment, that no other

16

1      discovery would be allowed until a ruling was issued on the

2      pending motions.

3          Now, let me check with the defense.  Mr. Wellschlager,

4      I think that encompasses or covers the discussion.

5          MR. WELLSCHLAGER:  I think it does encompass the

6    discussion.  I would point out first that defendants certainly

7    will be filing a motion for summary judgment.

8          THE COURT:  Say that again.  I'm sorry.  That what?

9          MR. WELLSCHLAGER:  Defendants will be filing a motion

10    for summary judgment.

11          THE COURT:  I wondered.  All right.  I want to work

12    that in.  What else were you going to say?

13          MR. WELLSCHLAGER:  I wanted to ask the Court for some

14    additional clarification on what Your Honor means when you say

15    no other discovery allowed until the pending motions are

16    decided.  As I understand our discussion here, we're talking

17    about a pretty limited scope of discovery in Hall 2 --

18          THE COURT:  Correct.

19          MR. WELLSCHLAGER:  -- and we'll brief the motions for

20    summary judgment by -- that will be done by March, and that's

21    it.

22          THE COURT:  That's correct.  That's why I asked

23    Mr. Gottesdiener all those questions.

24          MR. WELLSCHLAGER:  No, I'm sorry.  You said something

25    along the lines of, no other discovery allowed until the motions

17

1    are resolved, and that led me to think that there would be some

2    round two of discovery.

3        THE COURT:  Well, who knows what will happen after I

4    decide the motions.  I don't want you to be misled.  I am not

5    saying that after decision on the motions, there will be no

6    further discovery.  I haven't any idea at this moment whether

7    there will be or not.

8        But in any event, your motion to stay wouldn't be

9    affected, because in a certain sense you will have prevailed on

10   it.  Even though it's being denied, you will have prevailed in

11   the sense that there will be this extremely limited period of

12   discovery, plaintiffs will file their motions, and there will be

13   no further discovery until all the pending motions are resolved.

14       MR. WELLSCHLAGER:  I agree, Your Honor.  I think it's a

15   quite sensible result.

16       THE COURT:  Now, defendant's motion for summary

17   judgment.  Is there any reason why on February 15th you can't

18   file an opposition and motion for summary judgment?

19       MR. WELLSCHLAGER:  No reason at all, Your Honor.  Would

20   the Court prefer that we sort of collapse those into the same

21   piece?

22       THE COURT:  Aren't they going to be the same issues?

23          MR. WELLSCHLAGER:  I think so.  And what I have in mind

24     is sort of the local rule convention that we have in Maryland.

25     I haven't checked to see whether this exists in this court's

18

1     local rules, but where plaintiffs file an opening brief, we file

2     what is really an opposition and our own affirmative motion --

3          THE COURT:  Correct.

4          MR. WELLSCHLAGER:  -- they file a reply, then we file a

5     reply, which would involve, I guess --

6          THE COURT:  That's right.

7          MR. WELLSCHLAGER:  -- a fourth date.

8          THE COURT:  It would.  Your opposition and motion will

9     be February 15th; plaintiff will file its reply and opposition -

10     and I'll give them a little more time - on March 15th, because

11     they would get 30 days for an opposition; and then defendants

12     will file their reply on April 1st.  And that way everyone will

13     have gotten their full opportunities to fully brief the issues.

14          Mr. Gottesdiener, anything else you need to say or

15     bring up today?

16          MR. GOTTESDIENER:  No, Your Honor.  I just wanted to

17     mention that in the event that it's necessary, the Court in the

18     Hall 1 matter referred discovery disputes, which we never

19  brought to the magistrate judge's attention, to Judge Facciola.

20  I don't know -- if there is an issue, I don't know if the Court

21  wants us to raise it with the Court, or how we would address it

22  if we can't resolve it among ourselves.

23      THE COURT:  Did he rule on that yet?

24      MR. GOTTESDIENER:  No.  What I said, Your Honor, is we

25  almost had an issue.  The Court referred it to him, but we never

19

1  took anything to him.  That was in Hall 1.  I'm saying if now

2  something arises in Hall 2, do you want us to address it to you,

3  do you want to consider --

4      THE COURT:  Well, are you going to need to do discovery

5  on that issue in order to get these motions before me?

6      MR. GOTTESDIENER:  Well, right now there's document

7  requests outstanding, and I know --

8      THE COURT:  Right.  I understand that.  I don't expect

9  there to be any problem about document requests, everyone.  I

10  really don't.

11      MR. GOTTESDIENER:  I just asked, Your Honor, in the

12  event that there's something that can't be resolved.  There are

13  claims of privilege --

14          THE COURT:  You should file it with me.  And don't give

15   defendants ideas about the kinds of objections they can raise to

16   your discovery.

17          MR. GOTTESDIENER:  They've already had the idea of

18   raising privilege claims that we don't believe merit --

19          THE COURT:  You should come to me, and then I may or

20   may not keep them.  We'll just see where I'm at at that point.

21          MR. GOTTESDIENER:  Understood, Your Honor.  Thank you.

22          THE COURT:  All right, everyone.  I think we've decided

23   everything that can be decided today in terms of moving along.

24   I know a number of plaintiffs are present in the courtroom

25   today, and I'm always happy to see real people who are

                                        20

1    litigating cases.  I usually don't.  And I know that Hall 1 has

2    been pending a long time, and I will do my best to remedy that,

3    everyone, as soon as I can.

4          Parties may be excused at this time.

5          (Proceedings adjourned at 12:35 p.m.)

                                        21

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Rebecca Stonestreet, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9    _____          _____

10   SIGNATURE OF COURT REPORTER              DATE

11

12