## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **WADE F. HALL**, | : |
| **HATTIE N. MCCOY-KEMP,** | : |
| **VICTORIA F. STATON,** | : |
|  | : |
| **On behalf of themselves and on** | : **No.  06-CV-1539 (GK)** |
| **behalf of all others similarly situated,** | : |
|  | : **Class Action** |
| **Plaintiffs,** | : |
|  | : **Next scheduled Court deadline:** |
| **v.** | : **April 15, 2007 - Defendants'** |
|  | : **reply to Plaintiffs' opposition to** |
|  | : **Defendants' summary judgment** |
|  | : **motion** |
|  | : |
|  | : |
| **RETIREMENT INCOME PLAN FOR** | : |
| **EMPLOYEES OF NATIONAL RAILROAD** | : |
| **PASSENGER CORPORATION,** *et al.* | : |
|  | : |
| **Defendants.** | : |
|  | : |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR
### SUMMARY JUDGMENT UNDER COUNT ONE

Eli Gottesdiener
**GOTTESDIENER LAW FIRM, PLLC**
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C.  20036
Telephone:     (202) 243-1000
Facsimile:      (202) 243-1001

Dated:  March 15, 2007          *Attorney for Plaintiffs and the proposed Class*

**Introduction**

The Amtrak Defendants have moved for summary judgment on Count One of the Complaint which seeks benefits under the Amtrak Pension Plan based on the invalidity of the purported September 14, 2001 amendment to the Plan eliminating the Railroad Retirement Supplement from the July 26, 2001 Voluntary Early Retirement Plan.  Defendants' motion is premised on:

(1)     The implicit contention that the standard of review is not governed or impacted by the Court of Appeals decision in *Holt v. Winpisinger,* 811 F.2d 1532 (D.C. Cir.1987), requiring *de novo* review of benefit claim denials based on an administrator's interpretation of law;

(2)     The contention that Defendants have carried their burden to show that the Plan contains discretionary *Firestone* power granting language, *i.e.,* language conferring discretion on the Plan's appeals officer sufficient to displace the default *de novo* review standard established in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989); and

(3)     The contention that "[t]he undisputed facts show that the Committee and the Plan's appeal officer performed their tasks diligently and in good faith, and that they rendered a decision that is reasonable [and] well informed," Defs. Mem. at 2, and based upon a complete administrative record which Defendants claim is before the Court as Defs. Ex. L.

Plaintiffs have shown, in the context of their motion for partial summary judgment on Count One (*Hall II* Docs. 20, 24), that Defendants are mistaken on points one and two.  Plaintiffs have also shown in their motion, in the context of discussing the *Firestone* power granting language issue:  (a) that the relevant Plan language is that contained in the Plan's "Claims Procedure" article, Article XV, Plan § 15.01 applicable Plan language, and not Plan § 10.03(i), as Defendants claim; and (b) that because Plaintiffs' appealed the Retirement Plan Committee's initial denial of their claim to the Plan's appeals officer Lorraine A. Green, Amtrak's Vice President for Human Resources, it is her decision, not the Committee's, that is the Plan's decision for this Court's purposes, such that any deference Defendants are claiming would have to be

shown to be due Ms. Green's decision and Ms. Green's decision making process.

Here, Plaintiffs submit that even if they are wrong as to the points mentioned Defendants are not entitled to judgment on Count One. Most of the material facts Defendants claim to be undisputed *are* disputed and Defendants' statement of allegedly undisputed facts omits numerous material facts. Among the material facts that are disputed and preclude summary judgment in Defendants' favor are:

- What is (or, as a matter of law, should be) the administrative record in this case?

- Are there "documents, records and other information relevant" to Plaintiffs' claim within the meaning of the governing Department of Labor notice-and-comment claims regulation to which Plaintiffs were denied access during the claims process, as alleged in Count Two?

- Was the Committee and/or Ms. Green laboring under one or more conflicts of interest when deciding Plaintiffs' claim, and did such conflict(s) affect their decisions or the decision making process?

Alternatively, Plaintiffs submit they are entitled to conduct discovery under Fed. R. Civ. P. 56(f) on each of these topics so they can obtain the facts necessary to justify their opposition to Defendants' motion.

### Local Rule 7(h), 56.1 Statement of Genuinely Disputed Material Facts[1]

1.      On August 5, 2005, Plaintiffs filed a claim for benefits with the Committee, challenging the validity of the purported September 14, 2001 amendment and asserting the validity of the July 26, 2001 amendment.[2]

---

[1] The inclusion here of a fact not contained in Defendants' statement should be construed for Rule 7(h), 56.1 purposes as an assertion that it is a disputed material fact within the meaning of the Rule.

[2] Ex. A (incorporating by reference "all arguments and points raised in prior filings or any form of written communication concerning the invalidity of the September 14, 2001 amendment, and the validity of July 26, 2001 amendment," "incorporate the deposition testimony of all witnesses deposed in [*Hall* I] with particular reference to Governor Holton, John Carten and Alicia M. Serfaty," and all documents Plaintiffs have ever referenced on the topics including documents not yet produced or withheld for any reason"). (All alphabetic exhibits are attachments to the accompanying Gottesdiener Declaration, which also serves

2.    Defendants' contention that Plaintiffs failed to "effectively" raise or preserve the claims or theories asserted in this case, Defs. Mem. at 19, is refuted by this letter, the three other letters Plaintiffs submitted, and the Committee's own November 1, 2005 letter (referenced below).

3.    Plaintiffs' August 5 letter asked for an independent decision maker to decide their claim, citing a number of conflicts of interest that any Amtrak employee would face in adjudicating Plaintiffs' claim.  *Id.* at 2-4.  Plaintiffs argued that a correct interpretation of the legal issues presented would have cost Amtrak "whose very existence is constantly in doubt" many millions of dollars in additional contributions to what was then an underfunded Plan.  *Id.* Plaintiffs argued that an Amtrak employee's continued employment, or prospects for advancement or increased compensation, could be adversely affected and/or could be seen by such employee as being adversely affected by rendering a decision disadvantageous to Amtrak, especially one which would cost Amtrak so much money.  *Id.*  Plaintiffs argued that this made this unlike the typical case where a corporate officer or employee can serve as both officer/employee and fiduciary.  *Id.*

4.    Plaintiffs also argued that anyone on the Committee would face an additional conflict because the Committee and its Members were named defendants in *Hall I* where it had been alleged that they were then in breach of their fiduciary duties for, among other things, continuing to administer the Plan in accordance with an invalid plan amendment.  *Id.*  This would impermissibly put them in the position of deciding the legality of their own conduct.  *Id.*

5.    Additionally, Plaintiffs argued that it was especially inappropriate for William H. Herrmann, Amtrak's Deputy General Counsel and Warren Reisig, Amtrak's Director of

---

as Plaintiffs' Rule 56(f) affidavit.  Numerical exhibits refer to those accompanying Plaintiffs' motion for partial summary judgment in *Hall II* (Doc. 20)).

