# GOTTESDIENER LAW FIRM, PLLC
www.gottesdienerlaw.com

### ELI GOTTESDIENER

1025 Connecticut Avenue, Suite 1000
Washington, D.C. 20036
Phone: (202) 243-1000
Fax:    (202) 243-1001

WRITER'S EMAIL ADDRESS                                         Member, District of Columbia,
eli@gottesdienerlaw.com                              New York, Maryland and Pennsylvania Bar


August 5, 2005

By Facsimile and Email

Retirement Plan Committee
Retirement Income Plan for Employees
of National Railroad Passenger Corporation Benefit Plan Committee

c/o John R. Wellschlager
DLA Piper Rudnick Gray Cary US LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600

      Re:  Claim for Benefits

Dear Retirement Plan Committee:

      In accordance with the Order of August 5, 2005 by the Honorable Gladys Kessler of the United States District Court for the District of Columbia, in *Hall v. National Railroad Passenger Corp.*, 03-CV-1764 (GK), Wade F. Hall, Hattie N. McCoy-Kemp, and Victoria F. Staton ("Plaintiffs"), each hereby make a claim for benefits under Retirement Income Plan for Employees of National Railroad Passenger Corporation (the "Plan").  This claim is being served on your counsel directly through facsimile and electronic means the same day of notification of the Court's Order to ensure that the Court's Order of dismissal will not take effect prior to the lodging of this claim in the event the Plan may wish to interpose any form of limitations defense. We think such a defense would be unavailing and one the Committee should have informed the Court it would raise if it obtained a dismissal of Count I of Plaintiffs' Complaint, but out of an abundance of caution we hereby make this claim as soon as possible to forestall disputes over matter of form.  The Committee has known (or should have known) about this claim since August 19, 2003 when it was filed and personally served on National Railroad Passenger Corporation ("Amtrak") and a representative of the Committee (which, however, did not then exist, as you know).

The grounds for this claim, or at least the core of the claim, are well-known at this point to the Committee and are outlined below. But it is precisely the fact that the Committee Members' involvement with the substance of the claim has been so extensive and personal, that Plaintiffs respectfully submit that the Committee must recuse itself in favor of truly disinterested fiduciaries, not selected by the Committee, the sponsor, or counsel for the sponsor but in some wholly independent method (that is made known to Plaintiffs in its particulars) or jointly with Plaintiffs. Instead of carefully and dispassionately weighing the (irrefutable) evidence that there was never a valid Plan amendment on or about September 14, 2001 to cutback the July 2001 VERP, the Members will approach the claim with layers of bias against it, as will Amtrak which would otherwise have a role in any eventual appeal, according to the Plan document's Article XV Claims Procedure at least as appears from the copies in Plaintiffs' possession.

There can be no principled basis for refusing this request under these circumstances: the sole legitimate interest of the Committee is a truly disinterested ERISA-compliant outcome, in process and substance. The Committee, along with the sponsor and the President, asked the Court to require Plaintiffs to submit a claim but now that Plaintiffs are doing so the Committee should, acting as fiduciary, see what it may not have been as focused on as litigant: that it cannot possibly render a decision in a manner that will be fair and be seen as fair to Plaintiffs given the unique circumstances here.

First, Plaintiffs have for nearly two years publicly accused the individual Members of violating their fiduciary duties in administering the Plan in violation of its terms (former Count I) and in violation of ERISA (Count II). Putting to the side feelings of a personal nature, a fair Committee ruling is impossible - it is basic to our law that no man can be a judge in his own case. Yet that is what the Committee would be doing by attempt to adjudicate this claim. A true fiduciary would step aside and have an independent appointed. A conflicted fiduciary would seek the expedient course and claim an ability to act. Here the Committee would be required to condemn its own conduct - not mere mistakes, but breaches of duties, knowing breaches of duty and continuing breaches of duty *after* they had been brought to their attention. Whatever level of personal self-examination the Committee Members believe they are capable, Plaintiffs submit they are not required to be subjected to decision makers so burdened and so distracted. They are entitled to reasonably disinterested decision makers and neither the Committee as constituted nor Amtrak itself fits that bill. Neither is capable of rendering a fair decision or having any further role in this claim, other than jointly with Plaintiffs, in the selection of unbiased mutually acceptable decision makers.

Second, pecuniary considerations of course are part of these irreconcilable conflicts for both the Members and Amtrak. The sponsor's financial condition and the Plan's funding levels vis-à-vis the impact of a favorable ruling on Plaintiffs' behalf are such that it cannot be expected of these individual Members to be truly disinterested and free from bias, however great their personal efforts.

