# NATIONAL RAILROAD PASSENGER CORPORATION
## LAW DEPARTMENT
60 Massachusetts Avenue, N.E.
Washington, D.C. 20002

The documents accompanying this facsimile transmittal may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of any of the information in this transmittal is strictly prohibited. If you have received this transmittal in error, please immediately notify the sender by telephone and return the original transmittal by mail.

## FACSIMILE COVER PAGE

**DATE:**    **January 23, 2006**    **NO. OF PAGES INCLUDING COVER:  21**

**TO:**    **Eli Gottesdiener, Esq.**

**COMPANY NAME:  Gottesdiener Law Firm**

**PHONE NUMBER:**    **FACSIMILE NUMBER:**    **202-243-1001**
**718-788-1650**

**FROM:**    **William H. Herrmann, Esq.**
**Deputy General Counsel**
**Phone: 202-906-3971**
**Fax: 202-906-2821**

**COMMENTS:**

If transmission is interrupted or of poor quality, please call 202-906-3310

**RETIREMENT PLAN COMMITTEE,**
**RETIREMENT INCOME PLAN FOR EMPLOYEES OF**
**NATIONAL RAILROAD PASSENGER CORPORATION**
**60 MASSACHUSETTS AVENUE, N.E.**
**WASHINGTON, DC 20002**

January 23, 2006

Via Facsimile and First Class Mail

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
1025 Connecticut Avenue, Suite 1000
Washington, D.C. 20036

Re:    Claim For Benefits Under The Retirement Income Plan For Employees Of
National Railroad Passenger Corporation

Dear Mr. Gottesdiener:

We are writing in response to your letter dated August 5, 2005 (the "August 2005 Letter"), in which you make claims for benefits under the Retirement Income Plan for Employees of National Railroad Passenger Corporation ("Plan") on behalf of Wade F. Hall, Hattie N. McCoy-Kemp and Victoria F. Staton ("Claimants"). Under Article XV of the Plan, we, as the Retirement Plan Committee ("Committee"), are responsible for responding to claims under the Plan. The purpose of this letter is to inform you that, after careful consideration of the claims of the Claimants, we have decided to deny the claims because we find that the version of the Voluntary Early Retirement Program ("VERP") containing the reduced benefits approved by the Board of Directors of National Railroad Passenger Corporation ("Amtrak") on September 14, 2001 was the effective final and operative version of the VERP, and superseded the earlier version of the VERP approved at a meeting of Amtrak's Board of Directors on July 26, 2001.

**Background Information**

In 2001, Amtrak management was considering ways to reduce Amtrak's operating costs through a workforce reduction. In order to minimize the number of involuntary dismissals, Amtrak decided to implement a voluntary early retirement plan, which would be made available to eligible Amtrak employees for a period of time commencing on September 15, 2001 and ending on October 31, 2001.

On July 26, 2001, at a meeting of Amtrak's Board of Directors, the Board voted to approve a VERP that included two components: (1) an additional 5 years of age for purposes of determining the early retirement reduction applicable under the Plan, and (2) a monthly supplement payable until a participant qualified for unreduced Railroad Retirement Benefits ("Railroad Retirement Supplement").

Eli Gottesdiener, Esq.
January 23, 2006
Page 2

Before the window for the VERP opened to eligible employees on September 15, 2001, it became apparent that the cost of the VERP, in the version approved by the Board on July 26, 2001, was going to be significantly higher than originally estimated. Therefore, Amtrak management intended to present a scaled-back version of the VERP to Amtrak's Board of Directors for approval at a meeting scheduled on September 12, 2001, but this meeting was cancelled because of the catastrophic events of September 11, 2001. Left without time to reschedule a Board meeting before the VERP election window would open on September 15, 2001, the Board approved a scaled-back version of the VERP on September 14, 2001 by written consent. Under this revised version of the VERP, instead of the Railroad Retirement Supplement, each participant would receive a $15,000 lump sum payment. The additional 5 years of age for purposes of determining the early retirement reduction applicable under the Plan remained in place.

