IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WADE F. HALL,<br>*et al.*,<br>   Plaintiffs,<br>v.<br>NATIONAL RAILROAD PASSENGER<br>CORPORATION,<br>*et al.*,<br>   Defendants. | Case No. 1: 06-CV-01539 (GK)<br>Next Scheduled Court deadline: N/A |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs' Motion for Partial Summary Judgment altogether failed to address the central issues in *Hall II* – a case that, in itself, is nothing more than a count in *Hall I* that this Court dismissed because Plaintiffs failed to exhaust their administrative remedies. With the exception of a single footnote reference buried on page 46 of their memorandum, Plaintiffs failed to discuss the standard of review it believed applicable to the Committee's decision. Plaintiffs also failed to address why, under any standard of review, the Committee's finding of fact that Governor Holton's instruction to the Board's assistant corporate secretary to affix his signature was no more than the delegation of a ministerial function which is permissible under the law of the District of Columbia. *See District of Columbia v. White*, 435 A.2d 1055 (D.C. Ct. App. 1981).

Instead, Plaintiffs' Motion for Partial Summary Judgment was filled with new arguments and new evidence that should have been made in *Hall I* and should have been made before the Committee or, alternatively, should not have been made at all. Plaintiffs altogether failed to explain why this Court should even consider any new arguments or facts relating to (1) whether the Secretary of Transportation needed to sign the unanimous consent resolution or whether the consent of the Deputy Secretary of Transportation was sufficient; (2) whether the *ex officio* member of the Board — who does not vote or even count toward a quorum — needed to sign the resolution; or (3) whether the July 2001 Board action either directly authorized or authorized management to establish a VERP. Plaintiffs do not dispute that they failed to present any of these arguments to the Committee for its consideration.

Plaintiffs are now making at least five excuses relating to why *Hall II* should not be dismissed on summary judgment. ***First***, Plaintiffs claim that this Court can consider Plaintiffs' new arguments because they involve only "issues," not "evidence," and that the exhaustion of remedies doctrine allows for their consideration. This is wrong for two reasons. Plaintiffs are asking this Court to consider new "evidence" that was not filed in *Hall I* and that was not submitted by Plaintiffs for consideration by the Committee – hence the 74 exhibits that Plaintiffs filed with their summary judgment papers, which this Court should disregard. Also, while some courts have made the "issues" versus "evidence" distinction that Plaintiffs have made, the better reasoned decisions hold that exhaustion applies to "issues" as well as evidence, especially where, as here, the claimants have had the advantage of counsel to assist in the claims process.

***Second***, Plaintiffs claim that the Committee's decision is not entitled to an "abuse of discretion" standard because its decision was purportedly subject to an appeal to a claims officer

whose grant of authority did not meet the standard of "fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" as required under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This novel argument is without support and it is wrong. The Committee is the "administrator" of the appeal and the entity whose discretion must meet the requirements of *Firestone* for this Court to review its decision under an "abuse of discretion" standard.

**Third**, Plaintiffs argue that under *Holt v. Winpinsger*, 811 F.2d 1532 (D.C. Cir. 1987) this Court should consider the Committee's determinations under a de novo – not an abuse of discretion – standard. *Holt* held simply that courts owe no deference to the administrator's interpretations of ERISA. *Id.* at 1535-36. *Holt* did not invite courts to disregard all of the factual determinations of administrators such as, in this case, the determination that Governor Holton understood the nature of the September 2001 Board action, and that he did not delegate any authority to the Board's corporate secretary, just a ministerial task of affixing a signature. These are not "legal" conclusions, they are determinations of fact entitled to a review by an abuse of discretion standard. Further, *Holt* was decided prior to *Firestone* – a case where the Supreme Court held that the principle inquiry in determining the appropriateness of the "abuse of discretion" standard turned on the grant of authority to the administrator. Since that time, the DC Circuit has issued a number of decisions (ignored by Plaintiffs) explaining that *Firestone* provides the appropriate analysis for determining the scope of review. *See, e.g. Boivin v. U.S. Airways*, 446 F.3d 148 (D.C. Cir. 2006); *Communication Workers of Amer. v. AT&T*, 40 F.3d 426 (D.C. Cir. 1994); *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450 (D.C. Cir. 1992) (concurrence explaining that many circuits viewed *Firestone* as changing the applicable standard of review of

