**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
————————————————————————      )
WADE F. HALL, et al.,_____ )
                              )
          Plaintiffs,         )
                              )     Civil Action No. 03-1764 (GK)
     v.                       )
                              )
NATIONAL RAILROAD PASSENGER   )
CORPORATION, et al.,          )
                              )
          Defendants.         )
————————————————————————      )
                              )
WADE F. HALL, et al.,         )
                              )
          Plaintiffs,         )
                              )
     v.                       )     Civil Action No. 06-1539 (GK)
                              )
RETIREMENT INCOME PLAN FOR    )
EMPLOYEES OF NATIONAL         )
RAILROAD PASSENGER            )
CORPORATION, et al.,          )
                              )
          Defendants.         )
————————————————————————      )
```

## MEMORANDUM OPINION

Plaintiffs Wade F. Hall, Hattie N. McCoy-Kemp, and Victoria F. Staton are former employees of the National Railroad Passenger Corporation ("Amtrak") and participants in Amtrak's Retirement Income Plan for Employees of the National Railroad Passenger Corporation ("Retirement Plan" or "Pension Plan"). They are also current or former participants in Amtrak's Retirement Savings Plan

("Savings Plan").[1]  They bring these actions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., on behalf of themselves and others similarly situated.

In Case No. 03-1764 ("Hall I"), Plaintiffs allege that Defendants illegally cut back a Retirement Plan benefit in violation of ERISA § 404(a), 29 U.S.C. § 1104(a) (Count I) and ERISA's Anti-Cutback Rule, ERISA § 204(g), 29 U.S.C. § 1054(g) (Count II).  Plaintiffs also claim that Defendants breached their fiduciary duties by failing to adequately appoint, monitor, and/or remove  members of the Committees for the Retirement and Savings Plans (Count III).  On August 5, 2005, the Court dismissed Count I for failure to exhaust administrative remedies.

After exhausting their administrative remedies, Plaintiffs refiled Hall I's Count I in Case No. 06-1539 ("Hall II").  In Hall II, Plaintiffs also allege that Defendants failed to disclose all relevant documents and records during the administrative process, as required by applicable regulations (Count II).

Defendants in Hall I are (1) Amtrak, (2) the Retirement Plan Committee, (3) Warren Reisig, William Herrmann, and Gordon Hutchinson (current Members of the Retirement Plan Committee), (4) the Savings Plan Committee, (5) John Does ##4-10 (unnamed

---

[1] The Retirement Plan and Savings Plan are collectively referred to herein as "the Plans."

current or former Members of either or both Committees),[2] (6) David
L. Gunn, former President and Chief Executive Officer ("CEO") of
Amtrak from 2002 to 2005 and a Member of Amtrak's Board of
Directors, and (7) George D. Warrington, President and CEO of
Amtrak from 1998 until 2002 (collectively the "Hall I
Defendants").[3]    The named Defendants in Hall II are (1) the
Retirement Plan, (2) Amtrak, and (3) the Retirement Plan Committee
(collectively the "Hall II Defendants").

This matter is before the Court on the following motions in
Hall I: Plaintiffs' Motion for Summary Judgment Under Count II
[Dkt. No. 65]; Plaintiffs' Amended Motion to Certify Class and
Appoint Class Counsel [Dkt. No. 78]; and the Hall I Defendants'
Motion for Summary Judgment [Dkt. No. 85]; and the following
Motions in Hall II: Plaintiffs' Motion for Partial Summary Judgment
on Count I [Dkt No. 20] and the Hall II Defendants' Motion for
Summary Judgment [Dkt. No. 22]. Upon consideration of the Motions,
Oppositions, Replies, Surreplies, the parties' supplemental filings
of June 28, 2004, and the entire record herein, and for the reasons

---

[2] John Does ##1-3 have been replaced in the Second Amended
Complaint ("Sec. Am. Compl.") with named Defendants Warren Reisig,
William Herrmann, and Gordon Hutchinson.

[3] On March 1, 2004, Plaintiffs voluntarily dismissed without
prejudice the following current and former Members of Amtrak's
Board of Directors as Defendants: (1) Jane Does ##1-10, (2) Sylvia
A. DeLeon, (3) David M. Laney, (4) Norman Y. Mineta, (5) Tommy G.
Thompson, (6) Michael S. Dukakis, (7) A. Linwood Holton, Jr. and,
(8) Amy S. Rosen. See Pls.' Opp'n to Individual Defs.' Mot. to
Dismiss Pls.' First Am. Compl. at 2, n.1.

stated below, Plaintiffs' Motion for Summary Judgment on Count II in Hall I [Dkt. No. 65] is **denied**; Plaintiffs' Amended Motion to Certify Class and Appoint Class Counsel in Hall I [Dkt. No. 78] is **denied as moot**; Defendants' Motion for Summary Judgment in Hall I [Dkt. No. 85] is **granted** as to Count II and **denied** as to Count III; Plaintiff's Motion for Partial Summary Judgment on Count I in Hall II [Dkt. No. 20] is **denied**; and Defendants' Motion for Summary Judgment in Hall II [Dkt. No. 22] is **granted** as to Count I and **denied** as to Count II.

## I.    BACKGROUND

### A.    Factual History[4]

Amtrak is the sponsor of the Retirement Income Plan for Employees of the National Railroad Passenger Corporation, a pension plan governed by ERISA. The Retirement Plan is a non-contributory defined benefit retirement plan covering certain nonunion and certain union Amtrak employees. See Hall I Compl., Ex. 1 (Retirement Income Plan for Employees of National Railroad Passenger Corporation ("Plan")).

The Retirement Plan can be amended only through action taken by the Board of Directors. See Plan § 13.01. Specifically,

---

[4] Unless otherwise noted, the facts set forth herein are drawn from Plaintiffs' Second Amended Complaint or from the Amtrak Retirement Plan Committee's findings of fact concerning Count I in Hall II, Hall II Defs.' Mot. for Summ. J., Ex. H (Retirement Plan Committee's Claim Denial Letter, Jan. 23, 2006) ("Claim Denial Letter").

Article XIII of the Retirement Plan, titled "Amendment to or Termination of the Plan," provides in Section 13.01 that "[Amtrak] reserves the right at any time and from time to time and retroactively if deemed necessary or appropriate, by action of its Board, to modify or amend the Plan in whole or in part." Id.