Compensation & Benefits Warren Reisig (both then believed by Plaintiffs to still be on the Committee), to pass judgment on the validity of the September 14 amendment because they "may be or may be perceived to be or may perceive [themselves] to be – personally responsible for the VERP being enacted at the level it was in July 2001 and hence for much of the lawsuit in the first place."  *Id.*

6.      Plaintiffs asked that in the event their claim for benefits was denied they be provided, among other relevant information, all documents upon which the Committee relied in making any such adverse determination.  *Id.* at 6.

7.      On August 5, 2005 (the date of Plaintiffs' initial claim letter), the Committee was comprised of Amtrak employees Paula Porter, Jeffrey Carnicelli and Matthew Hardison.[3]

8.      As Amtrak employees, Porter, Carnicelli and Hardison had one or more of the conflicts of interest outlined in Plaintiffs' August 5 claim letter.  Moreover, Ms. Porter had additional conflicts, as also outlined by Plaintiffs, as an Assistant Vice President for Human Resources at the time of the events in question in 2001, Ex. B (org. chart), who was personally involved in many phases in the design, adoption and implementation of the original and revised

---

[3] Until Plaintiffs are given evidence that Porter, Carnicelli and Hardison had been appointed as opposed to merely recommended for appointment to the Committee, the fact that they were Committee members during the relevant time is disputed.  Defendants have not supported their implicit assertion that Porter, Carnicelli and Hardison were duly appointed to the Committee. They merely state that they were members of the Committee, *see* Defs. Mem. at 8 ¶ 11, and cite to Carnicelli affidavit ¶¶ 2-3 which contains no factual assertions regarding his or Ms. Porter's or Mr. Hardison's appointments as members. In response to Plaintiffs' requests for proof of valid appointments, *see* Defs. Ex. L, Committee00770-71 (Plaintiffs' Feb. 16, 2006 letter seeking "copies of all appointing instruments, **if any**"), Defendants produced "staff summary sheets that <u>recommend</u> the appointment of these individuals to fill the vacant slots on the Retirement Committee" and said "As these sheets show, Ms. Porter and Mr. Carnicelli were <u>recommended</u> for appointment on April 15, 2005. Mr. Hardison was <u>recommended</u> for appointment on June 8, 2005."  Defs. Ex. L, Committee00001 (litigation counsel's Feb. 24, 2006 response) (emphasis added).  But Defendants produced none of the appointing instruments requested, either in response to Plaintiffs' request for documents, records and other information relevant to the claims process or in the context of the *Hall* litigations, nor have Defendants ever represented to Plaintiffs that they exist.

VERPs.[4]  Ms. Porter had yet further conflicts insofar as she answered to Ms. Green as to the

VERP, Exs. B, F, and had been asked by Ms.  Green at the close of the VERP election window

for assistance in presenting the VERP's implementation in the best possible light to Ms. Green's

superiors.[5]

9.    As for Ms. Green herself, in addition to having managerial responsibility for the

design, adoption and implementation of the original and revised VERPs, Exs. B-G, more

specifically, Ms. Green had also responsibility for, and/or direct, personal involvement in:  the

VERP being enacted at the level it was in July 2001, Exs. B-D, Ex. H (May 31, 2001 and July

25, 2001 emails re VERP cost estimates); Pls. SJ Ex. 7; Amtrak's admissions that the Board

adopted the VERP on July 26, 2001, Pls. SJ Exs. 25-27, 36, 43, 53, 65; management's failure to

discover for many weeks that the original VERP was apparently more costly than management

deemed appropriate, Ex. B; management's failure to communicate that information when learned

in August 2001 to Amtrak's Board until September 14, Pls SJ Ex. 49; management's failure to

ensure that the September 14 amendment process was handled in such a way as to preclude the

kind of challenges here, Ex. B; the revised VERP's design and content, Ex. B; and

---

[4] *See, e.g.,* Pls SJ Ex. 7 (email dated May 17, 2001 from Warren Reisig to Lorraine Green and Paula Porter re "Early Retirement Window-Plan and Statement of Policy Requirements"); Ex. C (Reisig July 24, 2001 email re "FW: Amtrak Board of Directors," to Lorraine Green and Paula Porter attaching "latest version of the board resolution" adopting the VERP, just prior to the July 26 meeting); Ex. D (Reisig email to Porter, Green, Herrmann, Amtrak's CFO, and Amtrak's General Counsel, July 24, 2001, re Separation Cost Estimates); Ex. E (Porter's August 16, 2001 response, copying Lorraine Green, to Warren Reisig's email, *see* Pls. Ex. 43, Stmt. ¶ 38, attaching a brochure presenting the July 26 VERP as an accomplished fact that Reisig said "*will*" be mailed to participants:  "Warren, this looks FANTASTIC!!! GREAT JOB!!!!"); Ex. F (Porter to Green, re "VERP REPORT," October 18, 2001).

[5] Ex. G (Green's November 3, 2001 email to Porter and Reisig re her upcoming presentation to the Executive Committee re the VERP and severance programs implementation; instructing them to "Begin with the original timeline that began July 26th with Board Approval of the VSP, VERP, Involuntary Separation (get me a copy of the Board action)"; adding "If we are unsure about any of the information, let's not use it.  I can't afford to have incorrect or unsubstantiated information challenged by [CEO and President] George [Warrington], [Executive Vice President – Operations] [E.] Stan[ley] [Bagley] or [CFO] Arlene [Friner]").

communicating to participants on the eve of the opening of the VERP window including, in an allegedly misleading fashion, the reason why the VERP supposedly had to be cut back, *see* Pls SJ Ex. 61.