Indeed, as to the Members, this is quite unlike the typical claim wherein the Committee's decision will impact solely the Plan's Trust (and Amtrak's funding obligations). A ruling in favor of this claim could subject each Member to liability in one form or another. But as officers

or employees of the Company there is an additional serious conflict. The scope of claim, while currently made on behalf of three persons, implicates a sufficiently large amount of money as to generate additional pressures that would tax anyone's ability to be truly objective.

The Members and President are officers and employees of the Company (which is not in and of itself cause for a presumption of conflict under ERISA[1]) and know of its financial plight and the precarious nature of the Plan's funded status and future prospects. They will be for personal and professional reasons overly protective of the Company, the Plan's asset pool and/or their own current and future prospects for employment and future promotion, whether aware of it or not, to be open sufficiently to re-examining what they have already decided without the benefit of the very type of non-litigative setting they themselves sought from the Court.

Also, it cannot be overlooked that two of the three Members -- and one in particular -- may be or may be perceived to be or may perceive himself to be - personally responsible for the VERP being enacted at the level it was in July 2001 and hence much of the lawsuit itself in the first place. His fellow Members will be aware of that and together the chances that they will jointly issue a ruling favorable to Plaintiffs is nil. The President has his own issues with his continuing breaches with respect to his non-appointment of the Committee for a year or more.

It would in short take a super-human effort to find that a grievous mistake or series of such mistakes were made, and the claim should be honored (with interest).

Unless the Members can approach all of these questions with complete indifference -- in the sense of not impacting the outcome -- they cannot be further involved. Yet it is too much to ask of them not to be concerned about the adverse effects that may result from a finding in Plaintiffs' favor, including on themselves as Defendants in this case, as co-workers of employees who may not appreciate a ruling in Plaintiffs' favor reducing already scare resources in the Plan or Amtrak, as employees of a perpetually fiscally strapped Company who very existence is constantly in doubt. For these reasons, the Committee, the President and Amtrak (similarly accused) should have no further involvement with this claim or any appeal if the claim is denied.[2]

Additional reasons for recusal include the fact that Plaintiffs intend to pursue in one or more fashions that the Members have permitted the Plan to be operated in violation of the

---

[1] The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*.

[2] Additional reasons for recusal include the fact that Plaintiffs intend to pursue in one or more fashions that the Members have permitted the Plan to be operated in violation of the Internal Revenue Code's nondiscrimination provisions as set forth in Plaintiffs' motion for summary judgment under Count II. Plaintiffs do not make this claim here at the present time. Additionally -- and this Plaintiffs *do* make this claim now but *only* as an alternative to the claim that the Plan was not amended on September 14, 2001 and *only* if that claim is denied -- Plaintiffs contend the Members, Amtrak, and its President are all acting unlawfully with respect to the Plan insofar as the Plan restatement in 1994 was never approved by the then current Board or retroactively specially amended by any subsequent Board and contrary representations have been made to the IRS and to Judge Kessler (via Defendants' Answer). Further, the Board appears to have abdicated its responsibility for plan amendments for years, turning that responsibility over to the Committee -- until it went out of existence in or about 1995. None of the Plan's fiduciaries can possibility neutrally and detachedly consider these claims.

3

Internal Revenue Code's nondiscrimination provisions as set forth in Plaintiffs' motion for summary judgment under Count II.  Plaintiffs do not make this claim here at the present time.

Additionally -- and this Plaintiffs *do* make this claim now but *only* as an alternative to the claim that the Plan was not amended on September 14, 2001 and *only* if that claim is denied -- Plaintiffs contend the Members, Amtrak, and its President are all acting unlawfully with respect to the Plan insofar as the Plan restatement in 1994 was never approved by the then current Board or retroactively specially amended by any subsequent Board and contrary representations have been made to the IRS and to Judge Kessler (via Defendants' Answer).  Further, the Board appears to have abdicated its responsibility for plan amendments for years, turning that responsibility over to the Committee -- until it went out of existence in or about 1995.  None of the Plan's fiduciaries can possibility neutrally and detachedly consider these claims.

Plaintiffs have reviewed the Plan and current SPD and submit that they are both defective in multiple material respects regarding the required claims process and process.  This is another reason for this matter to be handled differently than the typical claim for benefits.[3]

Plaintiffs see nothing in the claims procedures preventing incorporation by reference.  They therefore incorporate by reference all arguments and points raised in prior filings or any form of written communication concerning the invalidity of the September 14, 2001 amendment, and the validity of July 26, 2001 amendment.  They also incorporate the deposition testimony of all witnesses deposed in this case with particular reference to Governor Holton, John Carten and Alicia M. Serfaty.  Also incorporated by reference are all documents Plaintiffs have ever references on the topics including documents not yet produced or withheld for any reason.