You filed suit on behalf of the Claimants on August 19, 2003 in United States District Court for the District of Columbia. On August 5, 2005, Judge Kessler ruled that Count I of the Complaint was appropriately cast as a claim for benefits under the Plan, and that this claim was premature because plaintiffs had not exhausted the Plan's claims procedures. You then submitted the August 2005 Letter to the Committee on behalf of the Claimants.

### Summary of Claims

With respect to Mr. Hall (who did not accept the VERP, continued working for Amtrak and retired under the generally applicable terms of the Plan), you are claiming the full value of the July 2001 VERP (plus interest).[1] With respect to Ms. McCoy-Kemp (who accepted the September 2001 VERP), you are claiming the difference in value between the July 2001 VERP and the September 2001 VERP (plus interest). With respect to Ms. Staton (who did not accept the VERP, was later terminated and paid severance), you are claming the difference in value between the July 2001 VERP and the severance (plus interest).

You assert on behalf of the Claimants that the Plan was amended by the Board of Directors of Amtrak on July 26, 2001, when it voted to approve a VERP that included (1) an additional 5 years of age for Plan purposes, and (2) the Railroad Retirement Supplement. You further assert that the Amtrak Board's approval on September 14, 2001

---

[1]     For purposes of brevity, we refer herein to the "July 2001 VERP" and the "September 2001 VERP" to mean the versions of the VERP approved by the Board on July 26, 2001 and September 14, 2001, respectively. It is the Committee's finding that the only operative version of the VERP is that which was approved by Amtrak's Board of Directors on September 14, 2001 and communicated to eligible employees before the window opened on September 15, 2001 as the final version of the program.

Eli Gottesdiener, Esq.
January 23, 2006
Page 3

of the change to the VERP's second prong from the Railroad Retirement Supplement to a lump sum payment of $15,000 per participant was ineffective and therefore, the terms of the July 2001 VERP remained in place even after September 14, 2001. Correspondingly, you assert that the liability waivers executed by Ms. McCoy-Kemp and Ms. Staton are invalid because they were based on misinformation concerning the terms of the VERP.

In the alternative, and only if it is determined that the Plan was properly amended on September 14, 2001, you assert that the most recent restatement of the Plan (executed December 30, 1994, effective January 1, 1989) was not properly authorized by Amtrak's Board and consequently actions taken pursuant to it are unauthorized.

You are not claiming that Mr. Hall, Ms. McCoy-Kemp or Ms. Staton were damaged by detrimentally relying on the July 2001 VERP.

## Steps Taken By The Committee In Adjudicating The Claims

The Committee has given extensive and careful consideration to the claims of the Claimants. The Committee has engaged independent legal counsel to assist it in properly executing its fiduciary duties in deciding those claims. Counsel has reviewed the extensive record in this matter, including the litigation pleadings, depositions of Linwood Holton (former Amtrak Director and former Governor of Virginia), Alicia Serfaty (Amtrak's Corporate Secretary and General Counsel), John Carten (Amtrak's Director – Board Liaison and an Assistant Corporate Secretary), and Medaris Oliveri (an Assistant Corporate Secretary), Board of Directors' resolutions, Plan amendments, and the materials provided to Amtrak employees relating to the VERP. In addition, counsel spoke with Ms. Serfaty and Mr. Carten concerning this matter.

## Factual Background Surrounding The September 14, 2001 Board Action

The Committee finds the following relevant facts in connection with the September 14, 2001 Board action:

(1)    Amtrak has reserved the right in the Plan document to amend the Plan "by action of its Board", without requiring any more specific methodology.

(2)    A formal meeting of the Board of Directors was scheduled for September 12, 2001. It was Amtrak management's intention to make a presentation at the scheduled September 12, 2001 Board meeting regarding the VERP and request Board approval for a scaled-back version of the VERP. Management intended to explain that review of the financial implications of the VERP following the July 26, 2001 Board meeting indicated that the cost of the VERP was substantially higher than originally anticipated, and that

Eli Gottesdiener, Esq.
January 23, 2006
Page 4

there was a need to reduce the cost of the VERP before the early retirement window
opened on September 15, 2001.