administrator's decisions, and agreeing with that view). As this Court stated when it dismissed the *Hall II* count in *Hall I* – *Hall II* does not involve an interpretation of ERISA. *See* Memorandum Opinion in *Hall I* (dated August 5, 2005) at p. 17. There is no reason for this Court to second guess the decision it reached in *Hall I* that these issues are appropriate for administrative exhaustion.

***Fourth***, Plaintiffs argue that the "abuse of discretion" does not apply because there is a dispute of material fact as to whether the Committee and/ or the appeals officer had a conflict of interest that precludes any deference to their decision making. No such conflict exists and, even if it did, the determination that Governor Holton delegated that ministerial task of signing would still be correct.

***Fifth***, Plaintiffs argue that they need more discovery to survive a summary judgment motion. Plaintiffs' counsel expressly disavowed the need for the expansive discovery Plaintiffs now envision when he told this Court that it should not stay this case until the summary judgment motions in *Hall I* were ruled upon. Defendants provided written responses and objections to Plaintiffs and produced those documents, as well as additional documents requested by Plaintiffs. In any event, the time for objecting to discovery responses and production has long passed in this case.

Taken together, all of these arguments by Plaintiffs are an eleventh hour attempt to avoid summary judgment. Plaintiffs have reviewed the Committee's decision and know that it was correct (under any standard, let alone one of "abuse of discretion") and that the Governor had merely delegated his ministerial task. Plaintiffs know that the only way they can survive

summary adjudication is to distract this Court with other issues so that this Court might think that this case might be too complicated to resolve on motions.

This is a very simple case with no genuine disputes of material facts. This Court should grant Defendants summary judgment and dismiss *Hall II*.

## II.   ARGUMENT

### A.   This Court Should Not Consider Any Issue, Argument Or Evidence That Was Not Presented To The Committee For Consideration.

Plaintiffs maintain that they should be permitted to argue their new theories relating to the July 2001 Board action and the efficacy of the unanimous consent resolutions upon which the Board acted in September 2001. Plaintiffs claim that these new theories are permissible because they involve only new "issues," and do not involve the admission of additional facts.

As a threshold matter, Plaintiffs are wrong when they state that they are only bringing new "issues" to this court, not factual averments that Plaintiffs failed to assert in *Hall I* or submit to the Committee. Most of Plaintiffs section relating to "statement of facts" includes new alleged facts based on documents that Amtrak produced in *Hall I* that Plaintiffs could have included in its *Hall I* summary judgment motion or in its filings before the Committee, but that Plaintiffs, for some reason, decided not to include. Even Plaintiffs do not argue that resolution of the July 2001 is a purely legal issue – if that were the case than Plaintiffs would not have included 74 exhibits to their motion for summary judgment.

For that reason, Defendants were correct to rely upon *Lane v. Director of Employee Benefits, Gannett Co.*, 253 F. Supp. 2d 57 (D. Mass. 2003). In *Lane*, the court held that courts should consider only evidence that was submitted to the plan administrator in their review. The *Lane* court also noted that this appeared to be "the view of all of the circuits that have

pronounced on the issue." *Id.* at 63 n. 6. The public policy reason for not permitting evidence beyond that which is submitted to the administrator "is to 'ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.'" *Id.* at 63 (quoting *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641-42 (8th Cir. 1997)).