### 1.    The July 26, 2001 Voluntary Early Retirement Plan ("July VERP")

Plaintiffs allege that, as part of a company-wide downsizing, Amtrak's management prepared a proposed amendment to Amtrak's existing Retirement Plan to include a Voluntary Early Retirement Plan ("VERP") featuring a monthly supplement (referred to herein as the "Railroad Retirement Supplement" or the "Supplement"). See Hall II Sec. Am. Compl. ¶¶ 30, 31, 45. On July 26, 2001, Amtrak's management presented the proposed VERP to the Amtrak Board of Directors (the "Board"). The proposed VERP stated:

> Any management employee 55 years of age or older with 10 or more years of Amtrak service who files retirement papers between September 15 and October 31, 2001 will receive the following retirement package:
>
> (1) Five years of age added to pension formula; and
>
> (2) A monthly supplement (equal to railroad retirement annuity) payable until employee is able to commence unreduced railroad retirement annuity benefits.

Id. ¶ 34 (quoting Sec. Am. Compl., Ex. 3 at 2) (emphasis added). Under the proposal, employees who retired early would receive a monthly supplement equal to what they would later receive as a

-5-

railroad retirement annuity from the Railroad Retirement Board.[5]
Id. ¶ 35. The supplement would cease once the employee began to
receive his or her railroad retirement annuity. Id. The July 26,
2001 VERP was to be funded entirely out of the assets of the
Retirement Plan. Id. ¶ 34 (internal citation omitted). Management
informed the Board that "[t]he anticipated total cost of the Early
Retirement Plan option [to the Plan] is $9.0-$12 million." Id.
(internal quotation marks omitted).

In advance of the July 26, 2001 Board meeting, and in keeping
with customary practice, individual directors were each sent a
briefing book or binder with materials relevant to the upcoming
meeting. In this instance, the directors were supplied with
descriptions of the "Voluntary Early Retirement Program,"
"Voluntary Separation Program," "Involuntary Separation Program,"
and "Severance Packages." Hall I Pls.' Mot. for Summ. J., Ex. I.
Among the information disclosed regarding the program was the
"Design": "Employee receives an additional 5 years of age to
pension formula – Employee is provided a monthly supplement equal
to railroad retirement annuity until employee is able to commence
full benefit with railroad retirement with no reductions for early
retirement." Id.

---

[5]     The United States Railroad Retirement Board is an
independent federal agency that manages the provision of retirement
and other benefits under the Railroad Retirement System as
authorized by Congress, most recently pursuant to the Railroad
Retirement Act of 1974, 45 U.S.C. §§ 231 et seq.

The signed minutes of the July 26, 2001 Board meeting reflect that the Board unanimously voted in favor of the proposed VERP, as well as a severance plan not relevant to this case.  The Board resolved as follows:

> WHEREAS, Management has presented to the Board an organizational restructuring plan for the Corporation; and
>
> WHEREAS, This restructuring plan will result in the consolidation and elimination of a number of positions within the Corporation's management workforce; and
>
> WHEREAS, Management believes that it is preferable to encourage employees who might be affected by the organizational restructuring to voluntarily leave Amtrak through programs that provide a transition to other employment; and
>
> WHEREAS, Management has set forth in the attached Executive Summary the terms of three proposed employee separation/severance plans: a Voluntary Separation Plan, an Early Retirement Plan, and an Involuntary Separation Plan; therefore, be it
>
> RESOLVED, That the three employee separation/ severance plans described in the attached Executive Summary are authorized and approved; and
>
> FURTHER RESOLVED, That the President and Chief Executive Officer is authorized to take all necessary steps to implement the three separation/severance plans described in the attached Executive Summary.

Hall I Compl., Ex. 2.  The parties vigorously dispute whether this resolution constituted an amendment to the Plan.

According to Plaintiffs, "[i]mmediately upon receiving the Board's July 26, 2001 approval, management announced the VERP with great fanfare and began a several weeks long campaign to induce employees to take it and retire.  Over the course of the ensuing

-7-

weeks, eligible employees were repeatedly told about the VERP's terms in great detail--including the specific terms of the Railroad Retirement Supplement--and were affirmatively led to believe that this was a promise they could rely upon." <u>Hall I</u> Sec. Am. Compl. ¶ 46.

### 2.  The September 14, 2001 VERP ("September VERP")

Plaintiffs allege that "[b]y early September 2001, Amtrak management realized that far more employees than [it] had originally predicted were intending to elect the VERP.  While management believed that this number of elections would not place the Pension Plan in an underfunded status, it might shorten the 'contribution holiday' that Amtrak enjoyed because of the Pension Plan's overfunding." <u>Id.</u> ¶ 52.  Because of its concern, on September 14, 2001, management asked the Board "to amend the Plan to eliminate the promised monthly Railroad Retirement Supplement and replace it with a far less valuable lump sum payment of $15,000." <u>Id.</u> ¶ 54.  Plaintiffs allege that management made this request "either unaware or heedless that [it was] proposing that the Company violate ERISA's anti-cutback rule, [ERISA Section 204(g), 29 U.S.C. § 1054(g)[6]]." <u>Id.</u>

_____

[6] ERISA Section 204(g), ERISA's Anti-Cutback Rule, states, in relevant part that:

> The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.

Plaintiffs maintain that, "[a]s part of the proposed new amendment to the Plan, management also explicitly asked the Board to require employees accepting the reduced VERP to sign a release as a condition to their participation in the reduced VERP." Id. at ¶ 56. To explain and support this request, management presented the Board with an Executive Summary pertaining to the July 26, 2001 VERP and the proposed new amendment, which explained that

> if Management proceeded with the plan as originally formulated, the surplus in the Fund would be depleted and the company would be required to make a significant contribution to the Fund as early as 2003. According to the actuary, as a result of a combination of market conditions, additional accrued liabilities and withdrawals, the forecasted surplus in the Fund has declined from approximately $42 million in December 2000 to $18.6 million on August 31, 2001. While Management expects the Fund to continue to grow over the long term, it has nevertheless determined that it would be prudent to offer a more modest VERP than originally envisioned and maintain a surplus in the Fund. <u>Consequently, Management proposes to eliminate the second component of the plan, the more costly Railroad Retirement supplement, and instead offer a one-time lump sum payment of $15,000.</u>

Id. (quoting Compl. Ex. 11) (emphasis added).