10.    On August 12, 2005, Porter, Carnicelli and Hardison met with Mr. Herrmann to discuss Plaintiffs' claim and how to respond.[6]  Mr. Herrmann was at the time and remains today a named Defendant in *Hall I* under Counts II and III with potential personal liability to Plaintiffs and members of the proposed Class.  *See Hall I* Complaint (Doc. 51).

11.    Defendants' assertion that "[t]he Committee engaged the law firm of Venable LLP to provide counsel to them in considering this claim," Defs. Mem. at 6-7, is disputed.  The evidence shows that it was Amtrak, not the Committee, that engaged Venable; that Amtrak did so acting through Herrmann and Amtrak's litigation counsel in this case; that the Committee members abdicated their responsibility to act independently of Amtrak; that the Committee members improperly delegated to Mr. Herrmann and Amtrak their responsibility to select their own counsel or at least be personally involved in that process; that the Committee prejudged Plaintiffs' request that Mr. Herrmann not be involved in the claims process by including him in their deliberations and allowing themselves to be guided by him; and that Defendants knowingly

---

[6] *See* Ex. I (Carnicelli notes of meeting); Ex. J (Hardison notes of meeting indicating "Byl Herrmann" gave the Committee "background/intro").

and purposefully concealed these and related facts from Plaintiffs during the claims process.[7]

12.    On October 25, 2005, the Committee members were for the first time introduced to the lawyers that Mr. Herrmann and Amtrak chose to represent them.[8]  A meeting was held about Plaintiffs' claim with Mr. Herrmann present for part of it.  *Id.*  (Venable later relied on Herrmann's notes of the meeting during the time he was present to draw up the official meeting minutes.[9])  Plaintiffs dispute or dispute in part Defendants' statement that Venable provided the Committee with advice as to their duties.  Defs. Mem. at 6.  The evidence shows that Venable gave the Committee instructions as to what the Committee could and could not consider in deciding Plaintiffs' claim, instructions which the Committee apparently did not question.[10]  Plaintiffs also dispute that the meeting was preliminary in nature, as Defendants contend, Defs. Mem. at 6-7.  The evidence shows that the Committee already knew what its decision would be. On page one, at the top of the notes Mr. Carnicelli took at the meeting, to the immediate right

---

[7] *See* Ex. J (Hardison's August 12, 2005 notes:  "Recommended action - Engage outside firm with no link to Amtrak that is specialist (ERISA, Fiduciary Resp.).  ***Byl will engage firm*** based on interviews and expertise.  Firm will review and recommend approp. action") (emphasis added); Ex. K (Herrmann September 21, 2005 email to Committee members:  "As per your direction at our last meeting, ***I have retained counsel*** to provide you advice and guidance on the pending claim involving the VERP benefits. This link will give you Barbara Schlaff's bio.  *As you will see*, she is very well qualified *and **I think you will enjoy working with her.**  . . . I will update you when there is further information.  In the mean time, **please do not hesitate to contact me** if you have any questions*") (emphasis added); Ex. L, Venable's April 21, 2006 letter covering "List of Documents Withheld and/or Redacted" (see entries re extensive September 2005 communications between Herrmann and Venable and Amtrak's litigation counsel and Venable more than a month before any Committee member even met or spoke with any of the Venable lawyers chosen by Amtrak to represent them); Ex. M, Venable September 29 email to Herrmann (reporting that Venable meet with Amtrak's litigation counsel **"[about] the claim"** and received materials from Amtrak's litigation counsel (not been produced to Plaintiffs)) (emphasis added).

[8] *See* Ex. N, (Carnicelli notes-typed version); Ex. O, Hall2000304-05 (Hardison notes); Ex. P, (Carnicelli handwritten notes).

[9] Ex. Q (Venable-Herrmann emails, November 10, 2005).

[10] Ex. P (Carnicelli handwritten notes:  "***Counsel*** will determine what information should be forwarded to the Fiduciaries to read and consider") (emphasis added); Ex. N (typed version of notes:  "***Outside Counsel*** will determine what information can be provided to the Fiduciaries to read and consider") (emphasis added).

heading "I." Mr. Carnicelli wrote: "Claims ***Denial*** needs to come from the Plan," (handwritten

notes), revealing, presumably unwittingly, the Committee's or at least his true mindset. Ex. P;

*accord* Ex. N (typed version of notes) ("Claims ***denial*** – needs to come from the Plan")

(emphasis added).

13.     A week later, on November 1, 2005, in a letter that appears to have been jointly

written by Venable and Mr. Herrmann, *see* Ex. R, but eventually signed by Ms. Porter on behalf

of the Committee (with numerous cc's not including Mr. Herrmann), the Committee, without

explanation, rejected Plaintiffs' request for an independent decision maker. Ex. S at 3 ("We

don't believe [Plaintiffs' conflict] assertion is well taken, and we reject it").[11]

14.     On December 14, 2005, the Committee interviewed two witnesses who had

already been deposed in *Hall I*, Amtrak Assistant Corporate Secretary and Board liaison John

Carten and then-General Counsel Alicia Serfaty, at Amtrak's headquarters. Mr. Herrmann

arranged the interviews and was present for both of them. Ex. Q. Plaintiffs were not afforded

the same opportunity as Mr. Herrmann and Amtrak were to be present and were only notified of

the interviews weeks after the fact. Venable's notes of the interview, not produced until after

Ms. Green denied Plaintiffs' request on appeal, indicate both witnesses made statements

inconsistent or arguably inconsistent with their deposition testimony and that they were

apparently not asked about any of their prior testimony. *Compare* Ex. T (notes of interviews

attached to July 14, 2006 denial on appeal letter) *with* Exs. 14 (Carten Dep. Tr.), 15 (Serfaty

Dep. Tr.). The notes also show Mr. Herrmann supplementing one of the witness's recollections

(Serfaty's) with his own. Ex. T, sixth page of notes, after witness expresses uncertainty as to

---

[11] In stating its understanding of Plaintiffs' claim, the Committee correctly understood Plaintiffs as
mounting a general challenge to the effectiveness of Board's action on September 14 to amend the Plan,
as opposed to a challenge based solely on Amtrak's failure to obtain a written consent signed by
Governor Holton. *Id.* at 2.

whether Board given certain VERP updates, noting "Bill recalls doing an update" for the Board).

When Plaintiffs were finally given these notes, Ms. Green had already denied their claim on

appeal and Plaintiffs were not given the opportunity to make arguments in support of their claim

based on the notes (as set forth below and reflected in Ex. T).