As the Court set forth in its August 5th Order the legal standard for a plan amendment is clear.  And just as clearly not met in this instance.  The law (and By-laws of the Company) mean what they say and for good reason.  The text of the law is unambiguous and what Government Holton did and did not do is equal unambiguous.  There is no good-enough, or exceptions, particularly not when the Board is already not at full complement.  All Board Members needed to personally sign a unanimous consent resolution.  The reasons are manifold and salutary and include to ensure that the solemnity of the Director's act is brought home to him and to foster a degree of care and reflection that, paraphrasing, "go ahead and sign for me, sounds okay," can never approach.

That gets to the second independent basis why there was no amendment - even assuming somehow that the plain meaning of the words should not be applied, on the indisputable facts there was no legally cognizable meeting of the minds of the Directors:  while every other Director acted upon the basis of a resolution that stated it had an Executive Summary attached and that it had been reviewed (whether true or not, the physical signature and representation of the Director suffices to establish that), factually and legally it is a complete fiction -- that the law will not recognize -- that Governor Holton read the resolution and its attachment.  He did not do so and the very fact that he and John Carten agreed that Carten who sign something that was

---

[3] The Plan and SPD contain conflicting indications as to the form a claim for benefits should take.  Plaintiffs request if the Plan's claims process is valid and sufficient in all respects that the requirement that the claim be submitted on form designated by the Committee be waived if otherwise enforceable.

4

such a direct misrepresentation of fact further underscores the dangerous of loosening the law as Amtrak wants to do in this circumstance for reasons of pure expediency.  Moreover, the Governor's brief oral conversation with a Company functionary cannot possibly form a sufficiently exact substitute of what actually or what the law will presume was actually in the minds of the properly signing Directors when they signed.  So assuming the Governor "signed" what he was signing and consenting to cannot have been *identical* to what the other Directors all agreed to.  In essence, he agreed to one thing - essentially John Carten's rendition of a proposal -- and the Directors all consented to something else.  That neither Carten nor the Governor made any effort to directly contact at least *one* other Director to ensure some manner of quality control on this slap-dash process is a further infirmity in an already void process.

       That gets to a third point - this has not yet been raised in written form - the other Directors written consents were all premised on their belief that all *other* Directors *personally signed.*  But they too are void.  Putting aside their legal inability to waive the statute, at least if all the Directors signing that day were alerted *in advance* that their vote might be counted and the resolution adopted *even if* one of their number did not personally sign, did not personally read what he was "signing" and did not, as he represented, read personally the Executive Summary, their consents may have implied a form of consent to have the resolution adopted without the required safeguards in place as to one of their number.  It would not have saved the process from invalidity but would have been preferable to what did occur:  the other Directors were left in the dark and had no earthly idea that employees' benefits were being proposed to be cut with one Director's personal signature and direct physical engagement as to the operative documents cavalierly tossed to the side by management whose own crass mistakes caused the fire-drill atmosphere from being forced on the Directors in the first place (9-11 or no).

       The Committee or such independent fiduciary who hears this claim should find on the facts that unanimous consent was lacking and no amendment occurred.  The Committee or such independent fiduciary who hears this claim should also find if they consider the question - which they should not because it has not been submitted to them -- that Plan was amended as Plan alleges on July 26, 2001.  It should also be found that any waivers obtained following September 14, 2001 are void:  they were the product of miscommunications and misrepresentations to participants such as Hattie McCoy-Kemp who was provided with misinformation, i.e., the VERP with Railroad Retirement Supplement, had been amended out of the Plan and was no longer legally available.  Plaintiffs should be permitted to elect the VERP with Railroad Retirement Supplement now, with interest.

       Nothing in this letter is to be construed as a waiver of any pending claim or Plaintiffs' agreement that any of the issues here are matters of discretion or discretionary interpretation, or should be committed to anyone other than the Court for decision, particularly the reading of the D.C. Code, the application of that law and the By-Laws to fact and the application of ERISA to all of the foregoing.  Those are all questions for the Court *de novo*.

5

      Thank you for your attention to this claim.  We look forward to your prompt, detailed reply and disclosure of all relevant materials upon which you relied in whole or in part in reaching your decision.

                    Sincerely,

                    Eli Gottesdiener