(3)     The Board was forced to cancel its meeting scheduled for September 12,
2001 because of the catastrophic circumstances presented by the September 11, 2001
terrorist attacks.

(4)     On or before September 14, 2001, each of the members of Amtrak's Board
of Directors was contacted by or at the direction of Ms. Serfaty, and consent resolutions
and an Executive Summary were faxed to each Director (see enclosed). The consent
resolutions sent to the Board authorized the Railroad Retirement Supplement prong of the
VERP to be replaced with a lump sum payment of $15,000. The Executive Summary set
forth in some detail the actions that Amtrak was asking the Board to approve.

(5)     For each member of Amtrak's Board other than Governor Holton, it is
undisputed that the Board member individually signed a counterpart of the consent
resolutions and returned the signed counterpart for filing with the minutes of proceedings
of Amtrak's Board.

(6)     Based on the deposition testimony of Governor Holton and Mr. Carten, it
appears that Governor Holton was not in his office when the faxed consent resolutions
and Executive Summary were sent to him on September 14, 2001. However, Governor
Holton contacted Mr. Carten, and Governor Holton and Mr. Carten had a telephone
conversation on September 14, 2001, during which Mr. Carten reviewed with Governor
Holton the Executive Summary and the requested consent resolutions.

(7)     Governor Holton did not personally affix his signature to the consent
resolutions which were faxed to him. Rather, after his telephone conversation with Mr.
Carten regarding the consent resolutions, Governor Holton instructed Mr. Carten to affix
the Governor's signature to the consent. Based on Governor Holton's instruction, Mr.
Carten copied and pasted Governor Holton's signature to the consent resolutions and filed
this counterpart with the other counterparts to the consent resolutions on September 14,
2001.

(8)     Governor Holton approved the July 2001 VERP at the July 26, 2001
Board meeting, and understood the context and nature of the change to the July 2001
VERP which was being proposed on September 14, 2001. When questioned about the
matter in his deposition, Governor Holton confirmed that he understood the proposed
changes to the July 2001 VERP, and he intended to approve the changes proposed on
September 14, 2001. Because he was not in a position to fax his signature to the

Eli Gottesdiener, Esq.
January 23, 2006
Page 5

resolutions back to Amtrak on September 14, 2001, he asked Mr. Carten to affix his signature to the resolutions.

(9)     The terms of the September 2001 VERP, as approved by the Board on September 14, 2001, were clearly communicated to eligible employees before the window opened on September 15, 2001. Based on the final versions of the written materials provided to employees, there is no basis for confusion or misunderstanding concerning the terms of the VERP.

(10)     The formal amendment to the Plan document reflecting the September 2001 VERP was executed by Amtrak management on November 30, 2001. There was never any formal amendment executed reflecting the July 2001 VERP.

## Legal Impact Of The September 14, 2001 Board Action

Based on the foregoing factual background, the Committee finds that the VERP as approved by Amtrak's Board on September 14, 2001 was the effective, final and operative version of the VERP made available to Amtrak employees on September 15, 2001, for the following independent reasons:

(1)     Under Section 29-101-1.136 of the District of Columbia Business Corporation Act and under Section 4.12 of Amtrak's Bylaws, a Board of Directors can act by unanimous written consent of its directors. As noted above, a question concerning the validity of the September 14, 2001 Board action is asserted by Claimants because Governor Holton did not personally sign the written consent. The Committee finds that because Governor Holton fully understood and agreed with the content of the resolutions and intended to manifest his agreement in writing, the Governor's instruction to Mr. Carten to affix the Governor's signature to the consent was no more than the delegation of a ministerial act to Mr. Carten. The Committee finds that such delegation of a purely ministerial act is not inconsistent with the requirement that the consent be unanimously approved in writing by the directors with voting power. Therefore, the Committee believes that the Board action of September 14, 2001 was effective to approve the September 2001 VERP.