Plaintiffs misrepresent the law when they state that courts have "consistently rejected the argument" that claimants are bound only by the evidence that they submit to an administrator and are free to offer new arguments in court. Plaintiffs' Reply at 18. In reality, courts have held expressly that plaintiffs cannot raise new arguments that they failed to make to an administrator. In *Nicula v. First UNUM Life Ins. Co.*, 23 Fed. Appx. 805 (9th Cir. 2001), for example, the Ninth Circuit affirmed a district court's ruling that the plaintiff's failure to argue that he was mentally disabled barred him from making this argument for the first time in district court. Before the administrator, plaintiff had argued only physical disability. Likewise, in *Proctor v. UNUM Life Ins. Co. of Amer.*, 28 Fed. Appx. 600 (8th Cir. 2002), the Eighth Circuit held that the plaintiff's failure during an administrative review to argue a Daubert challenge relating to the testing methods of the plan's doctors precluded her from making the argument for the first time on appeal. Also, in *Stark v. PPM America, Inc.*, 354 F.3d 666, 672 (7th Cir. 2004), the Seventh Circuit rejected the argument that the plaintiff could pursue additional damage theories based on alleged bonuses and violations of statutes (the Illinois Wage Payment and Collection Act) because plaintiff had failed to raise those theories before the administrator.

Although other courts have permitted Plaintiffs to raise new issues, the trend appears to preclude Plaintiffs from making additional arguments. For example, the Ninth Circuit permitted

the claimant to raise new arguments in *Smith v. Retirement Fund Trust of Plumbing, Heating & Piping Ind.*, 857 F.2d 587, 592 (9th Cir. 1988) (a case relied on by Plaintiffs). The same court later affirmed a bar on new arguments in *Nicula*, 23 Fed. Appx. at 805 (2001). A recent decision by a trial court in the Ninth Circuit shows that, under the current state of the law, plaintiffs are precluded from raising issues for the first time in court. *See, e.g. Vaught v. Scottsdale Healthcare Corp. Health Plan*, 2006 WL 173660 (D. Ariz. Jan. 23, 2006) (plaintiffs "cannot raise these substantive arguments 'for the first time in federal court" (quoting *Sims v. Apfel*, 530 U.S. 103 (2000)).

In *DeBartolo v. Blue Cross Blue Shield Illinois*, 375 F. Supp. 2d 710 (N.D. Ill. 2005), the plaintiff – like the Plaintiffs here – came to court attempting to make new arguments that he had failed to make at the administrative level. The court described these new arguments as "too little, too late." *Id.* at 714. The court noted that while the plaintiff was "free to raise these arguments during any of the repeated appeals and reviews of his charges," the fact was that he "chose not to." The court did not permit Plaintiff to "circumvent the administrative process by bringing those arguments instead in federal court." *Id.*

Plaintiffs reliance on *Sims v. Apfel*, 530 U.S. 103 (2000) is unavailing because the Court's reasoning supports Plaintiffs not being able to raise new issues on appeal. In *Sims* a plurality of the Court held that a Social Security claimant could raise new issues on an appeal. Justice O'Conner's concurrence, however, was predicated on the fact that the claim process was presented by the Social Security Agency ("SSA") as a "one page form" that "should take 10 minutes to complete" and that SSA informed claimants in writing that it would review the entire file for issues. *Id.* at 113. Thus, this process is totally different than the ERISA claims process

here where the Committee explicitly informed Plaintiffs, through counsel, that they needed to describe their basis for a claim, and where Plaintiffs, with the assistance of counsel, submitted several detailed and comprehensive letters detailing Plaintiffs' arguments.

Justice Breyer's dissent in *Sims* (joined by three other justices) provides an additional reason why issue exhaustion is appropriate here, but not necessarily for SSA claimants – SSA claimants generally lack lawyers and "[a]dministrative lawyers are normally aware of the basic 'exhaustion of remedies' rules, including the specific waiver principle here at issue." *Id.* at 118. Thus, the fact that Plaintiffs were represented by counsel through the claims process should preclude Plaintiffs from arguing that they were incognizant to basic exhaustion of remedies principles.