Management intended to present the amendment at the Board's regularly scheduled September 12, 2001 meeting. However, this meeting was cancelled due to the September 11th terrorist attacks. Instead, on September 14, 2001, management submitted the new amendment to the members of the Board for approval by unanimous written consent. Most directors received faxed copies of the

---

29 U.S.C. § 1054(g)(1).

proposed resolutions and an executive summary of the proposed amendment.[7] These directors signed the resolutions and faxed them back. One director, A. Linwood Holton, a former Governor of Virginia, did not receive a faxed copy of the resolutions and executive summary. Governor Holton preferred not to communicate by facsimile and had worked out an alternate system with Amtrak management whereby Assistant Corporate Secretary John Carten would sign documents, including unanimous written consents, on Holton's behalf. This procedure was followed on September 14. Carten called Governor Holton and provided a verbal summary of the proposed amendment. Governor Holton then authorized Carten to sign the unanimous written consent on his behalf, which Carten did by affixing a copy of Governor Holton's signature to the document.

Plaintiffs allege that "the Board never adopted the [September 14, 2001] proposed resolutions in a manner consistent with the Company's governing statutes, articles of incorporation, by-laws, the terms of the Plan and/or ERISA." Id. ¶ 58. Therefore, according to Plaintiffs, "the original version of the VERP, complete with the Railroad Retirement Supplement as defined by the Board on July 26, 2001, remained and remains today a part of the Pension Plan." Id. Plaintiffs allege, however, that, "[s]ince

---

[7] Plaintiffs also allege in their Motion for Summary Judgment in Hall II that directors George Warrington and Norman Mineta did not properly approve the resolutions. Because these claims were not raised before Amtrak's Retirement Plan Committee during the administrative review process, they are waived. See infra at 19.

September 14, 2001 and continuing until today," Defendants have administered the Retirement Plan as if it had been validly amended on September 14, 2001 to eliminate the monthly Railroad Retirement Supplement. Id. ¶ 59.

Based on these facts, Plaintiffs claim that the Retirement Plan Committee "violated, among other fiduciary provisions of ERISA, ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)[,] by administering the Pension Plan in accordance with the September 14, 2001 Amendment which was and is not 'consistent with the provisions of [Title I of ERISA]' and in fact violates ERISA, specifically violating the anti-cutback provisions of ERISA § 204(g), 29 U.S.C. § 1054(g)." Id. ¶ 62. In addition, they maintain that the Retirement Plan Committee "also violated ERISA § 404(a)(1)(A)-(a)(1)(B), 29 U.S.C. § 1104(a)(1)(A)-(a)(1)(B), by preventing participants from electing the original VERP during the September 15, 2001 - October 31, 2001 window and/or causing participants to believe that they could not elect the original VERP during that window when in fact the original VERP, as adopted by the Board on July 26, 2001, gave participants that right and the September 14, 2001 amendment was a legal nullity that could not affect the availability, as a matter of law, of the original VERP." Id. ¶ 63.

Approximately 75 eligible employees accepted the September 14, 2001 VERP. See id. ¶ 68. Approximately 300 eligible employees declined to accept it. See id. ¶ 76. No eligible employees were

able to accept the July VERP because the window for electing it occurred after the September VERP was approved by the Board of Directors.

   **B.   Procedural History**

   In August 2003, Plaintiffs filed <u>Hall I</u>.  On January 5, 2004, Plaintiffs filed their First Amended Complaint, and on December 1, 2004, they filed their Second Amended Complaint.  In Count I of the Second Amended Complaint, Plaintiffs allege that the Amtrak Board of Directors never properly approved the September 14, 2001 amendments to the VERP and that the provisions of the July VERP remain in force to this day.  On August 5, 2005, the Court granted Defendants' Motion to Dismiss Count I of the Second Amended Complaint for failure to exhaust administrative remedies under Amtrak's Retirement Plan.

   In Count II of the Second Amended Complaint, Plaintiffs allege that the Board's September 14, 2001 action to eliminate the Supplement violated ERISA's Anti-Cutback Rule, ERISA Section 204(g), 29 U.S.C. § 1054(g), "because it was 'a plan amendment which ha[d] the effect of (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy . . . with respect to benefits attributable to service before the amendment.'" Sec. Am. Compl. ¶ 87 (quoting 29 U.S.C. § 1054(g)).

   In Count III, Plaintiffs claim that "[b]y failing to appoint, monitor, make appropriate disclosure to, and/or remove Plan

Committee Members, or those acting in their place with or without authority to do so, . . . Amtrak's current and former Presidents breached their strict ERISA fiduciary and co-fiduciary duties in violation of ERISA § 404(a), 29 U.S.C. § 1104(a), and ERISA § 405(a), 29 U.S.C. § 1105(a)." Id. ¶ 93.

Five fully briefed motions are currently pending before the Court. On March 21, 2005, Plaintiffs filed a Motion for Class Certification as to all Counts of the Second Amended Complaint in Hall I. After notifying the Court that they voluntarily dismissed the Plan-wide aspects of Count III, Plaintiffs filed an Amended Motion to Certify Class and Appoint Class Counsel [Dkt. No. 78]. Thus, Plaintiffs now seek certification of a class that is limited to Count II of the Second Amended Complaint in Hall I.

The parties have also filed cross-motions for summary judgment in Hall I. Plaintiffs filed a Motion for Summary Judgment as to Count II [Dkt. No. 65]. Defendants' Motion for Summary Judgment [Dkt. No. 85] seeks summary judgment as to Counts II and III.

On August 31, 2006, Plaintiffs filed Hall II, in which they renew their Count I allegations from Hall I and claim they have exhausted their administrative remedies. Additionally, Count II of Hall II alleges that Defendants failed to disclose to Plaintiffs "copies of, all documents, records, and other information relevant to [Plaintiffs'] claim for benefits," as required by 29 C.F.R. § 52560.503-1(h)(2)(iii) during the course of the administrative

review process.    Hall II Compl. ¶ 71 (quoting 29 C.F.R. §
52560.503-1(h)(2)(iii)).

In light of the interrelation of the claims and pending
motions in Hall I and Hall II, the Court consolidated the cases
pursuant to Federal Rule of Civil Procedure 42(a) on August 23,
2007.

In Hall II, the parties have again filed cross-motions for
summary judgment.  Plaintiffs filed a Motion for Summary Judgment
on Count I [Dkt. No. 20].  The Hall II Defendants filed a Motion
for Summary Judgment [Dkt. No. 22] that only addresses Count I.

## II.  STANDARD OF REVIEW

Summary judgment may be granted "only if" the pleadings, the
discovery and disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law.  See Fed.
R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United
States, 473 F.3d 329, 333 (D.C. Cir. 2006).  In other words, the
moving party must satisfy two requirements: first, demonstrate that
there is no "genuine" factual dispute and, second, that if there is
it is "material" to the case.  "A dispute over a material fact is
'genuine' if 'the evidence is such that a reasonable jury could
return a verdict for the non-moving party.'" Arrington, (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact
is "material" if it might affect the outcome of the case under the

substantive governing law.  Liberty Lobby, 477 U.S. at 248.