15.     On January 23, 2006, the Committee denied Plaintiffs' claim based on reasoning

discussed below.  Ex. U.  In denying Plaintiffs' claim, the Committee did not provide Plaintiffs

with any of the documents they had requested, failed to acknowledge that Plaintiffs had

requested such disclosure, and failed to apprise Plaintiffs of their statutory right to obtain access

to the documents, records and other information relevant to their claim without charge.  *Id.,*

*passim.*

16.     Under the heading:  "Steps Taken By the Committee In Adjudicating The

Claims," the Committee assured Plaintiffs that:

> The Committee has given extensive and careful consideration to the claims of the
> Claimants.  The Committee has engaged independent legal counsel to assist it in
> properly executing our fiduciary duties in deciding those claims.  Counsel has
> reviewed the extensive record in this matter, including the litigation pleadings,
> depositions of Linwood Holton (former Amtrak Director and former Governor of
> Virginia), Alicia Serfaty (Amtrak's Corporate Secretary and General Counsel),
> John Carten (Amtrak's Director-Board Liaison and an Assistant Corporate
> Secretary), and Medaris Oliveri (an Assistant Corporate Secretary), Board of
> Directors' resolutions, Plan amendments, and the materials provided to Amtrak
> employees relating to the VERP.  In addition, counsel spoke with Ms. Serfaty and
> Mr. Carten concerning this matter.

*Id.* at 3.  Omitted was any mention of the fact that it was Amtrak, acting through Mr. Herrmann

and Amtrak's litigation counsel, which engaged Venable; that Venable met with litigation

counsel about Plaintiffs' claim; that Mr. Herrmann had attended and participated in Committee

meetings; that the Committee had been instructed by Venable that it would only consider what

Venable deemed appropriate in deciding the claim; and that when "counsel spoke with Ms.

Serfaty and Mr. Carten" Mr. Herrmann had been present and had been permitted to supplement their evidence.

17.     In denying Plaintiffs' claim, the Committee acknowledged that the Plan's reference to Board "action" meant "action" within the meaning of the District of Columbia Corporation Act ("DCBCA"). *Id.* at 5. But while the Committee cited the provision of the DCBCA governing action by unanimous consent, *id.*[12] the Committee seems to have overlooked the text of the statute in rendering its decision. No part of the text of the statute appears in the Committee's letter, and the Committee does not say that the statute contains an express signature requirement ("shall" be "signed by") and an express requirement that "all" members of the board must sign such consents.[13]

18.     The Committee said that "[f]or each member of Amtrak's Board other than Governor Holton, it is undisputed that the Board member individually signed a counterpart of the consent resolutions." *Id.* at 4. The Committee did not support this statement and overlooked the evidence in its possession (and attached to its denial letter) that Mr. Jackson and not Secretary Mineta purported to sign the consent in question and that there was no consent signed by Mr. Warrington.[14]

---

[12] The provision was actually mis-cited, and in the same way it is mis-cited in Defendants' brief (at pages 10, 15). The correct citation is § 29-101.136; the Committee (and Defendants) cited to DCBCA "29-101-**1**.136."

[13] The Committee's lack of awareness as to what the text of the statute provides is also demonstrated by the two purported summaries of its provisions that the Committee gave in the course of stating or explaining its decision. On page 5 of the Committee's letter, the Committee says the statute means that "a Board of Directors can act by unanimous <u>written</u> consent of its directors" when of course those unanimous written consents must each be signed. On the same page, the Committee also says its decision denying Plaintiffs' claim is "not inconsistent with the requirement that the consent be unanimously approved <u>in writing</u> by the directors," *id.,* again without reference to the statute's express signature requirement.

[14] *See, e.g.,* Defs. Ex. L, Committee 00037-42; Committee 00544-49; Committee 00638-42; Committee 00719-24.

19.     As for Governor Holton, the Committee found that any failures with respect to his consent were "technical" and should be excused because the Governor "was not in a position to fax his signature to the resolutions back to Amtrak on September 14." *Id.* at 4-5. The Committee did not support its assertion that Governor Holton was not in a position to receive and fax back a copy of the resolutions.[15] The Committee overlooked that Governor Holton's and John Carten's depositions both establish that the sole reason he did not travel from his home to his office or a Kinko's or Amtrak did not send someone to his home with the papers so he could sign the resolutions is because he and Amtrak thought that it was sufficient for him to give oral consent and an instruction that someone else sign "for" him. *See* Ex. 57 (Holton), Tr. 130, 152-55; Ex. 14 (Carten), Tr. 138, 140, 310-11, 320-22, 343.[16]

20.     The Committee said that "because Governor Holton fully understood and agreed with the content of the resolutions and intended to manifest his agreement to the consent," the signature requirement could be excused or "delegated" because it was "a ministerial act." Ex. U at 5. No support was cited for the statement that Governor Holton "fully understood" the resolutions he had not read or that that was the relevant standard. *Id.* Similarly, there was no support for the assertion that his signature was a delegable, "ministerial act" within the meaning

---

[15] The Committee appears to have mistakenly believed that Governor Holton had the resolutions in his possession since there would have otherwise been no issue as to his ability to fax **back** the resolutions to Amtrak. However, Governor Holton testified at his deposition that he did not have the resolutions in hand and had not read them before giving his oral consent to what Mr. Carten described as the resolutions. *See* Ex. 57 (Holton), Tr. 123-24, 142-43.

[16] In finding that there was something peculiar about the circumstances surrounding this proposed Board action, the Committee similarly overlooked Mr. Carten's statement to the Committee that "John has affixed Gov signature more than once on unanimous consent." *See* Ex. T, notes, second page.

of the DCBCA nor any discussion of Plaintiffs' specific arguments to the contrary.  *Id.*[17]

21.    The Committee reiterated its previously unexplained November 1, 2005 denial of

Plaintiffs' request for an independent decision maker to consider their claim.  The Committee

added:  "[t]he Committee is composed of new members who were not directly involved in the

adoption and implementation of the VERP.   In addition, we have been assisted by independent

legal counsel in our consideration of the claims."  *Id.* at 6.  As noted above, these assertions

omitted the role Mr. Herrmann directly played in the decision to reject Plaintiffs' request, and

were otherwise inaccurate:  Paula Porter was involved in the adoption and implementation of the

original and revised VERPs; and legal counsel was neither independent and did not merely

"assist[]" the Committee decide Plaintiffs' claim.[18]

22.    As noted, the Committee concluded its letter without informing Plaintiffs of their

statutory right to the documents, records and other information relevant to their claims.