(2)     Assuming for the sake of argument that the September 14, 2001 Board action suffered from a technical defect (a position with which the Committee disagrees), courts have held that an ERISA plan amendment should not be invalidated for technical violations of a plan's procedures unless there is a showing of bad faith or active concealment on the part of the sponsor. The circumstances surrounding the instant claims are quite the opposite. The Board acted in good faith, to the best of its abilities in light of the September 11, 2001 terrorist attacks, and Amtrak clearly communicated to

Eli Gottesdicner, Esq.
January 23, 2006
Page 6

eligible Amtrak employees before the window opened on September 15, 2001 that the
terms of the VERP had changed from the terms previously communicated to them.

### Validity of the Releases Signed by Ms. McCoy-Kemp and Ms. Staton

You assert that the liability waivers executed by Ms. McCoy-Kemp and Ms.
Staton are invalid because they were based on misinformation concerning the terms of
the VERP. The Committee rejects this claim, because the Committee finds that the terms
of the VERP were accurately represented to Ms. McCoy-Kemp and Ms. Staton.

### Validity of the 1994 Restatement of the Plan

You assert (as an alternative to the claim that the Plan was not properly amended
on September 14, 2001), that the most recent restatement of the Plan (executed December
30, 1994, effective January 1, 1989) was not properly authorized by Amtrak's Board and
consequently actions taken pursuant to it are unauthorized. Assuming for purposes of
this claim (without deciding the matter) that the 1994 restatement of the Plan was not
properly authorized when originally adopted, the Committee nonetheless rejects this
claim on the basis that subsequent actions of the Board in authorizing amendments to the
Plan, and otherwise acting with respect to the Plan, amount to an implied ratification of
the 1994 restatement of the Plan.[2] We also note that it is the Committee's duty under
ERISA to administer the Plan in the best interests of all Plan participants and
beneficiaries. If we were to conclude that the 1994 restatement of the Plan was not
properly adopted, the tax qualification of the Plan could be jeopardized – a result which
would be detrimental to all Plan participants and beneficiaries.

### Adjudication by the Committee

You assert that an independent adjudicator should be appointed to decide the
claims, because you believe the Committee is biased and incapable of fair adjudication of
the claims. We reject this assertion. The Committee is composed of new members who
were not directly involved in the adoption and implementation of the VERP. In addition,
we have been assisted by independent legal counsel in our consideration of the claims.
Finally, we note that ERISA clearly contemplates that employees of a plan sponsor may
serve as fiduciaries responsible for claims adjudication under a plan.

---

[2]    In the August 2005 Letter, you state that you are making a claim based on the asserted lack of
authorization for the 1994 restatement of the Plan only as an alternative to the claim that the Plan was not
amended on September 14, 2001 and only if that claim is denied. We note that we are responding to your
alternative claim regarding the 1994 restatement of the Plan because we have found the Board action on
September 14, 2001 approving the revised VERP to be valid.

Eli Gottesdiener, Esq.
January 23, 2006
Page 7


## ERISA Claims Denial Information

In accordance with 29 C.F.R. Section 2560.503-1(g), the Committee provides the following information with respect to the claims:

(1)   **Specific Reasons for Adverse Determination.**

(a)    The claim for benefits based on the assertion that the Board's approval on September 14, 2001 of the reduced VERP was ineffective is denied for the reasons stated above under the heading entitled "Legal Impact of the September 14, 2001 Board Action".

(b)    The claim based on the asserted invalidity of the releases signed by Ms. McCoy-Kemp and Ms. Staton is denied for the reason stated above under the heading entitled "Validity of the Releases Signed by Ms. McCoy-Kemp and Ms. Staton".

(c)    The claim based on the asserted failure to properly adopt the 1994 restatement of the Plan is denied for the reason stated above under the heading "Validity of the 1994 Restatement of the Plan".

(2)   **Reference to Specific Plan Provision on Which Determination is Based.**

Determinations (a) and (b) above are based on Section 4.06 and Exhibit B to the Plan, as adopted by amendment dated November 30, 2001. Determination (c) above results from the reason stated above under the heading "Validity of the 1994 Restatement of the Plan", not from a specific Plan provision.

(3)   **Description of Additional Material or Information Necessary to Perfect Claims.**

This is not applicable, because the denial of the claims is not the result of a defect in the form of the claims or supporting information.