In *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 356 F. Supp. 2d 877 (N.D. Ill. 2005), the court held that (1) *Sims* did not apply to ERISA cases; (2) *Sims* did not "question the basic principle that '[i]n most cases, an issue not presented to an administrative decision maker cannot be argued for the first time in federal court;'" and (3) to the extent that *Sims* did apply to ERISA, it precluded plaintiffs raising new issues in court, in part, because plaintiff "was represented during the administrative review proceedings by his own retained counsel." Based on that reasoning, the *Jacobs* Court held that plaintiff could not raise a new estoppel theory at court. Concerning plaintiffs' arguments, the court said:

> Plaintiff asserts that administrative exhaustion is not required, citing only one case – a Supreme Court decision that deals only with Social Security Appeals, *Sims v. Apfel*, 530 U.S. 103 (2000). *Sims* does not purport to speak to ERISA cases; and it also is expressly predicated on the notion that SSA proceedings are not adversarial, as the ALJ-adjudicator is under the duty to develop both side's facts and arguments (*id.* at 110-111). (***In this case, Plaintiff was represented during the administrative review***

> *proceedings by his own retained counsel*.) *Sims* did not question the basic principle that "[i]n most cases, an issue not presented to an administrative decision maker cannot be argued for the first time in federal court." *Id.* at 112 (O'Conner, J. concurring in part and concurring in judgment). Plaintiff has provided no support for his position beyond *Sims*-indeed, Plaintiff states that 'there is case law requiring a Plaintiff to exhaust all issues in the administrative level,' although he does not elaborate on this concession and *Sims* does not support Plaintiff's desired result. More important, this Court's own research (attempting to explore Plaintiff's apparent concession) has uncovered the Seventh Circuit's recent decision in *Stark v. PPM America, Inc.*, 354 F.3d 666 (7th Cir. 2004), which ***affirmed the district court's refusal to review an ERISA claim based on a theory not presented in the administrative proceedings***. *See id.* at 672. ("[Plaintiff] also argues that he is entitled to a bonus. He says the plan mandated a bonus. But his failure to exhaust the plan procedures precludes our consideration of this claim under that theory.") Given all of these factors, the Court finds that Plaintiff has failed to properly exhaust his estoppel claim.

*Jacobs*, 356 F. Supp. at 892-93 (emphasis added).

In this case, this Court should consider neither the additional arguments nor the additional evidence that Plaintiffs have presented to this court for the first time relating to *Hall II*. Plaintiffs have not even offered an explanation to this court as to why Plaintiffs have failed to present these arguments until this time. These arguments are "too little, too late," and Plaintiffs cannot "circumvent the administrative process by bringing [these] arguments instead in federal court."[1] *DeBartolo*, 375 F. Supp. at 714.

---

[1] This Court also has the discretion to remand these new theories by Plaintiffs to the Plan for initial consideration. *See Offut v. Prudential Ins. Co.*, 735 F.2d 948 (5th Cir. 1984) (holding that remand appropriate for new theories); *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388 (5th Cir. 1998) (default rule is that new issue is to be remanded).

B.  The Administrator's Authority Under The Plan – Not the Authority of the Appeals Officer – Is Dispositive Under *Firestone.*

Article X of the Plan names *the Committee* as the "Plan Administrator" and the "Named Fiduciary." *See* § 10.01. Article X also provides *the Committee* with the broad discretionary authority to "to decide any and all matter arising under the Plan" using language that even Plaintiffs concede would be sufficient to warrant abuse of discretion review under *Firestone.*

Plaintiffs try to avoid this standard by changing the subject to Article XV ("Claims Procedure") which provides for an internal claims and appeals process consistent with the regulations of ERISA. Under the ERISA regulations, every plan must "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1). Plaintiffs have not argued that the appeal mechanism employed by the Plan (found in Article XV) does not comply with the statutory guidelines and regulations of ERISA.

Plaintiffs have made up a new argument which appears to have never been made in any published ERISA case – that the discretionary grant of authority required to establish "abuse of discretion" review under *Firestone* applies not just to the Plan's administrator, but to the appeals officer as well. That is not what the Supreme Court held in *Firestone.* The Court held that the "abuse of discretion" standard is appropriate when the plan "gives the *administrator* a fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added). There is no mention of the authority of the mandatory appeals officer in *Firestone* nor in the cases that have interpreted *Firestone. See Boivin v. U.S. Airways*, 446 F.3d 148, 156 n. 9 (D.C. Cir. 2006)