    In its most recent discussion of summary judgment, in Scott v.

Harris, __ U.S. __, 127 S. Ct. 1769, 1776 (2007), the Supreme Court

said,

> [a]s we have emphasized, "[w]hen the moving party has
> carried its burden under Rule 56(c), its opponent must do
> more than simply show that there is some metaphysical
> doubt as to the material facts. . . .  Where the record
> taken as a whole could not lead a rational trier of fact
> to find for the nonmoving party, there is no 'genuine
> issue for trial.'"  Matsushita Elec. Industrial Co. v.
> Zenith Radio Corp., 475 U.S. 574, 586-87 . . . (1986)
> (footnote omitted).   "[T]he mere existence of *some*
> alleged factual dispute between the parties will not
> defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no *genuine*
> issue of *material* fact."  Liberty Lobby, 477 U.S. at 247-
> 48.

    However, the Supreme Court has also consistently emphasized

that "at the summary judgment stage, the judge's function is

not...to weigh the evidence and determine the truth of the matter,

but to determine whether there is a genuine issue for trial."

Liberty Lobby, 477 U.S. at 248, 249.  In both Liberty Lobby and

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150

(2000), the Supreme Court cautioned that "[c]redibility

determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts, are jury functions, not those

of a judge" deciding a motion for summary judgment.  Liberty Lobby,

477 U.S. at 255.  In assessing a motion for summary judgment and

reviewing the evidence the parties claim they will present, "the

Court must draw all reasonable inferences in favor of the non-

-15-

moving party." <u>Reeves</u>, 530 U.S. at 150.  "To survive a motion for summary judgment, the party bearing the burden of proof at trial...must provide evidence showing that there is a triable issue as to an element essential to that party's claim.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)."  <u>Arrington</u>, 473 F.3d at 335.[8]

## III. ANALYSIS

**A.  The Retirement Plan Committee Did Not Abuse Its Discretion in Finding that the Amtrak Board Properly Approved the September 14, 2001 Amendments to the VERP; Consequently, Plaintiffs' Motion for Partial Summary Judgment on Count I of <u>Hall II</u> Is Denied and Defendants' Motion for Summary Judgment on Count I of <u>Hall II</u> Is Granted**

Count I of <u>Hall I</u> was dismissed by the Court on August 5, 2005 for failure to exhaust administrative remedies.  The Court held that "resolution of Plaintiffs' Count I claims turns on whether Amtrak's Board validly amended the Retirement Plan on September 14, 2001 in accordance with the D.C. Business Corporation Act, D.C. Code § 29-101.136 ("Requirements of action without meeting") and the Plan's own Bylaws, Section 4.12 ("Unanimous Written Consent")." <u>Hall v. Nat'l R.R. Passenger Corp.</u>, No. 03-1746, 2005 WL 3276353, at *7 (D.D.C. Aug. 5, 2005).  Because resolution of these claims rested "on the interpretation and application of the Retirement

---

[8] It should be noted that a non-movant's affidavit may suffice to defeat a summary judgment motion if the parties' sworn statements are materially different.  <u>Greene v. Dalton</u>, 164 F.3d 671, 674-75 (D.C. Cir. 1999); <u>Arrington</u>, 473 F.3d at 337.

Plan and its Bylaws," the Court concluded that Plaintiffs failed, in Count I of Hall I, to exhaust their administrative remedies under the Retirement Plan.  Id.

Plaintiffs then proceeded to raise the claims contained in Count I before Amtrak's Retirement Plan Committee.  After review, the Committee denied the claim, and Plaintiffs appealed that determination to Amtrak's designated appeals officer, Lorraine Green, Amtrak's Vice President for Human Resources.  Green also denied Plaintiffs' claim.  Plaintiffs then filed their complaint in Hall II on August 31, 2006.

In Hall II, Plaintiffs once again argue that Amtrak's Board of Directors failed to validly approve the September 2001 amendment of the VERP by unanimous written consent.  This is true, according to Plaintiffs, because three of the seven members of Amtrak's Board did not sign the written consent that was required to be unanimous. Plaintiffs argue that George Warrington, then Amtrak's President and a non-voting member of the Board of Directors, never signed the unanimous written consent.  Another Board member, Secretary of Transportation Norman Mineta, also did not sign the unanimous written consent, which was instead signed by Michael Jackson, a government official who often represented Secretary Mineta at Board meetings.  Finally, Plaintiffs argue that A. Linwood Holton, a former Governor of Virginia, did not physically sign the unanimous written consent, but instead authorized Amtrak Assistant Corporate

Secretary John Carten to sign on his behalf.

Courts review administrative decisions concerning ERISA claims for abuse of discretion when a company's retirement plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under this standard, the plan administrator's decision will be upheld if it is a reasonable one. Block v. Pitney Bowes Inc., 952 F.2d 1450, 1452-54 (D.C. Cir. 1992). To enable the reviewing court to determine if an abuse of discretion occurred, "it is important for the plan to provide a final, fully considered, and reasoned explanation for the court to evaluate." Communications Workers of Am. v. AT&T, 40 F.3d 426, 433 (D.C. Cir. 1994). A plan administrator's determination will be upheld "so long as it is reasonably supported by the administrative record." Mobley v. Cont'l Cas. Co., 405 F. Supp. 2d 42, 48 (D.D.C. 2005).

Amtrak's Retirement Plan gives the Retirement Plan Committee power "[t]o construe and interpret the Plan, correct defects, make factual determinations, and to decide any and all matters arising under the Plan, including the right to remedy possible ambiguities, inconsistencies, or omissions." Plan § 10.03(i) (emphasis added). Because Amtrak's Plan gives the Retirement Plan Committee discretionary authority "to decide any and all matters arising

-18-

under the Plan," the abuse of discretion standard applies.[9]

    As an initial matter, Plaintiffs' arguments regarding Warrington and Mineta were never presented to the Retirement Plan Committee during the administrative review process.  Accordingly, those arguments are waived.  See United Transp. Union v. Surface Transp. Bd., 114 F.3d 1242, 1244 (D.C. Cir. 1997) ("claims not presented to the agency may not be made for the first time to a reviewing court"); Block, 952 F.2d at 1455 ("Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum.").