23.    On February 9, 2006, Plaintiffs appealed the denial of their claim to Ms. Green

and raised several process objections.  Ex. V.  First, Plaintiffs asked Ms. Green to recuse herself

as the named fiduciary for deciding their claim, saying "we believe your intimate involvement in

the matters in question" required recusal.  *Id.* at 1.  Second, Plaintiffs objected that "[t]he

Committee decision is entitled to no weight because the Committee impertinently ignored our

explicit request for all documents and information relevant to this claim."  Plaintiffs explained:

---

[17] The Committee went on to say that "[a]ssuming for the sake of argument" that there was a "technical defect" under the DCBCA, "courts have held that an ERISA plan amendment should not be invalidated for technical violations."  *Id.* at 5.  The Committee did not identify which "courts" have so held, and did not address or distinguish the controlling, contrary authority of *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), or the other contrary cases Plaintiffs cited in their *Hall I* filings.

[18] The Committee also said "ERISA clearly contemplates that employees of a plan sponsor may serve as fiduciaries responsible for claims adjudication under a plan."  The Committee overlooked the fact that Plaintiffs had acknowledged this but explained that just because ERISA might contemplate dual service did not make that appropriate or permissible under the circumstances in this case.  *See* Ex. A, August 5 Claim Ltr. at 3.

> The [Department of Labor (DOL)] regulation applicable to [Plaintiffs'] claim states that any plan's claims review procedure must "[p]rovide that a claimant shall be provided, upon request and free of charge . . . copies of all documents, records, and other information relevant to the claimant's claim for benefits.
>
> Whether a document, record or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section." 29 C.F.R. § 52560.503-1(h)(2)(iii).
>
> Paragraph (m)(8) provides in pertinent part: "A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (i) Was relied upon in making the benefit determination; (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination." *Id.* § 52560.503-1(m)(8).

*Id.* Plaintiffs argued that "[t]he Committee's failure to even acknowledge [Plaintiffs'] request let alone discharge their duties under this notice-and-comment regulation is strong evidence of its bias and inability to fairly consider [Plaintiffs'] claims." *Id.* Plaintiffs asked Ms. Green "[b]efore recusing yourself from further involvement in this matter" to immediately cause Plaintiffs to be provided all documents, records and other information within the meaning of the claims regulation, including but not limited to documents that Plaintiffs described in detail and listed by numbered paragraph. *Id.* Plaintiffs asked that their appeal be held in abeyance pending the required requested disclosures and Plaintiffs' submission of further arguments after having had an opportunity to review same. *Id.*

24.    On February 22, 2006, Venable responded to Plaintiffs' letter request for information dated February 16, 2006, Defs Ex. L, Committee00738, stating it represented both the Committee and Ms. Green in connection with Plaintiffs' claim for benefits. Defs Ex. L, Committee00740 at 4.   The Venable letter did not reference the fact that on February 9, Plaintiffs had asked Ms. Green to recuse herself.

25.     On March 16, 2006, Ms. Green wrote Plaintiffs saying that she was in receipt of Plaintiffs' appeal and that "[p]ursuant to your request, we are assembling certain documents, records and information which you have asked for.  We expect this process to be completed in the next week or two."  Ex. W.  Ms. Green did not explain to whom "we" referred or in what capacity she was involved in the process of (belatedly) responding to Plaintiffs' request for relevant documents, records and other information.  Ms. Green made no reference to the fact that Plaintiffs had asked her to recuse herself from any involvement in this matter.  Instead, she stated only:  "pursuant to your request, I will hold [Plaintiffs'] appeal in abeyance for the time being." *Id.*

26.     On March 20, 2006, Plaintiffs responded to Ms. Green's letter, stating "we do not agree that you have accurately characterized the state of the proceedings," and stating "your letter provides additional grounds for your recusal."  Ex. X.  Plaintiffs explained:

> You identify yourself as the "Plan Appeals Officer."  While you at one point say that "I will hold your appeal in abeyance for the time being," you otherwise show that you have not clearly distinguished your role as a named fiduciary for deciding participant appeals from your role as a corporate HR employee.  Thus, your letter contains repeated references to "we" – "we are assembling certain documents . . . . We expect this process to be completed in the next week or two . . . . your clients will have 60 days from the time we deliver the materials we are producing ….."  This is all the more striking in that your letter ignores that we have asked you to recuse yourself and to do so immediately.  In that setting you have not taken the care to even speak to the appellants in terms that attempt to communicate an independence from your employer or the Committee's whose denial you are supposed to independently review.

> I also note that you sent your letter through Amtrak's Deputy General Counsel William Herrmann who is a named Defendant in this matter even though the Committee did the same thing previously . . . .  We reiterate our request that you step aside immediately, except insofar as you are assisting in the production of documents (that we should already have in our possession).

> You also misstate the state of the proceedings.  You say that "your clients will have 60 days from the time we deliver the materials we are producing *to perfect their appeal*." (emphasis added).  Our appeal has been perfected – it is the denial by the Committee that was inadequate because it ignored our statutory right to relevant documents, explicitly

requested in the original claim letter.  We requested that our perfected appeal be held in abeyance until such time as we have received the materials we should already have, have had an opportunity to review them, and have had "an opportunity to make further arguments."  I will construe your letter as providing my clients with 60 days from the receipt (or "deliver[y]") of the materials you ("we") "are producing" to make such further arguments as they deem appropriate.

27.     Notwithstanding Ms. Green's promise that the withheld documents, records and other information would be provided within "the next week or two," Plaintiffs did not hear from Ms. Green again until April 21, 2006 when, under cover of a letter sent on her behalf by Venable, she forwarded Plaintiffs some but not all of the documents, records and other information Plaintiffs had requested.  Ex. L.

28.     In her April 21 letter, Ms. Green still did not explain in what capacity she was acting with respect to Plaintiffs' request to the Committee that it disclose all relevant documents, records and other information.  The Venable/Green letter said only that "Ms. Green, as the appeals officer under the Plan will provide a response to the substance of the matters raised in your letters to Ms. Green dated February 9, 2006 and March 20, 2006, following receipt of your 'further arguments', as described in your March 20, 2006 letter."  *Id.*  No reason was given for the continued failure to address Plaintiffs' requests for Ms. Green's recusal, as to which Plaintiffs had not indicated they believed they needed to make any "further arguments."