(4)   **Claims Procedures of the Plan and Right to Bring Civil Action.**

See attached Section XV of the Plan, setting forth the Plan's claims procedures. The Claimants have 60 days following receipt of this letter to appeal this adverse determination. The officer of Amtrak designated to adjudicate appeals is the Vice President, Human Resources, Ms. Lorraine Green. Appeals may be directed to Ms. Green's attention at National Railroad Passenger Corporation, 60 Massachusetts Avenue,

Eli Gottesdiener, Esq.
January 23, 2006
Page 8


N.E., Washington, DC 20002. If there is an adverse determination upon appeal, the
Claimants have a right to bring a civil action under Section 502(a) of ERISA.

Very truly yours,

RETIREMENT PLAN COMMITTEE,
RETIREMENT INCOME PLAN FOR
EMPLOYEES OF NATIONAL RAILROAD
PASSENGER CORPORATION

By: _____
    Paula Porter, Chairperson

Enclosure: Section XV of the Plan and September 14, 2001 Consent Resolutions
cc:    Mr. Matthew Hardison, Committee Member
       Mr. Jeffrey Carnicelli, Committee Member
       Barbara E. Schlaff, Esq., Counsel to the Committee
       Robert J. Bolger, Esq., Counsel to the Committee
       John R. Wellschlager, Esq., Counsel to the Company.

RETIREMENT INCOME PLAN FOR
EMPLOYEES OF
NATIONAL RAILROAD PASSENGER CORPORATION

Printed 12/23/94

## ARTICLE XV

### Claims Procedure

15.01      Claims Procedure.  A claim for benefits under the Plan by a Participant, Retired Participant, Spouse, or Beneficiary, or any other person shall be filed by submitting to the Retirement Plan Committee a written application on a form designated by the Retirement Plan Committee.  The Retirement Plan Committee shall, within a reasonable time, consider the claim and shall issue its determination in writing.  If the claim is denied in whole or in part by the Retirement Plan Committee, the Retirement Plan Committee shall, within a reasonable time, provide the claimant with a written notice setting forth in a manner calculated to be understood by the claimant:

(a)    The specific reason or reasons for the denial of the claim;

(b)    Specific reference to pertinent Plan provisions on which the denial is based;

(c)    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(d)    An explanation of the Plan's claim review procedure.

The Retirement Plan Committee shall provide each claimant with a reasonable opportunity to appeal a denial of a claim to an officer of the Sponsor designated by the Board for a full and fair review.  The designated officer shall be identified by the Board as a fiduciary with respect to the Plan in accordance with Section 402(a)(2) of the Act.  The claimant or his duly authorized representative may:

(a)    request a review upon written application to the designated officer;

(b)    review pertinent documents; and

(c)    submit issues and comments in writing.

The Retirement Plan Committee may establish such time limits within which claimants may request review of denied claims as are reasonable in relation to the nature of the benefit which is the subject of the claim and to other attendant circumstances, but which in no event shall be less than 60 days after receipt by the claimant of written notice of denial of his claim.  The decision by the designated officer with respect to the claim shall be made not later than 60 days after receipt of the request for review, unless special circumstances require an extension of time for processing, in which case a decision will be rendered as soon as possible but not later than 120 days

74

after receipt of the request for review.  The decision on review shall be in writing, shall include specific reasons for the decision and specific references to the pertinent Plan provisions on which the decision is based, and shall be written in a manner calculated to be understood by the claimant. To the extent permitted by law, the decision of the Retirement Plan Committee (if no review is properly requested) or the decision of the designated officer on review, as the case may be, shall be final and binding on all parties if it is supported by the facts which were considered and is reasonably based on the applicable provisions of law, the Plan and the trust instrument.