(considering authority of the administrator); *Communication Workers of Amer. v. AT&T*, 40 F.3d 426, 433 (D.C. Cir. 1994) (same); *Doe v. MAMSI Life and Health Ins. Co.*, 2007 WL 188110 (D.C. Cir. Jan 25, 2007) (same); *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452 (D.C. Cir. 1992) (same). There is no mention of the mandatory appeals officer in the cases that are cited by Plaintiffs. *See, e.g. Fitts v. Federal National Mortgage Ass'n*, 236 F.3d 1 (D.C. Cir. 2001) (considering authority of the "administrator" in performing *Firestone* analysis); *Mobley v. Cont'l Cas. Co.*, 383 F. Supp. 2d 80, 85 (D.D.C. 2005) (same).[2]

There are very few cases found that even mention the mandatory appeals officer in conjunction with the court's *Firestone* analysis of the authority of the administrator. In *St. Joseph Hosp. of Marshfield, Inc. v. Carl Klemm, Inc.*, 459 F. Supp. 2d 824, 831 (W.D. Wisc. 2006), however, the court did consider both the authority of the administrator and the role of the appeals officer. There, the court held that it should consider the actions of the Plan's administrator by an "abuse of discretion" standard using a *Firestone* analysis. But the court also found that the appeals process was inadequate under ERISA and required a remand. The inadequacy of the appeals process, however, had no bearing on the court's *Firestone* analysis and determination that "abuse of discretion" was an appropriate standard.

---

[2] To give the impression that Article XV is some ominous section that gives atypical powers to the appeals officer – and not a routine provision necessitated by the ERISA regulations – Plaintiffs use ellipses to remove any reference to the Committee in Article XV when they quote it in their brief. Plaintiffs avers to this Court that § 15.01 of Article XV states that "the decision of ... the designated officer on review ... shall be final and binding on all parties ...." Plaintiffs Mem. at 13. Plaintiffs fail to tell this Court that the text that Plaintiffs omitted with the first ellipse includes the words "Retirement Plan Committee." Thus, § 15.01 states that "the decision of the Retirement Plan Committee (if no review is properly requested) or the decision of the designated officer on review, as the case may be, shall be final and binding on the parties ...." In reality, the majority of Article XV relates to the Committee's claims procedures, and very little text even concerns responsibilities of the claims appeal officer.

In other words, the function or adequacy of the appeals officer and the appeals process has no bearing on the standard by which this Court views the Committee's decision.

### C. *Holt* Has No Bearing Because The Committee Did Not Interpret ERISA

Plaintiffs argue that under the D.C. Circuit's pre-*Firestone* decision of *Holt v. Winpinsger*, 811 F.2d 1532 (D.C. Cir. 1987) this Court should give no deference to the Committee's determinations. The *Holt* Court addressed the statutory definition of employee in the context of ERISA because the plaintiff "challenged the Administrators' position that she was hired as a contractor and not as an 'employee,' *as that term is defined by ERISA*." *Id.* at 1535 (emphasis added). This issue involves "an *interpretation of a statute-ERISA*" and is therefore "a question of law." *Id.* at 1536 (emphasis added). *Holt* held simply that courts owe no deference to an administrator's interpretations of ERISA. *Id.* at 1535-36.

*Holt* did not invite courts to disregard the factual findings of administrators. In this case the Committee made at least three factual determinations from the record that was before it:

- Based on the deposition testimony of Governor Holton and Mr. Carten [the Amtrak Board's assistant corporate secretary], it appears that Governor Holton was not in his office when the faxed consent resolutions and Executive Summary were sent to him on September 14, 2001. However, Governor Holton contacted Mr. Carten, and Governor Holton and Mr. Carten had a telephone conversation on September 14, 2001, during which Mr. Carten reviewed with Governor Holton the Executive Summary and the requested consent resolutions.

- Governor Holton did not personally affix his signature to the consent resolutions which were faxed to him. Rather, after his telephone conversation with Mr. Carten regarding the consent resolutions, Governor Holton instructed Mr. Carten to affix the Governor's signature to the consent. Based on Governor Holton's instructions, Mr. Carten copied and pasted Governor Holton's signature to the consent resolutions and filed this counterpart with

    •    the other counterparts to the consent resolutions on September 14, 2001.