    Thus, only the Amtrak Retirement Plan Committee's rejection of Plaintiffs' claim regarding Governor Holton's approval of the unanimous written consent is properly before the Court.  The record reflects that the Committee carefully considered Plaintiffs' administrative claim.  To assist in its consideration of the claim,

_____

    [9] Plaintiffs argue, based on Holt v. Winpisinger, 811 F.2d 1532, 1536 (D.C. Cir. 1987), that the Committee's findings should be subject to de novo review.  Holt held that a plan administrator's determinations of questions of law, including interpretations of ERISA, are not entitled to deference and will be overturned if erroneous.  Id.  However, courts will "uphold factual determinations...when they rest on substantial record evidence and are not arbitrary."  Id. at 1535-36.  In this case, the critical issue is whether Governor Holton approved the September 14, 2001 amendments to the VERP--a question of fact concerning which the Retirement Plan Committee's findings are entitled to substantial deference under Holt.  Moreover, Holt was decided prior to the Supreme Court's decision in Firestone, which clarified the appropriate standard of review that has subsequently been applied in this Circuit.  See, e.g., Communications Workers, 40 F.3d at 433.

the Committee engaged the law firm of Venable LLP as outside independent counsel. Venable advised the Committee on its fiduciary duties under the Plan as well as provided advice and analysis concerning the claim.

The Committee first met to begin considering Plaintiffs' claim on October 25, 2005. On December 8, 2005, Venable provided a memorandum to the Committee that summarized and analyzed the claim. The Committee met again on December 14, 2005, at which time it made certain factual findings, including that "the version of the Amtrak Voluntary Retirement Plan ("VERP") which was approved by the Amtrak Board of Directors on September 14, 2001, was the operative version of the VERP which was made available to eligible Amtrak Employees, including the Claimants, during the election window commencing on September 14, 2001 and ending on October 31, 2001." Hall II Defs.' Mot. for Summ. J., Ex. F (Minutes of the Dec. 14, 2005 Special Meeting of the Amtrak Retirement Plan Committee). Accordingly, the Committee denied Plaintiffs' administrative claim. Id.

On January 20, 2006, the Committee met again by telephone and instructed Venable to inform Plaintiffs of the Committee's determination by letter. On January 23, 2006, the Committee sent its official determination notice to Plaintiffs in the form of an eight-page single-spaced letter. The letter contained specific findings of fact concerning Plaintiffs' administrative claim. The Committee found that, with the exception of Governor Holton, each

-20-

member of the Amtrak Board of Directors signed the unanimous written consent approving the September 14, 2001 amendments to the VERP.

With regard to Governor Holton, the Committee made the following specific findings of fact:

(6) Based on the deposition testimony of Governor Holton and Mr. Carten, it appears that Governor Holton was not in his office when the faxed consent resolutions and Executive Summary were sent to him on September 14, 2001. However, Governor Holton contacted Mr. Carten, and Governor Holton and Mr. Carten had a telephone conversation on September 14, 2001, during which Mr. Carten reviewed with Governor Holton the Executive Summary and the requested consent resolutions.

(7) Governor Holton did not personally affix his signature to the consent resolutions which were faxed to him. Rather, after his telephone conversation with Mr. Carten regarding the consent resolutions, Governor Holton instructed Mr. Carten to affix the Governor's signature to the consent. Based on Governor Holton's instruction, Mr. Carten copied and pasted Governor Holton's signature to the consent resolutions and filed this counterpart with the other counterparts to the consent resolutions on September 14, 2001.

Claim Denial Letter at 4. The Committee further found that Governor Holton understood the proposed changes to the VERP and intended to approve those changes. Id.

As a result, the Committee determined "that the VERP as approved by Amtrak's Board on September 14, 2001 was the effective, final and operative version of the VERP." Id. at 5. Furthermore, the Committee found that "because Governor Holton fully intended to manifest his agreement in writing, the Governor's instruction to Mr. Carten to affix the Governor's signature to the consent was no

-21-

more than the delegation of a ministerial act to Mr. Carten."  Id.
"Therefore, the Committee believes that the Board action of
September 14, 2001 was effective to approve the September 2001
VERP."  Id.

On February 9, 2006, Plaintiffs appealed this determination by
the Committee to Lorraine Green, Amtrak's Vice President of Human
Resources and the designated Plan appeal officer.  Green denied
Plaintiffs' appeal on July 14, 2006 in a detailed thirteen-page
single-spaced letter.

The Court concludes that the Retirement Plan Committee's
findings are reasonable and do not constitute an abuse of
discretion.  The Committee's findings of fact are fully supported
by the administrative record.  Indeed, Plaintiffs do not contest
the Committee's core factual findings,[10] but rather question the
extent to which Governor Holton understood the nature and magnitude
of the September 14, 2001 amendments to the VERP.  See Pls.' Mot.
for Partial Summ. J. at 6-7.

This challenge to the Committee's factual findings must be
rejected under the governing abuse of discretion standard of
review.  Under that standard, a plan administrator may "reach a
conclusion that may technically be incorrect so long as it is
reasonably supported by the administrative record."  Mobley, 405 F.

---

[10] Plaintiffs do not contest the Committee's findings that
Governor Holton authorized Carten to affix his signature to the
unanimous written consent resolutions.

Supp. 2d at 48. "Put another way, if the...evidence is close and supports both conclusions, then judicial deference would support the plan administrator's decision." <u>Id.</u> In this case, there is no evidence to the contrary, as Governor Holton's deposition demonstrated. <u>See</u>, <u>e.g.</u>, <u>Hall II</u> Pls.' Mot. for Summ. J., Ex. 57 (Dep. of Gov. Holton, Nov. 19, 2004, at 127-29). The Committee's finding that Governor Holton understood and approved the September 2001 VERP amendments, which is supported by the administrative record, is therefore entitled to deference.

Moreover, the Committee's conclusion that a corporate director may delegate the purely ministerial task of affixing his or her signature to a unanimous written consent document is supported by applicable law.

The Retirement Plan provides for amendments to the Plan "by action of [the] Board." Plan § 13.01. The determination of whether the Board has acted is governed by the District of Columbia Business Corporation Act, D.C. Code § 29-101.01 <u>et seq.</u> ("DCBCA"), to the extent not inconsistent with the Rail Passenger Service Act of 1970. 49 U.S.C. § 24301(e). The DCBCA provides that "[t]he act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors." D.C. Code § 29-101.36. The DCBCA also permits action by the Board without requiring a physical meeting, if the approval is in writing and is unanimous. "Any action required or permitted to be taken at

a meeting...of the board of directors...may be taken without a meeting if a consent in writing setting forth the action so taken shall be signed...by all of the members of the board." D.C. Code § 29-101.136.