29.     Regarding the documents, records and other information Plaintiffs had requested, the April 21 letter said:  "Please note that we have determined that some of the documents you requested in your February 9, 2006 letter are <u>not relevant</u> under the applicable regulations and <u>others are privileged or work product</u> and such documents *are* not being produced.  We are enclosing with this letter all non-privileged, non-work product, relevant documents responsive to your request, and a list of those documents which are being withheld."  Ex. L (emphasis added).  The documents that were disclosed were forwarded to Plaintiffs without an index or any

15

attempted correlation with the categories of documents Plaintiffs had requested. *Id.* (The log of allegedly "not relevant" documents and allegedly "privileged" or "work product" documents is part of Ex. L.)

30.    The April 21 letter also said:  "We have not enclosed copies of the pleadings filed in the Hall v. National Passenger Railroad Corp. litigation *because you already have them*."  Ex. L (emphasis added).  No attempt was made to identify which of these "pleadings" were deemed relevant to Plaintiffs' claim.[19]  A review of the documents produced as part of the administrative record shows that only defense motions and briefs were included - nothing Plaintiffs submitted in connection with the litigation is contained in what Defendants contend is the administrative record.

31.    Defendants' statement of allegedly undisputed facts asserts that "[i]n response to the request by Plaintiffs for documents, the Committee produced the administrative record of materials for this claim."  Defs. Mem. at 11.  The sole support cited for that assertion is "*See Exhibit I ¶ 5.*"  Exhibit I is Ms. Green's affidavit.  Paragraph 5 of that affidavit states:  "Attached as Exhibit L is a copy of the administrative record which was forwarded to me by the Committee in consideration of this claim.  As part of serving as an appeals officer, I confirmed that this record was sent to Claimants on or about April 2006."

32.    Plaintiffs dispute that Defs. Ex. L constitutes the administrative record in this case. The administrative record should include all documents, records and information relevant to the claim (including the claim on appeal) within the meaning of the claims regulation.  Plaintiffs do not dispute that some of these relevant materials were disclosed to Plaintiffs, belatedly despite

---

[19] Ms. Green (through Venable) appears to have used the word "pleadings" to refer not only to pleadings (which under the Federal Rules of Civil Procedure are limited to complaints, answers, counterclaims, etc.) but also any court filings (such as motions, memoranda, etc.) that are not pleadings.  At the time, the docket in *Hall I* contained over 90 separate entries of the pleadings and other filings.

Plaintiffs' express request and the express requirements of law.  However, much of what should be contained in the administrative record, and should have been provided to Plaintiffs prior to the final decision on their claim, was either redacted out of what is contained in the record and what was disclosed to Plaintiffs, or was excluded entirely and not produced even in part to Plaintiffs prior to a final decision on their claim, as the Venable/Green April 21 letter and withholding log show.

33.     Moreover, there exist numerous other documents, records and other information (as outlined in Plaintiffs' final appeal letter, excerpted below) that should have been included in the administrative record and disclosed to Plaintiffs prior to a final decision on their claim that Venable failed to collect and itemize in the April 21 log, such as Venable's internal communications and communications with litigation counsel about Plaintiffs' claim.

34.     In addition, in response to Plaintiffs' document production requests in *Hall II,* propounded in October 2006, Defendants produced some documents and records relevant to Plaintiffs' claim that had not been provided to Plaintiffs as claimants before a final decision was made in the claims process denying their claim despite their relevance to Plaintiffs' claim. Gottesdiener Decl. ¶ 4.

35.     Plaintiffs responded to Ms. Green in a final letter dated May 16, 2006.  Ex. Y. Regarding the continued violation of their right to relevant documents, records and other information, Plaintiffs explained that none of the withholdings based on privilege were proper or even colorable given the mandatory terms of the claims regulation  (which contain no "privilege or work product" exception) and the fiduciary exception to the attorney-client and work-product privilege rules.  *Id.* at 12.  Plaintiffs also argued that what Venable and Ms. Green claimed were "scope" objections were likely attempts to continue to "conceal the record of extensive contacts between you, the Committee and Venable on the one hand and Amtrak on the other" that

Plaintiffs had only learned about a few weeks earlier after reviewing the belated April production and withholding log.  *Id.*  Plaintiffs explained that given the Committee's admission of the extent to which it relied on counsel's investigation, opinions and legal advice to reach its determination, Plaintiffs were entitled to all documents "submitted [to Venable], considered [by Venable], or generated [by Venable] in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination."  *Id.*

36.    Plaintiffs also objected that their request for other, relevant "information" has been repeatedly ignored:

> The regulations are clear and require disclosure not just of relevant documents and records but also 'other information' relevant to the determination of Plaintiffs' claim. The Committee, through counsel, conducted interviews of witnesses, and of other counsel.  All of the information obtained from those interviews or conversations are relevant and must be produced.

*Id.*  Plaintiffs also objected that they had not been informed which *Hall I* filings the Committee had found relevant which they were entitled to know if copies were not to be provided.  *Id.* at 13.[20]

37.    Plaintiffs reiterated their request that Ms. Green recuse herself, requested the recusal of Venable, and also requested Mr. Herrmann have no further involvement in the handling of Plaintiffs' claims:

> In your case, as previously indicated, Plaintiffs believe that you have multiple, direct, disqualifying personal and professional conflicts of interest as regards the VERP, these claims for benefits and the *Hall* litigation.  You have direct personal and professional reasons for denying Plaintiffs' claims without regard for their merit and you are a material witness in both this matter and the *Hall* litigation on a number of potentially important issues.  Plaintiffs believe that your failure to recuse yourself by now, or even acknowledge or respond to Plaintiffs' repeated requests for recusal, shows the extent to

---

[20] Plaintiffs noted that "notwithstanding its [April 21] assertion that it would not provide any filings from the *Hall* case, Venable did indeed do so.  Plaintiffs found several defense filings -- no plaintiff-filings – among the documents produced."  *Id.*

which these conflicts have affected your judgment. Your use of Venable and Mr. Herrmann as your legal counsel in this matter provides further evidence of the extent to which you have allowed your conflicts to influence you.