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

National Railroad Passenger Corporation
Board of Directors
Adopted September 14, 2001

**Amtrak Board of Directors**
**Agenda Item Executive Summary**

Title:  Amended Management Voluntary Early Retirement Plan

Background:

As part of Amtrak's efforts to streamline its organization, eliminate inefficiencies and reduce costs, the Board approved a Voluntary Early Retirement Plan (VERP) at its meeting on July 26, 2001.  The VERP as approved had two main components: (i) five years of age added to Amtrak's pension formula; and (ii) a full supplement to the Railroad Retirement benefits that would otherwise be available until age 65.  Management planned to fund the VERP benefits through the accumulated surplus in Amtrak's Retirement Income Plan Trust (the "Fund"). Because a portion of the pension funds in this Fund are invested in the stock market and the market has experienced a recent downturn, before proceeding further with the VERP Senior Management requested an updated actuarial analysis to ensure that the integrity of the pension fund is preserved.

The updated analysis showed that if Management proceeded with the plan as originally formulated, the surplus in the Fund would be depleted and the company would be required to make a significant contribution to the Fund as early as 2003.  According to the actuary, as a result of a combination of market conditions, additional accrued liabilities and withdrawals, the forecasted surplus in the Fund has declined from approximately $42 million in December 2000 to $18.6 million on August 31, 2001.[1]  While Management expects the Fund to continue to grow over the long term, it has nevertheless determined that it would be prudent to offer a more modest VERP than originally envisioned and maintain a surplus in the Fund.  Consequently, Management proposes to eliminate the second component of the plan, the more costly Railroad Retirement supplement, and instead offer a one-time lump sum payment of $15,000.

The revised VERP would provide that any management employee 55 years of age or older with 10 or more years of Amtrak service who files retirement papers between September 15 and October 31, 2001 will receive the following retirement package:

- Five years of age added to the pension formula; and
- A one-time lump sum payment of $15,000.00

---

[1] The reduction of what appears to be $23.3 million accounts for approximately $3.1 million of pension payments, $7.5 million of accruals and $11.7 million of investment loss.  Our actuary indicates that Amtrak's investment return over the last five calendar years was 74% or 12% per annum compounded annually.

In order to receive benefits, an employee must elect to retire from Amtrak during the window period and sign a release agreement. The employee must also agree not to exercise seniority rights back into an agreement-covered position.

Based on current actuarial forecasts and the anticipated costs of this amended plan, the Fund will show at least a $10 million surplus and Amtrak will therefore continue to enjoy a contribution holiday for several more years. Management estimates that participation in the VERP will be somewhere between 50 to 60 percent, down from 75% expected for the original plan. At these levels of participation, the VERP as revised is estimated to cost approximately $ 7.2 million at 50 percent participation and $8.6 million at 60 percent.

**Recommended Action:**
Management recommends that the Board approve the attached resolutions authorizing an amendment to the Voluntary Early Retirement Plan as set forth above.

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

Approved:

_____
Board Member

September 14, 2001
Date

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

Approved:

_____          September 14, 2001
Board Member                              Date

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.


Approved:


_Linwood Holton_
_____
Board Member

September 14, 2001
Date

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.


Approved:


_Michael Jackson_
**Board Member**

_September 14, 2001_
**Date**

## RESOLUTIONS AUTHORIZING AMENDMENT TO
## 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan
that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended
benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the
terms of proposed amended Voluntary Early Retirement Plan which has been
fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the
attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is
authorized to take all necessary steps to implement the terms of the plan
described in the attached Executive Summary.

Approved:

Board Member

September 14, 2001
Date

## RESOLUTIONS AUTHORIZING AMENDMENT TO 2001 VOLUNTARY EARLY RETIREMENT PLAN

WHEREAS, This Board previously approved a Voluntary Early Retirement Plan that provided certain enhanced pension benefits for eligible employees; and

WHEREAS, Management has recommended that this Board adopt an amended benefit plan based on actuarial adjustments in the pension plan funding; and

WHEREAS, Management has set forth in the attached Executive Summary the terms of proposed amended Voluntary Early Retirement Plan which has been fully described to Members of this Board; therefore, be it

RESOLVED, That the amended Voluntary Early Retirement Plan described in the attached Executive Summary is authorized and approved; and, be it

FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the terms of the plan described in the attached Executive Summary.

Approved:

_____
Board Member

<u>September 14, 2001</u>
Date