    •    Governor Holton ... understood the context and nature of the change to the July 2001 VERP which was being proposed on September 14, 2001. When questioned about the matter in his deposition, Governor Holton confirmed that he understood the proposed changes to the July 2001 VERP, and he intended to approve the changes proposed on September 14, 2001. Because he was not in a position to fax his signature to the resolutions back to Amtrak on September 14, 2001, he asked Mr. Carten to affix his signature to the resolutions.

*See* Defendants' Motion for Summary Judgment, Exhibit H, Committee's Claim Denial Letter, at pp. 4-5 (Nos. 6-8).

Based on these facts, the Committee concluded that Governor Holton acted to delegate a ministerial function of affixing a signature, but not the discretion of whether or not to approve the September 2001 Board action. That is not a pure question of law, but a determination of fact that is subject to abuse of discretion review.

Plaintiffs' reliance on *Holt* is misplaced for at least two additional reasons. First, *Holt* was decided two years before *Firestone* – a case where the Supreme Court held that the principle inquiry in determining the appropriateness of the "abuse of discretion" standard turned on the grant of authority to the administrator. *Firestone* is the seminal Supreme Court decision on this issue and, since the time that it was issued, the DC Circuit has issued a number of decisions (ignored by Plaintiffs) explaining that *Firestone* provides the appropriate analysis for determining the scope of review. *See, e.g. Boivin v. U.S. Airways*, 446 F.3d 148 (D.C. Cir. 2006); *Communication Workers of Amer. v. AT&T*, 40 F.3d 426 (D.C. Cir. 1994); *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450 (D.C. Cir. 1992). Judge Van Graafeiland in his concurrence in *Block* stated that he agreed with the Fourth, Fifth and Ninth Circuits that *Firestone* affected a change in

the analysis of the standard of review, and suggested that he was inclined to expressly overrule the part of *Holt* that indicated that the standard was "arbitrary and capricious," not "abuse of discretion." The point here is not that *Holt* is bad law, but that, especially post-*Firestone*, it has a very limited holding – when the administrator interprets ERISA this Court owes no deference; otherwise this Court should review for abuse of discretion whenever the administrator has been given the appropriate fiduciary discretion.

Second, this Court already considered this exact issue when it dismissed one of the *Hall I* claims, and forced Plaintiffs to file for an administrative remedy. There, Plaintiffs argued that the very claim that would become *Hall II* was a legal claim only and that, for that reason, exhaustion was not required. This Court held that the Plaintiffs were required to make a claim to the administrator because this was not a case where the administrator was interpreting ERISA. *See* Memorandum Opinion in *Hall I* (dated August 5, 2005) at p. 17 (rejecting Plaintiffs' argument that claim involved "interpretation and application of ERISA"). Defendants respectfully suggest that this Court has already decided any *Holt* issue in this case when it ruled that Plaintiffs could not proceed directly in court with its *Hall II* claim.

        D.      **Plaintiffs Have Created No Genuine Dispute of Material Fact That The Committee or the Appeals Officer Were Conflicted.**

In its Opposition, Plaintiffs suggest that there may be some basis for suggesting a conflict of interest with respect to the decision-making process of the Committee and the appeals officer. The basis for Plaintiffs' insinuation is that Amtrak's Legal Department, through William 'Byl' Herrmann, assisted the Committee in engaging independent outside counsel, Venable LLP ("Venable"), and that Mr. Herrmann, at least according to hand written meeting notes, attended the first portion of the Committee's first meeting with Venable, although those notes also

indicate that Mr. Herrmann left the meeting before the Committee began a substantive analysis of the claim. From this, Plaintiffs argue that their claim was pre-judged and that there is a dispute of material of fact as to whether a conflict of interest exists, precluding this Court's deference to the Committee's adjudication.