Plaintiffs point to no authority other than an unpublished decision of the Delaware Court of Chancery, <u>Tansey v. Trade Show News Networks, Inc.</u>, 2001 WL 1526306, at *4 (Del. Ch. Nov. 27, 2001), for their proposition that the purely ministerial act of signing a unanimous written consent cannot be delegated under District of Columbia law. This case provides little support for their position, however, as its facts are distinguishable. The unanimous written consent in <u>Tansey</u> was not signed by one director, and there is no indication from the opinion that this director ever approved of the action in question.

Here, by contrast, the Retirement Plan Committee found that Governor Holton personally approved the September 2001 VERP amendment and authorized that his signature be affixed to the unanimous written consent during the course of a telephone conversation with Assistant Corporate Secretary John Carten.

Although the Court has been unable to find any case law interpreting the specific provisions of D.C. Code § 29-101.136, the District of Columbia Court of Appeals' decision in <u>District of Columbia v. White</u>, 435 A.2d 1055 (D.C. 1981), provides useful guidance. <u>White</u> involved application of former D.C. Code § 31-102,

which prohibited the dismissal of school employees by the Board of Education, "except upon the written recommendation of the superintendent of schools." 435 A.2d at 1056 (quoting former D.C. Code § 31-102). The Superintendent instructed a subordinate to draft a letter recommending the plaintiff's dismissal, which was later approved by the Board of Education. Id. The court found that the Superintendent's delegation of the letter-writing task did not contravene the statute "because the Superintendent did not delegate his decision-making function" but instead "instructed his Director of Personnel to perform the ministerial function of preparing the dismissal letter to effectuate a decision he already had made." Id. at 1057. See also Fowel v. Cont'l Life Ins. Co., 55 A.2d 205, 206-07 (D.C. 1947) ("While, in general, the president of a corporation may not, unless authorized, delegate to a subagent functions involving the exercise of discretion, it is fundamental that he may delegate the doing of mere ministerial acts.").

Here, the Committee found that Governor Holton retained his discretionary, decision-making power to approve the resolutions amending the VERP and delegated only the purely ministerial function of affixing a facsimile of his signature to the document. Accordingly, the Retirement Plan Committee's determination that the Amtrak Board of Directors properly approved the September 14, 2001 amendments to the VERP by unanimous written consent is reasonable, supported by the record, and does not constitute an abuse of

-25-

discretion.[11]

     Accordingly, Plaintiffs' Motion for Partial Summary Judgment on Count I of <u>Hall II</u> is **denied**, and Defendants' Motion for Summary Judgment on Count I of <u>Hall II</u> is **granted**.[12]

     **B.   Regardless of Whether Amtrak's Board Validly Approved the July 2001 VERP, the Replacement of Its Railroad Retirement Supplement with a Less Valuable Lump Sum Payment Did Not Violate ERISA's Anti-Cutback Rule; Consequently, Plaintiffs' Motion for Partial Summary Judgment on Count II of <u>Hall I</u> Is Denied and Defendants' Motion for Summary Judgment on Count II of <u>Hall I</u> Is Granted**

     Count II of <u>Hall I</u> contains the heart of this dispute. In Count II, Plaintiffs contend that Amtrak's Board amended the Plan on July 26, 2001 to include, among other benefits, the Railroad Retirement Supplement. The Supplement, according to Plaintiffs, is a "retirement-type subsidy" protected under ERISA's Anti-Cutback Rule, ERISA Section 204(g), 29 U.S.C. § 1054(g). Plaintiffs claim

---

    [11] Plaintiffs devote more than twenty pages of their Motion for Partial Summary Judgment in an attempt to demonstrate the existence of a genuine issue of material fact concerning <u>Hall II</u>'s Count I. However, as discussed above, the question before the Court is whether the Committee's determination was reasonable and not an abuse of discretion, <u>see</u> <u>Block</u>, 952 F.2d at 1452-54, not whether there is a genuine issue of material fact that precludes summary judgment under Fed. R. Civ. P. 56. Moreover, Plaintiffs have subsequently withdrawn their request for additional discovery under Fed. R. Civ. P. 56(f), <u>see</u> Notice of Withdrawal of Rule 56(f) Request, and have represented to the Court that they do not seek any additional discovery. For these reasons, Plaintiffs' argument on this point is unavailing.

    [12] Because the <u>Hall II</u> Defendants presented no arguments regarding Count II, their Motion for Summary Judgment is **denied** as to that count.

that, assuming Amtrak's Board took valid action on September 14, 2001 to amend the Retirement Plan with a new, less valuable benefit, the September 14, 2001 Amendment violates ERISA's Anti-Cutback Rule.

Specifically, Plaintiffs claim that once Amtrak's Board adopted the July 26, 2001 VERP containing the Railroad Retirement Supplement, it could not be eliminated or reduced by subsequent amendment without violating ERISA's Anti-Cutback Rule, ERISA Section 204(g), 29 U.S.C. § 1054(g), because it was a "retirement-type subsidy."

Alternatively, Plaintiffs argue that the amended September VERP violates the nondiscrimination provision of the Internal Revenue Code ("I.R.C."), I.R.C. § 401, which prohibits qualified retirement plans from discriminating against highly compensated employees. Plaintiffs claim that paying them their Railroad Retirement Supplement is the only way to remedy this alleged discrimination.

The Hall I Defendants respond that the action of the Board on July 26, 2001 did not constitute amendment of the Amtrak Retirement Plan, and therefore the proposed changes to the Plan never actually became part of the Plan. In the alternative, Defendants argue that even if the July 26, 2001 Board action is construed as an amendment to the Plan, the benefit created by that amendment is not protected against cutback under ERISA because it is neither an "early

-27-

retirement benefit" nor a "retirement-type subsidy." Finally, they argue that Plaintiffs' nondiscrimination argument must fail because there is no private right of action for alleged violations of IRC § 401.

### 1. The July 26, 2001 Amendment Did Not Create a "Retirement-Type Subsidy"

Plaintiffs have offered strong arguments that the Amtrak Board of Directors did effectively amend the Amtrak Retirement Plan by approving the initial VERP on July 26, 2001. However, the Court need not consider whether the July VERP was validly approved because, even if it had been, any subsequent change to the benefit would not violate ERISA's Anti-Cutback Rule, ERISA § 204(g), 29 U.S.C. § 1054(g). The Anti-Cutback Rule is intended to prevent employers from "pulling the rug out from under" plan participants by eliminating or reducing certain forms of benefits through a plan amendment. Williams v. Cordis Corp., 30 F.3d 1429, 1431 (11th Cir. 1994). "'[W]hen Congress enacted ERISA, it wanted to...mak[e] sure that if a worker has been promised a defined pension benefit upon retirement--and if he has fulfilled whatever conditions are required to obtain a vested benefit--he actually will receive it.'" Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 743 (2004) (quoting Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996)) (other internal citations omitted).