As regards Venable, its conflicts of interest and the manner in which it has thus far acted requires it too to withdraw from further involvement here. Without attempting to be exhaustive (which in any event is not possible due to extensive withholding of relevant documents, records and other information, discussed below), Venable's lack of objectivity in this matter -- presumably borne of its positional conflicts as counsel to numerous plan sponsors and desire to earn fees -- is evidenced by, among other things, its attempt to represent you after having represented the Committee, whose decision you are supposed to review -- indeed, review *de novo*. Venable cannot objectively review its own work. Because that decision and reasoning was effectively Venable's, using Venable as your counsel guarantees that Plaintiffs will not get a full and fair review of either the decision or its reasoning.

Further evidence of the effect that Venable's conflicts have had on its judgment can be seen in its failure to even acknowledge Plaintiffs' request for pertinent information regarding the determination of their claim and failure to promptly right that wrong when Plaintiffs explicitly brought it to Venable's attention. It took Venable close to three months to send Plaintiffs any documents under cover of its April 21st letter. When it finally did, it engaged in the withholding of clearly relevant documents on grounds plainly spurious (discussed below).

Plaintiffs added, in that regard, that

Much of the withheld material appears to be material that, if disclosed, would show the bias and collusion on the part of those involved in the handling of Plaintiffs' claim to ensure the matter is resolved in a way and at a pace that affords Amtrak the maximum litigative advantage in the *Hall* litigation. Venable appears to have been unaware of Plaintiffs' request for relevant information prior to February 9th or the law's requirement that such information be disclosed upon request and thus unaware that its statements on January 23rd about how independent and thorough its review had been could be challenged with evidence from its own files. Now, rather than simply disclose all relevant documents, records and other information, Venable has compounded the problem by stonewalling.

Regarding Mr. Herrmann, Plaintiffs said:

Plaintiffs also continue to maintain that Mr. Herrmann's involvement in the Committee's consideration of Plaintiffs' claim as counsel to the Committee was inappropriate. His apparent continuing involvement at the appellate level, in any capacity, is equally improper. Mr. Herrmann is personally and professionally conflicted in multiple ways in these matters and his presence, literally or figuratively, in any phase of these proceedings (other than as a witness being questioned as such) taints them and makes them fundamentally unfair to Plaintiffs. That you and Venable did not insist that he remain

walled-off from these proceedings again shows the degree to which you lack the
necessary independence to be involved any further here.

*Id.* at 11-12.

38.    On the merits, Plaintiffs argued that "[a]n objective adjudicator would have
readily concluded that the Amtrak Board did not 'take[]' 'action' on September 14, 2001 within
the meaning of D.C. Code § 29-101.136 . . . . [because] there was no consent to proceed without
a meeting . . . "signed by all of the members of the board." *Id.* at 14-15.  Plaintiffs argued that
the Committee's conflicts "caused it to ignore the explicit, unambiguous language of D.C. Code
§ 29-101.136" to the point that "[t]he Committee's (*i.e.,* Venable's) discussion of the issue
presented never once quotes or discusses the text of the law and by-law it is supposed to be
applying, so transparently result-oriented is it."  *Id.*

39.    On July 12, 2006, Venable forwarded Ms. Green a 10-page letter for her to review
and sign denying Plaintiffs' claim.  Ms. Green promptly agreed to sign it, saying she had "no
questions or comments."  Ex. Z.

40.    The denial letter, dated July 14, 2006, does not differ in any material respect from
that of the Committee's.  Ex. T.  It rejects Plaintiffs' requests for recusal and rejects Plaintiffs'
objections to the handling of their request for relevant documents, records and other information.
The letter, however, does attach interview notes that Venable took while interviewing Mr. Carten
and Ms. Serfaty and while meeting with the Committee.[21]  But in disclosing the notes, Ms. Green
insisted their production was <u>not</u> required.  *Id.* at 13.  For that reason presumably, she did not
provide Plaintiffs with an opportunity to make further arguments based on the notes:

---

[21] Ms. Green did not represent these notes were the entirety of what Venable generated in connection its
meetings with the Committee or its interviews of Carten and Serfaty.  She also made no reference to Mr.
Herrmann's notes or what he may have generated in connection with his meetings with the Committee or
his meetings and discussions with Venable or in connection with his attendance and participation in the
Carten-Serfaty interviews.

immediately after referencing her voluntary disclosure of the notes, she stated: "The Plan does not provide a voluntary appeal procedure," and "The Claimants have a right to bring an action under Section 502(a) of ERISA" - "Very truly yours." *Id.*

**Discussion**

I. **The Dispute Concerning the Administrative Record Precludes Summary Judgment in Defendants' favor.**

Clearly, there is a dispute over the administrative record that precludes summary judgment under Rule 56(c). Alternatively, Plaintiffs should be given the opportunity to conduct discovery to more adequately demonstrate that Ex. L is not the administrative record and that the administrative record consists or should consist of far more than what Defendants have produced.

Judge Kollar-Kotelly confronted this very issue in *Hurley v. Life Ins. Co. of N.A.,* Civ. No. 04-252 (CKK), 2006 WL 1883406 (D.D.C. July 9, 2006), and correctly held that a plan's unilaterally-compiled internal claim file is <u>not</u> the administrative record. Instead, the administrative record is the record resulting from an administrative review conducted <u>in compliance with the Department of Labor's notice-and-comment claims regulation.</u> *Id*. at *6 (administrator should be compelled to produce documents and information that "**should** have been included in the administrative record") (emphasis added). The administrative record includes, at a minimum, the documents and information that the Department of Labor's regulations require a claimant be given upon request and which as a matter of law are essential

for a full and fair review of their initial benefit denial. *Id.* at *6.[22]

Discovery should be permitted to enable Plaintiffs to determine what relevant documents, records and other information were not disclosed that should have been contained in Ex. L. As the Court in *Hurley* said: "courts have held that even under the arbitrary and capricious standard of review, which gives considerable deference to the administrator, discovery is permitted to determine whether the administrative record is complete." *Hurley,* 2006 WL 1883406 at *5 ("judicial review without a complete and accurate record is in no one's interest ... and ... does not comport with the meaningful judicial review Congress undoubtedly had in mind" (*citing Nagele v. Electronic Dada Sys. Corp.*, 193 F.R.D. 94 (W.D.N.Y. 2000)).