These facts do not even come close to creating a dispute of fact as to a conflict of interest, assuming a conflict has any bearing on the standard of review.[3] The fact that the Committee employed an outside legal counsel to assist them in deliberations actually makes it less likely that a court would find that the Committee was conflicted. *See Hamilton v. AIG Life Ins. Co.*, 182 F. Supp. 39 (D.D.C. 2002) ("Not only did AIG seek outside legal opinion on the validity of denying plaintiffs' claim, it did so again during plaintiffs' appeal in order to determine if [additional evidence] removed any basis for denial."). Plaintiffs cite no case holding that it was improper for Amtrak's legal department to assist the Committee in finding legal counsel or in attending part of the first introductory meeting. That is because this type of activity is normal and expected.

E. **Plaintiffs Should Not Be Entitled to Additional Discovery**

Plaintiffs' final argument is one that it explicitly disavowed when it argued to this Court five months ago that it did not need broad, expansive discovery to brief summary judgment in *Hall II* (which Plaintiffs' counsel made when they represented in response to Defendant's

---

[3] This Court has explained that circuits are split as to whether and to what degree, if any, a conflict of interest even affects the ultimate analysis of the standard of review of an administrator's decision. *See Hamilton v. AIG Life Ins. Co.*, 182 F. Supp. 2d 39, 44 n. 3 (D.D.C. 2002); *Hurley v. Life Ins. Co. of North Amer.*, 2006 WL 1883406 (D.D.C. July 9, 2006). The D.C. Circuit has not resolved whether a conflict even impacts the standard of review under *Firestone*. *Id.*

request that this case be stayed until certain threshold issues from *Hall I* were decided). Now Plaintiffs appear to be walking away from that commitment, and stating that it needs exactly the type of discovery that it previously claimed it did not need for summary judgment.

Defendants have produced in discovery exactly the documents that it committed to producing in its Amended Response to Plaintiffs' First Set of Discovery Requests. *See* Exhibit A. These responses were provided to Plaintiffs on November 20, 2006 – offering plenty of time to bring any issues that Plaintiffs had with Defendants' production before this Court. Until it filed its motion on March 15, 2007, Plaintiffs did nothing to have this Court address any discovery issue.

For this reason, Plaintiffs reliance on *Hurley v. Life Ins. Co. of North Amer.*, 2006 WL 1883406 (D.D.C. July 9, 2006) is misplaced. *Hurley* involved a motion to compel discovery, not a motion for summary judgment. Plaintiffs cite to no authority holding that its arguments are in anyway appropriate in a motion for summary judgment and when motions, subject to a pre-set Scheduling Order of this Court, are ripe for summary adjudication.

In the case at bar, Plaintiffs never bothered to file a motion to compel the additional discovery they now seek while the period for discovery was still open. Instead, Plaintiffs waited until they were faced with the Defendants pending Motion for Summary Judgment to spring this argument on Defendants and this Court. As such, Plaintiffs should not be given a second chance to initiate discovery that they simply failed to adequately pursue at the appropriate time.[4] *See*

---

[4] Even if Plaintiffs Opposition to Defendants' Motion for Summary Judgment could somehow be construed as a Motion to Compel, it fails to meet the requirements of Federal Rule of Civil Procedure 37(a)(2) and Local Civil Rules 26.2(d) and 30.4.

*Lacy v. Nat'l R.R. Passenger Corp.*, Civ. No. 90-2540 (JHG), 1991 WL 206228, at *2 n.6 (D.D.C. Sept. 24, 1991) (denying a purported motion to compel discovery within an opposition to summary judgment and refusing to reopen discovery when plaintiff "was provided ample opportunity to investigate her case prior to the . . . termination of discovery").

Plaintiffs similarly failed to meet the requirements of Federal Rule of Civil Procedure 56(f), which provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In other words, when a party believes that it has insufficient information to properly oppose a motion for summary judgment, it must explain in affidavit form its basis. The filing of such an affidavit is "required to preserve the Rule 56(f) contention that disposition of the motion [for summary judgment] should be delayed pending discovery." *Beegle v. Restaurant Mgmt.*, 679 A.2d 480, 487 n.8 (D.C. 1996). Most important, the affidavit must contain a statement of "how discovery would enable [the party] to effectively oppose the summary judgment motion." *McAllister v. Dist. of Columbia*, 653 A.2d 849, 852 (D.C. 1995).