The Anti-Cutback Rule, which was designed to achieve this objective, prohibits pension plan amendments that would decrease

-28-

the value of accrued benefits.  ERISA requires an accrued benefit in a defined benefit plan to be "expressed in the form of an annual benefit commencing at normal retirement age."  29 U.S.C. § 1002(23)(A).  The ERISA definition previously did not include early retirement benefits, which commence before normal retirement age.  See <u>Bencivenga v. W. Pa. Teamsters and Employers Pension Fund</u>, 763 F.2d 574, 577 (3d Cir. 1985).

In 1984, Congress passed the Retirement Equity Act ("REA"), now ERISA § 204(g), which provided that early retirement benefits and retirement-type subsidies shall be treated as accrued benefits for purposes of the Anti-Cutback Rule.  Specifically, § 204(g) as amended provides that "a plan amendment which has the effect of...eliminating or reducing an early retirement benefit or retirement-type subsidy...with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits."  29 U.S.C. 1054(g)(2).[13]

---

[13] In fuller relevant part, ERISA § 204(g) provides:

(g) Decrease of accrued benefits through amendment of plan

   (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(d)(2) or 1441 of this title.

   (2) For purposes of paragraph (1), a plan amendment which has the effect of--

       (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in

Congress did not specifically define the term "retirement-type subsidy" when it enacted the REA. The legislative history, however, does provide guidance. The Senate Report accompanying the legislation states that

> The bill provides that the term 'retirement-type subsidy' is to be defined by Treasury regulations. The Committee intends that under these regulations, <u>a subsidy that continues after retirement is generally to be considered a retirement-type subsidy</u>. The Committee expects, however, that a qualified disability benefit, a medical benefit, <u>a social security supplement</u>, a death benefit (including life insurance), or a plant shutdown benefit (that does not continue after retirement age) <u>will not be considered a retirement-type subsidy</u>.

S. REP. NO. 98-575, at 30 (1984), <u>as reprinted in</u> 1984 U.S.C.C.A.N. 2547, 2576 (emphasis added). Thus, Congress did not intend to include within the definition of "retirement-type subsidies" those subsidies that do not continue after an employee reaches retirement age, including social security supplements.

The Department of the Treasury has promulgated regulations interpreting the analogous provisions of I.R.C. § 411 that also apply to cases arising under the Anti-Cutback Rule, ERISA § 204(g).

---

regulations), or

> (B) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy...

ERISA § 204(g), 29 U.S.C. 1054(g).

-30-

Heinz, 541 U.S. at 747.  These Treasury Regulations include social security supplements as one example of a benefit that is not protected under the Anti-Cutback Rule.  Treas. Reg. § 1.411(d)-4(d)(3), 26 C.F.R. § 1.411(d)-4(d)(3) ("[t]he following benefits are examples of items that are not section 411(d)(6) protected benefits:...social security supplements").

The courts have consistently held that social security supplements are not protected under ERISA's Anti-Cutback Rule.  See, e.g., Cattin v. Gen. Motors Corp., 955 F.2d 416, 422-24 (6th Cir. 1992) (holding that social security supplement was not a "retirement-type subsidy" in part based on Treasury Regulation § 1.411(d)-4); Bellas v. CBS, Inc., 221 F.3d 517, 536 n.17 (3d Cir. 2000) (holding that certain supplemental benefits were not "retirement-type subsidies" because payment of the benefit did not continue after normal retirement age).[14]

The July VERP benefit at issue in this case provided for "[a] monthly supplement (equal to railroad retirement annuity) payable until employee is able to commence unreduced railroad retirement annuity benefits."  Hall I Compl., Ex. 3 at 2.  This benefit was a bridge payment that would end when the employee began to receive his or her railroad retirement annuity.  The September VERP replaced the July VERP's set of bridge payments with a one-time

---

[14] Plaintiffs cite no cases to the contrary, nor has the Court found any.

lump-sum payment of $15,000, thus significantly reducing the value
of the benefit to the employee.

The July VERP's Railroad Retirement Supplement is the
functional equivalent of a social security supplement, and is
therefore not subject to ERISA's Anti-Cutback Rule.  The Railroad
Retirement system is very similar to the better known Social
Security system.  Both systems grew out of the experience of the
Great Depression and resulting legislation passed by Congress in
the 1930s.  See Railroad Retirement Handbook, Chap. 1 "Development
of the Railroad Retirement System" (2006) (available at
http://www.rrb.gov/general/handbook/chapter1.asp).  Both are funded
by taxes collected from employers and employees.  Compare 45 U.S.C.
§ 231n with 42 U.S.C. § 401(a)(4).  Both pay benefits based on the
age of the recipient and the number of years of his or her service.
Compare 45 U.S.C. § 231a(a)(1) with 42 U.S.C. § 402(a).  Both
provide full retirement benefits that commence when the recipient
is between sixty-five and sixty-seven years of age, depending on
the year the recipient was born.  Compare 45 U.S.C. § 231a(a)(1)(i)
with 42 U.S.C. § 416(l)(1).

Thus, for purposes of this case, both systems are functionally
equivalent in every material respect.  Therefore, the Railroad
Retirement Supplement is not a "retirement-type subsidy" or "early
retirement benefit" for the same reasons that a social security
supplement is not, see Cattin, 955 F.2d at 422-24; Bellas, 221 F.3d

-32-

at 536 n.17, and is not subject to ERISA's Anti-Cutback Rule.

The Railroad Retirement Supplement is also not a "retirement-type subsidy" for the additional reason that it does not continue after retirement. <u>Arena v. ABB Power T&D Co.</u>, 2004 WL 826389, at *8 (S.D. Ind. Mar. 4, 2004). Only "a subsidy that continues after retirement is generally to be considered a retirement-type subsidy." <u>Id.</u> (quoting S. REP. No. 98-575, at 30). As noted earlier, the Railroad Retirement Supplement is a bridge payment for early retirees that terminates when an employee reaches normal retirement age and is eligible to receive his or her Railroad Retirement system benefits.[15]

For these reasons, the Railroad Retirement Substitute is not a benefit protected from cutback under ERISA § 204(g), 29 U.S.C. § 1054(g).