## II.    The Dispute Concerning Whether Plaintiffs were Provided with all Relevant Documents, Records and Other Information Precludes Summary Judgment in Defendants' Favor.

In Count Two, Plaintiffs allege that Defendants violated ERISA's disclosure requirements. Defendants have not moved for summary judgment or to dismiss Count Two. The pendency of Count Two precludes summary judgment on Count One because, if proven, these violations should disentitle Defendants to deferential review even if their framework for decision is otherwise accepted by the Court.

As noted, the DOL notice-and-comment claims regulation, 29 C.F.R. § 2560.503-1(h)(2)(iii), requires as part of a full and fair review of a benefit denial, disclosure of all documents "relevant" to a beneficiaries claim for benefits. As the First Circuit observed in *Doe v. Travelers, supra, Ins. Co.*, 167 F.3d 53 (1st Cir. 1999), an administrator's failure to provide

---

[22] *Accord Doe v. Travelers,* 167 F.3d 53, 58 (1st Cir. 1999) (ordering fiduciary to produce medical notes, exchange of correspondence, and recollections of oral conversations because that information should have been included in the administrative record); *Cannon v. UNUM Life Ins. Co. of Am.,* 219 F.R.D. 211, 215 (D. Me. 2004) (ordering insurance administrator to produce any documents that it left out of the administrative record on the grounds that "removal of 'contrary evidence' from the record does not comport with full and fair claims review").

such information can result in a determination that it did not accord the claimant a "full and fair review," and that its denial of the plaintiff's claim was therefore arbitrary and capricious. 167 F.3d at 60.[23] The 2000 revisions to the claims regulations, the DOL specifically stated that no deference should be accorded to decisions made in the absence of compliance with the requirements of the claim procedures: "procedural minimums of the regulation are essential to procedural fairness ...a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference." 65 Fed. Reg. 70246, 70255 (2000)**.**

Here, documents, records and other information relevant within the meaning of the claims regulation were redacted, withheld entirely and in many cases were not even identified. The Committee, as noted, ignored Plaintiffs' request entirely; even when months later Venable and Ms. Green responded to it in part, they clearly misread or misapplied its mandatory terms, refusing to make disclosure of all documents, records and other information that were "submitted, considered, ***or generated*** in the course of making the benefit determination, ***without regard to*** whether such document, record, or other information was relied upon in making the benefit determination."

Judge Kollar-Kotelly addressed this very issue in *Hurley*:

It is possible, based on Defendants' statements, that Defendants have in fact turned over every e-mail, note, or other internal correspondence produced or collected during their review of Plaintiff's claim. If that is the case, Defendants are ordered to submit a sworn affidavit via an employee with personal knowledge that they have included in the administrative record every document "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8). However, based on the language that Defendant uses to describe the contents of the administrative record, it is not clear that Defendants meant for "collected,

---

[23] *Accord Ellis v Metropolitan Life Insurance Company,* 126 F.3d 228, 237 (4th Cir. 1997) ("The opportunity to review the pertinent documents is critical to a full and fair review, for by that mechanism the claimant has access to the evidence upon which the decision-maker relied in denying the claim and thus the opportunity to challenge its accuracy and reliability").

> reviewed, and/or relied upon" to be synonymous with "generated." As a result, Defendants leave open the possibility that they have not provided Plaintiffs with every document created in relation to Plaintiff's claim. If there are any remaining e-mails, notes, internal memorandum, or other documents that were generated during Defendants' review or decision-making process, the Court orders Defendants to produce those documents within 30 days of receiving this order.

*Hurley,* 2006 WL 1883406, *6; *see also id.* at *5 ("Based on the ERISA language requiring production of any documents that were 'submitted, considered, or generated in the course of making the benefit determination,' Defendants were required to produce the e-mails, notes, and internal correspondence that Plaintiff is requesting").

Clearly, whether Defendants complied with or violated ERISA's disclosure requirements is a critical question.  Indeed, a finding of serious procedural irregularities in the handling of a participant's claim such as those alleged here can not only alter the otherwise applicable standard of review, it can alone support a finding of abuse of discretion.[24]  At a minimum, then, the Court should find a ruling on Defendants' motion premature and permit discovery to determine what relevant documents, records and other information were not disclosed to Plaintiffs during the claims process that should have been disclosed.

## III.    The Dispute Concerning the Committee's and/or Ms. Green's Alleged Conflicts of Interest Preclude Summary Judgment in Defendants' Favor.

The Court in *Firestone* instructed that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" 489 U.S. at 115 (*quoting Restatement (Second) of Trusts* § 187, Comment d (1959)).  Accordingly, "[c]ourts within this jurisdiction have allowed discovery in order to determine whether a conflict of interest exists because "information regarding a potential conflict of interest will be relevant to

---

[24] *E.g., McGraw v. Prudential Ins. Co. of America,* 137 F.3d 1253, 1259-1263 (10th Cir. 1998); *Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund,* 76 F.3d 896, 900 (8th Cir. 1996).

the trial court's determination of the applicable standard of review." *Hurley,* 2006 WL 1883406 at \*3 (*citing Pulliam v. Cont'l Cas. Co.,* No. Civ. A 02-370 (RWR/AK), 2003 WL 1085939, at \*3 (D.D.C. Feb. 27, 2003), where the Court permitted such discovery, observing that "[i]nformation regarding a potential conflict of interest will be relevant to the trial court's determination of the applicable standard of review").

Here, Plaintiffs submit that the Court can already see that whoever is the relevant fiduciary (the Committee or Ms. Green or both), no deference is due to the decision based on the nature and extent of the procedural and substantive irregularities set forth above, or at least there are genuine issues of material fact in that regard. But Plaintiffs also contend, in the alternative, that they have adduced sufficient facts to show that they entitled to discovery to develop the record to show the extent of Committee and/or Ms. Green's conflicts and the extent to which those conflicts affected their handling of Plaintiffs' claim.

## <u>CONCLUSION</u>

Defendants' summary judgment motion should be denied and discovery allowed regarding all material facts in dispute.


Dated:  March 15, 2007              Respectfully submitted,


    s/Eli Gottesdiener
Eli Gottesdiener (D.C. Bar 420764)
Gottesdiener Law Firm, PLLC
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036
Telephone:  (202) 243-1000
Facsimile:  (202) 243-1001
eli@gottesdienerlaw.com

*Attorney for Plaintiffs and the proposed Class*