Attached to Plaintiffs' Opposition is a Declaration of Eli Gottesdiener, which simply states that Plaintiffs have not had the opportunity to conduct discovery into certain, specified matters. *See* Declaration ¶ 3. Nowhere in the Declaration is there any mention of how discovery into these matters will enable Plaintiffs to effectively oppose Defendants' Motion for Summary Judgment. *See Potts v. Dist. of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997) (granting defendant's motion for summary judgment when plaintiff's opposition and motion to compel,

filed after the close of discovery, "failed to state how the discovery requested might lead to evidence which would create a triable issue of fact").[5] That is because there is no additional discovery that would help Plaintiffs claim or allow it to survive summary judgment.

That said, even if Plaintiffs had filed a timely motion to compel, Defendants' production was appropriate under *Hurley* and all applicable ERISA regulations. Early in the discovery process, Amtrak agreed to produce additional documents than those produced by Venable and, in response, to this agreement, Amtrak searched and produced all of the responsive e-mails from the relevant custodians (principally the Committee members, Ms. Green, and Mr. Herrmann). Thus, Defendants have produced all of the documents in its custody that involve communications between these various parties.[6] *See* Exhibit B.

---

[5] There is a wealth of authority holding that a party's failure to resolve any disputes in a timely fashion during the discovery period should preclude that party from delaying a decision on a motion for summary judgment on the grounds that they now allegedly need more discovery. *See Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 180, 185 (D.D.C. 1999) (rejecting Plaintiffs' Rule 56(f) argument when Plaintiffs failed to take advantage of the adequate opportunity to discover facts sufficient to raise a genuine issue of material fact sufficient to survive summary judgment); *id.* ("[P]laintiffs . . . have failed to take advantage of discovery available to them to this point." (citing Wright, et al., Fed. Prac. & Proc. § 2741, at 431 (1998) ("[A] request for relief under Rule 56(f) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery.")); *see also Ping v. Kennedy*, 294 F.2d 735, 737 (D.C. Cir. 1961) ("Diligent prosecution of a cause of action which is dependant for success upon discovery demands that the plaintiff seek discovery in preparation of his case and not as a backdoor defense to a test of the merits of his claim."); *Green v. Am. Broadcasting Co., Inc.*, 647 F. Supp. 1359, 1364 (D.D.C. 1986) ("Plaintiff may not invoke the shelter of Rule 56(f) to excuse her own lack of diligence in demonstrating to the Court that there is indeed a genuine issue of fact with respect to [her] claim.").

[6] The one significant area of disagreement between Plaintiffs and Defendants is that Defendants objected to forcing the Committee re-engage Venable to request that the Venable attorneys search for and produce any e-mail communications among Venable lawyers, if any, that Amtrak did not already have in its possession. This type of production is not required under *Hurley* – a case where the court did not require any outside counsel to produce any document. Further, Plaintiffs have known of Defendants' objection to this request since November 20, 2006. (If this Court is interested in reviewing the e-documents that Defendants produced in discovery, Defendants have included them as Exhibit B.)

In sum, Plaintiffs arguments for additional discovery are (i) not properly before this Court; (ii) untimely; and (iii) wrong on the merits.

### III.   CONCLUSION

For these reasons and the reasons previously states in its motion, Defendants request that this Court deny Plaintiffs' Motion for Partial Summary Judgment and grant Defendants' Motion for Summary Judgment.

Respectfully submitted,

_____
John R. Wellschlager
Robert A. Gaumont
(Admitted *Pro Hac Vice*)
DLA PIPER US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

Mark Muedeking
D.C. Bar No. 387812
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C.  20036-2412
Telephone (202) 861-3900
Facsimile (202) 223-2085

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2d day of April 2007, copies of the Defendants' Reply in Support of Motion for Summary were electronically filed to:

>Eli Gottesdiener, Esquire
>Gottesdiener Law Firm
>498 7th Street
>Brooklyn, New York
>
>*Attorney for Plaintiffs*

_____
Robert A. Gaumont