### 2. No Private Cause of Action Arises Under I.R.C. § 401

Plaintiffs argue that even if the Railroad Retirement Supplement is not a retirement-type subsidy protected by ERISA § 204(g), its amendment in September 2001 violates the Internal

---

[15] Indeed, Plaintiffs themselves have previously characterized the Railroad Retirement Supplement as "entitl[ing] eligible participants to valuable monthly 'bridging' payments from the date of their early retirement (as early as at age 55) until the day that they first received their full unreduced Railroad Retirement Annuity from the Railroad Retirement Board under the Railroad Retirement Act, 45 U.S.C. § 231 <u>et seq.</u> which, depending on the participant's date of birth and years of Amtrak service, could be anywhere from age 60 to age 67." Pls.' Opp'n to Indiv. Defs.' Mot. to Dismiss Count III of First Am. Compl., at 2 n.2.

Revenue Code's anti-discrimination provisions. <u>See</u> I.R.C. § 401.

Plaintiffs lack standing to bring such a claim because no private cause of action arises under I.R.C. § 401. <u>See</u>, <u>e.g.</u>, <u>Reklau v. Merchants Nat'l Corp.</u>, 808 F.2d 628, 631 (7th Cir. 1986) ("[T]here is no basis, under § 1202(c) or elsewhere in ERISA, to find that the provisions of § 401--which relate solely to the criteria for tax qualification under the Internal Revenue Code--are imposed by the substantive terms of ERISA"); <u>Cowan v. Keystone Employee Profit Sharing Fund</u>, 586 F.2d 888, 890 n.3 (1st Cir. 1978) ("This section [I.R.C. § 401] does not appear to create any substantive rights that a beneficiary of a qualified retirement trust can enforce"); <u>Franklin v. First Union Corp.</u>, 84 F. Supp. 2d 720, 730 (E.D. Va. 2000) ("Plaintiffs have no private cause of action to enforce the Code or the Treasury Regulations").

Because, for the reasons discussed above, the Railroad Retirement Supplement is not subject to ERISA § 204(g) and I.R.C. § 401 does not provide a private cause of action, Defendants are **granted** summary judgment on <u>Hall I</u>'s Count II. It is therefore unnecessary for the Court to address Plaintiff's Amended Motion to Certify Class, which applied only to <u>Hall I</u>'s Count II, and that motion is **denied as moot**.

   C.   **Plaintiffs May Only Bring Claims for Equitable Relief Under Count III of <u>Hall I</u>; Consequently, Defendants' Motion for Summary Judgment on Count III of <u>Hall I</u> Is Denied**

In Count III of <u>Hall I</u>, Plaintiffs allege that Amtrak's former

-34-

Presidents breached their fiduciary duties "[b]y failing to appoint, monitor, make appropriate disclosure to, and/or remove Plan Committee Members," in violation of ERISA § 404(a), 29 U.S.C. § 1104(a), and ERISA § 405(a), 29 U.S.C. § 1105(a).  Sec. Am. Compl. ¶ 93.

The Second Amended Complaint originally sought "relief <u>on behalf of the Plans</u> against all fiduciary Defendants."  Sec. Am. Compl. ¶ 95 (emphasis added).  On July 25, 2005, however, Plaintiffs voluntarily dismissed "the plan-wide aspects of Count III brought under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), on behalf of the [Plans]."[16]  Pls.' Notice of Voluntary Dismissal of Plan-Wide Aspects of Count III at 1.  The Second Amended Complaint also sought "relief from or against Amtrak under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)."  Sec. Am. Compl. ¶ 95.

ERISA § 502(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Pursuant to this section, Plaintiffs may seek only an injunction or "other appropriate equitable relief."  <u>Id.</u>

---

[16] The relief authorized under Section 502(a)(2) is limited to actions brought on behalf of a plan.  <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 144 (1985).

Section 502(a)(3) does not permit a plaintiff to seek compensatory money damages under the guise of equitable relief.  Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of legal [as opposed to equitable] relief") (emphasis in original).

Here, however, the relief sought in Count III appears to be equitable in nature.  The Second Amended Complaint requests "relief to deter such breaches [of fiduciary duty] in the future, relief to make the Plans whole for all losses resulting from these breaches, and such other equitable relief or remedial relief as the Court may deem appropriate."  Sec. Am. Compl. ¶ 95.   More specifically, Plaintiffs seek declaratory and injunctive relief in the form of "an order declaring the fiduciary or former fiduciary to have committed fiduciary breaches...and enjoining them from committing such violations again in the future."  Pls.' Opp'n to Defs.' Mot. for Summ. J. in Hall I at 43.   This proposed injunctive and declaratory relief would compel Amtrak to comply with certain procedures regarding appointment and monitoring of Plan Committee members, enter a declaratory judgment that Defendants violated ERISA, and enjoin future violations of the law.  Id.  The proposed relief is clearly injunctive in nature.[17]

_____

[17] Nevertheless, to the extent Plaintiffs later attempt to seek compensatory money damages under the guise of equitable relief, they are precluded from doing so under Section 502(a)(3).  Mertens, 508 U.S. at 255.

-36-

Accordingly, Defendant's Motion for Summary Judgment in <u>Hall I</u> is **denied** as to Count III.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment on Count I in <u>Hall II</u> [Dkt No. 20] is **denied** and the <u>Hall II</u> Defendants' Motion for Summary Judgment [Dkt. No. 22] is **granted** as to Count I because the Retirement Plan Committee did not abuse its discretion in finding that the Board of Directors validly approved the September 2001 VERP; Plaintiffs' Motion for Summary Judgment Under Count II in <u>Hall I</u> [Dkt. No. 65] is **denied** and the <u>Hall I</u> Defendants' Motion for Summary Judgment [Dkt. No. 85] is **granted** as to Count II because the replacement of the Railroad Retirement Supplement with a less valuable lump sum payment did not violate ERISA's Anti-Cutback Rule; and the <u>Hall I</u> Defendants' Motion for Summary Judgment [Dkt. No. 85] is **denied** as to Count III because Plaintiffs seek only injunctive and declaratory relief under that count.  Furthermore, Plaintiffs' Amended Motion to Certify Class and Appoint Class Counsel in <u>Hall I</u> [Dkt. No. 78] is **denied as moot**; and the <u>Hall II</u> Defendants' Motion for Summary Judgment is **denied** as to Count II because Defendants did not present arguments concerning that count.  Thus, only Count III of <u>Hall I</u> and Count II of <u>Hall II</u> remain for further proceedings.

An Order shall accompany this Memorandum Opinion.


                                    /s/
                                    _____
June 18, 2008                       Gladys Kessler
                                    United States District Judge


**Copies to: Attorneys of record via ECF**